**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re:<br><br>USA Gymnastics,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 18-09108-RLM |

**DECLARATION OF JAMES SCOTT SHOLLENBARGER IN SUPPORT OF
CHAPTER 11 PETITION AND REQUESTS FOR FIRST DAY RELIEF**

I, James Scott Shollenbarger, hereby declare:

1. I am the Chief Financial Officer of USA Gymnastics ("**USAG**").

2. USAG's principal office is located in Indianapolis, Indiana. In connection with my duties for USAG, I am familiar with the day-to-day operations and financial affairs of USAG.

3. I have served as USAG's Chief Financial Officer since July 2018. I have over twenty years of experience in corporate finance and accounting, having served in numerous senior level positions, including the position of Chief Financial Officer, with several private companies. I am a certified public accountant and earned my Master of Business Administration from the University of Phoenix and my Bachelor in Business Administration from Abilene Christian University.

4. On the date hereof (the "**Petition Date**") USAG filed a voluntary petition for relief with the United States Bankruptcy Court for the Southern District of Indiana (the "**Court**") under chapter 11 of title 11 of the United States Code, thereby commencing its chapter 11 case. USAG intends to operate and manage its organization as a debtor in possession during its restructuring.

---

[1] The last four digits of the Debtor's federal tax identification number are 7871. The location of the Debtor's principal office is 130 E. Washington Street, Suite 700, Indianapolis, Indiana 46204.

5. I submit this declaration (i) to provide an overview of USAG and the chapter 11 case; and (ii) in support of the USAG's chapter 11 petition and "first day" motions (the "**First Day Motions**") and expedited motions (the "**Expedited Motions**", and collectively with the First Day Motions, the "**Motions**"), which have been filed to minimize the adverse effects of filing for chapter 11 protection and enhance USAG's ability to complete its restructuring in an orderly and efficient manner.

6. If called as a witness, I could and would competently testify to the matters set forth herein based on my personal knowledge or based on reliable information provided to me as an employee of USAG. In my capacity with USAG, I have become familiar with USAG's day-to-day operations, financial condition, and books and records. I or other members of USAG's management team participated in preparing the Motions (including the exhibits and schedules attached thereto). I have reviewed each Motion and, to the best of my knowledge, believe the facts set forth therein are true and correct. My testimony herein is based on my service as Chief Financial Officer of USAG, my review of USAG's books and records and other relevant documents, my experience and knowledge of USAG's operations and financial condition, and my review of information compiled and communicated to me by other employees of USAG and USAG's professional advisors on which I reasonably relied.

7. Section I of this Declaration describes USAG. Section II summarizes USAG's pre-petition indebtedness. Section III addresses the events and circumstances that triggered the commencement of the chapter 11 case. Section IV discusses USAG's objectives for the chapter 11 case. Finally, Section V sets forth the relevant facts in support of the Motions and summarizes the relief requested thereby.

## I. USAG.

8. USAG is a 501(c)(3) not-for-profit organization incorporated in Texas. Based in Indianapolis, Indiana, USAG is governed by a Board of Directors (the "**USAG Board**").

9. USAG encompasses six disciplines: women's gymnastics, men's gymnastics, trampoline and tumbling, rhythmic gymnastics, acrobatic gymnastics, and group gymnastics. USAG provides educational opportunities for coaches and judges, as well as gymnastics club owners and administrators, and sanctions approximately 4,000 competitions and events throughout the United States annually. More than 200,000 athletes, professionals, and clubs are members of USAG.

10. In 1988, USAG formed a separate entity, The National Gymnastics Foundation, Inc. (the "**Foundation**"), to further the Olympic sport of gymnastics through educational grants and other support activities governed by a Board of Directors. The Foundation's Board of Directors is separate from the USAG Board, and the Foundation is not a debtor in this or any other chapter 11 case.

