IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In re: <br><br> USA GYMNASTICS, <br><br> Debtor. | Chapter 11 <br><br> Case No. 18-09108-RLM-11 |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF ORDER APPROVING AGREEMENT WITH ALFERS GC CONSULTING, LLC TO PROVIDE CONSULTING SERVICES**

In support of her Objection (the "Objection") to the Debtor's Motion for Entry of Order Approving Agreement with Alfers GC Consulting, LLC to Provide Consulting Services ("Alfers Consulting Motion"), Nancy J. Gargula, the United States Trustee for Region 10 (the "U.S. Trustee"), by and through undersigned counsel, states as follows:

1. This Court has jurisdiction to hear this Objection under 28 U.S.C. §§ 157 and 1334.

2. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc.* (*In re Columbia Gas Sys., Inc.*), 33 F.3d 294, 295-96 (3d

Cir. 1994) (noting the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

3. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on any issue in any case or proceeding, including with regard to this Objection.

**BACKGROUND**

4. On December 5, 2018 (the "Petition Date"), USA Gymnastics (the "Debtor" or "USAG") filed a voluntary petition for relief under chapter 11 of Title 11 of the Bankruptcy Code.

5. An official committee of unsecured creditors has not yet been appointed in this case.

6. The Debtor has continued in possession of its properties and has continued to operate and maintain its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. Concurrently with the Alfers Consulting Motion, the Debtor has filed certain other motions and applications also seeking "first day" relief on an expedited basis, including the Motion for Authority to Enter into Agreement with Scramble Systems LLC (the "Scramble Consulting Motion") (Docket No. 22).

8. The Debtor has also filed the Declaration of James Scott Shollenbarger in Support of Chapter 11 Petition and Requests for First Day Relief (the "Shollenbarger Declaration") (Docket No. 8).

9. It appears from the Shollenbarger Declaration that, as of the Petition Date, the President and CEO positions at USAG are vacant and that

"to assist USAG with operational and strategic matters, USAG has retained two consultants, both of which have agreed to provide consulting services to USAG through January 2019." Schollenbarger Declaration at ¶13.

10. It appears from the Alfers Consulting Motion, the Scramble Consulting Motion, and the Shollenbarger Declaration that just days prior to the Petition Date, the Debtor entered into agreements for post-petition services with Alfers GC Consulting, LLC ("Alfers") and Scramble Systems, LLC ("Scramble") for business, legal, and advisory services, including strategic planning and operational support. Thus, it appears that Alfers and Scramble are professionals providing the Debtor consulting, management, turnaround and legal services in lieu of permanent executive management.

**OBJECTION**

11. The Alfers Consulting Motion is flawed and should be denied.

12. Alfers is providing "business and legal consulting services to assist the Management Committee of the Board of Directors of the USAG with certain strategic planning and operational execution support, pending the placement of permanent executives in multiple currently vacant executive management positions...." Alfers Consulting Agreement ¶ 10 and appears to be providing some services that would otherwise be provided by the President and/or CEO, thus it appears Alfers is acting as a professional person.

13. The purpose for requiring court approval of professional persons is to "avoid the enormous potential for abuse in the hiring of consultants, appraisers, business advisors, and others who offer their professional services

and expertise to beleaguered Chapter 11 debtors." *In re DOLA Int'l Corp.*, 88 B.R. 950, 955 (Bankr.D.Minn.1988).

Section 327(a) provides,

> ...the trustee, with the court's approval, may employ one or more attorneys, accountants, *appraisers, auctioneers, or other professional persons*, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title. (Emphasis added)

The term "professional person" and qualifying phrase "represent or assist the trustee in carrying out the trustee's duties under this title" are not defined by the Bankruptcy Code. There is no universally agreed upon standard to determine if an entity is a "professional person". Courts have therefore considered a wide range of factors to reach a conclusion. Recently, some courts have begun to use a six factor test first outlined in *First Merchants Acceptance Corp.*, 1997 Bankr. LEXIS 2245, 1997 WL 873551 (D. Del. 1997).

14. The *First Merchants* court provided an excellent summary of the state of the case law at that time stating:

> The judicial trend with respect to the definition of "professional" can be divided into two camps, those adopting a quantitative analysis and those adopting a qualitative analysis. Under the quantitative analysis, the definition of "professional" is limited to those occupations which play a central role in the administration of the debtor proceeding, and not those occupations which are involved in the day-to-day mechanics of the debtor's business. *In re Seatrain Lines, Inc.*, 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981); see also *In re River Ranch*, 176 B.R. 603, 604 (Bankr. M.D. Fla. 1994); *In re Bicoastal Corporation*, 149 B.R. 216, 218 (Bankr. M.D. Fla. 1993) (defining

professional as person who assists debtor in administration of bankruptcy). Under the qualitative analysis, a "professional" is an employee that is given discretion or autonomy in some part of the administration of the debtor's estate. *In re Fretheim*, 102 B.R. 298, 299 (Bankr. D. Conn. 1989) (espousing qualitative analysis and criticizing quantitative approach as "difficult to apply and subject to arbitrary and inconsistent results"); *In re Semenza*, 121 B.R. 56, 57 (Bankr. D. Mont. 1990) (adopting qualitative analysis).

