IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| USA GYMNASTICS, | ) | Case No. 18-09108-RLM-11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**AMENDED LIMITED OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF ORDER APPROVING AGREEMENT WITH ALFERS GC CONSULTING, LLC TO PROVIDE CONSULTING SERVICES[1]**

Curtis T. Hill, Jr., Attorney General of Indiana, objects to the Debtor's Motion for Entry of Order Approving Agreement with Alfers GC Consulting, LLC to Provide Consulting Services (the "Motion") on a limited basis and states in support of his limited objection:

## INTRODUCTION

1. Curtis T. Hill, Jr., the Attorney General of the State of Indiana, (the "Attorney General") is charged with protecting the public interest in charitable and benevolent instrumentalities and to ensure the integrity of nonprofit entities operating within the State of Indiana. Ind. Code §§ 23-17-24-1 and 23-17-24-1.5. *Zoeller v. East Chicago Second Century*, 904 N.E.2d 213 (Ind. 2009).

2. USA Gymnastics ("USAG") is a nonprofit corporation with a principal office located in Indianapolis, Indiana.

3. USAG filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et. seq.* (the "Code") on December 5, 2018 (the "Petition Date"). USAG continues to operate its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Code.

---

[1] This document is shown as "amended" to reflect the Exhibit which was inadvertently omitted.

## BACKGROUND

4.      Over the past several years, a culture of rampant abuse within the sport of gymnastics has been exposed, and USAG has become the subject of one of the most horrific and extensive scandals in sports history.

5.      On November 4, 2016, USAG engaged Deborah Daniels, a partner at Indianapolis-based Krieg DeVault LLP and former federal prosecutor, to conduct an independent review of USAG's bylaws, policies, procedures, and practices related to handling sexual misconduct matters.

6.      The review was sought in the wake of the exposure of nearly three decades of sexual abuse which had been perpetrated by Dr. Larry Nassar, USAG's National Medical Coordinator and Women's National Team Physician, and a terrifying number of reports that had begun to surface of young women being abused by persons affiliated with USAG as members or contractors along with additional charges that USAG had not been sufficiently responsive in disciplining offenders and terminating their access to young gymnasts.

7.      Another event which contributed to the commission of the Daniels review was a series of articles published by The Indianapolis Star beginning in the summer of 2016 with a primary focus on sexual abuse in women's gymnastics and the myriad cases of alleged abuse.

8.      One of the stories from the series which was particularly disturbing was published during December 2016 and reported that nearly 400 gymnasts had alleged sexual abuse or exploitation by coaches and other authority figures over a period of 20 years.  Additionally, at least some of these coaches and authority figures were alleged to have been associated with USAG as members.  Despite this, many of the allegations against members had not been pursued, or had not been promptly reported, by USAG.

9.      Daniels produced her Report to USA Gymnastics on Proposed Policy and Procedural Changes for the Protection of Young Athletes on or about June 26, 2017 (the "Daniels Report"). A copy of the Daniels report is available on USAG's website at:

https://usagym.org/PDFs/About%20USA%20Gymnastics/ddreport_062617.pdf    (last    visited December 18, 2018).

10.      The Daniels Report contained approximately 70 recommendations for improving the culture at USAG and promoting the safety of the athletes who compete within the sport of gymnastics.

11.      In the nearly eighteen months since the publication of the Daniels Report, USAG has failed to fully implement the recommendations. By USAG's admission on its website, less than 50% of the recommendations have been implemented with others listed as "in progress," "ongoing," or "planning." *See*:

http://www.usagymprogressreport.com/recommendations (last visited December 19, 2018).

12.      Those recommendations showing as "in progress" (39%), "ongoing" (8%) or "planning" (6%) are of grave concern as many of those particular recommendations, including but not limited to all recommendations as to education, training, and athlete support, are arguably the most important to effectuate athlete safety. Yet, they have fallen by the wayside.

13.      The description of certain recommendations as "implemented" is confounding in some cases. For example, the Daniels Report recommended the creation of the position of Regional Safe Sport Director. USAG has created the position; however, upon information and belief, the position is currently vacant.

14.      Likewise, the Daniels Report recommended the hiring of an in-house General Counsel, who as stated by USAG was to oversee the organization's legal affairs, including

oversight of safe sport and related issues but also to manage and oversee the annual enterprises risk assessment recommendation.  Upon information and belief, the position has been created but remains vacant.

15.    The Daniels Report noted that then current USAG standards directed a party who suspected child abuse to consult with counsel because legal reporting requirements varied by state. (Daniels Report, p. 74)  Notwithstanding this reality, the Daniels Report stated "It is best for all members to understand that because of their position of trust and authority with athletes, they should immediately report all suspicions or incidents of abuse regardless of whether they are required under their state's laws to report." *Id.*(emphasis added).

