IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In re:<br><br>USA GYMNASTICS,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 18-09108-RLM-11 |

**REPLY IN SUPPORT OF DEBTOR'S MOTION FOR ORDER
AUTHORIZING THE DEBTOR TO ASSUME EXECUTORY
CONTRACT WITH SPENCER STUART PURSUANT TO 11 U.S.C. § 365**

USA Gymnastics, as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**" or "**USAG**"), files its reply (the "**Reply**") to the objection [Dkt. 259] (the "**Objection**") filed by the Additional Tort Claimants Committee of Sexual Abuse Survivors (the "**Committee**") to the Debtor's Motion For Order Authorizing the Debtor to Assume Executory Contract with Spencer Stuart Pursuant to 11 U.S.C. § 365 [Dkt. 223] (the "**Motion**").[2] In support of this Reply, the Debtor states as follows:

**REPLY**

The Committee does not dispute the self-evident proposition that filling the role of the chief executive officer at USAG with a highly competent, skilled individual is critical at this juncture in USAG's history. Strong leadership is needed to guide USAG through the reorganization process and to implement the changes that the Committee and others have demanded be made at USAG. The Committee also does not dispute that hiring a top-notch executive search firm to assist USAG's board in locating and hiring the right CEO to accomplish this difficult job is a prudent

---

[1] The last four digits of the Debtor's federal tax identification number are 7871. The location of the Debtor's principal office is 130 E. Washington Street, Suite 700, Indianapolis, Indiana 46204.

[2] Capitalized terms used herein and not defined shall have the meaning given to them in the Motion.

and thoughtful way to proceed with the CEO search. The Committee also does not dispute that Spencer Stuart, an international executive search firm, is capable of performing this critical job. The Committee even acknowledges that Spencer Stuart is "a reputable firm." (Objection ¶1.) Finally, the Committee "does not object to the economics of the assumption." (Objection ¶1 n.3.) Those facts—*which are not in dispute*—justify USAG's business decision to assume the Spencer Stuart Contract.

The crux of the Committee's Objection does not go to USAG's need for an executive search firm or to Spencer Stuart's capabilities to perform the work or even to the amount of Spencer Stuart's fee, but rather to a legal question: whether Spencer Stuart should be paid for the work it has performed. Positing a classic Catch-22 scenario, the Committee argues that if the Debtor has already selected a CEO as a result of Spencer Stuart's search efforts, there is no need to assume the Spencer Stuart Contract and pay the firm the remaining amount that it is due; but, if Spencer Stuart has not yet completed the CEO search, the Committee argues that the Contract cannot be assumed because USAG has not "demonstrate[d] that Spencer Stuart is likely to succeed in its task" of finding a CEO candidate. (Objection ¶5.) Carrying this argument to its logical conclusion, there is no scenario that allows USAG to assume the Spencer Stuart Contract. In short, the Committee has erected an impossible barrier to assumption.

The problem with the Committee's argument is that it is based on a fundamentally flawed legal premise. The United States Supreme Court held over 30 years ago in *National Labor Relations Board v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) that "if the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services." The Seventh Circuit reached the same conclusion in *In re*

2

*Whitcomb & Keller Mortgage Co.*, 715 F.2d 375 (7th Cir. 1983). In *Whitcomb & Keller*, the Seventh Circuit affirmed a lower court order enforcing an executory contract against the non-debtor party before the debtor had made its decision to assume or reject the contract, provided the debtor paid for the services it received. *Id.* at 378–79.

  Here, Spencer Stuart has performed valuable services post-petition, locating and arranging for interviews of candidates, and assisting the Board in vetting the proposed candidates, all facts the Committee acknowledges were disclosed to it before it filed its Objection. (Objection ¶7.) USAG also has told the Committee that USAG expects to announce a CEO selection in the near future. But what USAG is unable to do is breach the confidentiality of the search and hiring process. For what should be obvious reasons, those who have applied for the job or have been interviewed may not want that fact known to the public. A candidate who has accepted the job may want to delay an announcement to make arrangements to leave his or her current employment. Media interest in USAG has been intense and thus, it is not surprising that participants in this search process would want confidentiality.

  Attempting to balance this need for confidentiality with the Committee's inquiries, USAG has offered multiple times over the past month to discuss all of these matters with the Committee in confidence. The Debtor wants to open a dialogue with the Committee and has repeatedly asked the Committee to do so in a manner that will not jeopardize the CEO search process. The Committee has refused to meet on any terms, apparently preferring to be on the outside complaining, rather than be seen as cooperating in any way with USAG.

  Finally, the Committee's argument that assumption of the Spencer Stuart Contract would impose an additional burden of payment should USAG suspend its CEO search is unfounded. (Objection ¶8.) USAG has not suspended its CEO search and does not intend to do so, so no

additional fee will come due. More importantly, in making this argument, the Committee ignores the obvious benefit that results from assuming the Spencer Stuart Contract: USAG will be entitled to a replacement search for no additional fee should a new CEO resign within a year. (*See* Motion at Ex. B. at pg. 9.)  The Committee also ignores that Spencer Stuart agreed to work for a flat fee rather than the typical commission based on all compensation and benefits paid to the new CEO that is standard in the executive search industry. (*Id.* at 2-3.) Scrapping the Spencer Stuart Contract would only result in the loss of this guarantee, and likely more fees, not less, as there is no assurance a competitor will agree to work on the same non-standard basis.

In sum, USAG has reasonably exercised its business judgment to assume the Spencer Stuart Contract. *See In re Edison Mission Energy*, Case No. 12-49219, 2013 WL 5220139, at *5 (Bankr. N.D. Ill. Sept. 16, 2013) (approving assumption of executory contract under deferential business judgment standard); *see also In re Bullet Jet Charter, Inc.*, 177 B.R. 593, 601 (Bankr. N.D. Ill. 1996).  The Committee does not dispute the need for Spencer Stuart's services, Spencer Stuart's ability to perform capably, or the economics of the Spencer Stuart Contract.  The Committee's only complaint could have been easily cured if the Committee had been willing to meet with the Debtor. The Debtor's Motion should be granted.

For each of the reasons set forth in the Motion and in this Reply, the Debtor respectfully requests that the Court grant the Motion and enter the order substantially in the form attached to the Motion as <u>Exhibit A</u> and grant such other relief as may be just.

Dated: February 18, 2019                                   Respectfully submitted,

**JENNER & BLOCK LLP**

By: <u>/s/ *Catherine Steege*</u>

Catherine L. Steege (admitted *pro hac vice*)
Dean N. Panos (admitted *pro hac vice*)
Melissa M. Root (#24230-49)
353 N. Clark Street
Chicago, Illinois 60654
(312) 222-9350
csteege@jenner.com
dpanos@jenner.com
mroot@jenner.com

*Counsel for the Debtor*