**SO ORDERED: May 17, 2019.**



_____
**Robyn L. Moberly
United States Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| USA GYMNASTICS,[1] | Case No. 18-09108-RLM-11 |
| Debtor. | |

**FINAL ORDER AUTHORIZING DEBTOR
TO OBTAIN POST-PETITION FINANCING AND GRANTING
SUPERPRIORITY CLAIMS TO POST-PETITION LENDERS**

This matter came before the Court on the *Debtor's Motion For Final Order Authorizing*

*Debtor To Obtain Post-Petition Financing And Granting Superpriority Claims To Post-Petition*

---

[1] The last four digits of the Debtor's federal tax identification number are 7871. The location of the Debtor's principal office is 130 E. Washington Street, Suite 700, Indianapolis, Indiana 46204.

*Lenders* (the "**Motion**")², filed by USA Gymnastics as debtor and debtor in possession (the "**Debtor**"), for the entry of a final order (the "**Final Order**") pursuant to sections 364(c)(1), 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court of the Southern District of Indiana (the "**Local Rules**"), authorizing the Debtor to enter into post-petition financing agreements on the terms and conditions set forth in those certain Debtor in Possession Term Loan Agreements, by and among (i) the Debtor, as Borrower, and Virginia Surety Company, Inc., f/k/a Combined Specialty Insurance Company ("**Virginia Surety**"), solely in its capacity as lender, and (ii) the Debtor, as Borrower, and Great American Assurance Company ("**Great American**"), solely in its capacity as lender (collectively, Virginia Surety and Great American, the "**DIP Lenders**" and, each individually a "**DIP Lender**"), and granting superpriority administrative expense status to the claims of the DIP Lenders in accordance with 11 U.S.C. § 364(c)(1) and the respective DIP Credit Agreements; and this Court having reviewed the Motion and held a final hearing with respect to the Motion on May 15, 2019 (the "**Final Hearing**"); and notice of the Final Hearing on the Motion having been given in accordance with Bankruptcy Rules 4001(c) and Local Rule 4001-2; and upon consideration of the record at the Final Hearing; and after due deliberation, and good and sufficient cause appearing therefore, the Court hereby determines the Motion should be GRANTED.

---

² Unless otherwise indicated herein, all defined terms shall have the meaning set forth in the DIP Credit Agreements. A copy of the Credits Agreements are attached hereto as Exhibits A and B.

THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A. **Petition**. On December 5, 2018, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

B. **Debtor-In-Possession Status**. The Debtor remains in possession of its property and continues to operate and maintain its organization as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner in this chapter 11 case

C. **Committee**. On December 19, 2018, the United States Trustee appointed the Additional Tort Claimants Committee Of Sexual Abuse Survivors (the "**Committee**").

D. **Jurisdiction**. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

E. **Core Matter**. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (D), and the Court may enter a final order consistent with Article III of the United States Constitution.

F. **Venue**. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

G. **Notice**. Sufficient and adequate notice of this Final Order has been provided under the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the *Order Granting Debtor's Motion For Order Establishing Certain Notice, Case Management, And Administrative Procedures* [Dkt. 213].

H. **Need For DIP Financing**. The relief sought in the Motion is necessary on a final basis to provide the Debtor with immediate and ongoing access to financing under section 364 of

3

the Bankruptcy Code to fund the Debtor's day-to-day operations, pay the costs of the reorganization case, and maintain and preserve the Debtor's assets.

I. **No Credit Available On More Favorable Terms.** Due to its present financial condition and despite good faith efforts, the Debtor is unable to obtain post-petition financing in the form of unsecured credit allowable under sections 364(a) and (b) of the Bankruptcy Code or unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, on terms and conditions more favorable than those presently offered by the DIP Lenders.

J. **Willingness Of DIP Lenders To Extend Credit.** The DIP Lenders are willing to provide the Debtor with post-petition financing to be used by the Debtor to fund the Debtor's day-to-day operations, pay the costs of the reorganization case, and maintain and preserve the Debtor's assets. Subject to entry of this Final Order, Virginia Surety has agreed to provide the Debtor with up to $500,000 in post-petition financing, pursuant to the terms of this Final Order and its DIP Credit Agreement, and Great American has agreed to provide the Debtor with up to $300,000 in post-petition financing, pursuant to the terms of this Final Order and its DIP Credit Agreement.

