**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

In re:

USA Gymnastics

        Debtor | Case No. 18-09108-RLM-11

## CREDITOR'S MOTION TO FILE CLAIM AFTER BAR DATE

Creditor, Erin Kaufman, hereby submits her Motion for the entry of an order, and respectfully moves the Court to enlarge the Claims Notice Bar Date for herself and for other creditors similarly situated, and in support thereof states as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)and (O), and the Court may enter a final order consistent with Article III of the U.S. Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief requested herein are sections 3003 and 9006 of the Bankruptcy Code.

### BACKGROUND

3.      On December 5, 2018, Debtor USA Gymnastics ("USAG") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4.      On December 19, 2018, the United States Trustee appointed the Additional Tort Claimants Committee of Sexual Abuse Survivors (the "Committee").

5.      On February 25, 2019, the Court entered an order (the "Bar Date Order") fixing April 29, 2019 as the bar date for general claims and claims asserting sexual abuse (the "Bar Date"). (See Dkt. No. 301.)

6.      On June 10, 2019, the Court approved a Future Claims Representative as proposed by the Debtor.

7.      Dr. Kaufman found out about the bankruptcy from a news article on her phone on June 10, 2019.

8.      On June 11, 2019, the creditor called various law firms to see if anyone could help her. She found Saeed & Little, LLP after Googling "USA Gymnastics" and "lawyer."  She subsequently mailed her proof of claim and, knowing her proof of claim will be considered belated and time-barred, now files this petition.

## ADDITIONAL FACTS

9.      Dr. Kaufman was a member of USA Gymnastics from 1987-2000. During this time, Ms. Kaufman lived in Michigan.

10.     As a member of USA Gymnastics, Dr. Kaufman (who joined when she was around 4-years-old and left when she was around 17) had to provide USAG with her personal data as well as that of her parents, including full name, date of birth, and address.

11.     The same was required of all USAG members.

12.     Like so many other young girls and women, Dr. Kaufman was sexually abused by Larry Nassar while she was a member of USAG and while he was working in his capacity as a physician for USAG.

13.     In 2001, Dr. Kaufman left Michigan and went to college in New York.

14.     In 2005, her father moved to Georgia, and her mother followed in 2008. They sold their Michigan house in 2009.

15.     Dr. Kaufman retains her maiden name and has never changed her name.

16.     Even if she had changed her surname, it would not greatly increase the difficulty of finding a current address.

17.     If a notice regarding this bankruptcy was sent via mail, it may have been to the address associated with her membership (her childhood home, which was sold in 2009).

18.     As such, Dr. Kaufman did not receive notice via mail.

19.     Dr. Kaufman's situation is not unique. It is likely that there are many other potential creditors who no longer live in their childhood homes who, for that reason, did not receive notice via mail of this proceeding.

20.     Due to the abuse she suffered, Dr. Kaufman did not want to visit the USA Gymnastics website for any reason.

21.     Dr. Kaufman did not have an email address from the years 1987-2000.

22.     When the Nassar story broke, Ms. Kaufman was visiting her brother in Lexington, KY.

23.     When the debtor filed for bankruptcy in December 2018, Dr. Kaufman was in the hospital recovering from an inpatient surgery. She was released with medication and had to stay with her parents during her recovery for two months.

24.     In January of 2019, Dr. Kaufman was diagnosed with further serious health issues related to an eating disorder that she developed while she was a gymnast.

25.     In April of 2019, Dr. Kaufman applied to Northwestern University and was also

working part-time as a consultant from home.

26.     Had Dr. Kaufman received notice of this bankruptcy, she would have filed a timely claim.

27.     Dr. Kaufman's CV is attached as Ex. A.

28.     The claimant's proof of claim is attached as Ex. B.

29.     Verification of her serving the proof of claim is attached as Ex. C.

## RELIEF REQUESTED

30.     Creditor seeks to extend the Claims Bar Date from April 29, 2019 at 4:00pm to a future date to be determined after Debtor demonstrates that it has made more than a minimal effort to notify potential creditors of the bankruptcy. Minimal effort means mailing notices to the homes occupied by potential creditors decades ago.

## BASIS FOR RELIEF

31.     Fed. R. Bankr. P. 9006(b)(1) grants the Court discretion to enlarge the claims bar date after its expiration if claimants fail to file timely claims as the result of excusable neglect.

32.     Ms. Kaufman's failure to timely her proof of claim was indeed the result of excusable neglect because she did not receive notice of the bankruptcy and therefore could not have filed it sooner than she did.

