## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| USA GYMNASTICS,[1] | Case No. 18-09108-RLM-11 |
| Debtor. | |

### DEBTOR'S OBJECTION TO CLASS CLAIM NO. 531
### AND NOTICE OF RESPONSE DEADLINE

**NOTICE IS HEREBY PROVIDED TO THE CLAIMANT ASSERTING SEXUAL ABUSE CLAIM NO. 531 THAT THE DEBTOR OBJECTS TO YOUR CLAIM. YOUR CLAIM MAY BE DISALLOWED OR MODIFIED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE.**

**IF YOU DO NOT WANT THE COURT TO ENTER THE PROPOSED ORDER DISALLOWING YOUR CLAIM, THEN ON OR BEFORE MARCH 11, 2020 AT 4:00 P.M. (PREVAILING EASTERN TIME), YOU OR YOUR LAWYER MUST FILE A WRITTEN RESPONSE TO THE OBJECTION EXPLAINING YOUR POSITION.**

**THE OBJECTION AND ANY RESPONSE WILL BE HEARD AT A HEARING TO BE HELD ON MARCH 25, 2020 AT 1:30 P.M. (PREVAILING EASTERN TIME), IN ROOM 329 OF THE UNITED STATES BANKRUPTCY COURT, 46 EAST OHIO STREET, INDIANAPOLIS, INDIANA 46204.**

**IF YOU ARE NOT PERMITTED TO FILE ELECTRONICALLY, YOU MUST DELIVER ANY OBJECTION BY U.S. MAIL, COURIER, OVERNIGHT/EXPRESS MAIL, OR HAND-DELIVERY AT:**

**116 U.S. COURTHOUSE
ATTN: CHAMBERS OF THE HONORABLE JUDGE MOBERLY
46 EAST OHIO STREET
INDIANAPOLIS, INDIANA 46204**

**IF YOU MAIL YOUR RESPONSE TO THE COURT, YOU MUST MAIL IT EARLY ENOUGH SO THE COURT WILL RECEIVE IT ON OR BEFORE THE DATE STATED ABOVE.**

**YOU MUST ALSO SEND A COPY OF YOUR OBJECTION TO:**

**JENNER & BLOCK LLP
ATTN: CATHERINE STEEGE AND MELISSA ROOT
353 NORTH CLARK STREET
CHICAGO, ILLINOIS 60654**

**IF YOU DO NOT TAKE THESE STEPS, THE COURT MAY DECIDE YOU DO NOT OPPOSE AN ORDER DISALLOWING OR MODIFYING YOUR CLAIM.**

---

[1] The last four digits of the Debtor's federal tax identification number are 7871. The location of the Debtor's principal office is 130 E. Washington Street, Suite 700, Indianapolis, Indiana 46204.

USA Gymnastics, as debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Debtor**" or "**USAG**"), hereby submits this objection (the "**Objection**") to Sexual Abuse Claim No. 531 (the "**Class Claim**"), pursuant to section 502 of title 11 of the United States Code, 11 U.S.C. §§101–1532 (the "**Bankruptcy Code**"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 3007-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Indiana (the "**Local Rules**"), requesting entry of an order, substantially in the form attached hereto as <u>Exhibit A</u>, disallowing Claim No. 531 in full. In support of this Objection, the Debtor states:

### INTRODUCTION

1.      Marcia Frederick filed Claim No. 531 on behalf of herself and "similarly situated class members" alleging that she and others in the purported class are entitled to damages under the Protecting Young Victims From Sexual Abuse And Safe Sport Act Of 2017, Pub. L. 115-126 (the "**Safe Sport Act**" or the "**Act**"). Ms. Frederick contends that the Court should apply the Safe Sport Act retroactively even though the Act does not state that it applies retroactively. *See generally id*. Ms. Frederick alleges that within 24 hours after the Safe Sport Act was enacted into law on February 14, 2018, USAG was required to report all claims of sexual abuse that the organization was ever aware of to the U.S. Center for Safe Sport (the "**Center**") without regard to when such claims were previously reported to USAG. (Claim No. 531, Class Action Complaint, attached hereto as Ex. B, at ¶39-40.)[2] In Ms. Frederick's case, her claims date back to the late 1970's and early 1980's.  (Ex. B, at ¶¶76-94.) Ms. Frederick contends that she and any other person who was the subject of a pre-February 14, 2018 claim is entitled to actual damages, statutory

---

[2] The class complaint that Ms. Frederick attaches to her Class Claim was filed on the public docket in Case No. 1:18-cv-11299 (D. Mass.) and was not filed under seal or redacted in any way. Accordingly, because the class complaint is of public record, the Debtor attaches it as an exhibit to this Objection.

damages of $150,000 each, and the recovery of attorney's fees and costs. (Ex. B, at ¶43.) This Objection addresses only Ms. Frederick's Class Claim.

2.      The Court should disallow Ms. Frederick's Class Claim. It is a well-settled rule that the efficiencies of bankruptcy administration typically make class claims unnecessary and unduly burdensome in a complex chapter 11 case. *See, e.g., In re American Reserve Corp.*, 840 F.2d 487, 493 (7th Cir. 1988) (describing how "class certification" may be "less desirable in bankruptcy than in ordinary civil litigation"); *In re Circuit City Stores, Inc.*, No. 08-35653, 2010 WL 2208014, at *7 (Bankr. E.D. Va. May 28, 2010) (refusing to allow class claim because "class litigation would be inferior to the bankruptcy claims resolution process and would unduly complicate the administration of these cases"). As the Seventh Circuit has explained, class actions involve "unique" and "complex problems" distinct from the merits of the claim, "consume judicial time, putting off adjudication for other deserving litigants," and "impose steep costs on defendants. . . ." *American Reserve*, 840 F.2d at 490. And because bankruptcy itself is a "mandatory collective proceeding," the principal benefit of a class action—that it "concentrates litigation in a single forum, where it may be resolved more readily than a series of suits could be"—is already achieved in a bankruptcy case without the class action "overlay." *Id.* at 489. As a result, bankruptcy courts in this Circuit are instructed that they should "consider the benefits and costs of class litigation" and refuse to allow class claims that "would greatly complicate a bankruptcy, without yielding significant compensation to injured parties." *Id.* at 492.

3.      Ms. Frederick's proposed Class Claim does not even come close to satisfying the Seventh Circuit's exacting standards as to when Rule 23 should be applied in complex bankruptcy cases. Ms. Frederick filed a proof of claim in which she purports to represent all individuals abused as minors by *any* perpetrator, potentially decades ago, and which USAG allegedly failed to report

to the Center within 24 hours of the Act's enactment. Ms. Frederick fails to explain why members of her purported class, which was never certified pre-petition, were not able to individually comply with the Bar Date established in this chapter 11 case.

