**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| USA GYMNASTICS,[1] | Case No. 18-09108-RLM-11 |
| Debtor. | |

**MOTION OF THE ADDITIONAL TORT CLAIMANTS COMMITTEE OF
SEXUAL ABUSE SURVIVORS FOR ENTRY OF AN ORDER PURSUANT TO
11 U.S.C. §§ 105(a), 349 AND 1112(b) DISMISSING THE BANKRUPTCY CASE
AND GRANTING RELATED RELIEF**

The Additional Tort Claimants Committee of Sexual Abuse Survivors (the "Survivors'

Committee"), appointed in this case under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"), hereby moves this Court (the "Motion") for entry of an order, pursuant to

sections 105(a), 349, and 1112(b) of the Bankruptcy Code, dismissing the above-captioned

bankruptcy case (the "Case") of USA Gymnastics ("USAG") and granting related relief.  In

support of this Motion, the Declaration of James I. Stang (the "Stang Declaration") is attached as

**Exhibit A** and incorporated herein.  In further support of the Motion, the Survivors' Committee

respectfully states as follows:

**Preliminary Statement**

1.      Nearly five years ago, USAG/United States Olympic Committee (the "USOC")[2]

Team USA gymnast Maggie Nichols reported Larry Nassar was molesting children.  Since that

very first day, USAG/USOC, and its revolving door of executives since, have done everything in

---

[1] The last four digits of USAG's federal tax identification number are 7871. The location of USAG's principal office is 130 E. Washington Street, Suite 700, Indianapolis, Indiana 46204.

[2] The USOC recently rebranded itself as the "United States Olympic & Paralympic Committee" but for the ease of reference, it is referred to herein as the "USOC."

their collective power to conceal the truth from Nassar's hundreds of survivors, the more than 100 survivors of abuse suffered at the hands of coaches over the past several decades, law enforcement authorities, and the American public.  The coordinated strategy of USAG and the USOC was, and remains to be, to delay, deflect and deny them and non-Nassar survivors justice for the horrible crimes committed upon them as children.  Sadly, USAG and the USOC have used this bankruptcy proceeding as yet another tool to inflict pain upon these sexual abuse survivors – both Nassar and non-Nassar survivors – and to deny justice to these girls and women who competed for this institution and their country.  The Survivors' Committee seeks, and indeed, implores this Court to dismiss this Case and grant related relief to appropriately effectuate the dismissal for the legal reasons cited herein.  The Court should also grant the Motion because it has come time for *some* court or institution to give these women the right to finally have their cases heard before a jury.  Enough is enough.

2.    The core of this bankruptcy proceeding has been the intent of USAG and the USOC to string both the Court and the Survivors' Committee along, ingratiating them and the media with platitudes of change about athlete safety.  However, these hollow promises of reform have been tools to buy USAG and the USOC time to delay and create a narrative that will keep their respective organizations free from scrutiny long enough for these organizations to indulge in their respective financial windfalls from the 2020 Summer Olympics in Tokyo, Japan. Grandiose statements that have been issued by USAG (such as the January 8, 2020 tweet from current USAG President Li Li Lueng ("Ms. Leung")) are merely intended to placate sponsors to continue their support, before investigative agencies, criminal prosecutions, and adversarial civil process will reveal the true depravity of the organizational cover-up of sexual abuse of athletes. This proceeding, and the purported "good-faith" attempts by USAG to reach a mutually

agreeable plan for reorganization, are nothing but a concerted effort by USAG and the USOC to buy time and protect its collective asset in the 2020 Summer Olympic revenue stream, nothing more.

3.      The Survivors' Committee is compelled to seek dismissal of this Case because USAG, the USOC and their respective insurance carriers (the "Insurers") have failed to propose a fair, comprehensive settlement with the Survivors' Committee and its constituents.  The three lengthy mediation sessions with the Survivors' Committee and the intra-insurance company mediations have not resulted in a compromise, neither monetary and importantly, non-monetary. Since the last mediation session on November 21, 2019, USAG has not initiated a single substantive plan-related communication with the Survivors' Committee.  Indeed, this Case instituted by USAG, and which (in the Survivors' Committee's view) was done in coordination with and at the direction of the USOC, was a tactic taken by these entities to halt the vigorous civil discovery inquiry into their horrendous conduct in concealing its widespread child molestation problems, halt de-certification proceedings against USAG, and represent to the public that it is, in the words of Ms. Lueng, "…focusing on reaching resolution with the survivors and emerging from bankruptcy."[3]  This Case, having been filed more than 13 months ago, is yet another platform for USAG and the USOC to delay justice to the Survivors' Committee and their constituents, and the Court should no longer indulge USAG and the USOC by allowing them to continue dragging survivors through this morass.  Extensive mediations on the monetary and non-monetary issues involved in this Case have resulted in an impasse between

---

[3] Li Li Leung (@Li_Li_Leung), Twitter (Jan. 8, 2020, 5:20 PM), https://twitter.com/Li_Li_Leung/status/1215080810707025923 (a copy of which is attached as **Exhibit 1** to the Stang Declaration).

the parties; this proceeding serves only the interests of delay.  The survivors' claims should be liquidated now in their respective venues, and this Case should be dismissed.

4.      Without disclosing information, communications or the substance of the mediation, the members of the Survivors' Committee unanimously agree that these failed mediations have only broadened the divide between the Survivors' Committee and USAG/USOC, not bridged it.  The Survivors' Committee has continued to feel demeaned, belittled, and offended by the mediation process.  In contrast to the grandiose media statements made by USAG that it is moving the Case towards resolution, the Survivors' Committee feels these are not accurate, nor faithful representations of the dismal prospect of resolving this matter.