11. USAG sets the rules and policies that govern the sport of gymnastics in the United States, including selecting and training the United States gymnastics teams for the Olympics and World Championships. USAG is currently designated by the United States Olympic Committee (the "**USOC**") and the Fédération Internationale de Gymnastique as the national governing body for the sport of gymnastics in the United States. The USOC recently has taken steps toward revoking USAG's designation as the national governing body for gymnastics.

12. As a result of the misconduct of Larry Nassar, a former volunteer physician to USAG, USAG has been named as a defendant in approximately 100 lawsuits brought by survivors of Nassar's abuse. USAG's first priority is to ensure that these survivors are treated fairly and respectfully. The survivors' claims, in the aggregate, may exceed the available resources of

3

USAG. USAG submits that this Court is the best forum in which to implement appropriate procedures to equitably determine the rights to and allocate recoveries to survivors who have asserted claims against USAG. USAG remains committed to its mission of supporting athletes, and will continue to take specific and concrete steps to promote athlete safety and prevent future abuse.

13. At present, the President/CEO role of USAG is not filled. USAG is working with a professional recruiting firm to identify and interview qualified candidates. I expect that the position of President/CEO will be filled by early 2019. In the meantime, to assist USAG with operational and strategic matters, USAG has retained two consultants, both of which have agreed to provide consulting services to USAG through January 2019.

## II. USAG's Pre-Petition Finances And Operations.

14. USAG leases space for its organization's headquarters at 130 E. Washington Street, Suite 700, Indianapolis, Indiana 46204. USAG's operating lease for its office facilities costs on an annual basis approximately $275,000 and expires on December 31, 2020.

15. USAG's primary assets are cash and cash equivalents and investments in the approximate amount of $6.5 million and the proceeds of various insurance policies.

16. USAG does not have any secured debt and does not have significant unsecured debt, other than the contingent liabilities arising out of the lawsuits and claims asserted against USAG by survivors, which are described in greater detail in Section III, below. In its most recent audited financial statements, USAG estimated the potential impact of these lawsuits to be between $75 million and $150 million.

**III.     Circumstances Leading To The Commencement Of This Chapter 11 Case.**

    **A.     Nassar's Abuse And USAG's Response.**

17.     The horrific and pervasive sexual abuse committed by Larry Nassar has been well documented in the national news media. Nasser was employed by Michigan State University ("**MSU**") and served as a volunteer to USAG. As a volunteer, Nassar was to provide medical assistance to gymnasts at various events and camps, including those camps held at what was previously USAG's National Team Training Center.

18.     In June 2015, an initial report came to USAG's attention that Nassar had potentially had inappropriate contact with gymnasts. USAG promptly commenced an investigation into the matter and ultimately reported the matter to the FBI. In November 2017, Nassar pleaded guilty to sexual assault and other crimes. As a result of his sentence, Nassar will spend the rest of his life in prison.

19.     In late 2016, USAG engaged Deborah Daniels, Managing Partner of Indianapolis-based Krieg DeVault LLP and a former federal prosecutor, to conduct an independent review of USAG's bylaws, policies, procedures and practices related to handling sexual misconduct matters and to issue a report and recommendations (the "**Daniels Report**"). The Daniels Report was issued on June 26, 2017, and is publicly available on USAG's website. The Daniels Report contained a number of recommendations, all of which USAG's then board of directors unanimously agreed to implement.

20.     USAG's leadership has undergone a complete change in the last year and a half. In March 2017, USAG's then CEO, Steve Penny, resigned. In January 2018, every member of USAG's then board of directors resigned. The current USAG Board and officers do not include any individuals who served during the period in which Nassar was a USAG volunteer or under investigation for his criminal acts.

5

### B. The Pre-Petition Pending Litigation.

21. Presently hundreds of individuals have asserted claims in Michigan, California, and elsewhere against MSU and other defendants as a result of Nassar's abuse; over 350 of those individuals have also asserted claims against USAG. The Michigan and California lawsuits were mediated as a consolidated group, with MSU and the plaintiffs having reached a $500 million settlement. USAG also faces cases and claims arising out of Nassar's criminal conduct in other jurisdictions around the country.