In determining the manner in which this Court should approach the definition of "professional," the Court makes two observations regarding the differing approaches. First, it is the Court's view that the quantitative and qualitative analyses need not be mutually exclusive. While the quantitative test focuses on the significance of the individual's role to the debtor proceeding and the qualitative test focuses on the amount of discretion the individual has in accomplishing that role, the bottom line of both tests involves an examination of the types of duties to be undertaken by the individual. *See In re Sieling Associates Limited Partnership*, 128 B.R. 721, 722 (Bankr. E.D. Va. 1991) (describing *Fretheim* qualitative approach as only "deviating slightly" from *Seatrain* quantitative approach). Second, it is the Court's view that both tests are somewhat vague and difficult to apply. While other courts have agreed with this view, they have been reluctant to propose an alternative method or to improve upon the methods previously discussed. *See e.g. In re First Security Mortgage Company, Inc.*, 117 B.R. 1001, 1006-1007 (Bankr. N.D. Okla. 1990) (criticizing both approaches, but assuming arguendo that employee in issue was "professional" and thereby avoiding clarification of approaches).

In an effort to lend some clarity to this issue, the Court has examined the cases to discern a list of factors to be considered and applied in making the determination of whether an employee is a "professional" within the meaning of Section 327. Although the list is not exclusive, the Court believes

that it reflects many of the considerations that have impacted judicial decisions in this area. The factors embrace both the qualitative and quantitative approaches and include the following:

(1) whether the employee controls, manages, administers, invests, purchases or sells assets that are significant to the debtor's reorganization,

(2) whether the employee is involved in negotiating the terms of a Plan of Reorganization,

(3) whether the employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations;

(4) whether the employee is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate, i.e. the qualitative approach,

(5) the extent of the employee's involvement in the administration of the debtor's estate, i.e. the quantitative approach; and

(6) whether the employee's services involve some degree of special knowledge or skill, such that the employee can be considered a "professional" within the ordinary meaning of the term.

In applying these factors, the Court stresses that no one factor is dispositive and that the factors should be weighed against each other and considered in toto.

*Id.*

The *First Merchants* court's six factors are considered simultaneously to determine if an employee is a professional and if that professional is assisting the trustee in the performance of her duties. The six factors are not exclusive and should be considered as a whole. This Court should follow the process

proposed by the court in *First Merchants* and consider the six factors, among others, as a whole to come to a determination in this case.

15. Retention of Alfers requires the Debtor to file an application for its employment pursuant to 11 U.S.C. § 327, and to support that application with the requisite verifications regarding Alfers and its managing member, J. Alison Alfers, as to their suitability for the retention and their disinterestedness. The Debtor has not done so, despite the fact that, pursuant to the Consulting Services Agreement with Alfers ("Alfers Consulting Agreement"), the Debtor engaged Alfers on December 1, 2018, just 4 days prior to the Petition Date. Thus, the engagement appears to be entered into in connection with the filing of the Debtor's bankruptcy case. *See* Shollenbarger Declaration at ¶13. Accordingly, it appears Alfers is currently operating without authority from the Court.

16. By entering into the Alfers Consulting Agreement just four days prior to the Petition Date, and by permitting Alfers to commence providing professional consulting and management services to the Debtor, the Debtor has short-circuited the Court's, creditors' and other parties in interests' ability to adequately review the Alfers Consulting Agreement or to understand whether Alfers has any disqualifying conflicts of interest. In fact the Declaration regarding disinterestedness was filed December 19, just the day prior to the hearing on the Alfers Consulting Motion. The Declaration filed states, " Alfers GC Consulting renders services to many diverse clients, some of which may be or may become creditors or parties in interest. Declaration of J. Alison

Alfers ¶ 7. This does not sufficiently disclose whether there are existing clients of Alfers that are or could become creditors of Debtor.