16.    Despite this guidance from a former prosecutor, USAG's current policy states that "USA Gymnastics will report suspected child abuse or neglect (including Sexual Misconduct) within 24 hours to the proper authorities in all instances and without exception, unless it is aware that authorities have already been notified." *See* USA Gymnastics Progress Report attached as Exhibit A (emphasis added).

17.    Daniels was correct in stating that reporting requirements vary by state.  In fact, Indiana requires immediate reporting of suspected child abuse. See Ind. Code 31-33-5-2.  The Indiana Supreme Court has determined that a delay of four hours in reporting suspected abuse was not "immediate" within the meaning of Indiana law.  *Smith v. State,* 8 N.E.3d 668 (Ind. 2014).

18.    Therefore, the current USAG policy falls short of the requirements imposed by Indiana law and the proactive approach endorsed by Daniels, as well as what is necessary to protect athletes and children across the nation from abuse.

19.    Additionally, as reported in the Independent Audit Report on USAG's Consolidated Financial Statements for December 31, 2017 and 2016, as of August, 2018, approximately 222 individuals in Michigan, California, and Texas have named USAG as a defendant in lawsuits, and additional inquiries have been initiated by Ropes & Gray, three Congressional committees, the Texas Rangers, and this Attorney General.

### ALFERS' EMPLOYMENT

20.    Prior to the Petition Date, USAG entered into a contract with Alfers GC Consulting, LLC ("Alfers") in which Alfers agreed to provide "general business consulting services" to assist USAG's Board of Directors with "certain strategic planning and operational execution support." [Doc. 20, Exhibit B, Appendix A.]

21.    It is the Attorney General's understanding that USAG retained Alfers, in part, because certain positions within USAG are open, and USAG is in need of operational assistance.

22.    The Attorney General understands USAG's need for assistance; however, the Motion is somewhat vague about the nature of the services to be provided. While the Attorney General does not wish to substitute his business judgment for that of USAG, the Attorney General asks that any order employing Alfers be conditioned upon Alfers' agreement to operate in a manner that promotes and secures the welfare of the athletes who are part of USAG.

23.    At a minimum, Alfers must be prepared to comply with Indiana law as well as the laws of other jurisdictions as they relate to the reporting of child abuse. Alfers and its employees must immediately report suspected child abuse as recommended by Daniels, outlined by USAG's own policies, and required by Indiana law.

24.     Additionally, Alfers must be prepared to engage in a systematic evaluation of remaining USAG employees to insure their compliance with USAG policies implementing the Daniels' recommendations.

25.     Alfers must also be willing to cooperate fully in any and all investigations or inquiries by regulatory bodies and/or law enforcement entities as it relates to USAG.

26.     Further, Alfers must be prepared to work toward full implementation of the Daniels recommendations in a timely manner, in addition to making athlete safety a top priority and making all necessary efforts to effectuate that goal[2].

27.     If Alfers is willing to commit to these suggested requirements then the Attorney General has no objection to Alfers' employment by USAG.

28.     Each and every part of USAG, whether a permanent employee or an outside consultant must be committed to safety.  There can be no further delays in the protection of the young athletes within the USAG system as well as children across the nation.  Making athlete safety a top priority as well as compliance with the Daniels Report is simply too important to be delayed any further.

29.     The Attorney General also notes that there is a pending objection to Alfers' employment from a group of sexual abuse survivors (the "Survivors' Group").  In their objection, the Survivors' Group requests that Alfers provide a disclosure of any potential conflicts and file a declaration attesting to its disinterestedness as the term is used in Section 327 of the Code.  The Attorney General joins in this request.

---

[2] The Attorney General recognizes that Alfers' employment is currently projected to end on January 31, 2019; however, this still provides time for implementation and enforcement of the Daniels recommendations.  In addition, the contract provides for the possible extension of Alfers' services.

## CONCLUSION

WHEREFORE, Attorney General Curtis T. Hill, Jr. respectfully requests that the Court condition the employment of Alfers upon Alfers' agreement to comply with all laws and rules regarding the reporting of suspected child abuse, monitor and promote compliance with the policies designed to protect and promote athlete welfare, and work toward full implementation of the recommendations contained in the Daniels Report and further condition the employment on making the disclosures requested by the Survivors Group.

Dated:   December 19, 2018                    Respectfully submitted,

/s/ Martha R. Lehman
Martha R. Lehman
Mark R. Wenzel
SmithAmundsen, LLC
201 N. Illinois Street, Suite 1400
Capital Center, South Tower
Indianapolis, IN 46204
Telephone: 317-464-4142
Fax: 317-464-4143
mlehman@salawus.com
mwenzel@salawus.com

*Counsel for Curtis T. Hill, Jr.,*
*Attorney General of Indiana*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of December, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all parties who have filed an appearance.  Copies of this pleading may be accessed through the Court's electronic filing system.

/s/ Martha R. Lehman
Martha R. Lehman