K. **Good Faith.** The Debtor and the DIP Lenders have exchanged fair consideration for the rights each obtained in this Final Order and each acted in good faith in its negotiations over the terms of this Final Order. Any credit extended to the Debtor pursuant to this Final Order will be deemed to have been extended and made in good faith, as that term is used in section 364(e) of the Bankruptcy Code.

L. **Relief Appropriate And In The Best Interests Of The Estate.** The Court finds that the terms and conditions of this Final Order are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, were negotiated by the parties at arms-length and entered into by the parties in good faith, are the best reasonably available

4

to the Debtor under the present market conditions and financial circumstances of the Debtor, and are in the best interests of the Debtor and its estate.

IT IS THEREFORE ORDERED:

1. **Motion Granted**. The Motion is granted on the terms provided in this Final Order.

2. **Objection Overruled.** All objections to the Motion, to the extent not withdrawn or resolved, are hereby overruled for the reasons stated on the record.

3. **Approval of DIP Credit Agreements**. The Debtor is authorized to obtain post-petition financing from Virginia Surety in the aggregate amount of $500,000, pursuant to section 364(c)(1) of the Bankruptcy Code, subject to the terms provided in the DIP Credit Agreement with Virginia Surety, and the terms of the DIP Credit Agreement with Virginia Surety are hereby approved. The Debtor is authorized to obtain post-petition financing from Great American in the aggregate amount of $300,000, pursuant to section 364(c)(1) of the Bankruptcy Code, subject to the terms provided in the DIP Credit Agreement with Great American, and the terms of the DIP Credit Agreement with Great American are hereby approved. Upon execution and delivery, the DIP Credit Agreements shall represent valid and binding obligations of the Debtor, enforceable against the Debtor and its estate in accordance with their terms.

4. **Use Of Funds**. The Debtor shall use the Advances under the DIP Credit Agreements in accordance with the terms of the DIP Credit Agreements, namely, to fund the Debtor's day-to-day operations, pay the costs of the reorganization case, and to maintain and preserve the Debtor's assets; provided however, that the Debtor may not use the Advances to pursue any Coverage Dispute with the DIP Lenders.

5. **Binding Effect Of DIP Credit Agreements**. The DIP Credit Agreements and this Final Order shall constitute and evidence the validity and binding effect of the Debtor's obligations

under the DIP Facilities, which such obligations shall be enforceable against the Debtor, its estate and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Case, or any case under Chapter 7 of the Bankruptcy Code upon the conversion of this case (collectively, "**Successor Case**"). The Debtor's obligations under the DIP Facility will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtor to the DIP Lenders under either of the DIP Credit Agreements or this Final Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owed pursuant to the DIP Credit Agreements.

6.      **Superpriority Administrative Expense Claims**. Subject to the Carve Out, all Obligations under the DIP Credit Agreements (including principal, interest, and indemnification obligations) shall be and hereby are granted and allowed as superpriority administrative expense claims with priority in this chapter 11 case under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and shall have priority over any and all administrative expenses, adequate protection claims, and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(d), 726, 1113, and 1114 of the Bankruptcy Code and, upon entry of this Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a

judgment lien or other non-consensual lien, levy, or attachment (such claims of the DIP Lenders, the "**DIP Superpriority Claims**").

7. **Carve Out**. The DIP Superpriority Claims are subordinate only to the following (collectively, the "**Carve Out**"):

   a. allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6) for fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee (collectively, the "**U.S. Trustee Fees**"); and,