33.     Debtor contends that notice was given to potential claimants, but Dr. Kaufman is just one of likely many potential claimants who did not receive notice.

34.     Fed. R. Bankr. P. 2002 does not define the term "notice;" however, bankruptcy courts can "sensibly assume that the general norms of fair notice as set forth in *Mullane v. Central Hanover Bank Trust Co.* 339 U.S. 306 (1950); *Tulsa Professional*

*Collection Services, Inc. v. Pope*, 485 U.S. 478 (1988); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983), and such other cases, apply to bankruptcy as to other settings in which a person's legal right is extinguished if he fails to respond to a pleading." *Fogel v. Zell*, 221 F.3d 955, 962 (7th Cir. 2000).

35. Content and delivery comprise the two basic elements of fair and adequate notice. *Id.* "If the notice is unclear, the fact that it is received will not make it adequate . . . . But unless received, the notice is inadequate unless the means chosen to deliver it was reasonable." *Id* at 963-64.

*36.* *Fogle* is in instructive as it discusses the feasibility of a creditor's information being readily available for the debtor to obtain. The Court discusses the fact that direct notice may "eat up" the debtor's estate; however, it distinguishes those small estates from multi-million dollar bankruptcies. *Id.*

37. Additionally, in the class action context, Fed. R. Civ. P. 23(c)(2) provides guidance regarding the notice requirement:

> **(B)** *For (b)(3) Classes*. For any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:
>> **(i)** the nature of the action;
>> **(ii)** the definition of the class certified;
>> **(iii)** the class claims, issues, or defenses;
>> **(iv)** that a class member may enter an appearance through an attorney if the member so desires;
>> **(v)** that the court will exclude from the class any member who requests exclusion;
>> **(vi)** the time and manner for requesting exclusion; and

**(vii)** the binding effect of a class judgment on members under Rule 23(c)(3).

38.     This rule does not suggest that one means of notice is necessarily preferred over the other.

39.     In this case, delivery of the notice was not reasonable.

40.     This is a multi-million dollar bankruptcy with the debtor employing sophisticated counsel to litigate the matter.

41.     Indeed, it is not run-of-the-mill bankruptcy case where a company or a professional may be a creditor; but rather, the underlying facts are sensitive in nature wherein most creditors, if not all, are women severely traumatized from the years of sexual abuse that they endured as children and teens.

42.     There are various ways to locate individuals when the Debtor and/or organization has personal data (i.e. full name, address, and date of birth).

43.     Like many of the creditors, Dr. Kaufman is not an unknown entity; rather, she is known because of how long she was a member of USA Gymnastics, the fact that she was molested by Nassar several times as his patient, and the fact that USAG took money from her in the form of dues and required that she provide it with her (and her parents') personal identifying information.

44.     Since Debtor was in actual possession of this identifying information, the Debtor could have used software such as LexisNexis or Experian to link the previous data to present day information. Both companies combined cover the entire United States. Even a person's death does not remove one from the database.

45.     Given the nature of this case (which involves claims by young gymnasts who were molested many years ago) and the several women affected by Nassar's abuse, it

is reasonable – and it should have been expected of USA Gymnastics – to use a database (such as LexisNexis or Experian) that cross references past and present data.

46.     This type of search should have been completed for all previous members of USA Gymnastics – especially for those who made complaints to the organization itself over the years.

47.     Extending the claims bar date will not prejudice Debtor, and it is due to Debtor's own poor notice to potential creditors that an extension is necessary.

48.     In Dr. Kaufman situation specifically, she acted as soon as practicable once she learned about the deadline; if her claim is not included in the present group of claimants, she will suffer harm and her harm outweighs the Debtor's prejudice (if any).

49.     Dr. Kaufman should not be penalized simply because she lacked noticed.

50.     The many other women that suffered sexual abuse at the hands of various coaches at USA Gymnastics should not be penalized simply because they lack notice.

51.     The Court should consider that these women have already endured enough trauma and Dr. Kaufman as well as several other woman ask the Court not to punish them due to the inactions of the Debtor.

WHEREFORE, the Creditor respectfully requests that the Court consider extending the Claims Bar Date to allow Dr. Kaufman and others like her to file claims, and for all just and proper relief in the premises.

Respectfully submitted,

/s/Syed Ali Saeed
Syed Ali Saeed
Annmarie Alonso
Jonathan Little
Saeed and Little, LLP
18 W. Vermont

7

Indianapolis, Indiana 46204
ali@sllawfirm.com
annie@sllawfirm.com
jon@sllawfirm.com
(317)721-9214


Service to all parties of record via the Courts ECF system.