4.      The practical effect of allowing Ms. Frederick's Class Claim to proceed is to vacate this Court's Bar Date Order. Granting this relief would be highly prejudicial to the claimants who timely filed their claims as it would make it virtually impossible to reach an agreement on an appropriate settlement of their sexual abuse claims. Without knowing how many claims must be resolved, it becomes very difficult, if not impossible, to determine what amount is necessary to settle those claims. And even if the Survivors Committee, the Debtor, and its insurance carriers could reach agreement on the amount necessary to fund a settlement trust for survivors, if there is no finality to the number of participating claimants, the trustee of such a trust would find it nearly impossible to make a complete distribution from the trust. These quite obvious problems are the reason why there is a bar date in every bankruptcy case and why the Court's Bar Date Order should not be vacated here under the guise of allowing the Class Claim to proceed.

5.      Even more, the Class Claim fails on its merits as a matter of law. The Class Claim asserts that the Debtor violated the Safe Sport Act, but there is no private cause of action allowing Ms. Frederick to enforce the provisions of the Safe Sport Act that she alleges the Debtor violated. In addition, the Class Claim can only plausibly state a claim for relief if the Safe Sport Act applies retroactively, which it does not. There is no statutory text indicating that Congress intended to apply the Act retroactively, and doing so would expose the Debtor to enhanced criminal sanctions in violation of the *Ex Post Facto* Clause (assuming Ms. Frederick's factual allegations are true, which they are not). For all of these reasons, the Court should disallow the Class Claim in full.

4

## JURISDICTION

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (B), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. The statutory and legal predicates for the relief requested herein are section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

## BACKGROUND

**A.      The Debtor's Bankruptcy Filing.**

7.      On December 5, 2018, USAG filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor remains in possession of its property and continues to operate and maintain its organization as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner in this chapter 11 case.

8.      On December 19, 2018, the United States Trustee appointed the Additional Tort Claimants Committee Of Sexual Abuse Survivors to represent the interests of all creditors making claims against the Debtor based on sexual abuse. (Dkt. 97.)

9.      From the start, the Debtor's stated purpose in filing bankruptcy was to allow for a complete and equitable resolution of all of the sexual abuse claims. At the time it filed for bankruptcy, the Debtor faced hundreds of lawsuits and, while it has insurance applying to those claims, it feared that the insurance would not cover all of the claims. Thus, bankruptcy was the only option to ensure that all of the sexual abuse survivors would be treated equitably. The Debtor undertook a number of steps to achieve this objective.

5

**B.      USAG's Bar Date And Notice Procedures.**

10.      The first step in resolving the sexual abuse claims was to set a bar date for the filing of claims. On February 25, 2019, the Court issued an order fixing April 29, 2019 as the bar date for claims arising from sexual abuse (the "**Bar Date**"). (*See* Dkt. 301 (the "**Bar Date Order**").) No party appealed the Bar Date Order and the Bar Date Order is now a final order. The Bar Date Order provided that any individuals who did not comply with the Bar Date would be "forever barred, estopped, and enjoined from asserting" their claims, and USAG would be "forever discharged from any and all indebtedness or liability with respect to or arising from" their claims. (*Id.* ¶18.)

11.      The Bar Date Order mandated extensive notice procedures that the Court found were "adequate and sufficient" notice of the Bar Date. (*Id.* ¶¶20-21.) The Bar Date Order directed USAG to serve the Sexual Abuse Bar Date Notice, "to the extent a mailing address was reasonably available," on known survivors who had filed or threatened to file lawsuits against the Debtor alleging sexual abuse, had reported abuse to the Debtor, had entered into a settlement agreement with the Debtor stemming from allegations of abuse, or had received payment from the Debtor as a result of an allegation of abuse. (*Id.* ¶20.)

12.      The Debtor more than fulfilled its notice obligations under the Bar Date Order. After a meticulous and comprehensive search of its records to identify all potential sexual abuse claimants, even those who never formally or clearly notified USAG of their claims, the Debtor mailed the Sexual Abuse Bar Date Notice to more than 1,300 individuals. (*See, e.g.,* Dkt. 341, Ex. C; Dkt. 365, Ex. A-B.) The Debtor also sent this notice package to all known counsel for sexual abuse claimants, including Ms. Frederick's counsel, Kimberly Dougherty, Vance Andrus, and Aimee Wagstaff at Andrus Wagstaff, PC. (Dkt. 341, at pg. 55 of 357.) The Debtor e-mailed the

Bar Date Notice to its list of more than 360,000 e-mail addresses for current and former USAG members. (Dkt. 341, Ex. E.) The Debtor placed the Bar Date Notice on its website, Facebook, Twitter, and Instagram pages and published notification in USA Today, Inside Gymnastics, International Gymnast, the Gymcastic podcast, and the Meetscores website. (*See* Dkt. 366.) In addition, between February 26 (one day after the Bar Date Order was entered) and April 30 (one day after the Bar Date), the Sexual Abuse Bar Date Notice was prominently displayed at the top of USAG's Twitter feed as the "pinned" tweet. The Debtor also sent letters to each of its member gyms asking those facilities to post the sexual abuse notice package and the claim form for their members to see.

13.      In addition to this notice, the Debtor's chapter 11 case also has received extensive media attention. A LexisNexis search shows that the chapter 11 filing has generated at least 520 articles about its bankruptcy including in national publications such as the New York Times, the Wall Street Journal, and USA Today, and in local papers such as the Indianapolis Star, and the Orange County Register.[3] Further, the bankruptcy has been the subject of stories on NPR and nightly news broadcasts and morning news shows on the major network broadcast stations.

14.      The Debtor's broad notice plainly reached the universe of sexual abuse claimants. In total, 510 individuals were able to file their sexual abuse claims by the Bar Date. Of these claims, 60 were filed by individuals alleging abuse by someone other than Larry Nassar. Further, 72 of the 548 claimants were individuals who had not sued the Debtor before the bankruptcy filing. USAG had no notice of these 72 claimants and thus, these claimants would have learned of the Bar Date

---

[3] LexisNexis search of "'USA Gymnastics' and bankruptcy" narrowed to time period of December 5, 2018 through April 29, 2019, and performed on January 17, 2020.

Order as a result of the Debtor's extensive publication notice and/or the extensive media coverage surrounding this chapter 11 case.