5.      Subsequent to the explosion of the Nassar cover-up in September of 2016, USAG continually proves itself incapable of addressing the systemic and cultural problems with sexual abuse in its sport, having a revolving door of executives with subsequent scandal, after scandal, after scandal.  USAG has, and continues, to view the issue of sexual abuse in sports as a marketing and image problem that can be willed away with public relations branding.  This culture within USAG has continued, from executive-to-executive, and illustrates why the parties have made no progress in the numerous attempts to resolve this matter at mediation.  By way of history and example, the President of USAG when the Nassar allegations were first publicly revealed was Steve Penny; who is currently indicted in the State of Texas for evidence tampering.  His successor, Ms. Kerry Perry, lasted as the President of USAG for less than a year, and was forced to resign upon the USOC placing pressure on her to do so for her mishandling of the sexual abuse crisis at USAG.  Senator Richard Blumenthal characterized her tenure as

4

President in exhibiting "…a willful and heartless blindness to the concerns of survivors…."[4]

Her successor, Ms. Mary Bono, lasted approximately 100 hours as President of USAG, after her

Twitter feed was found to have tweets decrying Colin Kapernick's protest of the National

Football League.  Her successor, and current USAG President, Ms. Lueng, too, has engaged in

similarly misguided behavior.[5]  During her first few months, Ms. Lueng hired Dr. Edward

Nyman as the new Director of Sports Medicine for USAG.  One day later, Dr. Nyman was fired

after it was "discovered" that there were allegations of physical abuse coming from the gym he,

and his wife, operated.  Moreover, when referring to her time as a gymnast, herself, Ms. Lueng

stated that she was not abused by Nassar because her coach was next to her during the treatment;

a common situation for many of the survivors in this action, **who were molested by Nassar with

their coach standing next to them**.  Ms. Leung then apologized publicly for making these ill-

advised comments.  This all occurred in April of 2019, **after the institution of this Case**.  This

is an institution that continues to widen the divide amongst USAG and the Survivors'

Committee.[6]

6.    Thus, more than 3 years after the Nassar abuse allegations entered the national

media spotlight and more than 13 months having passed since the Case filing, the Sexual Abuse

Claimants (defined herein) are still without any credible prospects of meaningful resolution in

---

[4] Juliet Macur & Ken Belson, *Kerry Perry, U.S.A. Gymnastics Chief, Is Forced Out*, N.Y. TIMES, Sept. 4, 2018, https://www.google.com/amp/s/www.nytimes.com/2018/09/04/sports/usa-gymnastics-kerry-perry.amp.html (a copy of which is attached as **Exhibit 2** to the Stang Declaration).

[5] Despite repeated requests, USAG refused to engage the Survivors' Committee in the hiring process that resulted in Ms. Leung's employment.  [*See generally Response of the Additional Tort Claimants Committee of Sexual Abuse Survivors to Debtor's Motion for Authority to Enter into Employment Agreement*, Doc 348.]

[6] USAG and the USOC objected to providing the Survivors' Committee the documents that they already had produced to governmental investigators and Ropes & Gray even though the survivors' state court counsel would have borne the burden of reviewing the documents.  From the survivors' perspective, these objections evidenced a continuing effort to deny them transparency, especially since the documents already had been produced to other third parties.

this Case.  With no global settlement among the parties, only two basic paths remain:  USAG can propose a plan that cannot be confirmed over the opposition of the Sexual Abuse Claimants,[7] or the Court can dismiss this Case.[8]  This Court itself explained in another chapter 11 case, where there was no reasonable likelihood of the debtor being able to successfully reorganize including proposing a confirmable plan, that dismissal of the chapter 11 case would be the appropriate action:  "Dismissal is appropriate where 'further suspension of the creditor's rights in order to allow a debtor to reorganize would be futile as there has been no progress in that direction and there was little prospect of future progress.'"  *In re Uptown Bus. Ctr., LLC*, No. 13-8032, 2013 Bankr. LEXIS 4324, at *12 (Bankr. S.D. Ind. Oct. 15, 2013).  Unfortunately, due to USAG's and others' (in)actions, that is the situation presently before the Court.  For all of the reasons set forth herein, this Case should be dismissed.

## Jurisdiction and Venue

7.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

8.    Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

9.    The statutory predicates for the relief requested herein are sections 105(a), 349, and 1112(b) of the Bankruptcy Code.

---

[7] Undoubtedly, because of the significant legal and financial leverage of the USOC over USAG, any plan proposed by USAG would have a blanket, nonconsensual release for the USOC with respect to Sexual Abuse Claims (defined herein) and related claims and liabilities.  The Survivors' Committee is informed and believes nearly all, if not all, of Sexual Abuse Claimants would vote against a USAG-plan with a non-consensual release for the USOC.

[8] As explained herein, USAG is a non-profit entity and thus, as a matter of statute, its Case cannot be converted to a chapter 7 case under section 1112 absent USAG's consent, and the appointment of a trustee under section 1112 would be a pointless exercise since the trustee would likewise have to clash with USAG, the USOC, and the Insurers.

## Relevant Facts

**A.      Filing of this Case and Enjoining of the Prepetition Lawsuits.**

10.      On December 5, 2018 (the "Petition Date"), USAG filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

11.      USAG remains in possession of its property and continues to operate and maintain its organization as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner in this Case.