22. USAG has insurance coverage encompassing numerous policies covering approximately 30 years, which I expect will provide substantial coverage for the amounts asserted in the various lawsuits and claims. Nevertheless, I understand that the applicable insurance proceeds may be insufficient to cover allowed claims of survivors against USAG. For this reason, USAG filed this chapter 11 case to establish an orderly procedure for the allocation of its insurance proceeds.

### C. The USOC Complaint.

23. On November 5, 2018, the USOC filed a complaint initiating a proceeding against USAG under Section 8 of the USOC's bylaws, seeking to revoke USAG's designation as the national governing body of gymnastics. USAG will continue to work with the USOC to determine the best path forward for the sport of gymnastics.

## IV. Objectives For Chapter 11.

24. USAG's primary objective for filing the chapter 11 case is to implement orderly, equitable, and efficient procedures to allocate USAG's available insurance proceeds to survivors who hold allowed claims against USAG. Secondarily, USAG intends to continue to work with the USOC to implement the changes necessary to regain the trust and confidence of the USOC and athletes in USAG as the national governing body for the sport of gymnastics.

**V.     First Day Motions And Motions For Which USAG Seeks Expedited Hearing.**

25.     To enable USAG to minimize any adverse effects of the commencement of the chapter 11 case on its operations until the restructuring is complete, USAG requests the relief set forth in various First Day Motions. In addition, USAG seeks an expedited hearing on the Expedited Motions that, while not "First Day Motions" under Local Rule 9013-3, seek relief that is important to achieve at the outset of USAG's chapter 11 case. The First Day Motions and Expedited Motions are summarized below.

> **A.     First Day Motion For (I) Approval Of The Debtor's Continued Use Of Cash Management System, (II) Authorization To Use Pre-Petition Bank Account; And (III) Waiving The Requirements Of 11 U.S.C. § 345(b) ("Cash Management Motion").**

26.     Pursuant to the Cash Management Motion, USAG seeks entry of an order authorizing the continued use of its existing cash management system (the "**Cash Management System**") and waiving the deposit account requirements of 11 US.C. § 345(b) with respect to certain investments. USAG also respectfully requests a waiver of certain of the operating guidelines established by the Office of the United States Trustee for the Southern District of Indiana (the "**U.S. Trustee Guidelines**") that require the Debtor to close all pre-petition bank accounts, open new accounts designated as debtor in possession accounts, and provide new organization forms and stationery.

27.     The Cash Management System allows USAG to collect and transfer efficiently the cash generated by its operations to pay its financial obligations. The Cash Management System is similar to those utilized by other organizations to collect, concentrate, and disburse funds in a cost-effective and orderly manner. The Cash Management System is carefully managed through oversight procedures implemented by USAG's financial and accounting personnel located at USAG's corporate offices in Indianapolis, Indiana. To lessen the disruption caused by the

bankruptcy filing and maximize the value of USAG's estate in this chapter 11 case, I believe it is vital that USAG maintains its Cash Management System.

28. One noteworthy account within the Cash Management System is the State & Region Master Account (the "**S&R Master Account**"). This Account holds funds belonging to state and regional gymnastics organizations and other non-debtor constituent groups that do not have their own taxpayer identification numbers (and therefore cannot open bank accounts in their own names). The funds in the S&R Master Account are fully segregated from USAG's own funds and can be readily traced to their respective owners. USAG has never used funds deposited into the S&R Master Account for its own purposes, nor does it have the right to do so.