17. The U.S. Trustee also objects to the Alfers Consulting Motion for the following reasons:

   a. There is no provision for review of Alfers' consulting fees. The Alfers Consulting Agreement requires the Debtor to pay Alfers a flat fee of $25,000 per month. Alfers Consulting Agreement at ¶4. The proposed order approves the payment of Alfers' fees in advance. The Court and parties in interest are thus deprived of any opportunity to learn whether Alfers' services were necessary and beneficial to the Debtor's estate, and reasonable in light of the time spent and work completed.

   b. The Alfers Consulting Agreement also provides for an additional $5,000 per month for living expenses as well as reimbursement for business travel expenses. There is no information provided in the motion as to why payment of Alfers' living expenses in addition to the generous monthly compensation would be a necessary and reasonable expense to the Debtor's estate.

   c. Although the retention of Alfers under the Alfers Consulting Agreement has not been approved by the Court, prior to the Petition Date and during the preference period, Alfers was paid an unspecified amount for services rendered through December 4, 2018. It is not clear whether the amount paid was solely for professional consulting services or whether it also included some or all of Alfers' anticipated $5,000 monthly living expenses and travel reimbursement.

   d. There is no clear provision in the agreement itself which requires this Court to approve the Alfers Consulting Agreement and thus, if the Court declines to approve the Alfers Consulting Agreement, the Debtor may be obligated under the terms of the termination and severability provisions to pay some or all of Alfers' monthly flat fees, living expenses, and other expense reimbursements, notwithstanding that the Debtor would be prohibited from such payment by the absence of Court approval of the engagement.

18. As a further matter, it appears that the services to be provided by Alfers may be duplicative of those to be provided by Scramble. As set forth in

the Scramble Consulting Motion at ¶10, "The [Scramble Consulting] Agreement describes the Services as follows: "Scramble shall provide general business and advisory consulting services to assist [USAG] with certain strategic planning and operational execution support." These services appear to duplicate, or at a minimum, overlap the services to be provided by Alfers, and there is no adequate explanation why the same services need to be provided by two separate consultants or, in the alternative, what the differences in the services to be provided are.

19. Additionally, Scramble's compensation is structured to permit a monthly maximum fee of $45,000.00, which when added to the combined $25,000.00 fee and $5,000.00 living expense afforded to Alfers, would create a combined monthly cost of $75,000.00 plus reimbursement of business travel expenses of Alfers to the Debtor for potentially duplicative management and turnaround consulting services.

20. The Alfers Consulting Motion should be denied for all the reasons stated herein, and because it entirely circumvents the requirements for engagement of a professional pursuant to section 327 and payment of professional fees pursuant to section 328.

21. The U.S. Trustee will be appointing an Additional Tort Claimants Committee of Sexual Abuse Survivors ("Additional Committee") in this case and as a result of the timing of the appointment, the Additional Committee has not had a meaningful opportunity to review the Alfers Consulting Motion.

Wherefore, the U.S. Trustee requests that this Court deny the Alfers Consulting Motion and grant such other relief as the Court deems just.

Date: December 19, 2018

Respectfully submitted,

NANCY J. GARGULA
United States Trustee

By: /s/ Laura A. DuVall
Laura A. DuVall
Trial Attorney
United States Department of Justice
Office of the United States Trustee
101 W Ohio Street, Room 1000
Indianapolis, IN 46204
P: (317) 226-6101
Laura.DuVall@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2018, a copy of the **UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF ORDER APPROVING AGREEMENT WITH ALFERS GC CONSULTING, LLC TO PROVIDE CONSULTING SERVICES** was docketed electronically by the Court. Notice of this filing was sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

Deborah Caruso    dcaruso@rubin-levin.net, dwright@rubin-levin.net, jkrichbaum@rubin-levin.net, atty_dcaruso@bluestylus.com
Adam L. Kochenderfer    akochenderfer@wolfsonbolton.com
Ronald J. Moore    Ronald.Moore@usdoj.gov
Dean Panos    dpanos@jenner.com
Amanda Koziura Quick    amanda.quick@atg.in.gov, Darlene.Greenley@atg.in.gov
Melissa M. Root    mroot@jenner.com, wwilliams@jenner.com
James I. Stang    jstang@pszjlaw.com

Catherine L. Steege   csteege@jenner.com, mhinds@jenner.com, thooker@jenner.com
Meredith R. Theisen   mtheisen@rubin-levin.net, atty_mtheisen@bluestylus.com, mralph@rubin-levin.net

I further certify that on December 19, 2018, a copy of **UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF ORDER APPROVING AGREEMENT WITH ALFERS GC CONSULTING, LLC TO PROVIDE CONSULTING SERVICES** was mailed by first-class U.S. Mail, postage prepaid, and properly addressed to the following:

None

/s/ Laura A. DuVall
Laura A. DuVall