   b. to the extent allowed at any time, whether by interim order, procedural order or otherwise, all accrued professional fees (the "**Allowed Professional Fees**") incurred by (i) persons or firms retained by the Debtor pursuant to section 327, 328 or 363 of the Bankruptcy Code (the "**Debtor's Professionals**"), (ii) persons or firms retained pursuant to section 328 or 1103 the Bankruptcy Code by any Committee appointed pursuant to section 1102 of the Bankruptcy Code (the "**Committee's Professionals**"), and (iii) the future claimants' representative appointed by the court and persons or firms retained pursuant to section 328 or 1103 the Bankruptcy Code by the future claimants' representative; and in each preceding case (i) through (iii) whether or not such fees and expenses are paid or not yet paid at or prior to the time of the Carve Out Trigger Date (as defined in the DIP Credit Agreement), and (iv) Allowed Professional Fees incurred after the Carve Out Trigger Date up to the following aggregate limit, allocated 3/8ths to Great American and 5/8ths to Virginia Surety, $150,000 for the Debtor's Professionals, up to $75,000 for any Committee's Professionals (inclusive of any reasonable and customary expenses incurred by Committee members after the Carve Out Trigger date, and which expenses may be paid from such $75,000 aggregate limit), up to $25,000 for any future claims representative appointed by the Court, plus (v) reasonable and customary out-of-pocket costs and expenses incurred prior to the Carve-Out Trigger Date by members of the Committee, whether or not such fees and expenses are paid or not yet paid, and in each case (i) through (v) as allowed by the Court; *provided, however,* that all professional fees shall be subject to the requirements of Section 330 of the Bankruptcy Code and the DIP Lenders reserve the right to review and object to any fee application filed in this chapter 11 case.

8. **No Obligation To Lend**. The DIP Lender shall not have any obligation to make any Advance (as defined in the DIP Credit Agreements) under the DIP Credit Agreements unless all of the conditions precedent to the making of such Advance under the applicable DIP Credit Agreement and this Final Order have been satisfied in full or waived by the DIP Lender, in its sole discretion.

7

9. **Modification of Automatic Stay.** The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtor to grant the DIP Superpriority Claims; and (b) authorize the Debtor to pay, and each DIP Lender to retain and apply, payments made in accordance with the terms of this Final Order.

10. **Good Faith**. Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter modified, amended, or vacated by a subsequent order of this or any other court, each DIP Lender shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code and, no such appeal, modification, amendment, or vacatur shall affect the validity and enforceability of any advances made hereunder or priority authorized or created by this Final Order.

11. **DIP Lenders' Expenses**. The DIP Lenders reserve their right to seek payment of their expenses, solely in connection with exercising their remedies upon a Default, as provided in the DIP Credit Agreement, and all such expenses, including but not limited to any right to indemnification under Section 8.8 of the DIP Credit Agreements, shall be subject to the approval of the Bankruptcy Court, after notice and a hearing.

12. **Proofs of Claim**. Except with respect to the fees and expenses of the DIP Lenders, the DIP Lenders will not be required to file proofs of claim or requests for approval of administrative expenses in the Debtor's chapter 11 case or Successor Case, and the provisions of this Final Order relating to the amount of the DIP Facilities and the DIP Superpriority Claims shall constitute timely filed proofs of claim and/or administrative expense requests in this case.

13. **Notices to Committee.** Financial information provided to the Lenders pursuant to the provisions of the DIP Credit Agreements shall be provided to the Committee. Lenders shall provide the Committee with any notices given under Sections 7.2 and 8.4 of the DIP Credit Agreements and with any requests for an inspection pursuant to Section 5.4 of the DIP Credit Agreements.

14. **Reservation of Rights**. Nothing contained in this Final Order or the DIP Credit Agreements abridges, modifies, impairs, limits, expands or otherwise affects in any way any insurance contracts between the Debtor and the Lenders or abridges, modifies, impairs, limits, expands or otherwise affects in any way the obligations of the Lenders to the Debtor in their capacities as insurers of the Debtor, or the Debtor's duties and responsibilities under such insurance contracts. The Debtor and Lenders each retain all of their rights and defenses against each other with respect to any Coverage Dispute. This Final Order is not intended to expand or detract from the Committee's rights, if any, with respect to any Coverage Dispute.

15. **Inconsistency**. In the event of any inconsistency between the terms and conditions of the DIP Credit Agreements and this Final Order, the provisions of this Final Order shall govern and control.

16. **Binding Effect**. This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon execution hereof.

17. **Waiver Of Stay**. Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Final Order.

18. **No Waiver by Failure to Seek Relief**. The failure of the DIP Lenders to seek relief or otherwise exercise rights and remedies under this Final Order, the DIP Credit Agreements or

applicable law, as the case may be, shall not constitute a waiver of any of their rights hereunder, thereunder, or otherwise of the DIP Lenders.

19. **Retention Of Jurisdiction**. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order and the DIP Credit Agreements and Lenders consent to the jurisdiction and constitutional authority of the Court to hear and determine all such disputes.

###