### C. The Futures Claims Representative.

15. Recognizing that some individuals might be legally disabled from filing a claim by the Bar Date, the Debtor also sought the appointment of a future claims representative. On May 17, 2019, this Court appointed Fred Caruso as the Future Claims Representative. (Dkt. 516.) As Future Claims Representative, Mr. Caruso represents the interests of any "Person who (a) held a Sexual Abuse Claim against the Debtor as of the Sexual Abuse Bar Date and (b) meets one of the following criteria:

(i) is under the age of majority under applicable state law as of March 1, 2019;

(ii) as of March 1, 2019, the statute of limitations for such Person was tolled under applicable state law or had not begun to run under applicable state law;

(iii) as of March 1, 2019, the Debtor was estopped under applicable state law from asserting the statute of limitations; or,

(iv) such Person's Sexual Abuse Claim was barred by the applicable statute of limitations as of March 1, 2019 but is no longer barred by the applicable statute of limitations for any reason, including the enactment of legislation that revives such claims."

(Dkt. 516, at ¶2.) Mr. Caruso's job is to negotiate a carve-out for these "Future Claimants" from any settlement of the sexual abuse claims.

### D. The Mediation.

16. On May 17, 2019, this Court appointed Judge Gregg Zive to mediate "the resolution of the sexual abuse claims; the resolution of any disputes relating to the applicability of the Debtor's insurance coverage to the sexual abuse claims and the Debtor's insurance carriers' obligations to fund distributions on the sexual abuse claims, and related defense costs; and the resolution of any other matters necessary to equitably determine the rights of, and allocate recoveries to, survivors holding allowed sexual abuse claims." (Dkt. 514, ¶2.)

17.     In preparation for the mediation, the Debtor spent considerable time and resources analyzing what it believed to be the universe of claims, as well as the available insurance coverage for those claims, so that it could determine the extent of its liabilities and negotiate a consensual plan of reorganization. Judge Zive began the mediation process in late May, 2019 and has conducted a series of in-person and telephonic mediation sessions over the last many months. The mediation is ongoing.

### E.    Marcia Frederick's Alleged Class Claim.

18.     On April 29, 2019, Marcia Frederick filed Sexual Abuse Claim No. 531. She attached and incorporated a class action complaint, which was filed on June 20, 2018 in the United States District Court for the District of Massachusetts. The complaint sought to certify a class defined as:

> All current or former USAG-affiliated and/or USOC affiliated amateur athletes for whom the USAG, the USOC, and/or their agents and/or employees received information that the amateur athlete may have suffered an incident of child abuse, including sexual, emotional and/or physical abuse, and either (a) failed to report incidents occurring after February 14, 2018 to law enforcement authorities within 24 hours of learning of the incident, and/or (b) failed to report incidents occurring before February 14, 2018 to law enforcement authorities, within 24 hours of the Congress enacting the Safe Sport Act.

(Ex. B, at ¶39.)

19.     The Class Claim requests actual, liquidated, and punitive damages arising from USAG's alleged failure to comply with the Safe Sport Act, and to report allegations of sexual abuse of minor athletes to the U.S. Center for Safe Sport within 24 hours of that law's enactment on February 14, 2018. (*Id.* at ¶148.) The liquidated damages that are sought are $150,000 for each class member, and Frederick asserts that the class is numerous enough that the aggregate damages will exceed $5,000,000. In addition, the Class Claim requests undefined declaratory and injunctive relief, as well as reasonable attorney's fees and costs.

20.     USAG moved to dismiss Ms. Frederick's complaint in the Massachusetts litigation in October, 2018. (*Frederick v. USAG, et al.*, No. 18-CV-11299, Dkt. 38, 39 (D. Mass.).) The district court never granted or denied class certification. It stayed the entire class action in light of this Court's order enjoining the continued prosecution of certain pre-petition lawsuits. (*See Frederick v. USAG, et al.*, No. 18-CV-11299, Dkt. 83 (D. Mass.); Adv. No. 19-50075, Dkt. 71.)

21.     Ms. Frederick did not move the Bankruptcy Court for an order allowing the filing of a class claim before filing the Class Claim. She has not moved for such an order at any time after filing the Class Claim. No court has ever certified Ms. Frederick or her counsel as class representatives.

## RELIEF REQUESTED

22.     By this Objection, the Debtor objects, pursuant to section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1 to the Class Claim and requests entry of an order disallowing the Class Claim in its entirety. In the event that the Court does not grant this Objection and allows the Class Claim to proceed, the Debtor reserves its right to raise additional objections to the certification of a class and the merits of any class claim.

## OBJECTION

23.     There is no absolute right to file a class proof of claim in a bankruptcy case. Instead, bankruptcy judges, exercising their sound discretion, are tasked with deciding whether it is appropriate to apply class action procedures to the claims administration process. *American Reserve*, 840 F.2d at 493-94. Because allowing a class claim necessarily circumvents the bar date for filing claims and imposes other costs on a bankruptcy estate, bankruptcy courts allow such claims only "sparingly" and only in an appropriate case. *In re Musicland Holding Corp.*, 362 B.R.

644, 650 (Bankr. S.D.N.Y. 2007) (citing *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 22

(Bankr. E.D. Pa. 1995)).

24.　　This is not that case. The Class Claim should be disallowed because: (1) Ms.

Frederick has not complied with the procedural requirements to prosecute a class action in

bankruptcy; (2) class action practice would unduly burden the administration of this chapter 11

case with no benefit to creditors given the appointment of the Future Claims Representative; and

(3) Ms. Frederick has not proven that certification is proper under Federal Rule of Civil Procedure

23. In addition, the Class Claim is without merit and only stands to dilute the recovery of the claims

of the survivors who filed timely claims.

## I.　Ms. Frederick Has Not Complied With The Procedural Requirements For Class Action Practice In Bankruptcy Cases.

25.　　Federal Rule of Civil Procedure 23, the rule which allows for the prosecution of

class actions, does not automatically apply to the claims allowance process. *See* FED. R. BANKR.

P. 9014(c). That is because the claims allowance process is a contested matter governed by

Bankruptcy Rule 9014. *American Reserve*, 840 F.2d at 488; *In re Ephedra Products Liability Lit.*,

329 B.R. 1, 5 (S.D.N.Y. 2005) (collecting cases). Bankruptcy Rule 9014(c) directs which of the

Federal Rules of Civil Procedure (incorporated in the Part VII Rules) apply to contested matters.