12.      On December 19, 2018, the United States Trustee appointed the Survivors' Committee to represent in this Case the interests of sexual abuse tort claimants (collectively, "Sexual Abuse Claimants") with claims ("Survivors' Claims") against USAG.

13.      The horrific sexual abuse perpetrated by Larry Nassar has been well documented in the national news media.  Employed by Michigan State University and serving as a volunteer to USAG, Nassar committed numerous acts of sexual abuse upon gymnasts at various events and camps, including camps held at what was previously USAG's National Team Training Center. USAG has been named as a defendant in more than 100 lawsuits brought by survivors of Nassar's abuse (the "Prepetition Lawsuits"), which Prepetition Lawsuits have been stayed vis-à-vis USAG since the Petition Date by the automatic stay, as well as vis-à-vis other non-debtor defendants, including the USOC, pursuant to orders of the Court (the "Lawsuits Stay Orders") expressly enjoining the continued prosecution of certain lawsuits by way of stipulations among the applicable litigation parties.  [*See* Docs 372 & 426.][9]

---

[9] The Prepetition Lawsuits plaintiffs who are parties to and covered by the Lawsuits Stay Orders are referred to herein as the "Prepetition Lawsuit Sexual Abuse Claimants."

14.     If the Motion were to be granted by the Court, the Prepetition Lawsuits would recommence and ultimately administer and resolve the Survivors' Claims.  **The Survivors' Committee is informed and believes that all of the Prepetition Lawsuit Sexual Abuse Claimants, through their counsel, support the granting of this Motion**.

15.     According to USAG, more than 500 claims have been filed against USAG, most of which claims are of Sexual Abuse Claimants relating to Nassar and non-Nassar abuse.  The Sexual Abuse Claimants of USAG will soon be upon ***the 3 ½ year anniversary*** of the publication of the 2016 *Indianapolis Star* article,[10] which had amplified the sexual abuse perpetrated by Nassar and put a national spotlight on these tragic matters.[11]

**B.      The Unsuccessful Mediation and USAG's Utter Failure to Further Any Settlement or Consensual Plan Process.**

16.     Upon USAG's motion, pursuant to orders entered in May 2019 [Docs 514 & 522], USAG, the Survivors' Committee, the USOC, and the Insurers prepared for and participated in mediation (the "Mediation") before the Honorable Gregg W. Zive in an attempt to consensually resolve the parties' relevant disputes including the treatment of the Survivors'

---

[10] Tim Evans, Mark Alesia & Marisa Kwiatkowski, *Former USA Gymnastics Doctor Accused of Abuse*, THE INDIANAPOLIS STAR, Sept. 12, 2016, https://www.indystar.com/story/news/2016/09/12/former-usa-gymnastics-doctor-accused-abuse/89995734/ (a copy of which is attached as **Exhibit 3** to the Stang Declaration).  The Survivors' Committee respectfully requests the Court to take judicial notice of the articles cited herein pursuant to Rules 201 and 902(6) of the Federal Rules of Evidence.

[11] To state the obvious, the Sexual Abuse Claimants' respective ordeals have actually been longer than the afore-referenced 3 ½ years, since the abuse they had sustained and related claims predate the *Indianapolis Star* article.  As a point of reference, Michigan State University, which had employed Larry Nassar, had reached a $500 million settlement with Nassar survivors within approximately 20 months after the 2016 *Indianapolis Star* article.  *See, e.g.*, Mitch Smith & Anemona Hartocollis, *Michigan State's $500 Million for Nassar Victims Dwarfs Other Settlements*, N.Y. TIMES, May 16, 2018, https://www.nytimes.com/2018/05/16/us/larry-nassar-michigan-state-settlement.html (a copy of which is attached as **Exhibit 4** to the Stang Declaration).

Claims and insurance coverage matters. [12]  The Mediation took place over six days in three

sessions – July 16-18, 2019, August 20-21, 2019 and November 21, 2019.  Additionally, the

Survivors' Committee is informed that the mediators have been in regular discussions with the

Insurers, including a face-to-face mediation that preceded the November 21st mediation session

with the Survivors' Committee.  The Mediation did not result in any settlement, and there is no

further all-parties Mediations scheduled.

17.     After the November 21, 2019 mediation session, USAG's counsel provided no

substantive update to counsel for the Survivors' Committee as to any potential global settlement

among the key parties, other than informing committee counsel that USAG had been trying to

resolve certain insurance coverage disputes.  [*See* Stang Declaration, ¶ 11.]  In short, after the

unsuccessful Mediation, USAG has done nothing to engage the Survivors' Committee in

advancing the ball towards a settlement or a consensual plan of reorganization.  The result of

these failed mediations was not progress, but rather, exchanges that only left those on the

Survivors' Committee feeling insulted, marginalized, and betrayed by USAG, the USOC and

their purported publicly stated commitment to change the trajectory of their respective

organizations in regard to treatment of athletes.  In short, the Mediation has only crystallized the

void between Survivors' Committee members and USAG (and the USOC), not bridged it.

18.     More than 13 months having passed since the Case filing, USAG has not

proposed, and has given no indication that it is anywhere close to formulating and filing, any

chapter 11 plan, and has asked the Court once again to extend its plan and solicitation exclusivity

periods until April 3, 2020 and May 29, 2020, respectively.  [*See Debtor's Fifth Motion for*

---

[12] In September 2019, Paul J. Van Osselaer joined Judge Zive as a co-mediator to assist in mediating insurance coverage and related issues.  [*See Supplemental Order Re Appointment of Additional Mediator*, Doc 798.]  Judge Zive and Mr. Van Osselaer have jointly mediated with USAG, USOC and their respective Insurers at meetings other than the three sessions noted herein.