29. Although the funds in the S&R Master Account are not property of the Debtor's estate, in the event the S&R Master Account is subject to the requirements of the U.S. Trustee Guidelines, USAG requests authority to maintain the S&R Master Account in accordance with pre-petition practices and permission for the beneficial owners to continue using existing checks for this account. This authorization would allow the beneficial owners to continue to freely deposit and withdraw funds from the S&R Master Account. Because the beneficial owners rely on the S&R Master Account as their own operating account, it would prejudice them greatly if the filing of this chapter 11 case impeded their ability to access their funds in the S&R Master Account.

30. For the foregoing reasons, USAG submits, and I believe, that the relief requested in the Cash Management Motion is in the best interest of USAG, its estate, and its creditors and should be approved.

    **B.**     **First Day Motion For An Order (I) Authorizing The Debtor To Pay And Honor Certain Pre-Petition Wages, Benefits, And Other Compensation Obligations; And (II) Authorizing Financial Institutions To Honor And Process Checks And Transfers Related To Such Obligations ("Wages Motion").**

31. Pursuant to the Wages Motion, USAG seeks entry of an order authorizing it to pay

8

certain employee wages, benefits, and other compensation obligations. As of the Petition Date, USAG employs 53 individuals, nearly all of whom work for USAG full-time. USAG's employees rely on their compensation, benefits, and reimbursement of expenses to satisfy their daily living expenses. These employees will be exposed to significant financial hardship if USAG is not permitted to honor obligations for unpaid compensation, benefits, and reimbursable expenses. Moreover, if USAG is unable to satisfy such obligations, employee morale and loyalty will be jeopardized at a time when employee support is critical to USAG and the success of USAG's restructuring efforts. In short, there is a real, immediate risk that, if USAG is not authorized to continue to satisfy employee obligations in the ordinary course, employees would no longer support and maintain the operations of USAG, thereby impeding the prospects of an effective and efficient restructuring.

32. For the foregoing reasons, USAG submits, and I believe, that the relief requested in the Wages Motion is in the best interest of USAG, its estate, and its creditors and should be approved.

    **C.**    **First Day Motion For An Order (I) Authorizing The Debtor To Continue, Renew, and Supplement Insurance Policies; (II) Authorizing Payment Of Obligations Incurred In The Ordinary Course Of Operations In Connection With Insurance Programs, Including Payment of Policy Premiums, Broker Fees, and Premium Financing Obligations; And (III) Authorizing Banks To Honor And Process Check And Electronic Transfer Requests Related Thereto Pursuant To Sections 105(a) And 363(b) Of The Bankruptcy Code ("Insurance Motion").**

33. Pursuant to the Insurance Motion, USAG seeks entry of an order authorizing it to continue paying insurance premiums and, if necessary, renew its insurance policies and enter into new policies. In the ordinary course of operations, USAG maintains multiple insurance policies, including, among others, general liability, excess liability, sexual abuse and molestation liability, directors and officers liability, employed lawyers liability, media liability, accident liability,

catastrophic medical liability, and automobile liability. It is important that USAG maintain insurance coverage in order to protect current employees, athletes, and other members.

34. For the foregoing reasons, USAG submits, and I believe, that the relief requested in the Insurance Motion is in the best interest of USAG, its estate, and its creditors and should be approved.

> **D. First Day Motion For Interim And Final Orders Pursuant To Sections 105(a) And 366 Of The Bankruptcy Code (I) Prohibiting Utility Company From Altering, Refusing, Or Discontinuing Utility Services; And (II) Deeming Utility Company Adequately Assured Of Future Payment ("Utilities Motion").**

35. Pursuant to the Utilities Motion, USAG seeks entry of interim and final orders ensuring USAG's continued access to internet, telephone, and cellular services from AT&T and AT&T Mobility (collectively "**AT&T**"). AT&T serves USAG's headquarters in Indianapolis, Indiana. USAG has a good payment history with AT&T, making monthly payments of approximately $6,550 on a regular and timely basis. To the best of my knowledge, there are no material defaults or arrearages of any significance with respect to USAG's AT&T invoices, other than payment interruptions that may be caused by the commencement of this chapter 11 case. For these reasons, I believe that AT&T is adequately assured of future payment. Nonetheless, to provide adequate assurance of payment for future services to AT&T under section 366 of the Bankruptcy Code, USAG proposes to pay AT&T a deposit in the amount of $3,275, which equals 50% of USAG's estimated monthly payment to AT&T.