Bankruptcy Rule 7023, incorporating Rule 23, is not one of them. Instead, application of Rule 23

to the claims allowance process requires that the bankruptcy court issue an order directing its

application. FED. R. BANKR. P. 9014(c); *see American Reserve*, 840 F.2d at 488.

26.　　A claimant's request to apply Rule 23 must be made "without undue delay." *In re*

*Tarragon Corp.*, No. 09-10555-DHS, 2010 WL 3842409, at *5 (Bankr. D.N.J. Sept. 24, 2010).

The reason for this requirement is that "class litigation is inherently more time-consuming than the

expedited bankruptcy procedure for resolving contested matters," and so "class litigation would

have to be commenced at the earliest possible time to have a chance of being completed in the same time frame as the other matters that must be resolved before distributing the estate." *Ephedra Products Liability Lit.*, 329 B.R. at 5. Further, Rule 23 mandates that class certification be granted or denied "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A).

27.     In *American Reserve*, the Seventh Circuit explained that filing a proof of claim constitutes a "stage," for purposes of Rule 9014(c). 840 F.2d at 488. Yet, Ms. Frederick did not file a motion to apply Rule 23 to her purported Class Claim or a motion to certify the putative class when she filed the Class Claim, *nor has she sought to do so in the more than eight months that the Class Claim has been pending.* This lethargic approach to class litigation cannot be excused in a chapter 11 case like this one, where each day spent administering this case delays and diminishes distributions to survivors asserting timely claims. It is well within the Court's discretion to refuse to apply Rule 23 due to Ms. Frederick's failure to prosecute the Class Claim, and in light of the delay that adjudicating certification issues now would impose on the parties' efforts to negotiate a consensual plan. *See, e.g., Tarragon*, 2010 WL 3842409, at *4 (refusing to apply Rule 23 where purported class claimant failed to "allege[] any facts adequate to provide justification for her delay in bringing a motion for class certification"); *Circuit City Stores, Inc.*, 2010 WL 2208014, at *5 (same); *In re Thomson McKinnon Securities, Inc.*, 150 B.R. 98, 101 (Bankr. S.D.N.Y. 1992) (same).

## II.     Rule 23 Should Not Be Applied In This Chapter 11 Case.

28.     Even if the Court excuses Ms. Frederick's failure to timely invoke class action procedures (and it should not), the Court should refuse to apply Rule 23 to the Class Claim. When making the discretionary decision to direct (or forbid) the application of Rule 23 to a proof of claim, courts consider three factors: "(1) whether the class was certified pre-petition, (2) whether

the members of the putative class received notice of the bar date, and (3) whether class certification will adversely affect the administration of the case." *Musicland*, 362 B.R. at 654. None of these factors weigh in favor of applying Rule 23 here.

**A.    No Class Was Certified Pre-Petition.**

29.     *First*, no class was certified pre-petition, which strongly counsels against permitting class action litigation in this case. Simply put, there is no advantage to this Court deciding complex class action issues when the purported members of the class could each have filed an individual claim "for the price of a stamp" (or no cost at all, given electronic filing). *In re Bally Total Fitness of Greater N.Y., Inc.*, 411 B.R. 142, 145 (S.D.N.Y. 2009).

30.     In fact, individuals have acted here to file their own claims, which negates the need for a class claim. There is no suggestion here that individuals were unable to file their claims by the Bar Date because they did not know about the Bar Date. In fact, 60 individuals have filed their own claims by the Bar Date alleging abuse by someone other than Nassar. Moreover, 72 individuals filed claims relying upon publication notice. The fact that these claims were filed strongly rebuts the need for a class claim for these individuals.

31.     The existence of these claims also strongly supports the conclusion that potential claimants were not relying upon Ms. Frederick or her counsel to file a class claim on their behalf. Because Ms. Frederick did not initiate class litigation pre-bankruptcy, Ms. Frederick's counsel was obviously never "appointed by any court to serve as class counsel" and "therefore, was not authorized to file the Class Claim[] on behalf of the unnamed claimants as their authorized representative." *Circuit City Stores*, 2010 WL 2208014, at *4; *accord Musicland*, 362 B.R. at 652 (collecting cases finding that counsel purporting to represent uncertified class was not actually authorized to represent unnamed class members). Putative class members therefore had no "reasonable expectation that a class claim would be filed that would protect their rights." *Id.* at 656.

Denying Ms. Frederick the ability to file a class claim therefore will not interfere with any other creditor's reasonable expectation that a class claim would protect their interests.

32.     Moreover, if this Court were to apply Rule 23 in the absence of a pre-petition order already certifying a class, it would be required to engage in a time-consuming Rule 23 analysis, delaying the resolution of this chapter 11 case. Specifically, the Court would have to adjudicate whether Ms. Frederick has "prove[n]," not merely pleaded, the elements required for class certification under Rule 23—namely: (i) that her putative class is sufficiently numerous for class-wide adjudication; (ii) common issues of fact and law not only exist but predominate over individual issues; (iii) Ms. Frederick's claims are typical of those of the unnamed class members; (iv) Ms. Frederick and her counsel will adequately represent the interests of the class; and (v) the class action is the superior method of adjudicating the controversy, notwithstanding the efficiencies of the bankruptcy forum. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

33.     Because the resolution of these issues requires *proof* rather than *allegations*, the Court will have to "probe beyond the pleadings" to come to a reasoned decision. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001); *accord Dukes*, 564 U.S. at 350; *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013). In order words, a "significant amount of discovery" will be required in order "to litigate [the] class certification motion." *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 621 n.5 (Bankr. S.D.N.Y. 2009). This discovery and litigation will force the Debtor to incur substantial and unnecessary legal fees, "siphoning the Debtor's resources" and diminishing recoveries for individuals (including members of the putative class) who timely filed claims. *Id.* at 621.

34.     In addition, class litigation will "interfer[e] with the orderly progression of the reorganization." *Id.* A "bankruptcy case can proceed no faster than its slowest matter." *In re*

*Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 376 (Bankr. S.D.N.Y. 1997); *see also American Reserve*, 840 F.2d at 491 ("Because bankruptcy is a collective proceeding, it is reduced to the slowest common denominator"). Here, parties in interest, most notably the Debtor's insurers, will likely refuse to bind themselves to a global settlement while the Class Claim remains pending. If it is possible (however remote) that the Class Claim will be allowed at a later date and valued at a substantial sum, diluting recoveries for non-class claimants and further eroding the Debtor's insurance coverage, parties will be unable to design and agree to a consensual plan of reorganization. The Debtor would then linger in chapter 11, delaying compensation that the Court has stated is already "past due" to holders of timely sexual abuse claims. (*See* February 21, 2019 Omnibus Hearing Transcript, attached hereto as Ex. C, at 67:8-11.)