*Order Extending the Debtor's Exclusive Periods to File and to Solicit Acceptances of a Chapter 11 Plan*, Doc 870.]  The Survivors' Committee did not object to this extension request; however, the extension is meaningless given USAG's inability and failure to propose a confirmable plan. Important in the Survivors' Committee's view is the substantial leverage – legal and financial – that the USOC has over USAG, as evidenced by, *inter alia*, the USOC's November 5, 2018 pending petition to revoke USAG's recognition as a member National Governing Body of the USOC and the fact that many of USAG's insurance policies include the USOC as an additional insured.  The USOC's leverage makes settlement in this Case virtually impossible if the USOC insists (as it undoubtedly will in the context of any plan proposed by USAG) upon a complete release of claims against it.

19.     The Summer Olympic Games will commence in late July 2020 – only six months from now.[13]  Based on communications with USAG's counsel, USAG apparently has not undertaken any material efforts and other actions to obtain and maintain important sponsorships for and in connection with the Summer Olympic Games, which sponsorships would be important revenue streams for the benefit of the bankruptcy estate (the "Estate") and its creditors.[14]  [*See* Stang Declaration, ¶ 12.]  Such certainly is not the case with the USOC which provides USAG with a share of its Olympics revenues.

---

[13] Press Release, IOC, *Unprecedented Levels of Excitement Around the Olympic Games Tokyo 2020* (Jan. 10, 2020, https://www.olympic.org/news/unprecedented-levels-of-excitement-around-the-olympic-games-tokyo-2020 (a copy of which is attached as **Exhibit 5** to the Stang Declaration).

[14] Certainly, USAG previously lost many of its sponsorships and revenue sources in the wake of the national publicity surrounding Nassar.  *See, e.g.*, Ruth McCambridge, *Corporate Sponsors Abandon Nonprofit USA Gymnastics, But Not the Athletes*, NPQ (NONPROFIT QUARTERLY), Jan. 29, 2018, https://nonprofitquarterly.org/corporate-sponsors-abandon-nonprofit-usa-gymnastics-not-athletes/ (a copy of which is attached as **Exhibit 6** to the Stang Declaration); Scott M. Reid, *Nike Looked to Sponsor USA Gymnastics While Both Were Mired in Sexual Misconduct Scandals*, THE ORANGE COUNTY REGISTER, May 11, 2018, https://www.ocregister.com/2018/05/11/nike-looked-to-sponsor-usa-gymnastics-while-both-were-mired-in-sexual-misconduct-scandals/ (a copy of which is attached as **Exhibit 7** to the Stang Declaration).

20.     As discussed herein, the Sexual Abuse Claimants have waited far too long for USAG (and/or other responsible parties) to redress the claims and damages suffered by the Sexual Abuse Claimants.  As explained above, the lack of any meaningful progress toward a compromise and consensual plan clearly evidences that USAG, the USOC, and the Insurers are in no rush to reach a fair and equitable resolution with the Sexual Abuse Claimants.  With the parties at an impasse, the Survivors' Committee submits that, unfortunately under all of these circumstances, only one viable alternative remains – dismissal of this Case.

<u>**Argument**</u>

A.    <u>**Applicable Legal Standards.**</u>

21.     Under section 1112(b) of the Bankruptcy Code, upon a party in interest's motion, the Court must dismiss the chapter 11 case or convert it to chapter 7 if there is "cause" to do so. 11 U.S.C. § 1112(b)(1).  If the Court determines that there is cause to dismiss or convert, it must also:  (i) decide whether dismissal, conversion, or the appointment of a trustee or examiner is in the best interests of creditors and the estate; and (ii) identify whether there are "unusual circumstances" that establish that dismissal or conversion is not in the best interests of creditors and the estate.[15]  11 U.S.C. § 1112(b)(1), (b)(2).

22.     The Court has broad discretion in determining what constitutes cause under section 1112(b) of the Bankruptcy Code.  *See In re Woodbrook Assocs*., 19 F.3d 312, 316 (7th Cir. 1994); *Uptown Bus. Ctr., LLC*, 2013 Bankr. LEXIS 4324, at *10 (bankruptcy courts have

---

[15] "The Code does not define 'unusual circumstances,' but the phrase 'contemplates conditions that are not common in most chapter 11 cases.'"  *In re Aurora Memory Care LLC*, 589 B.R. 631, 638 (Bankr. N.D. Ill. 2018).  Further, in addition to there being unusual circumstances establishing that dismissal or conversion is not in the best interests of the estate and creditor, the debtor must demonstrate that a plan is reasonably likely to be confirmed within the applicable deadline, and that the debtor had a "reasonable justification" for the act or omission constituting cause for dismissal or conversion and the act or omission will be cured within a "reasonable time."  11 U.S.C. §§ 1112(b)(2)(A) & (b)(2)(B); *Aurora Memory Care LLC*, 589 B.R. at 638.

"broad discretion" to dismiss case). The movant bears the burden of establishing by a preponderance of the evidence that cause exists. *Id.*; *In re Royalty Props., LLC*, 604 B.R. 742, 748 (Bankr. N.D. Ill. 2019) (citing *In re Draiman*, 450 B.R. 777, 826 (Bankr. N.D. Ill. 2011)).