36. USAG could not keep running as an organization without internet, telephone, and cellular services. Any interruption in USAG's telecommunications services with AT&T would severely disrupt USAG's ongoing operations and restructuring efforts.

37. For the foregoing reasons, USAG submits, and I believe, that the relief requested in the Utilities Motion is in the best interest of USAG, its estate, and its creditors and should be

approved.

      **E.    First Day Motion For An Order (I) Authorizing The Debtor To Pay Pre-Petition Taxes; And (II) Authorizing Banks To Honor And Process Checks And Electronic Transfer Requests Related Thereto Pursuant To Sections 105(a), 363(b), 507(a)(8), And 541 Of The Bankruptcy Code ("Taxes Motion").**

    38.    Pursuant to the Taxes Motion, USAG seeks entry of an order authorizing it to pay pre-petition tax obligations to the extent they exist and are outstanding. As a 501(c)(3) not-for-profit entity, USAG does not typically owe federal or state income taxes. It also does not collect or remit any sales or use taxes in the course of its operations. But USAG does remit payroll taxes to various taxing authorities. In the event any payroll taxes are outstanding or USAG learns of other *bona fide* pre-petition tax obligations, USAG requests authority to pay such taxes that are due and owing. Otherwise, USAG could become subject to penalties and interest or tax-related litigation, all of which will deplete assets and divert USAG's attention from this chapter 11 case.

    39.    For the foregoing reasons, USAG submits, and I believe, that the relief requested in the Taxes Motion is in the best interest of USAG, its estate, and its creditors and should be approved.

      **F.    Debtor's Motion For An Order (I) Authorizing The Debtor To File A Redacted Creditor Matrix And Redacted Amended Creditor Matrices; And (II) Deeming The Procedures To Satisfy Local Rules 1007 And 1009 ("Redacted Creditor Matrix Motion").**

    40.    Pursuant to the Redacted Creditor Matrix Motion, USAG seeks entry of an order authorizing it to file a redacted creditor list. As discussed in Part III, the majority of USAG's potential creditors are survivors of sexual abuse who have asserted claims against USAG. Many of these survivors have asserted the claims as "Jane Doe" claimants in the public record. To protect their confidentiality, I believe that it is necessary and appropriate to redact the names and addresses of those individuals.

    41.    For the foregoing reasons, USAG submits, and I believe, that the relief requested

in the Redacted Creditor Matrix Motion is in the best interest of USAG, its estate, and its creditors and should be approved.

G. **Debtor's Motion For Extension Of Time In Which To File Schedules And Statement Of Financial Affairs ("Schedule and SOFA Extension Motion").**

42. I am advised that the Bankruptcy Code and Bankruptcy Rules normally require debtors to file their schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statement of financial affairs within 14 days after their petition date, but that the Bankruptcy Rules permit a bankruptcy court to extend a debtor's time within which to file such schedules or statements for "cause." I believe cause exists in USAG's chapter 11 case to warrant such an extension. To prepare its schedules and statement of financial affairs, USAG will have to compile voluminous amounts of information from books, records, and documents relating to a large number of claims and contracts. Collecting the necessary information will require an enormous expenditure of time and effort on the part of USAG, its employees, and its professional advisors. Because USAG's immediate focus is ensuring a smooth transition into chapter 11 for its employees, members, and athletes, I believe that a 30-day extension of time to file its Schedules and Statement of Financial Affairs is necessary.

43. For the foregoing reasons, USAG submits, and I believe, that the relief requested in the Schedule and SOFA Extension Motion is in the best interest of USAG, its estate, and its creditors and should be approved.