35.    In short, because no class was certified pre-petition, applying Rule 23 to the Class Claim will be no easy or quick task. It will instead require both the Court and the estate's professionals to make a substantial investment of resources and time to the detriment of every party in interest to this case. It is therefore well within the Court's discretion to refuse to apply Rule 23 to the Class Claim. *See, e.g., Musicland*, 362 B.R. at 656 (refusing to apply Rule 23 because, *inter alia*, no class was certified pre-petition); *Circuit City Stores*, 2010 WL 2208014, at *2 (same); *Tarragon Corp.*, 2010 WL 3842409, at *2 n.3 (same); *Bally Total Fitness*, 411 B.R. at 145 (same); *In re FIRSTPLUS Financial, Inc.*, 248 B.R. 60, 66 (Bankr. N.D. Tex. 2000) (same); *Sacred Heart Hosp.*, 177 B.R. at 18 (same).

### B.    All Putative Class Members Received Constitutionally Adequate And Sufficient Notice Of The Bar Date.

36.    *Second*, class action practice is also unnecessary because all of the putative class members received constitutionally sufficient notice of the Bar Date and could have easily filed claims on their own. Where notice of a bar date is sufficient, permitting a class claim in that

circumstance would "effectively extend the bar date for those [putative class members] who failed to file a timely claim, without a showing of excusable neglect." *Musicland*, 362 B.R. at 655-56; *see also In re W.R. Grace & Co.*, 389 B.R. 373, 380 (Bankr. D. Del. 2008) (refusing to permit class claim where putative class members received actual or constructive notice of bar date). Indeed, properly-noticed individuals are among the "least favored candidates for class action treatment" in bankruptcy. *Musicland*, 362 B.R. at 655.

37.     Here, USAG provided constitutionally adequate and sufficient notice of the Bar Date to the putative class members. After a comprehensive review of its books and records, USAG mailed notice to every individual for whom anyone had provided USAG with any indication that they had been abused. USAG also sent e-mail notice to over 360,000 present and former members, requested that member gyms post the notice on their premises, and published the notice on numerous social media pages and websites and in gymnastics-focused and national publications. USAG's notice efforts were both tailored to the facts and circumstances of this case, as well as consistent with the form of notice "customarily provided in large chapter 11 cases, and in plenary litigation generally." *In re Motors Liquidation Co.*, 447 B.R. 150, 168 (Bankr. S.D.N.Y. 2011). USAG's notice procedures were therefore constitutionally adequate and sufficient to bind all of USAG's creditors to the Bar Date, including the putative class members. Indeed, this Court found that the extensive notice procedures in the Bar Date Order were "adequate and sufficient" notice of the Bar Date, and no party, including the purported class representative Ms. Frederick, has sought to vacate the Bar Date Order. (*See* Bar Date Order, at ¶¶20-21.)

38.     The Court should refuse to apply Rule 23 and give "a second bite at the apple" to putative class members who failed to file timely claims, despite their notice of the deadline. *FIRSTPLUS Fin.*, 248 B.R. at 73 (refusing to permit class claim where putative class members

were on notice of bar date). Allowing such an "end run" around the Bar Date would be inequitable both to USAG and the hundreds of claimants who complied with the Bar Date. *W.R. Grace & Co.*, 389 B.R. at 380; *see also Musicland*, 362 B.R. at 656.

39.      Providing that relief also would serve no legitimate purpose. The Future Claim Representative exists to protect the interest of those individuals who have a legally-valid reason for failing to file a claim by the Bar Date. A class representative with all of the attendant expense and delay is simply unnecessary here.

### C.      Applying Rule 23 Would Have An Adverse Impact On The Estate.

40.      *Third*, courts refuse to apply Rule 23 when doing so would "gum up" the administration of the estate, delaying confirmation and distributions to non-class creditors. *American Reserve*, 840 F.2d at 491; *accord Musicland*, 362 B.R. at 656-57. The timing issues discussed above apply fully here. The Bar Date has come and gone and the mediation process has commenced. All of this has occurred in the shadow of the Class Claim, without any action by Ms. Frederick to invoke Rule 23 and seek certification of her putative class. To apply Rule 23 now would be to reward Ms. Frederick's "dilatory efforts" in prosecuting the Class Claim—or, rather, her "slumber" and "inattentiveness to [this] litigation"—at severe cost to every other party in interest in this case. *Matter of Chicago, Rock Island & Pacific R. Co.*, 788 F.2d 1280, 1284 (7th Cir. 1986); *Matter of Plunkett*, 82 F.3d 738, 742 (7th Cir. 1996).

41.      *Sacred Heart Hospital* provides useful guidance. There, putative class counsel filed a motion for leave to file a class claim after the case had been pending for several months and while plan negotiations were underway. 177 B.R. at 19. The court denied the motion, finding that no factor supported the use of Rule 23 in the bankruptcy case. It noted that it is "clearly disruptive to the formulation of a plan to frustrate a debtor's [and other parties'] logical assumptions regarding the amounts of total claims" by permitting a class claim and litigating class action issues

after a bar date. *Id.* at 23. The court continued that "it would be unwarranted, unfair, and possibly violate the due process rights of other creditors of the debtor to effectively extend the bar date to benefit the members of the putative class who failed to exercise vigilance" and file their own claims. *Id.* at 24.

42.    So too here. Ms. Frederick has done *nothing* to bring the class action issues to this Court's attention, while USAG has made every effort to expeditiously resolve this case. The Court should "decline to apply Rule 23 at this late date because of the huge problems it would create for the prompt and orderly distribution of the estate." *Ephedra Products Liability Lit.*, 329 B.R. at 8 (refusing to apply Rule 23 because of untimely efforts to litigate class claim); *see also Musicland*, 362 B.R. at 656-57; *Circuit City Stores*, 2010 WL 2208014, at *5-6 (same); *Tarragon Corp.*, 2010 WL 3842409, at *4-5 (same); *In re Northwest Airlines Corp.*, No. 05-17930-ALG, 2007 WL 2815917, at *3 (Bankr. S.D.N.Y. Sept. 26, 2007) (same); *Woodward & Lothrop Holdings*, 205 B.R. at 371 (same); *Sacred Heart*, 177 B.R. at 22-23 (same).