23.     "Cause" is defined in section 1112(b)(4) of the Bankruptcy Code with a list of certain enumerated examples, but the list is not exclusive. *Uptown Bus. Ctr., LLC*, 2013 Bankr. LEXIS 4324, at *10; *Aurora Memory Care LLC*, 589 B.R. at 637-38. As discussed further herein, USAG has no reasonable prospect of reorganizing including filing a confirmable plan under the current circumstances. As this Court has explained, such unlikelihood of proposing a viable plan ties into several enumerated causes for dismissal, including section 1112(b)(4)(A) of the Bankruptcy Code which lists the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation"[16] as one potential cause to dismiss. *Uptown Bus. Ctr., LLC*, 2013 Bankr. LEXIS 4324, at *11-12. Importantly, "[d]ismissal is appropriate where 'further suspension of the creditor's rights in order to allow a debtor to reorganize would be futile as there has been no progress in that direction and there was little prospect of future progress'" *Id.* at *12 (citations omitted); *accord*, *Aurora Memory Care LLC*, 589 B.R. at 640 ("Before the 2005 amendments to the Code, section 1112(b)(2) specifically listed the 'inability to effectuate a plan' as 'cause' to convert or dismiss a chapter 11 case…. It was therefore proper to dismiss a case 'if the court determine[d] that it [was] unreasonable to expect that a plan [could] be confirmed.'" citing *Woodbrook Assocs.*, 19 F.3d at 316). "Although this example of cause was deleted from the statute in 2005, a debtor's 'inability to effectuate a plan' continues to be 'a viable basis for dismissal because the listed examples of cause are not

_____

[16] There is continuing diminution of the Estate in that, as USAG's filed monthly operating reports reflect, substantial amounts of administrative claims continue to accrue in this Case, and as discussed herein, USAG has evidently failed to obtain sponsorships and facilitate other revenue sources as the Olympic Games approach.

exhaustive." *Aurora Memory Care LLC,* 589 B.R. at 640 (citation omitted) (cause existed for dismissal or conversion of case where there was no reasonable likelihood of reorganization and debtor had failed to file requisite reports); *In re Seasons Apts., Ltd. Pshp*., 215 B.R. 953, 960 (Bankr. W.D. La. 1997) (chapter 11 case dismissed approximately 16 months after petition filing, where any plan by debtor could not be confirmed over key creditor's objection; "considering the impasse in the settlement negotiations demonstrated by [creditor]'s latest filing, this case is ripe for dismissal under 11 U.S.C. § 1112(b)."); s*ee also Woodbrook Assocs.*, 19 F.3d at 317 ("The very purpose of § 1112(b) is to cut short this plan and confirmation process where it is pointless.").

**B.**     **Cause Exists to Dismiss Because USAG Has No Reasonable Likelihood of Proposing a Confirmable Plan or Otherwise Reorganizing.**

24.     As discussed, the Survivors' Committee has brought this Motion, with no other choice left.  USAG, the USOC, and the Insurers are not interested in expeditiously resolving the parties' disputes in any sort of fair, comprehensive compromise as part of a consensual chapter 11 plan.  The Mediation to date has not worked; no further Mediation is scheduled and USAG has not made any meaningful overtures since the November 21st mediation session toward a global settlement or an acceptable plan.  Further, there is no indication that USAG is making any real efforts to obtain sponsors and tap other potential revenue sources for the benefit of the Estate and its creditors.

25.     Absent a settlement with and support of the Sexual Abuse Claimants, under no conceivable circumstance could USAG confirm a plan.  From USAG's perspective, whether under joint tortfeasor, indemnification and/or other theories of liability, USAG will continue to be exposed to litigation risk if the USOC's potential or actual liabilities relating to Survivors' Claims are not released, and thus, any plan that would be proposed by USAG would inevitably

include a blanket release for the USOC.  However, under the circumstances of this Case, USAG cannot cram down any plan over the objection of the Sexual Abuse Claimants that gives a blanket release to the USOC (or any other third parties) of Survivors' Claims.[17]  *See, e.g.*, *Airadigm Commc'ns v. FCC (In re Airadigm Commc'ns)*, 519 F.3d 640, 655-58 (7th Cir. 2008) (any nonconsensual third party release and related injunction must meet the following requirements:  (i) the release must be narrow in that it applies only to claims "arising out of or in connection with" the reorganization and may not include "willful misconduct," (ii) it must be necessary for the reorganization, (iii) it may not provide for "blanket immunity," (iv) the immunity afforded by the release must not affect matters beyond the jurisdiction of the court or unrelated to the reorganization, and (v) there must be "adequate evidence" that the beneficiaries of the releases required them before making a monetary contribution "which was itself essential to the reorganization"); *In re Ingersoll, Inc*., 562 F.3d 856, 865 (7th Cir. 2009) (the court "preached caution" in approving non-debtor releases and announced that "[i]n most instances, [non-debtor] releases . . . will not pass muster under [the *Airadigm*] rule"; "A nondebtor release should only be approved in 'rare cases' . . . because it is 'a device that lends itself to abuse.'"); *In re Berwick Black Cattle Co*. 394 B.R. 448, 457, 462 (Bankr. C.D. Ill. M. 2008) (denying confirmation of a plan that included blanket third party release provisions that included

---

[17] In all likelihood, any USAG-proposed plan would also suffer other fatal defects, including lack of feasibility and lack of good faith.

prepetition claims and claims unrelated to the bankruptcy case including claims in a nonbankruptcy suit over which the court had no jurisdiction).[18]