H. **Application For An Order Authorizing Employment Of Omni Management Group, Inc. As Claims And Noticing Agent Pursuant To 28 U.S.C. § 156(c), Effective As Of The Petition Date ("Claims Agent Application").**

44. Pursuant to the Claims Agent Application, USAG seeks entry of an order appointing Omni Management Group ("**Omni**") as the Claims and Noticing Agent for USAG in its chapter 11 case, including assuming full responsibility for the distribution of notices and the

maintenance, processing, and docketing of proofs of claim filed in the chapter 11 case. Omni is a leading chapter 11 administrator, with significant experience in noticing, claims administration, solicitation, balloting, and other administrative aspects of chapter 11 cases. Omni has agreed to provide a 15% discount off of its standard hourly rate for services provided to USAG. Omni will assist USAG in making certain that information regarding USAG's case is easily accessible to the public.

45. For the foregoing reasons, USAG submits, and I believe, that the relief requested in the Claims Agent Application is in the best interest of USAG, its estate, and its creditors and should be approved.

**I. Debtor's Motion For Entry of Order Approving Agreement With Alfers GC Consulting, LLC to Provide Consulting Services ("Alfers Motion").**

46. Pursuant to the Alfers Motion, USAG seeks entry of an order authorizing the employment of Alfers GC Consulting, LLC ("**Alfers GC Consulting**") to provide business consulting services to assist USAG's Board of Directors' Management Committee. I am advised that J. Alison Alfers, the principal of Alfers GC Consulting, is an experienced business advisor, whose responsibilities for various organizations have included P&L management, human resources oversight, and corporate strategy and development. Ms. Alfers is a licensed attorney and has also held the position of general counsel or chief legal officer of several organizations. I believe that Ms. Alfers and Alfers GC Consulting are well-qualified to support the USAG Board during this critical period in USAG's history. Under and subject to the terms of the agreement USAG entered into with Alfers GC Consulting prior to the commencement of this case, the Debtor has agreed to pay Alfers GC Consulting $25,000 per month for services and $5,000 per month for expenses. Prior to the Petition Date, Alfers GC Consulting was paid for services rendered through December 4, 2018. I believe that the terms of Alfers GC Consulting's employment are reasonable

and appropriately reflect the value of the services Alfers GC Consulting will provide to USAG.

47. For the foregoing reasons, USAG submits, and I believe, that the relief requested in the Alfers Motion is in the best interest of USAG, its estate, and its creditors and should be approved.

**J.  Debtor's Motion For Entry of Order Approving Agreement With Scramble Systems, LLC to Provide Consulting Services ("Scramble Motion").**

48. Pursuant to the Scramble Motion, USAG seeks entry of an order authorizing the employment of Scramble Systems, LLC ("**Scramble**") to provide general business and advisory consulting services to assist the USAG Board's Management Committee. Scramble's principal, Stephen Douglass, is a former gymnast and experienced business consultant. I believe that Mr. Douglass and Scramble are well-qualified to support the USAG Board during this critical period in USAG's history. Under and subject to the terms of the agreement USAG entered into with Scramble prior to the commencement of this case, the Debtor has agreed to pay Scramble an hourly rate of $450 per hour, with a maximum daily rate of $3,000, weekly maximum rate of $12,000, and maximum monthly rate of $45,000. Prior to the Petition Date, Scramble was paid for services rendered through December 4, 2018. I believe that the terms of Scramble's employment are reasonable and appropriately reflect the value of the services Scramble will provide to USAG.

49. For the foregoing reasons, USAG submits, and I believe, that the relief requested in the Scramble Motion is in the best interest of USAG, its estate, and its creditors and should be approved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: December 5, 2018
Indianapolis, Indiana

*/s/ James Scott Shollenbarger*
James Scott Shollenbarger
Chief Financial Officer, USA Gymnastics