## III.    The Class Claim Should Not Be Certified Under Rule 23.

43.    The Class Claim also does not meet the requirements for certification under Rule 23. In order for a damages class to be certified, Rule 23(b)(3) requires that the class claimant "prove," not merely plead, that common questions of law or fact "predominate" over individual questions and that the class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." *Dukes*, 564 U.S. at 350, 362; *see also Behrend*, 569 U.S. at 33-34. Here, Ms. Frederick has not "affirmatively demonstrate[d]" that either Rule 23(b)(3) element is satisfied "*in fact*." *Id.* at 33 (emphasis in original).

### A.    Common Issues Do Not Predominate.

44.    The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997)

(vacating class certification in mass tort case). Predominance is not met where liability determinations are "individualized" and fact-intensive, or "where affirmative defenses will require a person-by-person evaluation of conduct to determine whether an individual potential class member's action precludes individual recovery." *Clark v. Experian Information, Inc.*, 233 F.R.D. 508, 512 (N.D. Ill. 2005); *accord Jones et al. v. BRG Sports, Inc.*, No. 18-CV-7250, 2019 WL 3554374 (N.D. Ill. Aug. 1, 2019). For these reasons, "[c]ivil actions involving mass torts are often not certified for class action treatment, even in non-bankruptcy plenary litigation, because so many individualized legal and individualized damages inquiries are ultimately required." *Motors Liquidation*, 447 B.R. at 159-60 (collecting cases).

45.     The District Court for the Southern District of Indiana has applied these principles and denied class certification under circumstances similar to those here. In *Hurd v. Monsanto Co.*, plaintiffs sued Monsanto on behalf of a class of over 3,500 employees, asserting that Monsanto wrongfully exposed them to toxic chemicals during their employment in the 1950s through 1970s. 164 F.R.D. 234, 237 (S.D. Ind. 1995). The district court determined that class certification was inappropriate because common issues did not predominate.

46.     Specifically, the court reasoned that "[u]nlike airplane crash or hotel disaster cases, which usually involve *a single set of operative facts used to establish liability*, this case involves continuing exposure over as many as twenty years." *Id.* at 240 (emphasis added). The question for the court was not whether the allegedly toxic chemical *could* cause harm, but "whether it *did* cause harm and to whom." *Id.* (emphasis in original). This "determination is highly individualistic, and depends upon the characteristics of individual plaintiffs (*e.g.*, state of health, lifestyle) and the nature of their exposure." *Id.* In addition, Monsanto's right to assert certain defenses, including that "the claims of some putative class members may be barred by the statute of limitations," would

"further infuse the proceedings with individual issues." *Id.* In light of the individualized liability and defense issues applicable to each class member, the court determined that common questions did not predominate and that class certification was improper.

47.    The same reasoning applies to the Class Claim. The Class Claim demands damages for USAG's failure to report any incident of child abuse, suffered by any minor and committed by any perpetrator at any time. (Ex. B, at ¶¶39-40.) But, like in *Hurd*, the question is not whether USAG allegedly and generally exposed putative class members to a risk of injury, but instead whether USAG "*did* cause harm and to whom." 164 F.R.D. at 240. On this question, there will not be "a single set of operative facts used to establish liability" because the Class Claim arises from the acts of all potential abusers and over an unbounded period of time. *Id.* Individual issues will therefore "quickly dominate the proof" on the Class Claim, making class certification inappropriate. *Motors Liquidation*, 447 B.R. at 160 (quoting *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456, 482-83 (S.D.N.Y. 2005)).

48.    In short, to adjudicate the Class Claim, "the Court would have to engage in a series of highly disputed mini-trials for each class member to resolve" highly contested issues of causation and injury, "making class treatment untenable and implausible." *Bally Total Fitness of Greater N.Y.*, 402 B.R. at 622.

## B.    A Class Action Is Not Superior To The Normal Claims Administration Process In Bankruptcy.

49.    The class action is not a superior method of adjudicating the Class Claim. The benefits of class action practice "vanish[]" when the other available method for fairly and efficiently adjudicating the controversy "is bankruptcy, which consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost." *Ephedra Products Liability Lit.*, 329 B.R. at 9; *accord American Reserve*, 840 F.2d at 489; *Motors*

*Liquidation*, 447 B.R. at 163; *Circuit City Stores*, 2010 WL 2208014, at *6. The determination whether to allow or disallow a proof of claim is typically done without "discovery and fact-finding altogether," whereas the costs that a debtor's estate incurs to litigate class action issues are inevitably substantial. *Bally Total Fitness*, 411 B.R. at 145-46; *see also American Reserve*, 840 F.2d at 490 ("the systemic costs of class litigation should not be borne lightly").

50.    These considerations apply fully to this case. Here, the Court approved a 10-page sexual abuse proof of claim form designed to uncover the information that was "legally important" to a sexual abuse claim, avoid "unpleasant" discovery, and quickly and efficiently resolve the case and compensate survivors. (Ex. C, at 67:2-11.) If the mediation is successful, the plan will provide a trust for claimants and a stream-lined process for satisfaction of claims. A class action and its attendant cost and complexity is far from superior to the normal process of claims administration in this case, especially in light of the fact that sexual abuse claimants received proper notice that their claims would be channeled into the chapter 11 forum.

51.    Class action practice is also not superior because of the specific notice requirements for class actions certified under Rule 23(b)(3). For those class actions, the court must direct notice to each individual class member "who can be identified through reasonable effort," usually by direct mail or "electronic means." Fed. R. Civ. P. 23(c)(2)(B). The notice must provide the class member the opportunity to opt out of the class action. But undergoing this notice protocol here would simply duplicate the efforts USAG undertook and the costs it incurred providing notice of the Bar Date. The Rule 23 notice would be sent to the same individuals USAG previously mailed or e-mailed notice of the Bar Date, inviting them to take advantage of class action procedures to assert a claim that they failed to file on time. Under these circumstances, the class action is not superior but instead would harm the estate by increasing USAG's noticing costs and the entire

creditor body by diluting recoveries for claimants who timely filed individual claims. *See, e.g.,* *Bally Total Fitness*, 411 B.R. at 146 (denying class certification because the debtor already provided "legally adequate" notice of the bar date to the putative class members who would receive the opt-out notice); *W.R. Grace*, 389 B.R. at 380 (denying class certification because of prejudice that opt-out notice procedures would cause to debtor's estate).

52.     Further, if the Class Claim is allowed to proceed, once a resolution of the Class Claim is reached, further burdensome notice would be required under the Class Action Fairness Act, 28 U.S.C. §§1711-1715, which would further delay this case and impose additional expense.