26.     Based on discussions with the respective lawyers for the Prepetition Lawsuit Sexual Abuse Claimants and other attorneys representing Sexual Abuse Claimants, the Survivors' Committee believes nearly all Sexual Abuse Claimants would reject any nonconsensual plan proposed by USAG that included a broad release for the USOC.[19]  That is, USAG cannot confirm a plan without the support of the class of Sexual Abuse Claimants.  In short, the parties are at an impasse, and there is "little prospect of future progress."  *Uptown Bus. Ctr., LLC*, 2013 Bankr. LEXIS 4324, at *12, *19-20 (dismissing case where court concluded that debtor was not likely to be able to confirm a plan and after dismissal, relevant matters would have to be resolved in state court; "If the Debtor were to file a plan containing terms similar to those discussed at the hearing, it would be difficult for the Debtor to meet the confirmation criteria under § 1129 [including obtaining a consenting, impaired, non-insider class of claims]"); *Aurora Memory Care LLC*, 589 B.R. at 640 (cause existed for dismissal or conversion of case where there was no reasonable likelihood of reorganization and debtor had failed to file requisite reports); *Seasons Apts., Ltd. Pshp*., 215 B.R. at 960 (chapter 11 case dismissed where any plan by debtor could not be confirmed over key creditor's objection; "considering the impasse in the

---

[18] *See also OPS3 LLC v. Am. Chtd. Bank*, No. 13-cv-04398, 2017 U.S. Dist. LEXIS 120442, at *7 (N.D. Ill. Aug. 1, 2017) (rejecting non-consensual third party release of "all guaranties by or on behalf of any of the Debtors" as beyond the scope permitted by *Aradigm*); *In re GAC Storage Lansing, LLC*, 489 B.R. 747, 768-69 (Bankr. N.D. Ill. 2013) (rejecting plan provisions that would release guarantors of the debtor's pre-petition debt as beyond the permissible scope of *Aradigm*); *In re Draiman,* 450 B.R. 777, 799 (Bankr. N.D. Ill. 2011) (rejecting releases of "the Liquidation Trustee, the Debtor, and their respective officers, directors, shareholders, employees, consultants, agents, advisors, attorneys, accountants, financial advisors, and other representatives and Professionals" as overly extensive); *In re Shelbourne N. Water St. L.P*., 556 B.R. 874, 884 (Bankr. N.D. Ill. 2016) (plan provision releasing non-debtor from claims by non-creditor not enforceable).

[19] As noted above, the Survivors' Committee is informed and believes that all of the Prepetition Lawsuit Sexual Abuse Claimants, through their counsel, support the granting of this Motion.

settlement negotiations demonstrated by [creditor]'s latest filing, this case is ripe for dismissal under 11 U.S.C. § 1112(b)."). Accordingly, this Case should be dismissed.

**C.     Dismissal Is the Proper Remedy Under Section 1112(b) Rather Than the Appointment of a Chapter 11 Trustee.**

27.     Rather than dismiss a case pursuant to section 1112(b)(1) of the Bankruptcy Code, a court may convert a case or appoint a chapter 11 trustee if to do so "is in the best interests of creditors and the estate." First, USAG is a non-profit entity and as such, its Case cannot be converted to a chapter 7 proceeding. *See* 11 U.S.C. 1112(c) ("The court may not convert a case under this chapter to a case under chapter 7 of this title if the debtor is … a corporation that is not a moneyed, business, or commercial corporation, unless the debtor requests such conversion.").

28.     Further, no purpose would be served by the appointment of a trustee in this Case: In all events, any trustee would have to deal and clash with the same key parties including the USAG, the USOC, and the Insurers, and nothing in the record suggests these parties would change their strategies. For the reasons discussed herein, only one viable option – dismissal of this Case – remains and is in the best interest of the Estate and its creditors at this critical point.

**D.     Related Relief.**

29.      In connection with the requested dismissal of this Case, the Survivors' Committee requests that the Court's order on the Motion (the "Dismissal Order") provide certain related relief to appropriately effectuate the dismissal as follows:

(a)     Notwithstanding section 349 of the Bankruptcy Code, all prior rulings and orders entered in this Case (including all adversary proceedings), with the exception of the Lawsuit Stay Orders (the "Prior Orders") should remain in full force and effect and survive the dismissal of this Case, including, without limitation, (i) all Prior Orders entered by this Court and the District Court in Bankr. Adv. Case No. 19-50012 and 1:18-cv-1306-RLY-MPB (*USA Gymnastics v. Ace*

*American Ins. Co. f/k/a Cigna Ins. Co., et al.*); and (ii) all Prior Orders relating to the fee applications of professionals.

(b)     The Court should retain jurisdiction with respect to any matters, claims, rights or disputes arising from or relating to the implementation of the Dismissal Order or any Prior Orders.

(c)     The Court should retain jurisdiction over (i) the hearing on and resolution of any and all fee applications that have been or will be filed (including after dismissal of the Case) in this Case, and relatedly, (ii) the entry and enforcement of any Court orders relating to fee applications (including compelling USAG to pay all approved fees and expenses).