53.     Finally, though class actions may be superior methods of adjudicating a controversy when they deter future misconduct, the Class Claim will have no deterrent effect here. *See* *American Reserve*, 840 F.2d at 490-91. USAG filed for chapter 11 *because* of the numerous sexual abuse claims and thus, it has already experienced the deterrent effect that any class claim might impose. Instead, the delay and cost of the class action would only serve to harm other creditors.

54.     Class action practice therefore is not the superior method of trying the Class Claim. The benefits of class litigation have "disappear[ed]" now that USAG is in chapter 11, and certifying the putative class "would severely undercut the efficiency of [USAG's] reorganization by adding the layers of procedural and factual complexity" attendant to class action practice. *In re Blockbuster Inc.*, 441 B.R. 239, 242 (Bankr. S.D.N.Y. 2011).

**C.     The Class Claim Also Cannot Be Certified Under Rule 23(b)(2).**

55.     Another problem with the Class Claim is its ill-defined requests for injunctive relief pursuant to Rule 23(b)(2). (*See* Ex. B, at ¶¶49-52.) Rule 23(b)(2) does not "authorize class certification" for injunctive relief "when each class member would be entitled to an individualized award of monetary damages." *Dukes,* 564 U.S. at 360-61.  Here, the predominant relief Ms. Frederick seeks is money damages for each class member, which independently precludes

certification under Rule 23(b)(2). *Lemon v. Int'l Union of Operating Engineers, Local No. 139, AFL-CIO*, 216 F.3d 577, 581 (7th Cir. 2000) (vacating 23(b)(2) class certification where "the requested monetary damages for the plaintiffs' [] claims were not incidental to the requested injunctive and declaratory relief").[4]

## IV.    The Class Claim Lacks Legal Merit.

56.    Finally, the purported Class Claim fails as a matter of law. The Class Claim argues that the Safe Sport Act required USAG to report, within 24 hours of the law's enactment on February 14, 2018, every incident of alleged sexual abuse that USAG had ever learned of at any time prior to February 14, 2018. This argument fails for two reasons. First, the Safe Sport Act does not provide a private right of action, and second, its reporting obligation does not apply retroactively.

### A.    The Safe Sport Act Does Not Provide A Private Cause Of Action.

57.    The Class Claim fails because the Safe Sport Act does not provide a private cause of action. The Supreme Court has repeated, time and time again, that any "private right[] of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001); *accord Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015) (refusing to imply private cause of action under Medicaid Act); *Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979) (refusing to imply private cause of action under section 17(a) of the Securities Exchange Act of 1934). Absent an expression of congressional intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 286-87. In addition, "when a federal statute

---

[4] USAG also disputes that Ms. Frederick could prove the Rule 23(a) elements of numerosity, commonality, typicality, and adequacy of representation and reserves its right to advance those objections should the Court allow the Class Claim to proceed.

creates specific private rights of action, the judiciary cannot add others." *Stockbridge-Munsee Community v. Wisconsin*, 922 F.3d 818, 824 (7th Cir. 2019) (refusing to imply private right of action under the Indian Gaming Regulatory Act).

58.     Ms. Frederick invokes 18 U.S.C. §2255 as the basis for the Class Claim. That section provides a civil cause of action for "[a]ny person who, while a minor, was a victim of a violation" of specific criminal provisions of the U.S. Code: namely, the crimes of Forced Labor (18 U.S.C. §1589); Trafficking With Respect To Peonage, Slavery, Involuntary Servitude, Or Forced Labor (18 U.S.C. §1590); Child Sex Trafficking (18 U.S.C. §1591); Aggravated Sexual Abuse With Children (18 U.S.C. §2241(c)); Sexual Abuse (18 U.S.C. §2242); Sexual Abuse Of A Minor Or Ward (18 U.S.C. §2243); Sexual Exploitation Of Children (18 U.S.C. §2251); Selling Or Buying Of Children (18 U.S.C. §2251A); Certain Activities Relating To Material Involving The Sexual Exploitation Of Minors (18 U.S.C. §2252); Child Pornography (18 U.S.C. §2252A); Production Of Child Pornography (18 U.S.C. §2260); Transportation For Prostitution Or Criminal Sexual Activity (18 U.S.C. §2421); Coercion And Enticement For Transportation (18 U.S.C. §2422); and, Transportation Of Minors (18 U.S.C. §2423).

59.     Notably absent from this lengthy list is the provision imposing the reporting obligation under the Safe Sport Act (34 U.S.C. §20341). That Safe Sport Act provision also is not found within title 18, unlike every other provision referenced in §2255. The absence of any reference to the reporting obligations in §2255 means that Congress determined that non-compliance with the Safe Sport Act's reporting obligation should not give rise to the private civil remedy under §2255. As the Seventh Circuit has explained, "the existence of an explicit cause of action in [two sections] makes it highly unlikely that Congress absentmindedly forgot to provide

a cause of action for [a third section]" that is not mentioned. *Dersch Energies, Inc. v. Shell Oil Co.*, 314 F.3d 846, 857 (7th Cir. 2002) (refusing to imply private cause of action).

60.    Moreover, Congress created an alternative remedial scheme for the enforcement of the Safe Sport Act's reporting requirement, which suggests that any violations of that requirement cannot be enforced by a private cause of action. The Safe Sport Act amended 18 U.S.C. §2258 to impose criminal sanctions for non-compliance with the reporting requirement. Under that section, any "covered individual" (including a national governing body) that "fails to make a timely report as required by [the Safe Sport Act] shall be fined under this title or imprisoned not more than 1 year or both." Pub. L. 115-126 §101(b) (amending 18 U.S.C. §2258). The Seventh Circuit has made clear that "[e]xpress provisions for criminal prosecution and administrative enforcement, without a corresponding provision for private enforcement, generally establish that private enforcement is inappropriate." *Israel Aircraft Indus. Ltd. v. Sanwa Business Credit Corp.*, 16 F.3d 198, 200 (7th Cir. 1994) (internal citation omitted).

61.    Because the Safe Sport Act does not authorize a private cause of action to enforce its reporting requirement, and because the federal government may criminally punish covered individuals who do not comply with their reporting obligations, Ms. Frederick has no basis to pursue her civil class action against USAG. The Class Claim should be disallowed in full on this basis alone.

**B.    The Safe Sport Act's Reporting Obligation Is Not Retroactive.**

62.    Even if a private cause of action existed under the Safe Sport Act for reporting violations (and it does not), the Class Claim fails because Congress did not impose the reporting obligation retroactively. There is no textual support for the premise that the Safe Sport Act required national governing bodies to report allegations of sexual abuse that they learned of before the Act was enacted on February 14, 2018, within 24 hours after the Act was enacted.