30.     The Survivors' Committee respectfully submits that the foregoing related relief is reasonable and necessary to adequately protect the interests of the Sexual Abuse Claimants and the Survivors' Committee (including its professionals).  Numerous bankruptcy courts have recognized the propriety of and need for such protective and other administrative provisions in the event of a chapter 11 case dismissal.  *See, e.g., In re Coach Am Group Holdings Corp.*, Case No. 12-10010 (KG) (Bankr. D. Del. May 31, 2013) (order, Doc 1568); *In re 155 Route 10 Associates, Inc.*, Case No. 12-24414 (NLW) (order, Doc 30); *In re Trade Secret, Inc.*, Case No. 10-12153 (KG) (Bankr. D. Del. Jan. 31, 2011) (order, Doc 767); *In re Foamex Int'l Inc.*, Case No. 09-10560 (KJC) (Bankr. D. Del. Jan. 20, 2010) (order, Doc 761); *In re Dawarhare's of Lexington, LLC,* Case No. 08-51381 (Bankr. E.D. Ky. Dec. 30, 2008) (order, Doc 316); *In re Cornell Trading, Inc.*, Case No. 06-10017-JNF (Bankr. D. Mass. June 5, 2007) (order, Doc 770); *In re Felda Plantation, LLC*, 2012 WL 1965964 (Bankr. M.D. Fla. May 29, 2012); *In re Inverness Distribution Ltd.*, Case No. 11-12106 (SCC) (Bankr. S.D.N.Y. May 4, 2015) (order, Doc 86); *In re Omaha Standing Bear Pointe, LLC*, Case No. 10-81413 (Bankr. D. Neb. March 11, 2011) (order, Doc 52).  *See generally Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 590 (7th Cir. 2008) (court has discretion to provide for continued viability of prior order after case dismissal notwithstanding section 349, based on creditors' interests and rights).

### Notice

31.     A copy of this Motion is being given to (a) USAG, (b) USAG's counsel, (c) the United States Trustee, (d) the USOC, (e) the USOC's counsel, and (e) those parties who have appeared in this Case or have requested notice pursuant to Bankruptcy Rule 2002.  In addition, pursuant to Rule 2002(a)(4) of the Federal Rules of Bankruptcy Procedure, the Survivors' Committee will provide notice of this motion and any hearing on those parties listed above and all creditors who have filed proofs of claim in this Case.  The Survivors' Committee respectfully submits that no other or further notice is necessary under the circumstances.

### Conclusion

**WHEREFORE,** the Survivors' Committee respectfully requests that the Court enter an order:  (a) granting the Motion in all respects; (b) dismissing this Case; (c) granting the requested related relief to implement the dismissal; and (d) granting such other and further relief as may be just and appropriate under the circumstances.

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

Dated: January 21, 2020

*/s/ James I. Stang*

James I. Stang, Esq. (admitted *pro hac vice*)
Ilan D. Scharf, Esq. (admitted *pro hac vice*)
Jonathan J. Kim
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760
E-mail:  jstang@pszjlaw.com
         isharf@pszjlaw.com
         jkim@pszjlaw.com

        -and-

RUBIN & LEVIN, P.C.

*/s/ Meredith R. Theisen*

Meredith R. Theisen, Esq.
Deborah J. Caruso, Esq.
135 N. Pennsylvania Street, Suite 1400
Indianapolis, IN 46204
Telephone:  (317) 634-0300
Facsimile:  (317) 263-9411
Email: dcaruso@rubin-levin.net
       mtheisen@rubin-levin.net

*Counsel for the Survivors' Committee*

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2020, a copy of the foregoing *Motion of the Additional Tort Claimants Committee of Sexual Abuse Survivors for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) Dismissing the Bankruptcy Case and Granting Related Relief* was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

Nancy D Adams    ndadams@mintz.com
Annemarie C Alonso    annie@sllawfirm.com
Martin Beeler    mbeeler@cov.com
Megan A Bonanni    mbonanni@pittlawpc.com
Tonya J. Bond    tbond@psrb.com, jscobee@psrb.com
Wendy D Brewer    wbrewer@fmdlegal.com, cbellner@fmdlegal.com
Kenneth H. Brown    kbrown@pszjlaw.com
Charles D. Bullock    cbullock@sbplclaw.com, lhaas@sbplclaw.com
George Calhoun    george@ifrahlaw.com, Heather.Simpson@kennedyscmk.com
Douglas N. Candeub    dcandeub@morrisjames.com
John Cannizzaro    john.cannizzaro@icemiller.com, Thyrza.Skofield@icemiller.com
Deborah Caruso    dcaruso@rubin-levin.net, dwright@rubin-levin.net;jkrichbaum@rubin-levin.net;atty_dcaruso@bluestylus.com
Dianne Coffino    dcoffino@cov.com
Jesse Max Creed    creed@psb.law, alegria@psb.law
Heather M. Crockett    Heather.Crockett@atg.in.gov, darlene.greenley@atg.in.gov
Alex Cunny    acunny@manlystewart.com
Edward DeVries    edward.devries@wilsonelser.com
Karen M Dixon    kdixon@skarzynski.com
Kimberly A. Dougherty    kim.dougherty@andruswagstaff.com, sandra.martin@andruswagstaff.com
Laura A DuVall    Laura.Duvall@usdoj.gov, Catherine.henderson@usdoj.gov
Jeffrey B. Fecht    jfecht@rbelaw.com, rmcclintic@rbelaw.com
Sarah Lynn Fowler    sarah.fowler@mbcblaw.com, deidre.gastenveld@mbcblaw.com
Eric D Freed    efreed@cozen.com, mmerola@cozen.com
Frances Gecker    fgecker@fgllp.com, csmith@fgllp.com;csucic@fgllp.com;mmatlock@fgllp.com
Cameron Getto    cgetto@zausmer.com
Steven W Golden    sgolden@pszjlaw.com
Douglas Gooding    dgooding@choate.com
Gregory Michael Gotwald    ggotwald@psrb.com, scox@psrb.com
Manvir Singh Grewal    mgrewal@4grewal.com
Susan N Gummow    sgummow@fgppr.com, bcastillo@fgppr.com
Katherine Hance    khance@goodwin.com
Samuel D. Hodson    shodson@taftlaw.com, aolave@taftlaw.com
Jeffrey A Hokanson    jeff.hokanson@icemiller.com, bgnotices@icemiller.com
John R. Humphrey    jhumphrey@taftlaw.com, aolave@taftlaw.com
Cassandra Jones    cjones@walkerwilcox.com,