63.    Statutes are presumed to apply only prospectively "unless Congress has *unambiguously*" made them retroactive. *Vartelas v. Holder*, 566 U.S. 257, 266 (2012) (emphasis added) (refusing to apply statute retroactively). The Supreme Court has recognized the "unfairness of imposing new burdens on persons after the fact." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 270 (1994) (refusing to apply Civil Rights Act of 1991 retroactively). As a result, when a statute lacks an "express command" as to whether it applies retroactively, it should not be applied to "increase a party's liability for past conduct" or "impose new duties with respect to transactions already completed." *Id.* at 280.

64.    Nothing in the Safe Sport Act's text suggests that its reporting obligation applies retroactively. Instead, the reporting obligation is triggered when a covered individual "*learns* of facts that give reason to suspect that a child has suffered an incident of child abuse." 34 U.S.C. §20341 (emphasis added). In that provision, Congress spoke in the present tense. "[W]ords used in the present tense include the future as well as the present," but they do not include the past. 1 U.S.C. §1. For example, in *Carr v. United States*, the Supreme Court explained that "a statute that regulates a person who 'travels' is not readily understood to encompass a person whose only travel occurred before the statute took effect." 560 U.S. 438, 448 (2010). Applying the reasoning of *Carr* here leads to the conclusion that Congress determined that the Safe Sport Act's reporting obligation may only be enforced with respect to present and future misconduct, and not with respect to past misconduct. It does not apply retroactively.

65.    Apart from the fact that the statute uses the present tense, it also does not contain the phrasing the Supreme Court has held indicates an express Congressional intent of retroactivity: that the statute applies to conditions or events that have occurred "*before, on, or after*" the effective date of the statute. *See, e.g., INS v. St. Cyr*, 533 U.S. 289, 318-19 (2001) (holding that phrase

indicates an express intent to apply the statute retroactively); *Vartelas*, 566 U.S. at 267 (such language "expressly direct[s] retroactive application"); *Martin v. Hadix*, 527 U.S. 343, 355-56 (1999) (same language is "explicitly retroactive").

66. Ms. Frederick does not cite any text in the Safe Sport Act to contradict this reading. Instead, anticipating this problem with her Claim, she posits in her complaint that the reporting obligation should be enforced retroactively because of the policy of the Safe Sport Act to protect amateur athletes from sexual abuse. (Ex. B, at ¶146.) This allegation ignores *Landgraf*'s command that courts must not apply statutes retroactively unless Congress gives a "clear indication," in a statute's text, that retroactivity is required. *Siddiqui v. Holder*, 670 F.3d 736, 749 (7th Cir. 2012) (refusing to apply statute retroactively).

67. In addition, the anti-retroactivity presumption applies here with special force because of the Safe Sport Act's criminal sanction for violations of the reporting requirement. *See* 18 U.S.C. §2258. The *Ex Post Facto* Clause prohibits the enactment of legislation that "imposes a punishment for an act which was not punishable at the time it was committed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981). The Supreme Court has relied upon the *Ex Post Facto* Clause to refuse to give "penal legislation" retroactive effect. *Landgraf*, 511 U.S. at 266. If the Court applied the Safe Sport Act retroactively and accepted Ms. Fredericks' allegations as true, USAG could be exposed to substantial fines for acts or omissions that were "not punishable" at the time they occurred. *Weaver*, 450 U.S. at 28. That result is barred under *Landgraf*'s reading of the *Ex Post Facto* Clause, and it provides another basis to reject retroactive application of the Safe Sport Act.

68. Without retroactive application of the Safe Sport Act, the Class Claim cannot state a claim for relief. Importantly, Ms. Frederick assumes, as a necessary condition to her Class Claim, that the Safe Sport Act has retroactive effect. For instance, she argues: USAG "failed to follow the

mandate of timely reporting all of the claims to law enforcement within 24 hours of learning facts that gave rise to the suspicion of abuse *prior to the enactment of the Safe Sport Act on February 14, 2018*." (Ex. B, at ¶ 148 (emphasis added).) Because the Safe Sport Act does not punish acts that occurred prior to its enactment, the Class Claim fails on its merits as a matter of law.

*** 

69.     Accordingly, the Debtor requests that the Court disallow the Class Claim in its entirety. As noted above, (1) Ms. Frederick has not complied with the procedural requirements to prosecute class actions in bankruptcy; (2) class action practice would unduly burden the administration of this chapter 11 case; (3) Ms. Frederick has not proven that certification is proper under Federal Rule of Civil Procedure 23; and (4) the Class Claim fails, on its merits, to state a claim upon which relief can be granted.

70.     In the event that the Court does not grant this Objection and allows the Class Claim to proceed, the Debtor reserves its right to raise additional objections to the certification of a class and to the merits of any class claim.

## DEADLINE TO RESPOND

71.     If Ms. Frederick wishes to contest this Objection, she must file and serve a written response by March 11, 2020 at 4:00 p.m. (prevailing Eastern time).

72.     Now that the Debtor has objected to the Class Claim, the burden rests upon Ms. Frederick to "meet the objection and establish the claim." *In re Pierport Dev. & Realty Inc.*, 491 B.R. 544, 547 (Bankr. N.D. Ill. 2013). If no response is filed in support of the Class Claim, the Court may sustain this Objection and disallow the Class Claim as requested herein.

## NOTICE

73.     The Debtor will provide notice of this Objection by overnight mail to Ms. Frederick and by e-mail to Ms. Frederick's counsel. Pursuant to Local Rule 3007-1, Ms. Frederick will be given 30 days from the date of service of this Objection to respond. The Debtor will also provide notice of this Objection in accordance with Bankruptcy Rule 3007, Local Rule 3007-1, and the *Order Granting Debtor's Motion For Order Establishing Certain Notice, Case Management, And Administrative Procedures* [Dkt. 213]. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

WHEREFORE, the Debtor respectfully requests that the Court enter the order substantially in the form annexed hereto as <u>Exhibit A</u>, disallowing the Class Claim in its entirety and granting such further relief as is just and proper.

Dated: January 17, 2020                    Respectfully submitted,

**JENNER & BLOCK LLP**

By: <u>/s/ Catherine Steege</u>

Catherine L. Steege (admitted *pro hac vice*)
Dean N. Panos (admitted *pro hac vice*)
Melissa M. Root (#24230-49)
353 N. Clark Street
Chicago, Illinois 60654
(312) 222-9350
csteege@jenner.com
dpanos@jenner.com
mroot@jenner.com

*Counsel for the Debtor*