vhosek@wwmlawyers.com;docket@walkerwilcox.com
Bruce L. Kamplain     bkamplain@ncs-law.com, dhert@ncs-law.com;klong@ncs-law.com
Kevin P Kamraczewski     kevin@kevinklaw.com
Ronald David Kent     ronald.kent@dentons.com
Adam L. Kochenderfer     akochenderfer@wolfsonbolton.com
Christopher E. Kozak     ckozak@psrb.com
Micah R Krohn     mkrohn@fgllp.com,
mmatlock@fgllp.com;csmith@fgllp.com;csucic@fgllp.com
Carl N. Kunz     ckunz@morrisjames.com, wweller@morrisjames.com
Cynthia Lasher     clasher@ncs-law.com, dcouch@ncs-law.com;dhert@ncs-law.com
Adam Le Berthon     adam.leberthon@wilsonelser.com
Jonathan C Little     jon@sllawfirm.com
Michael M. Marick     mmarick@skarzynski.com
Jonathan Marshall     jmarshall@choate.com
Phillip Alan Martin     pmartin@fmdlegal.com, cbellner@fmhd.com
John McDonald     jmcdonald@briggs.com
Mathilda S. McGee-Tubb     msmcgee-tubb@mintz.com
Harley K Means     hkm@kgrlaw.com, kwhigham@kgrlaw.com;cjs@kgrlaw.com
Geoffrey M. Miller     geoffrey.miller@dentons.com, ndil_ecf@dentons.com
Robert Millner     robert.millner@dentons.com, ndil_ecf@dentons.com
James P Moloy     jmoloy@boselaw.com,
dlingenfelter@boselaw.com;mwakefield@boselaw.com
Ronald J. Moore     Ronald.Moore@usdoj.gov
Whitney L Mosby     wmosby@bgdlegal.com, fwolfe@bgdlegal.com
Joel H. Norton     jnorton@rsslawoffices.com
Michael P. O'Neil     moneil@taftlaw.com, aolave@taftlaw.com
Weston Erick Overturf     wes.overturf@mbcblaw.com,
deidre.gastenveld@mbcblaw.com;ellen.sauter@mbcblaw.com
Dean Panos     dpanos@jenner.com
Stephen Jay Peters     speters@kgrlaw.com, acooper@kgrlaw.com
Ginny L. Peterson     gpeterson@k-glaw.com, acoy@k-glaw.com
Robert J Pfister     rpfister@ktbslaw.com
John Thomas Piggins     pigginsj@millerjohnson.com, ecfpigginsj@millerjohnson.com
Michael L Pitt     mpitt@pittlawpc.com
George Plews     gplews@psrb.com
Amanda Koziura Quick     amanda.quick@atg.in.gov, Marie.Baker@atg.in.gov
Michael L. Ralph     mralph@rsslawoffices.com
Abigail E. Rocap     arocap@batescarey.com
Melissa M. Root     mroot@jenner.com, wwilliams@jenner.com
James Pio Ruggeri     jruggeri@goodwin.com
Syed Ali Saeed     ali@sllawfirm.com, betty@sllawfirm.com
Ilan D Scharf     ischarf@pszjlaw.com
Thomas C Scherer     tscherer@bgdlegal.com, fwolfe@bgdlegal.com
David J. Schwab     djschwab@rsslawoffices.com
Igor Shleypak     ishleypak@fgppr.com, jfecteau@fgppr.com
Heather Elizabeth Simpson     heather.simpson@kennedyscmk.com

Casey Ray Stafford    cstafford@k-glaw.com, lsmith@k-glaw.com
James I. Stang    jstang@pszjlaw.com
Catherine L. Steege    csteege@jenner.com,
mhinds@jenner.com;thooker@jenner.com;aswingle@jenner.com
Laura B. Stephens    lbstephens@mintz.com
Keith Teel    kteel@cov.com
Meredith R. Theisen    mtheisen@rubin-levin.net,
atty_mtheisen@bluestylus.com;mralph@rubin-levin.net;csprague@rubin-levin.net
Jonathan Toren    jtoren@cozen.com, jonathan-toren-1988@ecf.pacerpro.com
U.S. Trustee    ustpregion10.in.ecf@usdoj.gov
Susan Walker    susan.walker@dentons.com
Joshua D Weinberg    jweinberg@goodwin.com
Gabriella B. Zahn-Bielski    gzahnbielski@cov.com

I further certify that on January 21, 2020, a copy of the foregoing *Motion of the
Additional Tort Claimants Committee of Sexual Abuse Survivors for Entry of an Order Pursuant
to 11 U.S.C. §§ 105(a), 349 and 1112(b) Dismissing the Bankruptcy Case and Granting Related
Relief* was served via electronic mail to the following:

**United States Olympic Committee:**  Chris McCleary at Chris.McCleary@usoc.org
**The Alexander, a Dolce Hotel and Wyndham Hotel Group, LLC:**  Daniel M. Eliades at
daniel.eliades@klgates.com and David S. Catuogno at david.catuogno@klgates.com

*/s/ Meredith R. Theisen*
Meredith R. Theisen