**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| USA GYMNASTICS,[1] | Case No. 18-09108-RLM-11 |
| Debtor. | |

**CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY USA GYMNASTICS**

JENNER & BLOCK LLP
Catherine L. Steege (admitted *pro hac vice*)
Dean N. Panos (admitted *pro hac vice*)
Melissa M. Root #24230-49
353 N. Clark Street
Chicago, Illinois 60654
(312) 222-9350
csteege@jenner.com
dpanos@jenner.com
mroot@jenner.com

*Counsel for the Debtor*

Dated: January 30, 2020

---

[1] The last four digits of the Debtor's federal tax identification number are 7871. The location of the Debtor's principal office is 130 E. Washington Street, Suite 700, Indianapolis, Indiana 46204.

## TABLE OF CONTENTS

INTRODUCTORY ARTICLES ..................................................................................................1

Article I. DEFINITIONS .......................................................................................................1

1.1    General Definitions...............................................................................................1

    1.1.1.    "105 Order"..............................................................................................1

    1.1.2.    "Abuse Claims" ......................................................................................1

    1.1.3.    "Abuse Claimant"...................................................................................1

    1.1.4.    "Administrative Claim"..........................................................................1

    1.1.5.    "Administrative Claimant"....................................................................1

    1.1.6.    "Allowance Date"...................................................................................1

    1.1.7.    "Allowed" ...............................................................................................1

    1.1.8.    "Assets" ..................................................................................................2

    1.1.9.    "Avoidance Rights" ...............................................................................2

    1.1.10.    "Bankruptcy Code".................................................................................2

    1.1.11.    "Bankruptcy Court"................................................................................2

    1.1.12.    "Bankruptcy Rules" ...............................................................................2

    1.1.13.    "Bar Date"...............................................................................................2

    1.1.14.    "Bar Date Order" ....................................................................................2

    1.1.15.    "Business Day".......................................................................................2

    1.1.16.    "Cash"......................................................................................................2

    1.1.17.    "Causes of Action" ................................................................................2

    1.1.18.    "CGL Insurance Coverage" ...................................................................3

    1.1.19.    "CGL Insurance Policy" ........................................................................3

    1.1.20.    "CGL Insurer"........................................................................................3

    1.1.21.    "Chapter 11 Case" .................................................................................3

i

1.1.22.  "Claim" ..............................................................................................................3

1.1.22.  "Claims Agent" .....................................................................................................3

1.1.23.  "Claimant" ...........................................................................................................3

1.1.24.  "Class" .................................................................................................................3

1.1.25.  "Co-Defendant" ...................................................................................................3

1.1.26.  "Confirmation Date" ............................................................................................3

1.1.27.  "Confirmation Hearing" .......................................................................................4

1.1.28.  "Confirmation Order" ..........................................................................................4

1.1.29.  "Creditor" ............................................................................................................4

1.1.30.  "Debtor" ..............................................................................................................4

1.1.31.  "Debtor's Professionals" ......................................................................................4

1.1.32.  "Disclosure Statement" ........................................................................................4

1.1.33.  "Disputed Claim" .................................................................................................4

1.1.34.  "Distribution" ......................................................................................................4

1.1.35.  "District Court" ....................................................................................................4

1.1.36.  "Effective Date" ...................................................................................................4

1.1.37.  "Estate" ...............................................................................................................4

1.1.38.  "Estimated Amount" ............................................................................................4

1.1.39.  "Exculpated Parties" ............................................................................................4

1.1.40.  "Final Decree" .....................................................................................................5

1.1.41.  "Final Order" .......................................................................................................5

1.1.42.  "Future Claim" .....................................................................................................5

1.1.43.  "Future Claimant" ................................................................................................5

1.1.44.  "FCR" ..................................................................................................................5

1.1.45.  "FCR Claim" ........................................................................................................5

1.1.46.    "FCR's Professionals" ........................................................................5

1.1.47.    "General Unsecured Claim" ................................................................5

1.1.48.    "General Unsecured Convenience Claim" ...........................................5

1.1.49.    "Holder" ...............................................................................................5

1.1.50.    "Impaired" ............................................................................................5

1.1.51.    "Indemnification Claim" ......................................................................6

1.1.52.    "Insurance Coverage" ..........................................................................6

1.1.53.    "Insurance Coverage Adversary Proceeding" .....................................6

1.1.54.    "Insurance Policy" ...............................................................................6

1.1.55.    "Insurance Reimbursement Claims" ....................................................6

1.1.56.    "Insurer" ...............................................................................................6

1.1.57.    "Litigation Election" ............................................................................6

1.1.58.    "Medicare Beneficiary" .......................................................................6

1.1.59.    "Medicare Claims" ...............................................................................6

1.1.60.    "Medicare Trust Fund" ........................................................................6

1.1.61.    "MMSEA" .............................................................................................7

1.1.62.    "MSP" ...................................................................................................7

1.1.63.    "Non-Sexual Abuse Claims" ...............................................................7

1.1.64.    "Other Insurance Coverage" ...............................................................7

1.1.65.    "Other Insurance Policy" .....................................................................7

1.1.66.    "Other Insurers" ...................................................................................7

1.1.67.    "Other Priority Claim" .........................................................................7

1.1.68.    "Outstanding Amount" .........................................................................7

1.1.69.    "Person" ................................................................................................7

1.1.70.    "Personal Injury Claim" .......................................................................7

1.1.71.   "Personal Injury Claimant" ..................................................................7

1.1.72.   "Personal Injury Coverage" ................................................................7

1.1.73.   "Personal Injury Insurer" ...................................................................8

1.1.74.   "Personal Injury Insurance Policy" ....................................................8

1.1.75.   "Petition Date" ...................................................................................8

1.1.76.   "Plan" .................................................................................................8

1.1.77.   "Plan Documents" .............................................................................8

1.1.78.   "PNC Bank" .......................................................................................8

1.1.79.   "PNC Bank Claim" ............................................................................8

1.1.80.   "Post-Effective Date Award" .............................................................8

1.1.81.   "Post-Effective Date Litigation" ........................................................8

1.1.82.   "Pre-Petition Lawsuit" .......................................................................8

1.1.83.   "Priority Claim" .................................................................................8

1.1.84.   "Priority Claimant" ............................................................................8

1.1.85.   "Priority Tax Claim" ..........................................................................8

1.1.86.   "Professional" ....................................................................................9

1.1.87.   "Professional Claim" .........................................................................9

1.1.88.   "Professional Claims Bar Date" ........................................................9

1.1.89.   "Pro Rata" ..........................................................................................9

1.1.90.   "Related Person" ................................................................................9

1.1.91.   "Reorganized Debtor" ........................................................................9

1.1.92.   "Revested Assets" ..............................................................................9

1.1.93.   "Schedules" ........................................................................................9

1.1.94.   "Settlement Election" .........................................................................9

1.1.95.   "Sexual Abuse" ..................................................................................9

iv

1.1.96.    "Sexual Abuse Claim" ...................................................................10

1.1.97.    "Sharp Claim" ...........................................................................10

1.1.98.    "Survivors' Committee" ...............................................................10

1.1.99.    "Survivors' Committee's Professionals" .........................................10

1.1.1.    "Undeliverable Distribution" .........................................................10

1.1.2.    "U.S. Trustee" ...........................................................................10

1.1.3.    "USOPC" ..................................................................................10

1.1.4.    "USOPC Claim" .........................................................................10

1.2    Definitions Applicable In The Event Of A Class 6 Settlement Election. ...........10

1.2.1.    "CGL Settling Insurer" ................................................................10

1.2.2.    "CGL Settling Insurance Policy" ...................................................10

1.2.3.    "Channeled Claim" .....................................................................10

1.2.4.    "Channeled Claimant" .................................................................11

1.2.1.    "Channeling Injunction" ..............................................................11

1.2.2.    "Future Claimant Reserve" ..........................................................11

1.2.3.    "Insurance Settlement Amount" ....................................................11

1.2.4.    "Non-Debtor CGL Settling Insurer Covered Persons" .......................11

1.2.5.    "Non-Participating Co-Defendant" ................................................11

1.2.6.    "Non-Settling Insurer" ................................................................11

1.2.7.    "Participating Party" ..................................................................11

1.2.8.    "Participating Party Contribution" ................................................11

1.2.9.    "Plan Payment" .........................................................................11

1.2.10.    "Protected Parties" ...................................................................12

1.2.11.    "Released Parties" ....................................................................12

1.2.12.    "Settling Insurer" .....................................................................12

1.2.13.    "Settling Insurer Injunction" ...................................................................12

1.2.14.    "Settling Insurer Policies" .........................................................................12

1.2.15.    "Trust" .......................................................................................................12

1.2.16.    "Trust Agreement" .....................................................................................12

1.2.17.    "Trust Assets" ............................................................................................12

1.2.18.    "Trust Documents" .....................................................................................12

1.2.19.    "Trustee" ....................................................................................................12

1.2.20.    "Twistars Contribution" .............................................................................12

1.2.21.    "Twistars Settling Insurers" .......................................................................13

1.2.22.    "USOPC Contribution" ..............................................................................13

Article II. INTERPRETATION ...........................................................................................13

2.1    Bankruptcy Code Section 102 ...........................................................................13

2.2    Undefined Terms ...............................................................................................13

2.3    Plan Definitions Control ....................................................................................13

2.4    Include and Including ........................................................................................13

2.5    Plural and Singular Terms .................................................................................13

2.6    References to Court Filings ................................................................................13

2.7    Inclusion of Amended Agreements ....................................................................13

2.8    Exhibits .............................................................................................................13

2.9    Herein/Hereof/Hereto ........................................................................................13

2.10    Headings ............................................................................................................13

2.11    No Admissions ...................................................................................................13

2.12    Computation of Time .........................................................................................14

2.13    Merger ...............................................................................................................14

Article III. MEANS OF FUNDING THE PLAN ................................................................14

3.1    Abuse Claims, Indemnification Claims, the USOPC Claim, and the FCR Claim.............14

    3.1.1.    Settlement Election ........................................................................14

    3.1.2.    Litigation Election .........................................................................15

3.2    Claims Other Than Abuse Claims, Indemnification Claims, and the USOPC Claim..................................................................................................15

3.3    Discharge ........................................................................................15

3.4    Applicability Of Plan Provisions ..................................................................15

Article IV. TREATMENT OF UNCLASSIFIED CLAIMS ........................................................15

4.1    Administrative Claims ..............................................................................15

4.2    Professional Claims. ...............................................................................16

    4.2.1.    Bar Dates for Professional Claims .......................................................16

    4.2.2.    Objections to Professional Claims .......................................................16

4.3    U.S. Trustee Fees ..................................................................................16

4.4    Priority Tax Claims ................................................................................16

Article V. CLASSIFICATION OF CLAIMS ...................................................................17

5.1    Classification of Claims ............................................................................17

5.2    Treatment in Complete Satisfaction ..................................................................17

Article VI. TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS .................................................18

6.1    Class 1: Other Priority Claims. .....................................................................18

    6.1.1.    Impairment and Voting ....................................................................18

    6.1.2.    Treatment .................................................................................18

6.2    Class 2: PNC Bank Claim. ............................................................................18

    6.2.1.    Impairment and Voting ....................................................................18

    6.2.2.    Treatment .................................................................................18

6.3    Class 3: Sharp Claim. ...............................................................................18

    6.3.1.    Impairment and Voting ....................................................................18

      6.3.2.    Treatment ..............................................................................................18

6.4    Class 4: General Unsecured Convenience Claims..................................................18

      6.4.1.    Impairment and Voting ........................................................................18

      6.4.2.    Treatment ..............................................................................................18

Article VII. TREATMENT OF IMPAIRED CLASSES OF CLAIMS ..........................................19

7.1    Class 5: General Unsecured Claims........................................................................19

      7.1.1.    Impaired and Voting ............................................................................19

      7.1.2.    Treatment ..............................................................................................19

7.2    Class 6: Abuse Claims. ...........................................................................................19

      7.2.1.    Impaired and Voting ............................................................................19

      7.2.2.    Election ................................................................................................19

      7.2.3.    Class 6 Treatment Under Settlement Election ....................................19

      7.2.4.    Class 6 Treatment Under Litigation Election .....................................19

7.3    Class 7: Personal Injury Claim. ..............................................................................20

      7.3.1.    Impaired and Voting ............................................................................20

      7.3.2.    Treatment ..............................................................................................20

7.4    Class 8: USOPC Claim. ..........................................................................................21

      7.4.1.    Impairment and Voting ........................................................................21

      7.4.2.    Treatment ..............................................................................................21

      7.4.3.    Treatment Under Litigation Election ..................................................21

7.5    Class 9: Indemnification Claims. ............................................................................21

      7.5.1.    Impairment and Voting ........................................................................21

      7.5.2.    Treatment Under Settlement Election..................................................21

      7.5.3.    Treatment Under Litigation Election ..................................................21

7.6    Class 10: Future Claimants Representative Claim (Only In The Event Of A
Settlement Election)................................................................................................22

7.6.1.    Impaired and Voting ...................................................................22

7.6.2.    Treatment Under Settlement Election...........................................22

7.7    Class 11: Sexual Abuse Claims Filed After The Bar Date (Only In The Event Of A Litigation Election). ..................................................................22

7.7.1.    Impaired and Voting ...................................................................22

7.7.2.    Treatment Under the Litigation Election .......................................22

Article VIII. ACCEPTANCE OR REJECTION OF PLAN ..........................................22

8.1    Impaired Classes to Vote .........................................................................22

8.2    Acceptance by Class of Creditors ............................................................23

ARTICLES APPLICABLE TO SETTLEMENT ELECTION ONLY ............................23

Article IX. TRUST FUNDING AND FORMATION ...................................................23

9.1    Resolution of the Insurance Coverage Adversary Proceeding as to the CGL Settling Insurers ......................................................................................23

9.2    The CGL Settling Insurers' Payments. .....................................................23

9.2.1.    Insurance Settlement Amount........................................................23

9.2.2.    Plan Payment ...............................................................................23

9.3    Trust Formation and Funding. ..................................................................24

9.3.1.    Trust Purpose ...............................................................................24

9.3.2.    Funding of Trust ...........................................................................24

9.3.3.    Payment of Professional Fees .......................................................24

9.4    Approval of Settlement ............................................................................24

9.5    Future Claimant Reserve ..........................................................................24

9.6    Closing ....................................................................................................24

9.7    Obligations of the Reorganized Debtor .....................................................25

Article X. TRUST ..................................................................................................25

10.1    Establishment of Trust ............................................................................25

10.2    Trust Funding .................................................................................................25

10.3    Appointment of the Trustee ............................................................................25

10.4    Tax Matters .....................................................................................................25

10.5    Cooperation by the Debtor and Reorganized Debtor ......................................26

10.6    Objections to Channeled Claims .....................................................................26

10.7    Trust Indemnification Obligations ..................................................................26

Article XI. LIQUIDATION AND PAYMENT OF CHANNELED CLAIMS ...........................26

11.1    Liquidation and Resolution of Channeled Claims. ..........................................26

        11.1.1.    Resolution and Payment of Channeled Claims ..............................26

        11.1.2.    Conditions to Payment of Abuse Claims and FCR Claims ..............26

        11.1.3.    Trust Documents May Not Modify The Plan ..................................27

11.2    Effect of No Award on Channeled Claims .......................................................27

11.3    Treatment of Attorneys' Fees and Costs of Channeled Claimants ...................27

11.4    Withdrawal of Channeled Claims ....................................................................27

11.5    Supplementing Exhibit C to Add Participating Parties .....................................27

        11.5.1.    Participating Party Agreement .......................................................27

        11.5.2.    Rights of Additional Participating Parties ......................................27

        11.5.3.    Retention of Jurisdiction ...............................................................28

11.6    Supplementing Exhibit C to add Settling Insurers ...........................................28

        11.6.1.    Additional Settling Insurers ..........................................................28

        11.6.2.    Rights of Additional Settling Insurers ...........................................28

        11.6.3.    Retention of Jurisdiction ...............................................................28

11.7    Future Claimant Process .................................................................................28

11.8    Special Distribution Conditions. .....................................................................28

        11.8.1.    No Reporting Obligations ..............................................................28

11.8.2.   Certification of Reports ....................................................... 29

11.8.3.   Rejected or Non-Compliant Reports ...................................... 29

11.8.4.   Reporting Agent Obligations ................................................ 30

11.8.5.   Duration of Reporting Agent Obligations ............................. 30

11.8.6.   Prophylactic Measures ........................................................ 30

11.8.7.   Corrections of Reports ........................................................ 30

11.8.8.   Medicare Reporting Number ................................................ 31

11.8.9.   Payment from the Trust ....................................................... 31

11.8.10.  Indemnification .................................................................. 31

11.8.11.  Medicare Holdback ............................................................ 31

Article XII. CHANNELING INJUNCTION .............................................................. 32

12.1   Effective Date Injunctions .................................................................... 32

12.2   Channeling Injunction Preventing Prosecution of Abuse Claims ............... 32

12.2.1.   SCOPE OF CHANNELING INJUNCTION ........................ 33

12.2.2.   ENFORCEMENT TO THE MAXIMUM EXTENT ............... 34

12.3   SETTLING INSURER INJUNCTION ................................................... 34

12.4   TERM OF INJUNCTIONS OR STAYS AND CONFIRMATION OF
       SETTLEMENTS WITH PARTICIPATING PARTIES AND SETTLING
       INSURERS .......................................................................................... 34

12.5   RELEASE OF AVOIDANCE CLAIMS AGAINST PARTICIPATING
       PARTIES, NON-DEBTOR CGL SETTLING INSURER PERSONS, AND
       SETTLING INSURERS ........................................................................ 35

12.6   MUTUAL RELEASE ........................................................................... 35

Article XIII. SETTLEMENT ELECTION INSURANCE NEUTRALITY ................... 35

13.1   No Modification of Insurance Policies of Non-Settling Insurers ................ 35

13.2   Non-Settling Insurers' Duties Not Impaired ........................................... 35

13.3   Obligations for Claims .......................................................................... 35

13.4    Direct Actions ..................................................................................................35

13.5    Defenses of the Debtor, the Estate, and the Reorganized Debtor .......................36

13.6    Governing Law ...................................................................................................36

ARTICLES APPLICABLE TO LITIGATION ELECTION ONLY ...........................................36

Article XIV. LITIGATION ELECTION IMPLEMENTATION ...........................................36

14.1    Lifting of Automatic Stay and Stay Imposed Under the 105 Order ....................36

14.2    Post-Effective Date Awards.................................................................................36

14.3    Cooperation with Insurers in Defense of Claims .................................................36

14.4    Remand of Removed Actions and Relief from Automatic Stay/Discharge ..................36

14.5    Obligations of the Reorganized Debtor ...............................................................37

Article XV. LITIGATION ELECTION INSURANCE NEUTRALITY .....................................37

15.1    No Modification of Insurance Policies .................................................................37

15.2    Insurers' Obligations Not Impaired .....................................................................37

15.3    Insurers' Duties Not Impaired .............................................................................37

15.4    Insurers' Rights Under Insurance Policies............................................................37

15.5    Additional Insureds' Rights ................................................................................38

15.6    Insurers' Obligations for Claims..........................................................................38

15.7    Direct Actions .....................................................................................................38

15.8    Insurers' Defenses ...............................................................................................38

15.9    Defenses ...............................................................................................................38

15.10   Governing Law ....................................................................................................38

GENERALLY APPLICABLE ARTICLES .........................................................................38

Article XVI. CLAIMS AND DISTRIBUTIONS ................................................................38

16.1    Lift of Automatic Stay for Personal Injury Claim ...............................................38

16.2    Objections to Claims other than Abuse Claims, the Personal Injury Claim, the
        USOPC Claim, Indemnification Claims, and the FCR Claim ............................39

16.3     Service of Objections ................................................................................................39

16.4     Additional Documentation ........................................................................................39

16.5     Provisions Governing Distribution To Holders of Allowed Claims..................................39

    16.5.1.   Distribution Only to Holders of Allowed Claims ................................................39

    16.5.2.   Timing of Distributions ..........................................................................40

    16.5.3.   Waiver of Distribution ...........................................................................40

    16.5.4.   Form of Distributions.............................................................................40

    16.5.5.   No Professional Fees or Expenses ............................................................40

16.6     No Distributions Pending Allowance .........................................................................40

16.7     Claim Estimation ....................................................................................................40

16.8     Setoffs ................................................................................................................41

16.9     No Interest on Claims .............................................................................................41

16.10    Withholding Taxes .................................................................................................41

16.11    No De Minimis Distributions ...................................................................................41

16.12    Manner of Cash Payments .......................................................................................41

Article XVII. LITIGATION .................................................................................................41

17.1     Reorganized Debtor's Retention of Litigation..............................................................41

17.2     Additional Actions .................................................................................................42

Article XVIII. CONDITIONS PRECEDENT .........................................................................42

18.1     Conditions to Effectiveness .....................................................................................42

    18.1.1.   Conditions to Effectiveness if Class 6 Makes the Settlement Election ...............42

    18.1.2.   Conditions to Effectiveness if Class 6 Makes the Litigation Election ...............42

18.2     Waiver of Conditions .............................................................................................42

18.3     Statement.............................................................................................................42

18.4     Non-Occurrence of Effective Date ............................................................................42

Article XIX. EFFECTS OF PLAN CONFIRMATION AND DISCHARGE ............................... 43

19.1    Discharge .................................................................................................................. 43

      19.1.1.    Source of Payment in the Event Class 6 Makes the Litigation Election ........... 43

19.2    Vesting of Assets ...................................................................................................... 43

19.3    Continued Existence of Reorganized Debtor ............................................................ 43

19.4    Exculpation and Limitation of Liability ................................................................... 44

Article XX. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .. 44

20.1    Assumed Employee Benefit Plans ............................................................................ 44

20.2    General; Assumed if Not Rejected ........................................................................... 44

20.3    Claims for Contract Rejection .................................................................................. 45

Article XXI. NON-MONETARY COMMITMENTS .................................................................. 45

21.1    Commitment to Athlete Safety ................................................................................. 45

Article XXII. MISCELLANEOUS PROVISIONS ..................................................................... 47

22.1    Retention of Jurisdiction .......................................................................................... 47

22.2    Modification of Plan ................................................................................................. 47

22.3    Post-Confirmation Court Approval ........................................................................... 47

22.4    Election Pursuant to Section 1129(b) of the Bankruptcy Code ................................. 48

22.5    Closing of the Chapter 11 Case ................................................................................ 48

22.6    Dissolution of the Survivors' Committee .................................................................. 48

22.7    Termination of the Appointment of the FCR ............................................................ 48

22.8    Notices ..................................................................................................................... 49

22.9    Notices to Claimants ................................................................................................ 49

22.10   Consummation of the Plan ........................................................................................ 49

22.11   Severability .............................................................................................................. 50

22.12   Headings ................................................................................................................... 50

22.13  Exemption from Transfer Taxes ..................................................................................50

22.14  Waivers ......................................................................................................................50

22.15  Setoffs, Recoupments, and Defenses ..........................................................................50

22.16  Withdrawal or Revocation of the Plan ........................................................................50

22.17  Default ........................................................................................................................51

22.18  Governing Law ...........................................................................................................51

22.19  Reservation of Rights .................................................................................................51

22.20  Successors and Assigns ..............................................................................................51

22.21  Direction to a Party ....................................................................................................51

22.22  Certain Actions ..........................................................................................................51

22.23  Rounding of Fractional Numbers ...............................................................................51

22.24  Saturday, Sunday, or Legal Holiday ...........................................................................51

22.25  Exhibits ......................................................................................................................52

Article XXIII. CONFIRMATION REQUEST ........................................................................52

23.1  Request for Confirmation ...........................................................................................52

## TABLE OF EXHIBITS

**EXHIBIT A** – Indemnification Claims

**EXHIBIT B** – Participating Parties

**EXHIBIT C** – Settling Insurers

**EXHIBIT D** – Trust Agreement

USA Gymnastics ("**USAG**" or the "**Debtor**") proposes the following Plan pursuant to the provisions of chapter 11 of the Bankruptcy Code. The Debtor will separately file the Disclosure Statement for the Chapter 11 Plan of Reorganization Proposed by USA Gymnastics (the "**Disclosure Statement**").

Subject to the provisions of Section 1127 of the Bankruptcy Code, the Debtor reserves the right to amend, alter, or modify the Plan one or more times before confirmation and/or substantial consummation.

# INTRODUCTORY ARTICLES

## ARTICLE I.  DEFINITIONS

For the purposes of the Plan, all capitalized terms not otherwise defined in the Plan shall have the meanings ascribed to them below or in the Bankruptcy Code or Bankruptcy Rules, as applicable:

**1.1    General Definitions.**

**1.1.1.    "105 Order"** means the Agreed Stipulation And Order Pursuant To 11 U.S.C. §105 Enjoining The Continued Prosecution Of Certain Pre-Petition Lawsuits [Dkt. 426], entered by the Bankruptcy Court on April 22, 2019.

**1.1.2.    "Abuse Claims"** means Sexual Abuse Claims and Non-Sexual Abuse Claims.

**1.1.3.    "Abuse Claimant"** means the Holder of an Abuse Claim.

**1.1.4.    "Administrative Claim"** means a claim for costs and expenses of administration that is allowable and entitled to priority under Sections 503, 507(a)(2), or 507(b) of the Bankruptcy Code, including any post-petition tax claims, any actual and necessary expenses of preserving the Estate, any actual and necessary expenses of operating the business of the Debtor, all Professional Claims, and any fees or charges assessed against the Estate under 28 U.S.C. § 1930.

**1.1.5.    "Administrative Claimant"** means the Holder of an Administrative Claim.

**1.1.6.    "Allowance Date"** means, with respect to a Claim, the date such Claim becomes Allowed.

**1.1.7.    "Allowed"** means, (a) any Claim against the Debtor that has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and which is not disputed or contingent, and for which no contrary proof of claim has been filed; (b) any timely filed Claim as to which no objection to allowance has been interposed in accordance with Section 16.2 hereof or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder; or (c) any Claim expressly allowed by a Final Order or hereunder.

**1.1.8.** **"Assets"** means, collectively, any and all property of the Debtor or the Estate, respectively, of every kind and character, wherever located, whether real or personal, tangible or intangible, and specifically including Cash and Causes of Action.

**1.1.9.** **"Avoidance Rights"** means those rights that may be asserted by the Debtor, as debtor in possession, to avoid and recover transfers, liens, or obligations, described in Sections 544, 545, 546, 547, 548, 549, 550, 551, 552, and 553 of the Bankruptcy Code, and any other actions provided for under applicable law that allow a debtor in possession or trustee to avoid certain transfers.

**1.1.10.** **"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code.

**1.1.11.** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of Indiana.

**1.1.12.** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075, as amended, and the local rules and general orders of the Bankruptcy Court, as applicable to the Chapter 11 Case, together with all amendments and modifications thereto.

**1.1.13.** **"Bar Date"** means April 29, 2019, the date set by the Bar Date Order for the filing of Sexual Abuse Claims and General Unsecured Claims.

**1.1.14.** **"Bar Date Order"** means the Order Approving Debtor's Motion For Order Establishing Deadlines For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof [Dkt. 301], entered by the Bankruptcy Court on February 25, 2019, as modified by the Order Granting Debtor's Motion For Clarification Of Bar Date Order [Dkt. 417], entered by the Bankruptcy Court on April 16, 2019.

**1.1.15.** **"Business Day"** means any day other than Saturday, Sunday, or a "legal holiday", as that term is defined in Bankruptcy Rule 9006(a).

**1.1.16.** **"Cash"** means cash, cash equivalents, bank deposits, and negotiable instruments payable on demand.

**1.1.17.** **"Causes of Action"** means any and all Claims, demands, rights, actions, causes of action, and suits of the Debtor or the Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, matured or unmatured, whether arising prior to, on, or after the Petition Date, in contract or in tort, at law or in equity, or under any other theory of law, including (a) rights of setoff, counterclaim, or recoupment, and Claims on contracts or for breaches of duties imposed by law; (b) the right to object to Claims; (c) Claims pursuant to Section 362 of the Bankruptcy Code; (d) such Claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress, and usury; (e) all Avoidance Rights; (f) all Claims in or related to the Insurance Adversary Proceeding; (g) Insurance Reimbursement Claims; (h) Claims for tax refunds; and (i) any other Claims which may be asserted against third parties or insiders.

**1.1.18.** **"CGL Insurance Coverage"** means any insurance that is available under any CGL Insurance Policy, whether known or unknown to the Debtor, that provides indemnification to: (a) the Debtor or any Person that is a Related Person to the Debtor for any reason or that provides reimbursement for any costs and expenses incurred by the Debtor or any Related Person; or (b) a Participating Party or any Person that is a Related Person to a Participating Party; *provided, however,* CGL Insurance Coverage excludes any agreement or contract providing reinsurance to a CGL Settling Insurer.

**1.1.19.** **"CGL Insurance Policy"** means a policy of primary or excess comprehensive general liability insurance that during any period of time provided CGL Insurance Coverage to the Debtor, its predecessors, successors, or assigns, or any Persons that are Related Persons to the Debtor.

**1.1.20.** **"CGL Insurer"** means (a) any Person that during any period of time either (i) provided CGL Insurance Coverage to the Debtor and/or a Participating Party, or their predecessors, successors, or assigns, or (ii) issued a CGL Insurance Policy to the Debtor, its predecessors, successors, or assigns; and (b) any Person owing a duty to defend and/or indemnify the Debtor under any CGL Insurance Policy.

**1.1.21.** **"Chapter 11 Case"** means the case under Chapter 11 of the Bankruptcy Code commenced by USA Gymnastics on December 5, 2018 in the Bankruptcy Court, Case No. 18-09108-RLM-11.

**1.1.22.** **"Claim"** means any past, present, or future claim, demand, action, request, formal or informal subpoena, cause of action, suit, proceeding, or liability of any kind or nature whatsoever, whether at law or equity, known or unknown, actual or alleged, asserted or not asserted, suspected or not suspected, anticipated or unanticipated, accrued or not accrued, fixed or contingent, which has been or may be asserted by or on behalf of any Person, whether seeking damages (including compensatory, punitive, or exemplary damages) or equitable, mandatory, injunctive, or any other type of relief, including cross-claims, counterclaims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, actions, rights, causes of action or orders, and any other claim within the definition of "claim" in Section 101(5) of the Bankruptcy Code.

**1.1.22.** **"Claims Agent"** means Omni Agent Solutions, Inc., the Court appointed Claims and Noticing Agent.

**1.1.23.** **"Claimant"** means a Holder of a Claim.

**1.1.24.** **"Class"** means a class of Claims as classified under the Plan.

**1.1.25.** **"Co-Defendant"** means a Person that is named as a defendant in a lawsuit in which the Debtor is also named as a defendant, and/or who is alleged to be fully or partially responsible for a Claim asserted, or which may be asserted in the future, against both such Person and the Debtor, including co-debtors as described in Section 509 of the Bankruptcy Code.

**1.1.26.** **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order.

**1.1.27. "Confirmation Hearing"** means the hearing held by the Bankruptcy Court regarding confirmation of the Plan, as such may be continued from time to time.

**1.1.28. "Confirmation Order"** means an order issued by the Bankruptcy Court confirming the Plan.

**1.1.29. "Creditor"** has the meaning ascribed to the term in Section 101(10) of the Bankruptcy Code.

**1.1.30. "Debtor"** means USA Gymnastics, a 501(c)(3) not-for-profit organization incorporated in Texas.

**1.1.31. "Debtor's Professionals"** means Jenner & Block LLP, Miller Johnson P.L.C., Plews Shadley Racher & Braun LLP, APCO Worldwide LLC, Barnes & Thornburg LLP, BDO USA, LLP, Hilder & Associates, P.C., Pierce Atwood LLP, White & Amundson, P.C., Zuckerman Spaeder LLP, and all other professionals, if any, which the Debtor has retained or may retain to provide professional services in accordance with Sections 327(a), 327(b), and 327(e) of the Bankruptcy Code.

**1.1.32. "Disclosure Statement"** means the Disclosure Statement relating to this Plan, as it may be amended from time to time.

**1.1.33. "Disputed Claim"** means a Claim as to which a proof of Claim is filed or is deemed filed under Bankruptcy Rule 3003(b)(1); and as to which an objection: (a) has been timely filed; and (b) has neither been overruled nor denied by a Final Order and has not been withdrawn.

**1.1.34. "Distribution"** means any transfer of Cash or other property or instruments to a Claimant pursuant to the Plan.

**1.1.35. "District Court"** means the United States District Court for the Southern District of Indiana**.**

**1.1.36. "Effective Date"** means the first Business Day after the Confirmation Date upon which: (a) the conditions in Section 18.1 of the Plan have been satisfied or waived; and (b) no stay of the Confirmation Order is in effect.

**1.1.37. "Estate"** means the estate created in this Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code.

**1.1.38. "Estimated Amount"** means the amount at which the Bankruptcy Court, pursuant to Section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a), estimates any Claim.

**1.1.39. "Exculpated Parties"** means the Debtor, the Reorganized Debtor, the Debtor's Professionals, the FCR, and the FCR's Professionals, and each of their respective Related Persons. In the event Class 6 makes the Settlement Election, "Exculpated Parties" will also include the Survivors' Committee, the Survivors' Committee's Professionals, the Settling Insurers, the Participating Parties, and their respective Related Persons.

4

**1.1.40.** **"Final Decree"** means the decree contemplated under Bankruptcy Rule 3022.

**1.1.41.** **"Final Order"** means an order, judgment, or other decree (including any modification or amendment thereof) of the Bankruptcy Court, the District Court, or any other court having jurisdiction that remains in effect and has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired or, if such appeal or review has been taken, it has been resolved and no longer remains pending.

**1.1.42.** **"Future Claim"** means a Claim by a Future Claimant.

**1.1.43.** **"Future Claimant"** means a Person who (a) held a Sexual Abuse Claim against the Debtor as of the Bar Date; and (b) meets one of the following criteria: (i) was under the age of majority under applicable state law as of March 1, 2019; (ii) as of March 1, 2019, the statute of limitations for such Person was tolled under applicable state law or had not begun to run under applicable state law; (iii) as of March 1, 2019, the Debtor was estopped under applicable state law from asserting the statute of limitations; or (iv) such Person's Sexual Abuse Claim was barred by the applicable statute of limitations as of March 1, 2019, but is or becomes no longer barred by the applicable statute of limitations for any reason, including the enactment of legislation that revives such claims; *provided, however*, that the following persons are not Future Claimants: any Person who has, at any time before the Bar Date, asserted a claim against, asserted a cause of action against, provided notice to, or made a demand to or against the Debtor, arising out of or relating to Sexual Abuse or whose parent or guardian or other legal representative had done so on behalf of such Person.

**1.1.44.** **"FCR"** means Fred Caruso, appointed pursuant to the Order Authorizing Appointment of Future Claimants' Representative and Appointing Fred C. Caruso as Future Claimants' Representative [Dkt. 516], entered by the Bankruptcy Court on May 17, 2019, and any successor or such other person appointed by the Bankruptcy Court or otherwise.

**1.1.45.** **"FCR Claim"** means the Claim of the FCR on behalf of Future Claimants.

**1.1.46.** **"FCR's Professionals"** means Development Specialists, Inc., FrankGecker LLP, and all other professionals, if any, which the FCR has retained or may retain to provide professional services in accordance with the Bankruptcy Code and as approved by the Bankruptcy Court.

**1.1.47.** **"General Unsecured Claim"** means any Claim against the Debtor that is not an Abuse Claim, Personal Injury Claim, USOPC Claim, the FCR Claim, Indemnification Claim, Administrative Claim, Priority Tax Claim, Other Priority Claim, or a Claim that is otherwise classified under the Plan.

**1.1.48.** **"General Unsecured Convenience Claim"** means any General Unsecured Claim in an amount of $500 or less, or voluntarily reduced to $500 by the Holder of such Claim.

**1.1.49.** **"Holder"** means the legal or beneficial holder of any Claim or Interest.

**1.1.50.** **"Impaired"** has the meaning provided in Bankruptcy Code Section 1124.

**1.1.51. "Indemnification Claim"** means any Person's Claim against the Debtor for contribution, indemnity, or reimbursement arising as a result of such Person having paid or defended against any Claim and any Claim for future amounts to be paid defending against or paying a Claim. The Claims listed on Exhibit A are Indemnification Claims.

**1.1.52. "Insurance Coverage"** means any insurance that is available under any CGL Insurance Policy, Personal Injury Policy or Other Insurance Policy, whether known or unknown to the Debtor, that provides indemnification to: (a) the Debtor or any Person that is a Related Person to the Debtor for any reason or that provides reimbursement for any costs and expenses incurred by the Debtor or any Related Person; or (b) a Participating Party or any Person that is a Related Person to a Participating Party; *provided, however,* Insurance Coverage excludes any agreement or contract providing reinsurance to a CGL Settling Insurer.

**1.1.53. "Insurance Coverage Adversary Proceeding"** means the Adversary Proceeding against Ace American Insurance Company, Great American Insurance Company, Liberty Insurance Underwriters, Inc., National Casualty Company, RSUI Indemnity Company, TIG Insurance Company, Virginia Surety Company, Inc., Western World Insurance Company, Endurance American Insurance Company, American Home Assurance Company, Doe Insurers, and any party that is added in the Adversary Proceeding, before the Bankruptcy Court and captioned as Adversary Proceeding 19-50012.

**1.1.54. "Insurance Policy"** means any CGL Insurance Policy or Other Insurance Policy.

**1.1.55. "Insurance Reimbursement Claims"** means any Claims of the Debtor, the Estate, or the Reorganized Debtor against the Insurers for reimbursement of fees and costs incurred in defense of any Claim or all Claims insured under the Insurance Policies, including the Claim for recovery of the Debtor's fees and costs incurred in the Chapter 11 Case.

**1.1.56. "Insurer"** means a CGL Insurer, the Personal Injury Insurer, or an Other Insurer.

**1.1.57. "Litigation Election"** means the election made by Class 6 to litigate the Abuse Claims pursuant to the terms of this Plan.

**1.1.58. "Medicare Beneficiary"** means any Abuse Claimant or Future Claimant who is a citizen or resident of the United States and whose Claim indicates that he or she was abused, in whole or in part, after December 5, 1980.

**1.1.59. "Medicare Claims"** means any and all Claims relating to Abuse Claims or Future Claims by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA and pursuing Claims under the MSP, including Claims for reimbursement of payments made to Abuse Claimants or Future Claimants who recover or receive any distribution from the Trust and Claims relating to reporting obligations.

**1.1.60. "Medicare Trust Fund"** means a U.S. Treasury-held trust fund account from which Medicare is funded or from which Medicare disbursements are paid, including the Hospital Insurance Trust Fund and the Supplementary Medical Insurance (SMI) Trust Fund.

**1.1.61.** **"MMSEA"** means § 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173), which imposes reporting obligations on those Persons with payment obligations under the MSP.

**1.1.62.** **"MSP"** means the Medicare Secondary Payer Act, codified at 42 U.S.C. § 1395y *et seq.*, or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto.

**1.1.63.** **"Non-Sexual Abuse Claims"** means General Unsecured Claim No. 312 and Sexual Abuse Claim No. 165.

**1.1.64.** **"Other Insurance Coverage"** means any insurance that is available under any Other Insurance Policy, whether known or unknown to the Debtor, that provides indemnification to: (a) the Debtor or any Person that is a Related Person to the Debtor for any reason or that provides reimbursement for any costs and expenses incurred by the Debtor or any Related Person; or (b) a Participating Party or any Person that is a Related Person to a Participating Party.

**1.1.65.** **"Other Insurance Policy"** means any policy of insurance other than the CGL Insurance Policies including directors' and officers' insurance, that during any period of time provided Other Insurance Coverage to the Debtor, its predecessors, successors, or assigns, or any Persons that are Related Persons to the Debtor.

**1.1.66.** **"Other Insurers"** means (a) any Person that during any period of time either (i) provided Other Insurance Coverage to the Debtor and/or a Participating Party, or their predecessors, successors, or assigns, or (ii) issued an Other Insurance Policy to the Debtor, its predecessors, successors, or assigns; and (b) any Person owing a duty to defend and/or indemnify the Debtor under any Other Insurance Policy.

**1.1.67.** **"Other Priority Claim"** means a Priority Claim that is not a Priority Tax Claim.

**1.1.68.** **"Outstanding Amount"** shall have the meaning ascribed to it in Section 9.2.1.

**1.1.69.** **"Person"** means any individual or entity, including any corporation, limited liability company, partnership, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, proprietorship, association, joint stock company, joint venture, estate, trust, trustee, personal executor or personal representative, unincorporated association, or other entity, including any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof and any other individual or entity within the definition of (a) "person" in section 101(41) of the Bankruptcy Code; or (b) "entity" in section 101(15) of the Bankruptcy Code.

**1.1.70.** **"Personal Injury Claim"** means General Unsecured Claim No. 251.

**1.1.71.** **"Personal Injury Claimant"** means the Holder of the Personal Injury Claim.

**1.1.72.** **"Personal Injury Coverage"** means any insurance that is available under the Personal Injury Insurance Policy for the Personal Injury Claim.

**1.1.73. "Personal Injury Insurer"** means National Casualty Company and Mutual of Omaha Insurance Company.

**1.1.74. "Personal Injury Insurance Policy"** means: (a) a general liability primary policy sold by National Casualty with policy number KRO0000006492900 and an effective period of August 1, 2016 to August 1, 2017 and an excess policy sold by National Casualty Company with Policy Number XKO0000006519400 and an effective period of August 1, 2016 to August 1, 2017; and (b) insurance policies sold by Mutual of Omaha Insurance Company with policy number SB21CCIN-P-050607 effective August 1, 2016 to August 1, 2018; and policy number SR2014IN-P-051257 effective August 1, 2016 to August 1, 2017.

**1.1.75. "Petition Date"** means December 5, 2018, the date on which the Debtor commenced the Chapter 11 Case.

**1.1.76. "Plan"** means the Chapter 11 plan of reorganization, either in its present form or as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

**1.1.77. "Plan Documents"** means all agreements, documents, and exhibits, as the same may be amended, modified, supplemented, or restated from time to time, that are necessary or appropriate to implement the Plan.

**1.1.78. "PNC Bank"** means PNC Financial Services Group d/b/a PNC Bank, N.A.

**1.1.79. "PNC Bank Claim"** means the Claim of PNC Bank listed by the Debtor on the Schedules.

**1.1.80. "Post-Effective Date Award"** means a judgment entered after the Effective Date in favor of an Abuse Claimant or the Personal Injury Claimant, or a settlement between an Abuse Claimant or the Personal Injury Claimant, and a CGL Insurer or Personal Injury Insurer that is made following the Effective Date.

**1.1.81. "Post-Effective Date Litigation"** means litigation brought or continued by an Abuse Claimant or the Personal Injury Claimant, commenced or continued after the Effective Date of the Plan.

**1.1.82. "Pre-Petition Lawsuit"** means a lawsuit brought by an Abuse Claimant prior to December 5, 2018.

**1.1.83. "Priority Claim"** means any Claim which, if Allowed, would be entitled to priority under Section 507 of the Bankruptcy Code.

**1.1.84. "Priority Claimant"** means the Holder of a Priority Claim.

**1.1.85. "Priority Tax Claim"** means a claim of a governmental unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

**1.1.86. "Professional"** means any professional employed or to be compensated pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

**1.1.87. "Professional Claim"** means a claim for compensation for services and/or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Chapter 11 case.

**1.1.88. "Professional Claims Bar Date"** means (a) forty-five (45) days after a notice of the Effective Date is filed with the Bankruptcy Court and served on such Professional or other Persons; or (b) such later date as the Bankruptcy Court shall order upon application made prior to the end of such 45-day period.

**1.1.89. "Pro Rata"** means, with respect to any distribution on account of any Allowed Claim in any Class, the ratio of (a) the amount of such Allowed Claim to (b) the sum of (i) all Allowed Claims in such Class and (ii) the aggregate maximum of all Allowed Claims in such Class.

**1.1.90. "Related Person"** means, with respect to any Person, such Person's predecessors, successors, assigns, and present and former shareholders, affiliates, subsidiaries, employees, agents, officers, directors, trustees, partners, attorneys, financial advisors, accountants, and consultants, each in their capacities solely as such; *provided, however,* that no Person shall be a Related Person if such Person personally committed an act of Sexual Abuse that resulted in a Claim against the Debtor or a Participating Party.

**1.1.91. "Reorganized Debtor"** means USA Gymnastics, on and after the Effective Date.

**1.1.92. "Revested Assets"** means all assets and property, real or personal, owned by the Debtor that shall be revested in the Reorganized Debtor, pursuant to Sections 1141(b) and 1123(a)(5) of the Bankruptcy Code, on the Effective Date.

**1.1.93. "Schedules"** means the Schedules of Assets and Liabilities and Statement of Financial Affairs of the Debtor, as amended, filed pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, including any supplements or amendments thereto through the Confirmation Date [Dkts. 205, 206, 218, 219, 220, 242, 337, 474].

**1.1.94. "Settlement Election"** means the election made by Class 6 to settle the Abuse Claims pursuant to the terms of this Plan.

**1.1.95. "Sexual Abuse"** means any and all acts or omissions that the Debtor may be legally responsible for that arise out of, are based upon, or involve sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault and/or battery, rape, pedophilia, ephebophilia, or sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation, or any other sexual misconduct or injury, or contacts or interactions of a sexual nature between an adult or child and a medical professional, coach, trainer, therapist, volunteer, or other authority figure affiliated with the Debtor, or any current or former employee or volunteer of the Debtor, or any other person for whose acts or failures the Debtor is or was allegedly responsible, or the alleged failure by the Debtor or its agents,

employees, or volunteers to report the same. An adult or child may have been sexually abused whether or not this activity involved explicit force, whether or not this activity involved genital or other physical contact, and whether or not there was physical, psychological, or emotional harm to the adult or child.

**1.1.96. "Sexual Abuse Claim"** means a Claim arising out of Sexual Abuse.

**1.1.97. "Sharp Claim"** means the secured Claim of Sharp Business Systems, as assigned to Wells Fargo Financial Leasing, Inc.

**1.1.98. "Survivors' Committee"** means the Additional Tort Claimants Committee Of Sexual Abuse Survivors, appointed by the U.S. Trustee on December 19, 2018.

**1.1.99. "Survivors' Committee's Professionals"** means Pachulski Stang Ziehl & Jones LLP, Rubin & Levin, P.C., and all other professionals, if any, which the Survivors' Committee has retained or may retain to provide professional services in accordance with Section 1103(a) of the Bankruptcy Code and as approved by the Bankruptcy Court.

**1.1.1. "Undeliverable Distribution"** means a Distribution that was returned to the Reorganized Debtor as undeliverable, and which shall be deemed an Undeliverable Distribution on the date that such Distribution was returned.

**1.1.2. "U.S. Trustee"** means the Office of the United States Trustee for Region 11, which includes the Southern District of Indiana.

**1.1.3. "USOPC"** means the United States Olympic and Paralympic Committee.

**1.1.4. "USOPC Claim"** means the claims for indemnification and contribution in General Unsecured Claim No. 299.

## 1.2    Definitions Applicable In The Event Of A Class 6 Settlement Election.

**1.2.1. "CGL Settling Insurer"** means a Settling Insurer that is a CGL Insurer.

**1.2.2. "CGL Settling Insurance Policy"** means an Insurance Policy of a CGL Settling Insurer.

**1.2.3. "Channeled Claim"** means Abuse Claims, the FCR Claim, the USOPC Claim, Indemnification Claims, and/or any Claims against a Participating Party, a Non-Debtor CGL Settling Insurer Covered Person, or a Settling Insurer arising from, in connection with, or related in any way to an Abuse Claim, or any of the Settling Insurer Policies (excepting the Personal Injury Claim), whenever and wherever arising or asserted, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, including without limitation all Claims by way of direct action, subrogation, contribution, indemnity, alter ego, statutory or regulatory action, or otherwise, Claims for exemplary or punitive damages, for attorneys' fees and other expenses, or for any equitable remedy. A Channeled Claim includes any Claim against a Participating Party, a Non-Debtor CGL Settling Insurer Covered Person, or a Settling Insurer based on allegations that it is an alter ego of a Person that is not a Participating Party, Non-Debtor CGL Settling Insurer

Covered Person, or Settling Insurer or that the Participating Party's, Non-Debtor CGL Settling Insurer Covered Person's or Settling Insurer's corporate veil should be pierced on account of Claims against a Person that is not a Participating Party, Non-Debtor CGL Settling Insurer Covered Person, or Settling Insurer or based on any other theory under which the legal separateness of any Person and any other Person may be disregarded to impose liability for a claim on either such Person.

**1.2.4.    "Channeled Claimant"** means a Holder of a Channeled Claim.

**1.2.1.    "Channeling Injunction"** means the injunction provided for under Article XII of the Plan.

**1.2.2.    "Future Claimant Reserve"** means the reserve established pursuant to Section 9.5 of the Plan.

**1.2.3.    "Insurance Settlement Amount"** shall have the meaning set forth in Section 9.2.1.

**1.2.4.    "Non-Debtor CGL Settling Insurer Covered Persons"** means any Person that has or may have a Claim to Insurance Coverage under a CGL Settling Insurer Policy, including the USOPC, the National Gymnastics Foundation, All Olympia Gymnastics Center, Gedderts' Twistars Gymnastics Club USA, Twistars USA, Inc. d/b/a Gedderts' Twistars USA Gymnastics Club, Karolyi Training Camps, LLC, Karolyi's Elite, Karolyi World Gymnastics, Inc., BMK Training Facilities Ltd., BMK Partners Ltd., Artur Akopyan, Galina Marinova, John Geddert, Bela Karolyi, Marta Karolyi, Donald Peters, Rhonda Fahan, Steve Penny, Paul Parilla, Amy White, Debra Van Horn, Kathy Scanlan, and Bob Colarossi.

**1.2.5.    "Non-Participating Co-Defendant"** means a Person that is named as a defendant in a lawsuit in which the Debtor is also named as a defendant, and/or who is alleged to be fully or partially responsible for a Claim asserted, or which may be asserted in the future, against both such Person and the Debtor, including co-debtors as described in Section 509 of the Bankruptcy Code. A Participating Party, a Non-Debtor CGL Settling Insurer Covered Person, and a Settling Insurer each are not a Non-Participating Co-Defendant.

**1.2.6.    "Non-Settling Insurer"** means an Insurer that is not a CGL Settling Insurer.

**1.2.7.    "Participating Party"** means those Persons listed on <u>Exhibit B</u> to the Plan, that are providing or will provide consideration or a portion of the funding for the Plan in exchange for: (a) the release of any indemnification or contribution Claim by the Debtor against such Participating Party; (b) the benefit of the Channeling Injunction; and/or (c) any other benefits in favor of Participating Parties under the Plan. A Settling Insurer is not a Participating Party. A Participating Party shall release all of its Claims against the Debtor, the Estate, and the Reorganized Debtor, and each of their respective Related Persons.

**1.2.8.    "Participating Party Contribution"** means the consideration provided by a Participating Party, including the Twistars Contribution and the USOPC Contribution.

**1.2.9.    "Plan Payment"** shall have the meaning ascribed to it in Section 3.1.

**1.2.10. "Protected Parties"** means the Debtor, the Estate, the Reorganized Debtor, any Participating Party, any Settling Insurer, any Non-Debtor CGL Settling Insurer Covered Person, or their respective Related Persons.

**1.2.11. "Released Parties"** means: (a) the Participating Parties; (b) the Participating Parties' Related Persons; (c) a Settling Insurer; (d) a Settling Insurer's Related Persons, but only to the extent such Person's liability arises out of liabilities covered by the Insurance Policies issued by the Settling Insurer; and (e) the Non-Debtor CGL Settling Insurer Persons. The term "Released Parties" does not include any Person who personally committed an act or acts of Sexual Abuse that resulted in a Claim against the Debtor or a Participating Party.

**1.2.12. "Settling Insurer"** means (a) each of those CGL Settling Insurers and the Twistars Settling Insurers listed on <u>Exhibit C</u> to the Plan (the "Exhibit C Insurers), as the same may be amended in accordance with this Plan; and (b) such Exhibit C Insurer's predecessors, successors, and assigns, but only to the extent that: (i) such predecessor's liability was assumed by the Exhibit C Insurer to the Plan, and not independent of the liability of the Exhibit C Insurer; and (ii) such successor's or assign's liability is derivative of the liability of the Exhibit C Insurer and not independent of the liability of the Exhibit C Insurer. Pursuant and subject to Section 11.6 of the Plan, a Person may become a Settling Insurer after the Effective Date with the consent of the Trustee and the Reorganized Debtor and upon approval of the Bankruptcy Court. If the addition of such Person is approved pursuant to a Final Order, <u>Exhibit C</u> will be deemed amended to include such Person.

**1.2.13. "Settling Insurer Injunction"** means the injunctions provided in Section 12.3.

**1.2.14. "Settling Insurer Policies"** means the Insurance Policies of any CGL Settling Insurer and the insurance policies of the Twistars Settling Insurers.

**1.2.15. "Trust"** means the trust to be established pursuant to the Plan and the Trust Agreement.

**1.2.16. "Trust Agreement"** means the agreement attached as <u>Exhibit D</u> to the Plan.

**1.2.17. "Trust Assets"** means all property funded to the Trust pursuant to Section 10.2 of the Plan.

**1.2.18. "Trust Documents"** means Trust Agreement and all other instruments and other documents that are reasonably necessary or desirable in order to implement the provisions of the Plan that relate to the creation, funding, and administration of the Trust.

**1.2.19. "Trustee"** means the trustee of the Trust, and any successor trustee appointed pursuant to the terms of this Plan and the Trust Documents.

**1.2.20. "Twistars Contribution"** means the Two Million One Hundred Twenty Five Thousand ($2,125,000.00) to be paid pursuant to the Twistars settlement.

**1.2.21. "Twistars Settling Insurers"** means Philadelphia Indemnity Insurance Company, Lexington Insurance Company, New Hampshire Insurance Company, Nationwide Mutual Insurance Company, and State Farm Fire and Casualty Company.

**1.2.22. "USOPC Contribution"** means contributions made by the CGL Settling Insurers on behalf of USOPC.

## ARTICLE II.  INTERPRETATION

**2.1     Bankruptcy Code Section 102.** The rules of construction in Bankruptcy Code Section 102 apply to this Plan to the extent not inconsistent with any other provision of this Article II.

**2.2     Undefined Terms.** Any term that is not defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**2.3     Plan Definitions Control.** The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code, the Bankruptcy Rules, or the Disclosure Statement.

**2.4     Include and Including.** The terms "including" or "include(s)" are intended to be illustrative and not exhaustive, and shall be construed as "including, but not limited to" or "include(s), but is not limited to."

**2.5     Plural and Singular Terms.** Whenever the context requires, terms shall include the plural as well as the singular number, and the masculine gender shall include the feminine and the feminine gender shall include the masculine.

**2.6     References to Court Filings.** Unless the context should otherwise require, all references to documents to be filed shall refer to filing with the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules.

**2.7     Inclusion of Amended Agreements.** Any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented.

**2.8     Exhibits.** Unless otherwise specified, all references in the Plan to "Articles," "Sections," "Schedules," and "Exhibits" are references to Articles, Sections, Schedules, and Exhibits of or to the Plan.

**2.9     Herein/Hereof/Hereto.** The words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan.

**2.10     Headings.** Captions and headings to Articles and Sections are inserted for ease of reference only and shall not be considered a part of the Plan or otherwise affect the interpretation of the Plan.

**2.11     No Admissions.** The Plan makes no judgments about the validity of any Claims. Nothing contained in this Plan constitutes an admission or denial by any Person of liability for, or the

validity, priority, amount, or extent of, any Claim, lien, or security interest asserted against the Debtor or against any third party.

**2.12    Computation of Time.** In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. If any act under the Plan is required to be performed on a date that is not a Business Day, then the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. Enlargement of any period of time prescribed or allowed by the Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

**2.13    Merger.** The Plan supersedes all prior plans, drafts of the Plan, and all prior negotiations, agreements, and understandings with respect to the Plan, evidence of which shall not affect the interpretation of any provision of the Plan.

## ARTICLE III.  MEANS OF FUNDING THE PLAN

**3.1    Abuse Claims, Indemnification Claims, the USOPC Claim, and the FCR Claim.** The Debtor's CGL Insurance Policies are the only Assets the Debtor has to provide a Distribution to Abuse Claimants and Future Claimants. Through this Plan, the Debtor is making its CGL Insurance Policies and the proceeds thereof available to the Abuse Claimants and Future Claimants in one of two alternative ways.  To date, certain of the Debtor's CGL Insurers are willing to offer Two Hundred Fifteen Million Dollars ($215,000,000.00) (the "**Plan Payment**") to resolve the Abuse Claims and Future Claims.  The Debtor is offering the Holders of Abuse Claims and Future Claims the choice of accepting the Plan Payment and the Two Million One Hundred Twenty Five Thousand ($2,125,000.00) Twistars Contribution or continuing the prosecution of their Claims in a non-bankruptcy forum with recovery from the Debtor limited to the amounts available under the Debtor's CGL Insurance Policies. The treatment for Indemnification Claims, the USOPC Claim, the FCR Claim, and Abuse Claims filed after the Bar Date will depend on whether the Abuse Claimants, who will be classified in Class 6, make the Settlement Election or Litigation Election. If the Litigation Election is selected the Twistars Contribution shall not be a part of the Plan.

**3.1.1.    Settlement Election.** If Class 6 makes the Settlement Election, the Plan provides for the creation of a Trust for the exclusive benefit of the Holders of Abuse Claims and the FCR Claim. The Trust will assume liability for all Channeled Claims, which shall include Abuse Claims, the USOPC Claim, Indemnification Claims, the FCR Claim, and any Claim against a Participating Party or Settling Insurer arising from, in connection with, or related in any way to a Channeled Claim. The Trust's assets will consist of contributions by the CGL Settling Insurers and the Participating Parties. Trust assets will be used to fund the Trust's costs and expenses and payments to the Holders of Abuse Claims and the FCR Claim. Distributions and reserves from the Trust to Holders of Abuse Claims and Future Claims will be determined by the Trust Documents. The creation of the Trust and payments into and out of the Trust to resolve Claims shall not be deemed an admission of liability by the Debtor. The Indemnification Claims and the USOPC Claim shall receive the benefit of the Channeling Injunction in complete satisfaction of their claims and will not receive any payment from the Trust or the Debtor or its Estate. For the avoidance of doubt, to the extent of any conflict between the terms of this Plan and the Debtor's bylaws or any agreements between the Debtor and the Holder of the USOPC Claim or an Indemnification Claim, this Plan controls. The Participating Parties, the Non-Debtor CGL Settling Insurer Persons, and the Settling

Insurers will receive the benefit of injunctions provided under the Plan. Nothing in this Plan, including Article XII, is intended to replace and does not affect, diminish, or impair the liabilities of any Non-Participating Co-Defendant under applicable non-bankruptcy law. The Settlement Election requires the release of USOPC because USOPC is an insured under the Debtor's CGL Insurance Policies and the CGL Settling Insurers have conditioned the payment of the Insurance Settlement Amount upon USOPC being part of any settlement.

**3.1.2.    Litigation Election.** If Class 6 makes the Litigation Election, the Plan permits the Holders of Abuse Claims filed or deemed to be filed before the Bar Date to prosecute their Claims against the Reorganized Debtor in name only in the courts where such Claims were pending before the Petition Date or the courts in which such Claims could have been brought, but for the automatic stay imposed by Section 362 of the Bankruptcy Code, and to recover any judgments or awards exclusively from the Reorganized Debtor's CGL Insurance Policies. For the avoidance of doubt, only the proceeds of the Reorganized Debtor's CGL Insurance Policies will be available to satisfy Abuse Claims. The Debtor is not admitting liability for any such Claims. Subject to Section 22.1(vi) of this Plan, Abuse Claims that are not filed or deemed filed by the Bar Date are disallowed and will receive nothing under the Plan. The USOPC Claim and Indemnification Claims will not receive a Distribution; *provided, however,* that to the extent that the USOPC or the Holder of an Indemnification Claim has a right to recovery under any of the Debtor's Insurance Policies, such rights are preserved and will not be impaired under the Plan. For the avoidance of doubt, to the extent of any conflict between the terms of this Plan and the Debtor's bylaws or any agreements between the Debtor and the USOPC or the Holder of an Indemnification Claim, this Plan controls.

**3.2    Claims Other Than Abuse Claims, Indemnification Claims, and the USOPC Claim.** General Unsecured Claims will be paid from existing and future revenues of the Reorganized Debtor over time in accordance with the Plan. The Plan permits the Personal Injury Claimant to settle her claim with the Personal Injury Insurer or prosecute a lawsuit against the Reorganized Debtor in name only in the court in which the Personal Injury Claim could have been brought, but for the automatic stay, and to recover any judgments or settlement awards exclusively from the Personal Injury Insurance Policy. For the avoidance of doubt, only the proceeds of the Personal Injury Insurance Policy are available to satisfy the Personal Injury Claim. The Debtor is not admitting liability for the Personal Injury Claim. The Allowed Other Priority Claims, the PNC Bank Claim, the Sharp Claim, and the General Unsecured Convenience Claims are unimpaired under the Plan.

**3.3    Discharge.** The Debtor will receive the benefit of a Section 1141(d) discharge.

**3.4    Applicability Of Plan Provisions.** Articles IX-XIII are only applicable if Class 6 makes the Settlement Election. Articles XIV-XV are only applicable if Class 6 makes the Litigation Election. All other Articles are applicable to both the Settlement Election and Litigation Election.

### ARTICLE IV.  TREATMENT OF UNCLASSIFIED CLAIMS

**4.1    Administrative Claims.** Requests for allowance and payment of Administrative Claims must be filed and served no later than thirty (30) days after a notice of the Effective Date is filed with the Bankruptcy Court. Each Holder of an Allowed Administrative Claim against the Debtor

shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim, Cash equal to the Allowed amount of such Allowed Administrative Claim, either (a) on or as soon as practicable following the Effective Date, or, if later, the Allowance Date; or (b) upon such terms as may be agreed to in writing by the Administrative Claimant. Provided, however, that any Administrative Claim incurred post-petition by the Debtor in the ordinary course of its operations or arising pursuant to one or more post-petition agreements or transactions entered into by the Debtor with Bankruptcy Court approval, shall be paid or performed in accordance with the terms and conditions of the particular transaction(s) and any agreement(s) relating thereto, or as otherwise agreed by the Debtor and the Estate (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), on the one hand, and the Holder of such Administrative Claim, on the other.

**4.2    Professional Claims.**

    **4.2.1.    Bar Dates for Professional Claims.** All Professionals or other Persons requesting compensation or reimbursement of expenses pursuant to any of Sections 327, 328, 330, 331, 503(b), and 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including, among other things, any compensation requested by any Professional or any other Person for making a substantial contribution in the Chapter 11 Case) shall file and serve in accordance with the Bankruptcy Court's case management order an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Effective Date, no later than the Professional Claims Bar Date.

    **4.2.2.    Objections to Professional Claims.** Objections to Professional Claims or Claims of other Persons for compensation or reimbursement of expenses must be filed and served on the Reorganized Debtor and the Professionals or other Persons to whose application the objections are addressed on or before (a) twenty-one (21) days after the Professional Claims Bar Date; or (b) such later date as (i) the Bankruptcy Court shall order upon application made prior to the end of such 21-day period or (ii) is agreed between the Debtor and the Estate (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), as applicable, and the affected Professional or other Person.

**4.3    U.S. Trustee Fees.** All fees due and payable pursuant to 28 U.S.C. § 1930 and not paid prior to the Effective Date shall be paid in Cash as soon as practicable after the Effective Date. After the Effective Date, the Reorganized Debtor shall pay quarterly fees to the U.S. Trustee, in Cash, until the Chapter 11 Case is closed and a Final Decree is entered. In addition, the Reorganized Debtor shall file post-Confirmation Date reports in conformance with the U.S. Trustee guidelines. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which will be deemed Administrative Claims against the Debtor and the Estate.

**4.4    Priority Tax Claims.** With respect to each Allowed Priority Tax Claim not paid prior to the Effective Date, the Reorganized Debtor shall (a) pay such Claim in Cash as soon as practicable after the Effective Date; or (b) provide such other treatment agreed to by the Holder of such Allowed Priority Tax Claim and the Debtor and the Estate (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date).

## ARTICLE V.  CLASSIFICATION OF CLAIMS

**5.1    Classification of Claims.** All Claims except Administrative Claims and Priority Tax Claims are placed in the following Classes for all purposes including voting, confirmation of the Plan, and Distributions pursuant to the Plan. A Claim is classified in a particular Class only to the extent the Claim qualifies within the description of that Class and is classified in a different Class to the extent the Claim qualifies within the description of that different Class. Except as otherwise provided under the Bankruptcy Code or applicable law, if a Claim (other than a Claim entitled to priority status under Section 507 of the Bankruptcy Code) is acquired or transferred, the Claim will be placed in the Class where it would have been placed if it were owned by the original Holder of such Claim. If a Claimant has more than one Claim in the same Class, such Claims will be aggregated and treated as a single Claim. If a Claimant has Claims in different Classes, such Claims will be aggregated only within the same Class and not between Classes.

| CLASS | DESCRIPTION | IMPAIRMENT | VOTING |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | PNC Bank Claim | Unimpaired | Deemed to Accept |
| 3 | Sharp Claim | Unimpaired | Deemed to Accept |
| 4 | General Unsecured Convenience Claims | Unimpaired | Deemed to Accept |
| 5 | General Unsecured Claims | Impaired | Yes |
| 6 | Abuse Claims | Impaired | Yes |
| 7 | Personal Injury Claim | Impaired | Yes |
| 8 | USOPC Claim | Impaired | Yes |
| 9 | Indemnification Claims | Impaired | Yes |
| 10 | FCR Claim *(only if there is a Settlement Election)* | Impaired | Yes |
| 11 | Sexual Abuse Claims filed after the Bar Date *(only if there is a Litigation Election)* | Impaired | No |

**5.2    Treatment in Complete Satisfaction.** The treatment in this Plan is in full and complete satisfaction of all of the legal, contractual, and equitable rights that each Holder of a Claim may have against the Debtor, the Estate, or its Assets. This treatment supersedes and replaces any agreements or rights those Holders have in or against the Debtor, the Estate, or its Assets. All Distributions under the Plan will be tendered to the Person holding the Claim.

### ARTICLE VI.  TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS

**6.1    Class 1: Other Priority Claims.**

    **6.1.1.    Impairment and Voting.** Class 1 is unimpaired under the Plan. Holders of Class 1 Claims are deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.

    **6.1.2.    Treatment.** The Holders of Class 1 Claims will receive either (a) payment from the Reorganized Debtor of the full amount of their Allowed Claims in Cash, without interest on or as soon as practicable following the Effective Date or, if later, the Allowance Date; or (b) payment of their Allowed Claims upon such terms as may be agreed in writing by the Claimant and the Debtor and the Estate (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date).

**6.2    Class 2: PNC Bank Claim.**

    **6.2.1.    Impairment and Voting.** Class 2 is unimpaired under the Plan. PNC Bank is deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and is not entitled to vote on the Plan.

    **6.2.2.    Treatment.** The VISA Commercial Card Agreement dated as of May 7, 2010, as amended from time to time, between PNC Bank and the Debtor shall be reinstated and become the obligation of the Reorganized Debtor.  PNC Bank shall retain all of its rights and collateral pledged under the VISA Commercial Card Agreement.

**6.3    Class 3: Sharp Claim.**

    **6.3.1.    Impairment and Voting.** Class 3 is unimpaired under the Plan. Sharp is deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and is not entitled to vote on the Plan.

    **6.3.2.    Treatment.** The Value Lease Agreement, Equipment Sales Agreement, and Customer Care Maintenance Agreement between Sharp Business Systems and the Debtor shall be deemed assumed and will become the obligation of the Reorganized Debtor. Sharp Business Systems shall retain all of its rights and collateral under the Value Lease Agreement, Equipment Sales Agreement, and Customer Care Maintenance Agreement.

**6.4    Class 4: General Unsecured Convenience Claims.**

    **6.4.1.    Impairment and Voting.** Class 4 is unimpaired under the Plan. The Holders of Class 4 Claims are deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.

    **6.4.2.    Treatment.** The Holders of Class 4 Claims will receive either (a) payment from the Reorganized Debtor of the full amount of their Allowed General Unsecured Convenience Claims in Cash, on or as soon as reasonably practicable following the Effective Date or, if later, the Allowance Date; or (b) payment of their Allowed General Unsecured Convenience Claims upon

such terms as may be agreed in writing by the Claimant and the Debtor and the Estate (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date).

## ARTICLE VII.  TREATMENT OF IMPAIRED CLASSES OF CLAIMS

**7.1   Class 5: General Unsecured Claims.**

**7.1.1.   Impaired and Voting.** Class 5 is impaired under the Plan. The Holders of Allowed General Unsecured Claims are entitled to vote on the Plan.

**7.1.2.   Treatment.** The Holders of Allowed General Unsecured Claims will receive payment from the Reorganized Debtor of 80% of their Allowed General Unsecured Claims, payable in equal installments on September 1, 2020, September 1, 2021, and September 1, 2022; or, at the Reorganized Debtor's discretion, in less than three installments so long as the Reorganized Debtor accelerates payment to all Holders of Allowed General Unsecured Claims.

**7.2   Class 6: Abuse Claims.**

**7.2.1.   Impaired and Voting.** Class 6 is impaired under the Plan. The Holders of Class 6 Claims are entitled to vote on the Plan.

**7.2.2.   Election.** The Ballot for Holders of Class 6 Claims will provide that Holders of Class 6 Claims voting in favor of the Plan may select the Settlement Election or the Litigation Election. If the required number and dollar amount of Class 6 Claims selects the Settlement Election, all Class 6 Claims will receive the treatment in Section 7.2.3. If the required number and dollar amount of Class 6 Claims select the Litigation Election, all Class 6 Claims will receive the treatment in Section 7.2.4. If Class 6 does not accept the Plan, and the requirements under Section 1129(b) are met, the treatment for Holders of Class 6 Claims will be the Litigation Election.

**7.2.3.   Class 6 Treatment Under Settlement Election.** On the Effective Date, the Trust shall assume all liability for and the Trust will pay all Class 6 Claims pursuant to the provisions of the Plan and the Trust Documents. No Holder of a Class 6 Claim shall be entitled to recover from the Reorganized Debtor's Revested Assets or property acquired by the Reorganized Debtor after the Effective Date. Other than the Settling Insurer Injunction and the exculpations and releases in this Plan, the Plan shall not affect the liability of any other Person on, or the property of any other Person for, the Class 6 Claims, including the liability of any Non-Participating Co-Defendant, which liability shall continue unaffected by the terms of this Plan or the discharge granted to the Debtor, the Estate, or the Reorganized Debtor under this Plan and Bankruptcy Code Section 1141(d). Class 6 Claims under the Settlement Election will include Sexual Abuse Claims that are not filed by the Bar Date.

**7.2.4.   Class 6 Treatment Under Litigation Election.** On the Effective Date, and pursuant to Section 14.1 of the Plan, the automatic stay and the stay imposed by the 105 Order shall be lifted and each Holder of a Class 6 Claim shall have thirty (30) days to: (a) file a lawsuit against the Reorganized Debtor, subject to any applicable statute of limitations or repose, or the equitable doctrine of laches, in accordance with Section 108(c) of the Bankruptcy Code; or (b) to the extent a Holder of a Class 6 Claim was a plaintiff in a Pre-Petition Lawsuit, file a notice in such Pre-Petition Lawsuit stating that the Holder of the Class 6 Claim is electing to resume its litigation

against the Reorganized Debtor pursuant to the terms of the Plan. A Holder of a Class 6 Claim that does not commence suit or file a notice to resume the litigation of a Pre-Petition Lawsuit within such thirty (30) day period shall be forever barred from asserting the Holder's Class 6 Claim. The allowance or disallowance of Class 6 Claims will be determined in the Post-Effective Date Litigation related to such Class 6 Claims. To the extent the Holder of a Class 6 Claim obtains a Post-Effective Date Award, the sole source of recovery for such Claimant shall be from CGL Insurance Coverage, if any, under the Debtor's CGL Insurance Policies to pay for such types of claims. Any and all of the Debtor's liability on account of Class 6 Claims shall be discharged pursuant to the provisions of Section 1141(d) of the Bankruptcy Code. No Holder of a Class 6 Claim shall be entitled to recover from the Reorganized Debtor's Revested Assets or property acquired by the Reorganized Debtor after the Effective Date. Nothing contained herein shall enlarge the rights or claims of Holders of Class 6 Claims or limit any defenses to Class 6 Claims. Such discharge shall not affect the liability of any other Person on, or the property of any other Person for, the Class 6 Claims, including the liability of any Insurer, which liability shall continue unaffected by the terms of this Plan or the discharge granted to the Debtor, the Estate, or the Reorganized Debtor under this Plan and Section 1141(d) of the Bankruptcy Code. Nothing in the Plan is intended to affect, diminish, or impair any Holder of a Class 6 Claim's rights against a Co-Defendant, including that Co-Defendant's joint and several liability for Sexual Abuse. Pursuant to Section 22.1(vi), the Bankruptcy Court may determine on a motion that an Abuse Claim is deemed to be filed before the Bar Date. In the event of the Litigation Election, Abuse Claims that were not filed by the Bar Date are not part of Class 6 and will receive nothing under the Plan.

### 7.3    Class 7: Personal Injury Claim.

**7.3.1.    Impaired and Voting.** Class 7 is impaired under the Plan. The Holder of the Class 7 Claim is entitled to vote on the Plan.

**7.3.2.    Treatment.** On the Effective Date, the stay shall be lifted and the Holder of the Class 7 Claim shall have thirty (30) days to file a lawsuit against the Reorganized Debtor, subject to any applicable statute of limitations or repose, or the equitable doctrine of laches, in accordance with Section 108(c) of the Bankruptcy Code, or reach a settlement paid by the Personal Injury Insurer. The allowance or disallowance of the Class 7 Claim will be determined in the Post-Effective Date Litigation related to the Class 7 Claim. To the extent the Holder of the Class 7 Claim obtains a Post-Effective Date Award, the sole source of recovery for such Claimant shall be from the Personal Injury Insurance Policy. The Holder of the Class 7 Claim shall not be entitled to recover from the Reorganized Debtor's Revested Assets or property acquired by the Reorganized Debtor after the Effective Date. Nothing contained herein shall enlarge the rights or claims of the Holder of the Class 7 Claim or limit any defenses to the Class 7 Claim. Unless otherwise provided in this Plan, the Plan shall not affect the liability of any other Person on, or the property of any other Person for, the Class 7 Claim including the liability of the Personal Injury Insurer, which liability shall continue unaffected by the terms of this Plan or the discharge granted to the Debtor, the Estate, or the Reorganized Debtor under this Plan and Section 1141(d) of the Bankruptcy Code. Nothing in the Plan is intended to affect, diminish, or impair the Holder of the Class 7 Claim's right against a Non-Participating Co-Defendant, including that Non-Participating Co-Defendant's joint and several liability.

**7.4     Class 8: USOPC Claim.**

**7.4.1.     Impairment and Voting.** Class 8 is impaired under the Plan. The Holder of the USOPC Claim is entitled to vote on the Plan.

**7.4.2.     Treatment Under Settlement Election.** If Class 6 makes the Settlement Election, all rights that the USOPC has to receive indemnification or reimbursement from the Debtor, including any right to receive reimbursement, indemnification, or a defense under any of the Debtor's Insurance Policies, shall be satisfied by granting the USOPC Claim the benefit of the Channeling Injunction and by deeming any Abuse Claim against the USOPC to be a Channeled Claim. The USOPC shall not be entitled to recover from the Reorganized Debtor's Revested Assets or property acquired by the Reorganized Debtor after the Effective Date and shall release all Claims against the Debtor, the Estate, and the Reorganized Debtor.

**7.4.3.     Treatment Under Litigation Election.** If Class 6 makes the Litigation Election, in accordance with Section 502(e)(1) of the Bankruptcy Code, the sole source of recovery for the USOPC Claim shall be from CGL Insurance Coverage, if any, under the Debtor's CGL Insurance Policies. The USOPC will receive no Distribution under the Plan. The Debtor's discharge of the USOPC Claim shall not affect the liability of any Person other than the Debtor on, or the property of any Person other than the Debtor for, the USOPC Claim, including the liability of any Insurer, which liability shall continue unaffected by the terms of this Plan or the discharge granted to the Debtor, the Estate, or the Reorganized Debtor under this Plan and Section 1141(d) of the Bankruptcy Code. For the avoidance of doubt, to the extent of any conflict between the terms of this Plan and the Debtor's bylaws or any agreements between the Debtor and the USOPC, this Plan controls.

**7.5     Class 9: Indemnification Claims.**

**7.5.1.     Impairment and Voting.** Class 9 is impaired under the Plan. The Holders of Indemnification Claims are entitled to vote on the Plan.

**7.5.2.     Treatment Under Settlement Election.** If Class 6 makes the Settlement Election, all rights that the Holder of a Class 9 Claim has to receive indemnification or reimbursement from the Debtor, including any right to receive reimbursement, indemnification, or a defense under any of the Debtor's Insurance Policies, shall be satisfied by granting the Holder of a Class 9 Claim the benefit of the Channeling Injunction and by deeming any Abuse Claim against the Holder of a Class 9 Claim to be a Channeled Claim. The Holders of Class 9 Claims shall not be entitled to recover from the Reorganized Debtor's Revested Assets or property acquired by the Reorganized Debtor after the Effective Date and shall release all Claims against the Debtor, the Estate, and the Reorganized Debtor.

**7.5.3.     Treatment Under Litigation Election.** If Class 6 makes the Litigation Election, in accordance with Section 502(e)(1) of the Bankruptcy Code, the Class 9 Claims will receive no Distribution; *provided, however*, that to the extent that the Holder of an Indemnification Claim has a right to recovery under any of the Debtor's Insurance Policies, such rights are preserved and will not be impaired under the Plan. The Debtor's discharge of the Indemnification Claims shall not affect the liability of any Person other than the Debtor on, or the property of any Person other than

the Debtor for, the Indemnification Claims, including the liability of any Insurer, which liability shall continue unaffected by the terms of this Plan or the discharge granted to the Debtor, the Estate, or the Reorganized Debtor under this Plan and Section 1141(d) of the Bankruptcy Code. For the avoidance of doubt, to the extent of any conflict between the terms of this Plan and the Debtor's bylaws or any agreements between the Debtor and the Holder of a Class 9 Claim, this Plan controls.

**7.6    Class 10: Future Claimants Representative Claim (Only In The Event Of A Settlement Election).**

    **7.6.1.    Impaired and Voting.** Class 10 only exists under the Settlement Election. Class 10 is impaired under the Plan. The FCR is deemed to be the Holder of the Class 10 Claim and is entitled to vote on the Plan on behalf of the Future Claimants.

    **7.6.2.    Treatment Under Settlement Election.** On the Effective Date, the Trust shall assume all liability for and the Trust will pay all Class 10 Claims pursuant to the provisions of the Plan and the Trust Documents; *provided, however*, that no Holder of a Class 10 Claim shall have an interest in the Trust Assets other than the Future Claimant Reserve. No Holder of a Class 10 Claim shall be entitled to recover from the Reorganized Debtor's Revested Assets or property acquired by the Reorganized Debtor after the Effective Date. The Plan shall not affect the liability of any other Person on, or the property of any other Person for, the Class 10 Claims, including the liability of any Non-Participating Co-Defendant, which liability shall continue unaffected by the terms of this Plan or the discharge granted to the Debtor, the Estate, or the Reorganized Debtor under this Plan and Section 1141(d) of the Bankruptcy Code.

**7.7    Class 11: Sexual Abuse Claims Filed After The Bar Date (Only In The Event Of A Litigation Election).**

    **7.7.1.    Impaired and Voting.** Class 11 only exists under the Litigation Election. Class 11 is impaired under the Plan.  The Holders of Class 11 Claims are deemed to have voted no on the Plan. In the event of a Settlement Election, the Sexual Abuse Claims which were not filed or deemed to be filed by the Bar Date will be classified within Class 6.

    **7.7.2.    Treatment Under the Litigation Election**. The Class 11 Claims will receive no distributions under the Plan. No Holder of a Class 11 Claim shall be entitled to recover from the Reorganized Debtor's Revested Assets or property acquired by the Reorganized Debtor after the Effective Date or from the Debtor's Insurance Policies. The Plan shall not affect the liability of any other Person on, or the property of any other Person for, the Class 11 Claims, including the liability of any Non-Participating Co-Defendant, which liability shall continue unaffected by the terms of this Plan or the discharge granted to the Debtor, the Estate, or the Reorganized Debtor under this Plan and Section 1141(d) of the Bankruptcy Code.

## ARTICLE VIII.  ACCEPTANCE OR REJECTION OF PLAN

**8.1    Impaired Classes to Vote.** Each Holder of a Claim in an impaired Class shall be entitled to vote separately to accept or reject the Plan unless such Holder is deemed to accept or reject the Plan.

**8.2      Acceptance by Class of Creditors.** An impaired Class of Holders of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

# ARTICLES APPLICABLE TO SETTLEMENT ELECTION ONLY

## ARTICLE IX.  TRUST FUNDING AND FORMATION

**9.1      Resolution of the Insurance Coverage Adversary Proceeding as to the CGL Settling Insurers.** The Confirmation Order shall provide that, subject to the occurrence of the Effective Date, the Debtor shall dismiss with prejudice its claims against the CGL Settling Insurers in the Insurance Coverage Adversary Proceeding, *provided, however*, that such dismissal shall not affect the Personal Injury Insurance Coverage.

**9.2      The CGL Settling Insurers' Payments.**

**9.2.1.      Insurance Settlement Amount.** The CGL Settling Insurers will pay the cumulative amount of Two Hundred Nineteen Million Seven Hundred Fifty Thousand ($219,750,000.00) (the "**Insurance Settlement Amount**"). The Insurance Settlement Amount reflects the amount of money that the CGL Settling Insurers have been willing to pay to date: (a) to settle on behalf of the Debtor, the USOPC, and the Non-Debtor CGL Settling Insured Covered Persons, the Abuse Claims (for which $215,000,000.00 of the Insurance Settlement Amount is allocated); and (b) to settle the Debtor's contractual rights to have its Insurance Reimbursement Claims paid (for which $4,750,000.00 of the Insurance Settlement Amount is allocated). The Debtor reserves its right to amend this Plan to, among other things, increase the Insurance Settlement Amount. The CGL Settling Insurers' obligation to contribute the Insurance Settlement Amount is subject to the Bankruptcy Court issuing the Confirmation Order, pursuant to Sections 1129, 363(f), and 105(a) of the Bankruptcy Code, barring, estopping, and permanently enjoining all Persons from asserting any (a) Claims against the CGL Settling Insurer Policies; (b) Claims against the CGL Settling Insurers with regard to, by reason of, based on, arising out of, relating to, or in any way connected with, the CGL Settling Insurer Policies; and (c) Medicare Claims. The Insurance Settlement Amount will be paid to the Debtor on the Effective Date. Notwithstanding the foregoing, the Personal Injury Insurance Policy will remain in place solely for purposes of defending the Personal Injury Claim and indemnifying the Debtor, the Estate, and the Reorganized Debtor from the Personal Injury Claim. The CGL Settling Insurers will continue to reimburse the Debtor for ongoing Insurance Reimbursement Claims in the ordinary course through the Effective Date. To the extent any such amounts are outstanding on the Effective Date (the "**Outstanding Amount**"), the Outstanding Amount shall be paid by the applicable CGL Settling Insurer in addition to the CGL Settling Insurer's portion of the Insurance Settlement Amount.

**9.2.2.      Plan Payment.** The Plan Payment shall be made to the Trust in exchange for the entry of an Order by the Bankruptcy Court imposing a nonconsensual release, remise, and discharge of all Claims relating to the CGL Settling Insurer Policies (excepting the Personal Injury Claim), including all Channeled Claims, by all Persons who now hold or in the future may hold such Claims against the CGL Settling Insurers pursuant to Section 105 of the Bankruptcy Code.

**9.3** **Trust Formation and Funding.**

**9.3.1. Trust Purpose.** The Trust shall be established for the benefit of the Abuse Claimants and Future Claimants and will assume all liability for the Channeled Claims. The Trust will receive, liquidate, and distribute Trust Assets in accordance with this Plan and the Trust Documents. The proposed Trust Agreement is attached hereto as Exhibit D.

**9.3.2. Funding of Trust.** As set forth in Section 10.2, the Trust shall be funded, on or before the Effective Date, by: (a) the Plan Payment; and (b) the Participating Party Contributions.

**9.3.3. Payment of Professional Fees.** The Trust shall pay all unpaid Allowed Professional Claims of the Survivors' Committee's Professionals within seven (7) days after the later of the Effective Date or the Bankruptcy Court's order on such Claims and shall pay and reimburse the Debtor, the Estate, or the Reorganized Debtor, as the case may be, for the costs and expenses of publication of the notices of insurance settlement and plan confirmation within seven (7) days after the Effective Date.

**9.4** **Approval of Settlement.** Pursuant to Section 105(a) of the Bankruptcy Code and in consideration for the classification, distributions, and other benefits provided under the Plan, including, *inter alia*, (a) the Plan Payment; and (b) the Participating Party Contributions, the provisions of the Plan shall constitute a good faith compromise and settlement of all Abuse Claims against the Debtor. The entry of the Confirmation Order will constitute the order approving the compromises and settlements required under this Plan. The Bankruptcy Court's findings in the Confirmation Order shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Claimants holding Abuse Claims, the Holders of other Claims, the Settling Insurers, the Participating Parties, the Non-Debtor CGL Settling Insurer Persons, and other parties in interest, and are fair, equitable, and within the range of reasonableness, and an appropriate exercise of each such Person's business judgment under the applicable laws of corporate governance.

**9.5** **Future Claimant Reserve.** The Trust shall establish a Future Claimant Reserve which shall be funded with five (5%) percent of the Plan Payment. Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the FCR shall continue until he or his successor resigns or the funds in the Future Claimant Reserve are completely distributed as provided in Section 11.7 of the Plan.

**9.6** **Closing.** Closing will be conducted in the offices of Jenner & Block, 353 North Clark Street, Chicago, Illinois, 60654, or at such other location designated by the Reorganized Debtor, as soon as reasonably practicable following the Effective Date for the purpose of the Reorganized Debtor, and the Participating Parties executing and delivering the Plan Documents and completing those actions necessary for the Reorganized Debtor and the Participating Parties to establish and fund the Trust and make other distributions required to be made upon, or promptly following, the Effective Date. As soon as practicable after the conditions set forth in Section 18.1 have been satisfied or waived in accordance with Section 18.2, the Reorganized Debtor shall file a notice of the Closing and the occurrence of the Effective Date.

**9.7** **Obligations of the Reorganized Debtor.** The Reorganized Debtor will:

(a)     In the exercise of its business judgment, review all Claims filed against the Estate except for Channeled Claims, and, if advisable, object to such Claims;

(b)     In the exercise of its business judgment, investigate, prosecute, settle, dismiss, or otherwise resolve Causes of Action that are not resolved under this Plan. Unless otherwise provided in this Plan, the Reorganized Debtor will be entitled to receive recoveries from Causes of Action;

(c)     Honor all of the Debtor's obligations under the Personal Injury Insurance Policy and the Other Insurance Policies; and

(d)     Perform all of its obligations under this Plan and Plan Documents, in each case, as and when the same become due or are to be performed.

## ARTICLE X.  TRUST

**10.1** **Establishment of Trust.** On the Effective Date, the Trust shall be established in accordance with the Trust Documents. The Trust is intended to qualify as a "Designated" or "Qualified Settlement Fund" pursuant to Section 468B of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1 *et seq.*, as may be amended, and the regulations promulgated thereunder, 31 C.F.R. §§ 900 *et seq*. The Debtor is the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3). The Trust Documents, including the Trust Agreement, are incorporated herein by reference.

**10.2** **Trust Funding.** On or before the Effective Date, each CGL Settling Insurer shall make its portion of the Plan Payment to the Trust by wire transfer. Five (5%) percent of the Plan Payment shall be used to create a Future Claimant Reserve for the benefit of any Future Claimants. On or before the Effective Date, each Twistars Settling Insurer shall make its portion of the Twistars Contribution to the Trust by wire transfer. Each Participating Party shall be deemed to have released any and all Claims such Participating Party may have against the Debtor, the Estates, or the Reorganized Debtor and its Insurance Policies.

**10.3** **Appointment of the Trustee.** The initial Trustee has been identified in <u>Exhibit D</u> to this Plan. The Trustee shall commence serving as the Trustee on the Confirmation Date; *provided, however*, that the Trustee shall be permitted to act in accordance with the terms of the Trust Agreement from such earlier date, as authorized by the Debtor, and shall be entitled to seek compensation in accordance with the terms of the Trust Agreement and the Plan.

**10.4** **Tax Matters.** The Trust shall not be deemed to be the same legal entity as the Debtor, but only the assignee of certain Assets of the Debtor and a representative of the Estate for delineated purposes within the meaning of Section 1123(b)(3) of the Bankruptcy Code. The Trust is expected to be tax exempt. The Trustee shall file such income tax and other returns and documents as are required to comply with the applicable provisions of the Internal Revenue Code, the regulations promulgated thereunder, and applicable state law, and shall pay from the Trust all taxes, assessments, and levies upon the Trust, if any.

**10.5    Cooperation by the Debtor and Reorganized Debtor.** The Debtor, the Estate, the Reorganized Debtor, and their counsel shall reasonably cooperate with the Trustee as requested in connection with the Trustee's administration of the Trust.

**10.6    Objections to Channeled Claims.** No Person other than the Trustee has the right to object to the Channeled Claims, and any such objection will be prosecuted and resolved in accordance with the terms of the Trust Documents.

**10.7    Trust Indemnification Obligations.** From and after the Effective Date, the Trust shall defend, indemnify, and hold harmless the Protected Parties with respect to any and all Channeled Claims, Medicare Claims, and Claims against the Debtor, the Estate, the Reorganized Debtor, a Participating Party, or a Settling Insurer Policy relating to an Abuse Claim, including: all Claims made by (a) any Person claiming to be insured (as a named insured, additional insured, or otherwise) under any Settling Insurer Policy; (b) any Person who has made, will make, or can make (but for this Plan) an Abuse Claim or a Claim against the Debtor, the Estate, the Reorganized Debtor, a Participating Party, or a Settling Insurer; (c) any Person who has actually or allegedly acquired or been assigned the right to make a Claim under any Settling Insurer Policy relating to Sexual Abuse or other abuse. The Protected Parties shall have the right to defend any Claims identified in this Section and shall do so in good faith. The Protected Parties may undertake the defense of any Claim on receipt of such Claim. The Protected Parties shall notify the Trust as soon as practicable of any Claims identified in this Section and of their choice of counsel. The Protected Parties' defense of any Claims shall have no effect on the obligations of the Trust, as applicable, to indemnify any such party for such Claims, as set forth in this Section. The Trust shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by the Protected Parties in defending such Claims. In defense of any such Claims, the Protected Parties may settle or otherwise resolve a Claim consistent with the terms of this Plan and with the prior consent of the indemnifying party, which consent shall not be unreasonably withheld.

## ARTICLE XI.  LIQUIDATION AND PAYMENT OF CHANNELED CLAIMS

**11.1    Liquidation and Resolution of Channeled Claims.**

**11.1.1.    Resolution and Payment of Channeled Claims.** The Trust shall pay Abuse Claims in accordance with the Plan, the Confirmation Order, and the Trust Documents. The FCR Claim shall be paid from the Future Claimant Reserve and not from any other Trust Assets. The USOPC Claim and the Indemnification Claims shall be satisfied by granting the USOPC Claim and the Indemnification Claims the benefit of the Channeling Injunction and by deeming any Abuse Claim against the USOPC or a Holder of an Indemnification Claim to be a Channeled Claim.

**11.1.2.    Conditions to Payment of Abuse Claims and FCR Claims.** As a pre-condition to receiving any payment from the Trust, each Abuse Claimant or Future Claimant shall execute and deliver to the Trust a full and complete release of the Debtor, the Estate, the Reorganized Debtor, the Settling Insurers, all Participating Parties, and all known or unknown parties who may claim coverage under any Insurance Policy issued to the Debtor, including the Non-Debtor CGL Settling Insurer Covered Persons, in form and substance acceptable to the Debtor, the Estate, the Reorganized Debtor, the Participating Parties, and the Settling Insurers, of any and all Claims arising from or relating to Abuse Claims or Future Claims.  In addition, within ten (10) days after

receiving any payment from the Trust, an Abuse Claimant or Future Claimant shall dismiss with prejudice any lawsuit that such Abuse Claimant or Future Claimant had brought against the Debtor, any Participating Party, and any Non-Debtor CGL Settling Insurer Covered Person.

**11.1.3.  Trust Documents May Not Modify The Plan.** Nothing in the Trust Documents shall (a) impose any costs, directly or indirectly, upon the Debtor, the Estate, the Reorganized Debtor, any Participating Party, or any Settling Insurer relating to the treatment of Channeled Claims, or (b) otherwise modify the rights or obligations of the Debtor, the Estate, the Reorganized Debtor, any Participating Party, or any Settling Insurer as otherwise set forth in the Plan.

**11.2   Effect of No Award on Channeled Claims.** If a Channeled Claim, including an Abuse Claim filed after the Bar Date, is denied payment from the Trust, the Holder of such Channeled Claim will have no further rights against the Debtor, the Estate, the Reorganized Debtor, the Trust, the Trustee, any Participating Party, or any Settling Insurer, and any of their respective assets or property, including any Revested Assets, relating to such Channeled Claim.

**11.3   Treatment of Attorneys' Fees and Costs of Channeled Claimants.** The fees and expenses of attorneys representing Channeled Claimants who receive payment from the Trust will be borne by such Channeled Claimants based on applicable state law and individual arrangements made between such Channeled Claimants and their respective attorneys. The Debtor, the Estate, the Reorganized Debtor, the Released Parties, the Settling Insurers, the Non-Debtor CGL Settling Insurer Covered Persons, the Trust, and the Trustee will not have any liability for any fees and expenses of attorneys representing any of the Channeled Claimants, and all Claims for such fees and expenses, if any, will be disallowed.

**11.4   Withdrawal of Channeled Claims.** A Channeled Claimant may withdraw a Channeled Claim at any time on written notice to the Trustee. If withdrawn, (a) the Channeled Claim will be withdrawn with prejudice and may not be reasserted, and (b) as a condition to withdrawal of the Channeled Claim, any funds paid to the Channeled Claimant by the Trust shall be returned to the Trust.

**11.5   Supplementing Exhibit C to Add Participating Parties.**

**11.5.1.  Participating Party Agreement.** After the Effective Date and notwithstanding any present exclusionary language contained in this Plan, upon the consent of the Trustee, any Person may become a Participating Party if the Bankruptcy Court, after notice and hearing, approves an agreement between such Person and the Trustee (a "**Participating Party Agreement**"). After the Effective Date, the Trustee shall have the exclusive authority to seek approval of such a Participating Party Agreement. Upon the Bankruptcy Court's entry of a Final Order approving such an agreement, Exhibit C will be amended by the Trustee to include such Person. For the purposes of defining a Participating Party, the Persons listed on Exhibit C shall include their respective predecessors, successors, and assigns, or their respective employees, officers, agents, attorneys, and directors, except as provided in the agreement.

**11.5.2.  Rights of Additional Participating Parties.** Any Person becoming a Participating Party shall have all of the rights, remedies, and obligations of a Participating Party notwithstanding

that such Person originally may have been excluded as a Participating Party under any provision of the Plan, including, without limitation, the terms and conditions of the Channeling Injunction.

**11.5.3. Retention of Jurisdiction.** The Bankruptcy Court's retained jurisdiction to approve a Participating Party Agreement under this Section shall include jurisdiction to determine the adequacy of the notice of a motion to approve such a Participating Party Agreement.

**11.6    Supplementing Exhibit C to add Settling Insurers.**

**11.6.1. Additional Settling Insurers.** After the Effective Date, upon the consent of the Trustee and the Reorganized Debtor, a Person may become a Settling Insurer if the Bankruptcy Court, after notice and hearing with opportunity, approves an agreement between such Person and the Trustee. After the Effective Date a Person may become a Settling Insurer with the consent of the Trustee and the Reorganized Debtor and upon approval of the Bankruptcy Court. If the addition of such Person is approved pursuant to a Final Order, Exhibit C will be deemed amended to include such Person.

**11.6.2. Rights of Additional Settling Insurers.** Any Person becoming a Settling Insurer shall have all of the rights, remedies, and duties of a Settling Insurer notwithstanding that such Person originally may have been excluded as a Settling Insurer under any provision of the Plan. Such rights, remedies, and duties shall include, without limitation, the terms and conditions of the Channeling Injunction.

**11.6.3. Retention of Jurisdiction.** The Bankruptcy Court's retained jurisdiction to approve an agreement under this Section shall include jurisdiction to determine the adequacy of notice of a motion to approve such an agreement.

**11.7    Future Claimant Process.** A Future Claimant must file a Claim with the Trustee on or before the fifth (5th) anniversary of the Effective Date. The Claim will be entitled to a Distribution from the Future Claimant Reserve, provided funds remain in such Future Claimant Reserve, only if the Trustee, in consultation with the FCR, determines that the Holder of such Claim has proven by a preponderance of the evidence that such Holder meets the definition of a Future Claimant and such Holder's Claim meets the definition of a Sexual Abuse Claim. Except as provided in the Plan, Future Claimants will have no right to payment or any other right under the Plan or against the Debtor, the Estate, or the Reorganized Debtor, or any of their respective property including any Revested Assets, or against the Settling Insurers, or the Participating Parties. Following the fifth (5th) anniversary of the Effective Date, any funds held in the Future Claimant Reserve shall be released to the Trustee to, at the Trustee's discretion, (a) administer to Holders of Abuse Claims consistent with the Trust Documents and the terms of this Plan; or (b) distribute to a charitable entity mutually agreed upon by the Trustee and the Reorganized Debtor; *provided, however*, that any such funds shall not revert to the Debtor, the Estate, the Reorganized Debtor, the National Gymnastics Foundation, or the USOPC.

**11.8    Special Distribution Conditions.**

**11.8.1. No Reporting Obligations.** It is the position of the Debtor that neither the Trust, the Settling Insurers, nor the Participating Parties will have any reporting obligations in respect of their contributions to the Trust, or in respect of any payments, settlements, resolutions, awards, or

other claim liquidations by the Trust, under the reporting provisions of the MSP or MMSEA. Prior to making any payments to any Abuse Claimants or Future Claimants, the Trust shall seek a statement or ruling from the United States Department of Health and Human Services ("HHS") that neither the Trust, the Participating Parties, nor the Settling Insurers have any reporting obligations under MMSEA with respect to payments to the Trust by the Participating Parties or the Settling Insurers or payments by the Trust to Abuse Claimants or Future Claimants. Unless and until there is definitive regulatory, legislative, or judicial authority (as embodied in a Final Order from the United States Court of Appeals for the Seventh Circuit or the United States Supreme Court), or a letter from the Secretary of Health and Human Services confirming that the Participating Parties and the Settling Insurers have no reporting obligations under MMSEA with respect to any settlements, payments, or other awards made by the Trust or with respect to any contributions the Participating Parties and the Settling Insurers have made or will make to the Trust, the Trust shall, at its sole expense, in connection with the implementation of the Plan, act as a reporting agent for the Participating Parties and the Settling Insurers, and shall timely submit all reports that would be required to be made by the Participating Parties or any of the Settling Insurers under MMSEA on account of any Claims settled, resolved, paid, or otherwise liquidated by the Trust or with respect to contributions to the Trust, including reports that would be required if the Participating Parties and the Settling Insurers were determined to be "applicable plans" for purposes of MMSEA, or any of the Participating Parties and the Settling Insurers were otherwise found to have MMSEA reporting requirements. The Trust, in its role as reporting agent for the Participating Parties and the Settling Insurers, shall follow all applicable guidance published by the Centers for Medicare and Medicaid Services ("**CMS**") to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

**11.8.2.    Certification of Reports.** If the Trust is required to act as a reporting agent for the Participating Parties or the Settling Insurers pursuant to the previous provision, the Trust shall provide a written certification to each of the Participating Parties and the Settling Insurers within ten (10) business days following the end of each calendar quarter, confirming that all reports to CMS required by the previous section have been submitted in a timely fashion, and identifying (a) any reports that were rejected or otherwise identified as noncompliant by CMS, along with the basis for such rejection or noncompliance, and (b) any payments to Medicare Beneficiaries that the Trust did not report to CMS.

**11.8.3.    Rejected or Non-Compliant Reports.** With respect to any reports rejected or otherwise identified as noncompliant by CMS, the Trust shall, upon request by any Participating Party or any of the Settling Insurers, promptly provide copies of the original reports submitted to CMS, as well as any response received from CMS with respect to such reports; *provided, however*, that the Trust may redact from such copies the names, Social Security numbers other than the last four digits, health insurance claim numbers, taxpayer identification numbers, employer identification numbers, mailing addresses, telephone numbers, and dates of birth of Abuse Claimants, Future Claimants, guardians, conservators, and/or other personal representatives, as applicable. With respect to any such reports, the Trust shall reasonably undertake to remedy any issues of noncompliance identified by CMS and resubmit such reports to CMS, and, upon request by the Participating Parties or the Settling Insurers, provide the Participating Parties or the Settling Insurers copies of such resubmissions; *provided, however*, that the Trust may redact from such copies the names, Social Security numbers other than the last four digits, health insurance claim numbers, taxpayer identification numbers, employer identification numbers, mailing addresses,

telephone numbers, and dates of birth of Abuse Claimants, Future Claimants, guardians, conservators, and/or other personal representatives, as applicable. In the event the Trust is unable to remedy any issue of noncompliance, the provisions of Section 11.8.7 shall apply.

**11.8.4.    Reporting Agent Obligations.** If the Trust is required to act as a reporting agent for the Participating Parties or the Settling Insurers pursuant to the provisions of Section 11.8.1, with respect to each Claim of a Medicare Beneficiary that was paid by the Trust and not disclosed to CMS, the Trust shall, upon request by the Debtor, the Estate, the Reorganized Debtor, any of the Participating Parties, or any of the Settling Insurers, promptly provide the last four digits of the Abuse Claimant's or Future Claimant's Social Security number, the year of the Abuse Claimant's or Future Claimant's birth, and any other information that may be necessary in the reasonable judgment of any of the Participating Parties or Settling Insurers to satisfy their obligations, if any, under MMSEA, as well as the basis for the Trust's failure to report the payment. In the event that any of the Participating Parties or Settling Insurers inform the Trust that it disagrees with the Trust's decision not to report a Claim paid by the Trust, the Trust shall promptly report the payment to CMS. All documentation relied upon by the Trust in making a determination that a payment did not have to be reported to CMS shall be maintained for a minimum of six (6) years following such determination.

**11.8.5.    Duration of Reporting Agent Obligations.** If the Trust is required to act as a reporting agent for the Participating Parties or the Settling Insurers pursuant to the provisions of Section 11.8.1, the Trust shall make the reports and provide the certifications required by Sections 11.8.1 and 11.8.2 until such time as the Participating Parties and each of the Settling Insurers determine, in their reasonable judgment, that they have no further legal obligation under MMSEA or otherwise to report any settlements, resolutions, payments, or liquidation determinations made by the Trust or contributions to the Trust. Furthermore, following any permitted cessation of reporting, or if reporting has not previously commenced due to the satisfaction of one or more of the conditions set forth in Section 11.8.1, and if the Participating Parties or any of the Settling Insurers reasonably determines, based on subsequent legislative, administrative, regulatory, or judicial developments, that reporting is required, then the Trust shall promptly perform its obligations under Sections 11.8.1 and 11.8.2.

**11.8.6.    Prophylactic Measures.** Section 11.8.1 is intended to be purely prophylactic in nature, and does not imply, and shall not constitute an admission, that the Participating Parties and/or the Settling Insurers are in fact "applicable plans" within the meaning of MMSEA, or that they have any legal obligation to report any actions undertaken by the Trust or contributions to the Trust under MMSEA or any other statute or regulation.

**11.8.7.    Corrections of Reports.** In the event that CMS concludes that reporting done by the Trust in accordance with Section 11.8.1 is or may be deficient in any way, and has not been corrected to the satisfaction of CMS in a timely manner, or if CMS communicates to the Trust, any of the Participating Parties, or any of the Settling Insurers a concern with respect to the sufficiency or timeliness of such reporting, or there appears to the Participating Parties or any of the Settling Insurers a reasonable basis for a concern with respect to the sufficiency or timeliness of such reporting or non-reporting based upon the information received pursuant to sections 11.8.2, 11.8.3, or 11.8.4, or other credible information, then each of the Participating Parties and the Settling Insurers shall have the right to submit its own reports to CMS under MMSEA, and the Trust shall

provide to any party that elects to file its own reports such information as the electing party may require in order to comply with MMSEA, including the full reports filed by the Trust pursuant to Section 11.8.1 without any redactions. The Participating Parties and the Settling Insurers shall keep any information they receive from the Trust pursuant to this Section confidential and shall not use such information for any purpose other than meeting obligations under MMSEA.

**11.8.8.    Medicare Reporting Number.** Notwithstanding any other provisions hereof, the Trust shall not be required to report as required by this Section until each Person on whose behalf the Trust is required to report shall have provided its Medicare Reporting Number, if one exists. Moreover, the Trust shall have no indemnification obligation under Section 11.8.10 to such Person for any penalty, interest, or sanction with respect to a Claim that may arise solely on account of such Person's failure timely to provide its Medicare Reporting Number, if one exists, to the Trust in response to a timely request by the Trust for such Medicare Reporting Number. However, nothing herein relieves the Trust from its reporting obligations with respect to each Person who provides the Trust with its Medicare Reporting Number. The Trust shall indemnify the Debtor, the Estate, the Reorganized Debtor, a Participating Party, or a Settling Insurer for any failure to report payments to Medicare-eligible Abuse Claimants or Future Claimants who have supplied Medicare Reporting Numbers, if any exist.

**11.8.9.    Payment from the Trust.** In connection with the implementation of the Plan, the Trustee of the Trust shall obtain, prior to remitting funds to an Abuse Claimant's or Future Claimant's counsel, or to an Abuse Claimant or Future Claimant, if *pro se*, in respect of any Claim, a certification from the Abuse Claimant or Future Claimant to be paid that said Abuse Claimant or Future Claimant has or will provide for the payment and/or resolution of any obligations owing or potentially owing under the MSP relating to such Claim; otherwise the Trust shall withhold from any payment to the Abuse Claimant or Future Claimant funds sufficient to assure that any obligations owing or potentially owing under the MSP relating to such Claim are paid to CMS. The Trust shall provide a quarterly certification of its compliance with this Section to each of the Participating Parties and the Settling Insurers, and permit reasonable audits by such Persons, no more often than quarterly, to confirm the Trust's compliance with this Section. For the avoidance of doubt, the Trust shall be obligated to comply with the requirements of this Section regardless of whether any of the Participating Parties or the Settling Insurers elects to file its own reports under MMSEA pursuant to Section 11.8.7.

**11.8.10.Indemnification.** The Trust shall defend, indemnify, and hold harmless the Debtor, the Estate, the Reorganized Debtor, the Participating Parties, and the Settling Insurers from any Medicare Claims, and any Claims related to the Trust's obligations under this Section.

**11.8.11.Medicare Holdback.** The Trust shall establish a "**Medicare Holdback**" and such Medicare Holdback shall consist of the proceeds of the Plan Payment. The Trust shall not distribute any portion of the Medicare Holdback until such time as the Medicare Procedures (defined below) are completed by the Trust. The "**Medicare Procedures**" to be completed by the Trust are as follows: (i) immediately upon the Effective Date, the Trustee shall make a query to the Social Security Administration (the "**SSA Query**"), with respect to each Abuse Claimant or Future Claimant, to determine whether each Abuse Claimant or Future Claimant is eligible to receive, is receiving, or has received Medicare benefits ("**Medicare Eligible**"); (ii) within ten (10) calendar days after the Effective Date, the Trust shall provide to the Settling Insurers and Participating

Parties, and, if requested, the Reorganized Debtor, information sufficient to allow them to perform their own SSA queries to the extent they wish to do so; (iii) in the event that one or more Abuse Claimants or Future Claimants is identified through the SSA Query as Medicare Eligible, the Trust shall complete a query to CMS for each such Abuse Claimant or Future Claimant to determine whether any payment ("**Conditional Payment**") made pursuant to Section 1395y(b)(2)(B) of the MSP has been made to or on behalf of that Abuse Claimant or Future Claimant arising from or relating to treatment for abuse; (iv) if any Conditional Payment has been made to or on behalf of that Abuse Claimant or Future Claimant, the Trustee shall, within the time period called for by the MSP, reimburse the appropriate Medicare Trust Fund for the appropriate amount, and submit the required information for that Abuse Claimant or Future Claimant to the appropriate agency of the United States government; and upon resolution of all CMS inquiries or matters relating to the foregoing provisions of this Section 11.8.11, the Medicare Holdback shall be immediately available for distribution by the Trust. The Trustee's obligation to make the reimbursements required by Section 11.8.11(iv) above and to indemnify the Debtor, the Estate, the Reorganized Debtor, the Participating Parties, and the Settling Insurers with respect to Medicare Claims, Claims of an Abuse Claimant or Future Claimant, and Claims against a Settling Insurer Policy related to Sexual Abuse or the Non-Sexual Abuse Claims is not limited to the amount of the Medicare Holdback.

## ARTICLE XII.  CHANNELING INJUNCTION

**12.1    Effective Date Injunctions.**  THE INJUNCTIONS PROVIDED FOR IN THIS PLAN SHALL BE DEEMED ISSUED, ENTERED, VALID, AND ENFORCEABLE ACCORDING TO THEIR TERMS.  THE INJUNCTIONS SHALL BE PERMANENT AND IRREVOCABLE AND MAY ONLY BE MODIFIED BY THE BANKRUPTCY COURT.

**12.2    Channeling Injunction Preventing Prosecution of Abuse Claims.**  IN CONSIDERATION OF THE UNDERTAKINGS OF THE PARTICIPATING PARTIES AND SETTLING INSURERS PURSUANT TO THE TERMS OF THIS PLAN, INCLUDING THE FUNDING OF THE TRUST, AND TO FURTHER PRESERVE AND PROMOTE THE SETTLEMENTS EMBEDDED IN THIS PLAN BETWEEN AND AMONG THE PARTICIPATING PARTIES, THE SETTLING INSURERS, AND THE DEBTOR, AND PURSUANT TO SECTIONS 105, 363, AND 1129 OF THE BANKRUPTCY CODE:

(A) ANY AND ALL CHANNELED CLAIMS ARE CHANNELED INTO THE TRUST AND SHALL BE TREATED, ADMINISTERED, DETERMINED, AND RESOLVED UNDER THE PROCEDURES AND PROTOCOLS AND IN THE AMOUNTS AS ESTABLISHED UNDER THE PLAN AND TRUST AGREEMENT AS THE SOLE AND EXCLUSIVE REMEDY FOR ALL HOLDERS OF CHANNELED CLAIMS; AND

(B) ALL PERSONS THAT HAVE HELD OR ASSERTED, HOLD OR ASSERT, OR MAY IN THE FUTURE HOLD OR ASSERT, ANY CHANNELED CLAIM (INCLUDING ALL DEBT HOLDERS, GOVERNMENTAL, TAX, AND REGULATORY AUTHORITIES, LENDERS, TRADE AND OTHER CREDITORS, ABUSE CLAIMANTS, FUTURE CLAIMANTS, OTHER INSURERS, AND ALL OTHERS HOLDING CLAIMS OR INTERESTS OF ANY KIND OR NATURE

WHATSOEVER) ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING, OR ATTEMPTING TO ASSERT OR ENFORCE ANY CHANNELED CLAIM, INCLUDING:

    i. COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CHANNELED CLAIM AGAINST THE PROTECTED PARTIES OR AGAINST THE PROPERTY OF THE PROTECTED PARTIES;

    ii. ENFORCING, ATTACHING, COLLECTING OR RECOVERING, BY ANY MANNER OR MEANS, FROM THE PROTECTED PARTIES, OR FROM THE PROPERTY OF THE PROTECTED PARTIES, WITH RESPECT TO ANY SUCH CHANNELED CLAIM, ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE PROTECTED PARTIES;

    iii. CREATING, PERFECTING OR ENFORCING ANY LIEN OF ANY KIND AGAINST THE PROTECTED PARTIES, OR THE PROPERTY OF THE PROTECTED PARTIES, WITH RESPECT TO ANY SUCH CHANNELED CLAIM;

    iv. ASSERTING, IMPLEMENTING, OR EFFECTUATING ANY CHANNELED CLAIM OF ANY KIND AGAINST: (1) THE PROTECTED PARTIES; (2) ANY DIRECT OR INDIRECT OBLIGATION DUE TO THE PROTECTED PARTIES; OR (3) THE PROPERTY OF THE PROTECTED PARTIES, WITH RESPECT TO ANY SUCH CHANNELED CLAIM; AND

    v. TAKING ANY ACTION, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO, OR COMPLY WITH, THE PROVISIONS OF THE PLAN.

**ALL CLAIMS DESCRIBED IN THIS SECTION 12.2 SHALL BE CHANNELED TO THE TRUST. THIS INJUNCTION SHALL NOT APPLY TO ANY REINSURANCE CLAIM.**

    **12.2.1. SCOPE OF CHANNELING INJUNCTION.** NOTWITHSTANDING ANY PROVISION OF THIS PLAN, THE FOREGOING "CHANNELING INJUNCTION PREVENTING PROSECUTION OF ABUSE CLAIMS" PROVIDES ABSOLUTELY NO PROTECTION TO (A) A PERSON OR PERSONS HAVING PERSONALLY COMMITTED AN ACT OR ACTS OF ABUSE RESULTING IN A CLAIM AGAINST THE DEBTOR, A PARTICIPATING PARTY, OR A SETTLING INSURER; (B) ANY PERSON ON ACCOUNT OF CLAIMS EXCEPTED FROM THE EXCULPATION UNDER SECTION 19.4; AND (C) TO THE EXTENT THE TWISTARS SETTLING INSURERS ARE ALSO INSURERS TO THE DEBTOR OR TO THE USOPC UNDER POLICIES ISSUES TO THE DEBTOR OR THE USOPC, THIS

INJUNCTION SHALL NOT APPLY TO CLAIMS BY THE DEBTOR OR THE USOPC AGAINST ANY OF THE TWISTARS SETTLING INSURERS IN THEIR CAPACITY AS AN INSURER TO THE DEBTOR OR THE USOPC UNDER POLICIES ISSUES TO THE DEBTOR OR THE USOPC, AS THE CASE MAY BE.

**12.2.2. ENFORCEMENT TO THE MAXIMUM EXTENT.** TO THE EXTENT NOT OTHERWISE ENJOINED IN SECTION 12.2, THE ASSERTION OR ENFORCEMENT OF CHANNELED CLAIMS, AND ANY ATTEMPT TO ASSERT OR ENFORCE SUCH CLAIMS, BY ANY PERSON, AGAINST A PARTICIPATING PARTY OR SETTLING INSURER IS HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED.

**12.3 SETTLING INSURER INJUNCTION.** IN CONSIDERATION OF THE UNDERTAKINGS OF THE SETTLING INSURERS PURSUANT TO THE TERMS OF THIS PLAN, INCLUDING THE FUNDING OF THE TRUST, AND TO FURTHER PRESERVE AND PROMOTE THE SETTLEMENTS EMBEDDED IN THIS PLAN BETWEEN AND AMONG THE SETTLING INSURERS, AND THE DEBTOR, AND PURSUANT TO SECTIONS 105, 363, AND 1129 OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ANY AND ALL PERSONS (INCLUDING, WITHOUT LIMITATION, ALL DEBT HOLDERS, ALL EQUITY HOLDERS, GOVERNMENTAL, TAX, AND REGULATORY AUTHORITIES, LENDERS, TRADE AND OTHER CREDITORS, ABUSE CLAIMANTS, FUTURE CLAIMANTS, OTHER INSURERS, AND ALL OTHERS HOLDING CLAIMS OR INTERESTS OF ANY KIND OR NATURE WHATSOEVER) ARE PERMANENTLY ENJOINED AND BARRED FROM ASSERTING AGAINST A SETTLING INSURER ANY CLAIM (INCLUDING ANY INSURANCE COVERAGE CLAIM, EXTRA-CONTRACTUAL CLAIM, CONTRIBUTION CLAIM, OR SUBROGATION CLAIM) OR INTEREST OF ANY KIND OR NATURE WHATSOEVER ARISING FROM OR RELATING IN ANY WAY TO (A) ANY ABUSE CLAIM OR FUTURE CLAIM OR (B) ANY OF THE SETTLING INSURER POLICIES OR (C) ANY CLAIM AGAINST ANY SETTLING INSURER FOR CONTRIBUTION, INDEMNITY, DEFENSE, SUBROGATION, OR SIMILAR RELIEF THAT ARISES DIRECTLY OR INDIRECTLY FROM ANY CLAIM AGAINST THE DEBTOR OR THE TWISTARS SETTLEMENT PARTIES; *PROVIDED, HOWEVER,* THAT SUCH INJUNCTION SHALL NOT APPLY TO THE HOLDER OF THE PERSONAL INJURY CLAIM AND HER ABILITY TO PURSUE RECOVERY FROM THE PERSONAL INJURY INSURANCE POLICY. NOTWITHSTANDING THE FOREGOING, TO THE EXTENT THE TWISTARS SETTLING INSURERS ARE ALSO INSURERS TO THE DEBTOR OR TO THE USOPC UNDER POLICIES ISSUES TO THE DEBTOR OR THE USOPC, THIS SETTLING INSURER INJUNCTION SHALL NOT APPLY TO CLAIMS BY THE DEBTOR OR THE USOPC AGAINST ANY OF THE TWISTARS SETTLING INSURERS IN THEIR CAPACITY AS AN INSURER TO THE DEBTOR OR THE USOPC UNDER POLICIES ISSUES TO THE DEBTOR OR THE USOPC, AS THE CASE MAY BE.

**12.4 TERM OF INJUNCTIONS OR STAYS AND CONFIRMATION OF SETTLEMENTS WITH PARTICIPATING PARTIES AND SETTLING INSURERS.** ALL INJUNCTIONS AND STAYS PROVIDED FOR IN THIS PLAN AND UNDER THE INJUNCTIVE PROVISIONS OF SECTIONS 524 AND 1141 OF THE BANKRUPTCY CODE ARE PERMANENT AND WILL REMAIN IN FULL FORCE AND EFFECT FOLLOWING THE EFFECTIVE DATE AND ARE NOT SUBJECT TO BEING VACATED OR MODIFIED.

**12.5 RELEASE OF AVOIDANCE CLAIMS AGAINST PARTICIPATING PARTIES, NON-DEBTOR CGL SETTLING INSURER PERSONS, AND SETTLING INSURERS.** ON THE EFFECTIVE DATE, ALL AVOIDANCE RIGHTS OF THE DEBTOR, THE ESTATE, AND THE REORGANIZED DEBTOR, INCLUDING THOSE ARISING UNDER SECTIONS 544, 547, 548, 549, 550, AND 553 OF THE BANKRUPTCY CODE, AGAINST EACH OF THE PARTICIPATING PARTIES, NON-DEBTOR CGL SETTLING INSURER PERSONS, AND SETTLING INSURERS SHALL BE DEEMED SETTLED, COMPROMISED, AND RELEASED BY THIS PLAN.

**12.6 MUTUAL RELEASE.** EXCEPT FOR OBLIGATIONS ARISING UNDER ANY EXECUTORY CONTRACT ASSUMED BY THE REORGANIZED DEBTOR PURSUANT TO ARTICLE XX OF THIS PLAN, OBLIGATIONS UNDER THE PLAN, AND CLAIMS EXCEPTED FROM EXCULPATION AND DISCHARGE UNDER SECTIONS 19.1 AND 19.4, ON THE EFFECTIVE DATE, THE DEBTOR, THE ESTATE, AND THE REORGANIZED DEBTOR, ON THE ONE HAND, AND THE PARTICIPATING PARTIES, THE NON-DEBTOR CGL SETTLING INSURER COVERED PERSONS, AND SETTLING INSURERS, ON THE OTHER HAND, WAIVE, RELEASE, AND DISCHARGE ANY AND ALL CLAIMS OR CAUSES OF ACTION OF EVERY KIND AND NATURE THAT THEY MAY HAVE AGAINST EACH OTHER, AND THEIR RESPECTIVE RELATED PERSONS. NO SUCH CLAIM WILL SURVIVE THE EFFECTIVE DATE. NO SUCH CLAIM WILL BE DEEMED TO BE ASSIGNED TO THE TRUST. NOTWITHSTANDING THE FOREGOING, TO THE EXTENT THE TWISTARS SETTLING INSURERS ARE ALSO INSURERS TO THE DEBTOR OR TO THE USOPC UNDER POLICIES ISSUES TO THE DEBTOR OR THE USOPC, THIS MUTUAL RELEASE SHALL NOT APPLY TO CLAIMS BY THE DEBTOR OR THE USOPC AGAINST ANY OF THE TWISTARS SETTLING INSURERS IN THEIR CAPACITY AS AN INSURER TO THE DEBTOR OR THE USOPC UNDER POLICIES ISSUES TO THE DEBTOR OR THE USOPC, AS THE CASE MAY BE.

### ARTICLE XIII. SETTLEMENT ELECTION INSURANCE NEUTRALITY

**13.1 No Modification of Insurance Policies of Non-Settling Insurers.** Nothing in this Plan, the Confirmation Order, or in any Plan Document modifies any of the terms of any Non-Settling Insurers' Insurance Policies.

**13.2 Non-Settling Insurers' Duties Not Impaired.** The duties and obligations, if any, of Non-Settling Insurers under their respective Insurance Policies shall not be impaired, altered, reduced, or diminished by: (a) the discharge granted to the Debtor under the Plan pursuant to Section 1141(d) of the Bankruptcy Code; or (b) the exonerations, exculpations, and releases contained in the Plan.

**13.3 Obligations for Claims.** The Non-Settling Insurers' obligations, with respect to any Claim, shall be determined by and in accordance with the terms of their respective Insurance Policies and applicable non-bankruptcy law.

**13.4 Direct Actions.** Any right to sue any Non-Settling Insurer directly, in connection with a Claim or any Insurance Policy, shall be determined by and in accordance with the terms of their respective Insurance Policies and applicable non-bankruptcy law.

**13.5    Defenses of the Debtor, the Estate, and the Reorganized Debtor.** Nothing in the Plan, the Confirmation Order, or any other Plan Document shall diminish or impair the Debtor's, the Estate's, or the Reorganized Debtor's defenses to liability or damages in connection with any insured Claim and the right of any Non-Settling Insurer that is defending the Reorganized Debtor to assert any such underlying defenses to liability.

**13.6    Governing Law.** Nothing in this Plan is intended to affect the governing law of the respective Insurance Policies of the Non-Settling Insurers.

# ARTICLES APPLICABLE TO LITIGATION ELECTION ONLY

## ARTICLE XIV.  LITIGATION ELECTION IMPLEMENTATION

**14.1    Lifting of Automatic Stay and Stay Imposed Under the 105 Order for the Benefit of the Holders of Class 6 Claims.** On the Effective Date, the automatic stay shall be lifted only for the Holders of Class 6 Claims and the injunction imposed by the 105 Order will be dissolved. Holders of Class 6 Claims who had not filed a Pre-Petition Lawsuit against the Debtor shall have, subject to any applicable statute of limitations or repose, or the equitable doctrine of laches, thirty (30) days pursuant to Section 108(c) of the Bankruptcy Code, to file such lawsuit in a court of appropriate jurisdiction against the Debtor; *provided, however*, that the sole source of recovery for such Claims shall be any proceeds of the Debtor's CGL Insurance Policies. Holders of a Class 6 Claim who filed a Pre-Petition Lawsuit against the Debtor or any Co-Defendants shall have thirty (30) days to file a notice in such Pre-Petition Lawsuit stating that the Claimant is electing to recommence litigation against the Reorganized Debtor in name only pursuant to the terms of the Plan; *provided, however*, that the sole source of recovery for such Claims shall be any proceeds of the Debtor's CGL Insurance Policies. A Holder of a Class 6 Claim that does not file a suit or file a notice to recommence litigation of a Pre-Petition Lawsuit within such thirty (30) day period shall be forever barred from asserting the Holder's Claim.

**14.2    Post-Effective Date Awards.** In the event that any Holder of a Class 6 Claim obtains a Post-Effective Date Award against the Reorganized Debtor, the Reorganized Debtor will not object to the Claimant pursuing payment from any CGL Insurer that the Claimant contends provides CGL Insurance Coverage for such Post-Effective Date Award.

**14.3    Cooperation with Insurers in Defense of Claims.** In the event that any Holder of a Class 6 Claim prosecutes an action against the Reorganized Debtor, the Reorganized Debtor shall reasonably cooperate, in accordance with the terms of any applicable CGL Insurance Policy, governing law, and consistent with the terms of this Plan, with a CGL Insurer that is providing a defense to such a Claim, but the Reorganized Debtor shall not be required to pay for the costs of any such defense or cooperation, which will be paid solely by the CGL Insurer(s) providing the defense. The Debtor does not admit liability for any such Claims.

**14.4    Remand of Removed Actions and Relief from Automatic Stay/Discharge.** On the thirtieth (30th) day after the Effective Date and without further order of the Bankruptcy Court or the District Court, (a) all actions removed by the Debtor or any other Co-Defendant during the Chapter 11 Case are remanded to the Court from which they were removed; and (b) such actions are not subject to the automatic stay or the injunction in Bankruptcy Code Section 524(a)(2).

Nothing contained herein is intended to affect, diminish, or impair those provisions of this Plan which prohibit execution of any judgment against the Reorganized Debtor, the Reorganized Debtor's Revested Assets or property the Reorganized Debtor acquires after the Effective Date. Notwithstanding the foregoing, any plaintiff in a removed action may object to remand of such action by filing an objection with the Bankruptcy Court within fifteen (15) days after the Effective Date. Any removed action subject to an objection to remand shall not be remanded except upon order of the Bankruptcy Court. The Reorganized Debtor shall file a notice of remand on the docket for each remanded action.

**14.5    Obligations of the Reorganized Debtor.** The Reorganized Debtor will:

(a)    In the exercise of its business judgment, review all Claims filed against the Estate except for Abuse Claims, the Personal Injury Claim, the USOPC Claim, and the Indemnification Claims, and, if advisable, object to such Claims;

(b)    In the exercise of its business judgment, investigate, prosecute, settle, dismiss, or otherwise resolve all Causes of Action that are not resolved under this Plan. Unless otherwise provided in this Plan, the Reorganized Debtor will be entitled to receive recoveries from Causes of Action, including Insurance Reimbursement Claims, and from Insurance Policies other than recoveries for Post-Effective Date Awards.

(c)    Notwithstanding anything to the contrary in this Plan, honor all of the Debtor's obligations under the Insurance Policies issued by the Insurers and under applicable non-bankruptcy law, with the Reorganized Debtor's attorneys' fees, costs, and expenses incurred in doing so, if any, to be paid by the Insurers, as provided under the Insurance Policies.

### ARTICLE XV.  LITIGATION ELECTION INSURANCE NEUTRALITY

**15.1    No Modification of Insurance Policies.** Nothing in this Plan, the Confirmation Order, or any Plan Document modifies any of the terms of any Insurer's Insurance Policy.

**15.2    Insurers' Obligations Not Impaired.** The Confirmation Order and the Plan Documents shall not impair or diminish any Insurer's legal, equitable, or contractual obligations relating to the Insurance Policies, or the Insurance Reimbursement Claims against the Insurers in any respect. Subject to collateral estoppel and *res judicata*, in the event that any court determines that any provision of this Plan impairs or diminishes any Insurer's obligations with respect to the Insurance Policies, such provision of this Plan shall be given effect only to the extent that it shall not cause such impairment or diminishment.

**15.3    Insurers' Duties Not Impaired.** The duties and obligations, if any, of the Insurers under each Insurer's Insurance Policy shall not be impaired, altered, reduced, or diminished by: (a) the discharge granted to the Debtor under the Plan pursuant to Section 1141(d) of the Bankruptcy Code; or (b) the exonerations, exculpations, and releases contained in the Plan.

**15.4    Insurers' Rights Under Insurance Policies.** No provision of this Plan, the Confirmation Order, or any Plan Document shall diminish or impair the rights of any Insurer under its Insurance Policy or the rights of an Insurer to assert any defense to any Insurance Claim.

**15.5    Additional Insureds' Rights.** No provision of this Plan, the Confirmation Order, or any Plan Document shall diminish or impair the rights of any insured or additional insured under the Debtor's Insurance Policies.

**15.6    Insurers' Obligations for Claims.** An Insurer's obligations, with respect to any Claim, shall be determined by and in accordance with the terms of the Insurance Policies and applicable non-bankruptcy law.

**15.7    Direct Actions.** Any right to sue any Insurer directly, in connection with a Claim or any Insurance Policy, shall be determined by and in accordance with the terms of the Insurance Policies and applicable non-bankruptcy law.

**15.8    Insurers' Defenses.** Nothing in this Plan, the Confirmation Order, or any Plan Document shall constitute a finding or determination that the Debtor and/or any third party is or is not a named insured, additional insured, or insured in any other way under any Insurance Policy; or that any Insurer has or does not have any defense or indemnity obligation with respect to any Claim. No defense, denial, or position of an Insurer shall be impaired or prejudiced in any insurance coverage dispute. Such rights shall be determined by and in accordance with the terms of the Insurance Policies and applicable non-bankruptcy law.

**15.9    Defenses of the Debtor, the Estate, and the Reorganized Debtor.** Nothing in the Plan, the Confirmation Order, or any other Plan Document shall diminish or impair the Debtor's, the Estate's, or the Reorganized Debtor's defenses to liability or damages in connection with any insured Claim and the right of any Insurer that is defending the Reorganized Debtor to assert any such underlying defenses to liability.

**15.10    Governing Law.** Nothing in this Plan is intended to affect the governing law of any Insurance Policy.

## <u>GENERALLY APPLICABLE ARTICLES</u>

### ARTICLE XVI.  CLAIMS AND DISTRIBUTIONS

**16.1    Lift of Automatic Stay for Personal Injury Claim.** On the Effective Date, the automatic stay of litigation against the Debtor will be modified solely to permit the Holder of the Personal Injury Claim to file a lawsuit against the Debtor in a court of appropriate jurisdiction within thirty (30) days, subject to any applicable statute of limitations or repose, or the equitable doctrine of laches, and pursuant to Section 108(c) of the Bankruptcy Code; *provided, however*, that the sole source of recovery for the Personal Injury Claimant shall be any proceeds of the Personal Injury Insurance Policy. In the event the Personal Injury Claimant prosecutes an action against the Reorganized Debtor, the Reorganized Debtor shall reasonably cooperate, in accordance with the terms of the Personal Injury Insurance Policy, governing law, and consistent with the terms of this Plan, with the Insurer that is providing a defense to such a Claim, but the Reorganized Debtor shall not be required to pay for the costs of any such defense or cooperation. The Debtor admits no liability for the Personal Injury Claim. If the Holder of the Personal Injury Claim does not file suit within such thirty (30) day period, the Holder of the Personal Injury Claim shall be forever barred from asserting the Holder's Claim.

**16.2    Objections to Claims other than Abuse Claims, the Personal Injury Claim, the USOPC Claim, Indemnification Claims, and the FCR Claim.** Unless a Claim is (a) expressly described as an Allowed Claim pursuant to or under the Plan; or (b) otherwise becomes an Allowed Claim prior to the Effective Date, upon the Effective Date, the Reorganized Debtor shall be deemed to have a reservation of any and all rights, interests, and objections of the Debtor, or the Estate, to any and all Claims and motions or requests for the payment of or on account of Claims, whether administrative expense, priority, secured, or unsecured, and whether under the Bankruptcy Code, other applicable law, or contract. The Debtor's failure to object to any Claim in the Chapter 11 Case shall be without prejudice to the Reorganized Debtor's rights to contest or otherwise defend against such Claim in the Bankruptcy Court as set forth in this Section when and if such Claim is sought to be enforced by the Holder of such Claim. Objections to a Claim (except for Abuse Claims, the Indemnification Claim, and the Personal Injury Claim) as to which no objection is pending as of the Effective Date, must be filed and served not later than  sixty (60) days after the later of (a) the Effective Date or (b) the date such Claim is filed, provided that the Reorganized Debtor may request (and the Bankruptcy Court may grant) extensions of such deadline, or of any Bankruptcy Court approved extensions thereof, by filing a motion with the Bankruptcy Court without any requirement to provide notice to any Person, based upon a reasonable exercise of the Reorganized Debtor's business judgment. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Plan.

**16.3    Service of Objections.** An objection to a Claim shall be deemed properly served on the Holder of such Claim if the objector effects service by any of the following methods: (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for such Holder is unknown, by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified on the proof of Claim or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of such Holder in the Chapter 11 Case.

**16.4    Additional Documentation.** From and after the Effective Date, the Reorganized Debtor shall be authorized to enter into, execute, adopt, deliver, and/or implement all contracts, leases, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the settlements contained in this Plan without further Order of the Bankruptcy Court.

**16.5    Provisions Governing Distribution To Holders of Allowed Claims.**

**16.5.1.    Distribution Only to Holders of Allowed Claims.** Distributions under this Plan and the Plan Documents will be made only to the Holders of Allowed Claims. Until a Disputed Claim becomes an Allowed Claim, the Holder of that Disputed Claim will not receive any Distribution otherwise provided to the Claimants under this Plan. If necessary in determining the amount of a Pro Rata distribution due to the Holders of Allowed Claims in any Class, the Reorganized Debtor will make the Pro Rata calculation as if all unresolved Claims were Allowed Claims in the full amount claimed or in the Estimated Amount. When an unresolved Claim in any Class becomes an Allowed Claim, the Reorganized Debtor will make full or partial distributions, as applicable, with respect to such Allowed Claim, net of any setoff contemplated by the order, if any, allowing such Claim and/or any required withholding of applicable federal and state taxes.

**16.5.2.  Timing of Distributions.** Unless otherwise agreed by the Reorganized Debtor and the recipient of a distribution under this Plan on account of an Allowed Claim, whenever any payment to be made is due on a day other than a Business Day, such payment will instead be made on the next Business Day, with interest to the extent expressly contemplated by this Plan or any applicable agreement or instrument. Any Claimant that is otherwise entitled to an Undeliverable Distribution and who does not provide the Reorganized Debtor, within thirty (30) days after a Distribution is deemed to be an Undeliverable Distribution, a written notice asserting its claim to that Undeliverable Distribution and setting forth a current, deliverable address, will be deemed to waive any claim to such Undeliverable Distribution and will be forever barred from receiving such Undeliverable Distribution or asserting any Claim against the Reorganized Debtor or its property. Any Undeliverable Distributions that are not claimed under this Section will be retained by the Reorganized Debtor in accordance with the Plan. Nothing in the Plan requires the Reorganized Debtor to attempt to locate any Claimant who is otherwise entitled to an Undeliverable Distribution.

**16.5.3.  Waiver of Distribution.** If an instrument delivered as a Distribution to a Claimant is not negotiated within one hundred and twenty (120) days after such instrument is sent to the Claimant, that instrument shall be null and void, the Claimant shall be deemed to have waived such Distribution, and such Distribution shall become Cash available to the Reorganized Debtor.

**16.5.4.  Form of Distributions.** Unless otherwise agreed by the Reorganized Debtor and the recipient of a Distribution under this Plan, all Distributions will be made, at the option of the Reorganized Debtor, by a check by first class mail, postage prepaid, or by wire or ACH transfer.

**16.5.5.  No Professional Fees or Expenses.** No professional fees or expenses incurred by a Claimant will be paid by the Debtor, the Estate, or the Reorganized Debtor, except as specified in this Plan.

**16.6    No Distributions Pending Allowance.** No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim; *provided, however*, that in the event that only a portion of such Disputed Claim is an Allowed Claim, the Reorganized Debtor may, in its discretion, make a distribution on account of the portion of such Claim that is an Allowed Claim.

**16.7    Claim Estimation.** In order to effectuate distributions pursuant to the Plan and avoid undue delay in the administration of the Chapter 11 Case, the Debtor and the Estate (if prior to the Effective Date) and the Reorganized Debtor (on and after the Effective Date), after notice and a hearing (which notice may be limited to the Holder of such Disputed Claim), shall have the right to seek an Order of the Bankruptcy Court or the District Court, pursuant to Section 502(c) of the Bankruptcy Code, estimating or limiting, on account of a Disputed Claim, the amount of (a) property that must be withheld from or reserved for distribution purposes on account of such Disputed Claim, (b) such Claim for allowance or disallowance purposes, or (c) such Claim for any other purpose permitted under the Bankruptcy Code; *provided, however*, that the Bankruptcy Court or the District Court, as applicable, shall determine (a) whether such Claims are subject to estimation pursuant to Section 502(c) of the Bankruptcy Code and (b) the timing and procedures for such estimation proceedings, if any, with such matters being beyond the scope of the Plan.

**16.8    Setoffs.** The Reorganized Debtor may, to the extent permitted under applicable law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, the Claims, rights, and Causes of Action of any nature that the Reorganized Debtor may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; *provided, however*, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any such Claims, rights, and Causes of Action that the Reorganized Debtor possesses against such Holder.

**16.9    No Interest on Claims.** Post-petition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing or any other provision of the Plan or the Confirmation Order, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

**16.10    Withholding Taxes.** The Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. As a condition to making any distribution under the Plan, the Reorganized Debtor may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

**16.11    No De Minimis Distributions.** Notwithstanding anything to the contrary in this Plan, no cash payment of less than $10 will be made by the Reorganized Debtor to any Holder of an Allowed Claim. No consideration will be provided in lieu of the de minimis distributions that are not made under this Section. Allowed Claims that are entitled to a Pro Rata distribution of less than $10 shall continue to accrue until such time as the Pro Rata distribution on account of such Claim will be $10 or more.

**16.12    Manner of Cash Payments.** Cash payments to domestic Claimants will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Reorganized Debtor, or at the Reorganized Debtor's option, by wire transfer from a domestic bank. Cash payments to foreign Claimants may be paid, at the Reorganized Debtor's option, either in the same manner as payments to domestic entities or in any funds and by any means that are necessary or customary in the particular foreign jurisdiction.

## ARTICLE XVII.  LITIGATION

**17.1    Reorganized Debtor's Retention of Litigation.** The Reorganized Debtor shall retain and exclusively enforce the Debtor's Causes of Action, including Insurance Reimbursement Claims, whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, an adversary proceeding filed in the Chapter 11 Case. The Reorganized Debtor shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Causes of Action, without obtaining Bankruptcy Court approval. Notwithstanding the foregoing, in the event Class 6 makes the Settlement Election, the Debtor's

Insurance Reimbursement Claims and any other Claims against CGL Settling Insurers and Participating Parties will be released.

**17.2    Additional Actions.** Any Person to whom the Debtor has incurred an obligation (whether on account of the provision of goods, services, or otherwise), or who has received goods or services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or leased equipment or property from the Debtor, should assume that such obligation, transfer, or transaction may be reviewed by the Reorganized Debtor subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, regardless of whether (a) such Person has filed a proof of Claim against the Debtor in this Chapter 11 Case; (b) such Person's proof of Claim has been objected to; (c) such Person's Claim was included in the Schedules; or (d) such Person's scheduled Claim has been objected to or has been identified as disputed, contingent, or unliquidated. Notwithstanding the foregoing, this Section shall not be applicable to Abuse Claimants if Class 6 makes the Settlement Election.

## ARTICLE XVIII.  CONDITIONS PRECEDENT

**18.1    Conditions to Effectiveness.** The Effective Date will occur when each of the following conditions in Section 18.1.1 (if Class 6 makes the Settlement Election) or Section 18.1.2 (if Class 6 makes the Litigation Election) have been satisfied or waived in accordance with Section 18.2 of this Plan:

**18.1.1.    Conditions to Effectiveness if Class 6 Makes the Settlement Election.** The Effective Date will occur when: (a) the Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Reorganized Debtor, the Survivors' Committee, the Participating Parties, and the CGL Settling Insurers; (b) the Trustee and Reorganized Debtor have signed the Trust Agreement; (c) the CGL Settling Insurers have paid the Insurance Settlement Amount; and (d) the Participating Parties and the CGL Settling Insurers have made the transfers required to fund the Trust as described in Section 9.2 of the Plan.

**18.1.2.    Conditions to Effectiveness if Class 6 Makes the Litigation Election.** The Effective Date will occur when the Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Reorganized Debtor and no stay of such Confirmation Order shall be in effect.

**18.2    Waiver of Conditions.** Any conditions set forth in Section 18.1 of this Plan may be waived by the mutual written consent of the Debtor, the Survivors' Committee, the Participating Parties, and the Settling Insurers.

**18.3    Statement.** A statement shall be filed with the Court within three (3) Business Days after the Effective Date, advising the Court and all parties in interest of the occurrence of the Effective Date.

**18.4    Non-Occurrence of Effective Date.**  Subject to further order of the Bankruptcy Court, in the event that the Effective Date does not occur within one hundred twenty (120) days after entry of a Final Order confirming the Plan, the Plan shall become null and void. A statement shall be filed with the Court within three (3) Business Days after the Effective Date, advising all parties of

the Effective Date, or within three (3) Business Days after the occurrence of any event that renders the Plan null and void, advising all parties that the Plan is null and void.

### ARTICLE XIX.  EFFECTS OF PLAN CONFIRMATION AND DISCHARGE

**19.1    Discharge.** On the Effective Date, pursuant to Section 1141(d) of the Bankruptcy Code, the Debtor, the Estate, and the Reorganized Debtor will be discharged from all liability for any and all Claims and Debts, known or unknown, whether or not giving rise to a right to payment or an equitable remedy, that arose, directly or indirectly, from any action, inaction, event, conduct, circumstance, happening, occurrence, agreement, or obligation of the Debtor, or the Debtor's Related Persons, before the Confirmation Date, or that otherwise arose before the Confirmation Date, including all interest, if any, on any such Claims and Debts, whether such interest accrued before or after the date of commencement of the Chapter 11 Case, and including all Claims and Debts based upon or arising out of Abuse Claims, the Personal Injury Claim, the USOPC Claim, or the Indemnification Claims and from any liability of the kind specified in Sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim is filed or is deemed filed under Section 501 of the Bankruptcy Code; (b) such Claim is Allowed under this Plan; or (c) the Holder of such Claim has accepted this Plan.

**19.1.1.  Source of Payment in the Event Class 6 Makes the Litigation Election.** IN THE EVENT CLASS 6 MAKES THE LITIGATION ELECTION, EXCEPT AS REQUIRED BY THE DEBTOR'S CGL INSURANCE POLICIES, AND UPON NOTICE TO THE APPLICABLE CGL INSURER, THE DEBTOR MAY ELECT NOT TO DEFEND ANY POST EFFECTIVE DATE LITIGATION WHICH IS AUTHORIZED TO BE PROSECUTED AGAINST THE DEBTOR PURSUANT TO THIS PLAN AND NO JUDGMENT OBTAINED AGAINST THE DEBTOR IN SUCH LITIGATION CAN BE EXECUTED AGAINST THE REVESTED ASSETS, AGAINST ANY PROPERTY ACQUIRED BY THE REORGANIZED DEBTOR SUBSEQUENT TO THE EFFECTIVE DATE, OR AGAINST THE REORGANIZED DEBTOR. THE REORGANIZED DEBTOR REMAINS LIABLE TO PAY AMOUNTS TO THE EXTENT THERE IS ALSO INSURANCE COVERAGE FOR THOSE AMOUNTS. THE ONLY SOURCE OF ANY PAYMENT FOR ANY JUDGMENT ENTERED IN ANY LITIGATION AUTHORIZED TO PROCEED AFTER THE EFFECTIVE DATE SHALL BE THE DEBTOR'S CGL INSURANCE POLICIES.

**19.2    Vesting of Assets.** In accordance with Sections 1141 and 1123(a)(5) of the Bankruptcy Code, the Revested Assets shall vest in the Reorganized Debtor on the Effective Date free and clear of all liens, Claims, and interests of Creditors, including successor liability Claims. On and after the Effective Date, the Reorganized Debtor may operate and manage its affairs and may use, acquire, and dispose of property without notice to any Person, and without supervision or approval by the Bankruptcy Court, and free of any restrictions imposed by the Bankruptcy Code, Bankruptcy Rules, or the Bankruptcy Court, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

**19.3    Continued Existence of Reorganized Debtor.** The Debtor will, as the Reorganized Debtor, continue to exist after the Effective Date in accordance with the applicable laws of the State of Texas, with all the powers of a not-for-profit having tax-exempt status under 26 U.S.C.

§ 501(c)(3) and all other applicable laws, and without prejudice to any right to alter or terminate such existence under applicable state law.

**19.4    Exculpation and Limitation of Liability.** NONE OF THE EXCULPATED PARTIES WILL HAVE OR INCUR ANY LIABILITY TO, OR BE SUBJECT TO ANY RIGHT OF ACTION BY, ANY HOLDER OF A CLAIM, ANY OTHER PARTY IN INTEREST, OR ANY OF THEIR RESPECTIVE AGENTS, EMPLOYEES, REPRESENTATIVES, FINANCIAL ADVISORS, ATTORNEYS, OR AFFILIATES, OR ANY OF THEIR SUCCESSORS OR ASSIGNS, FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THIS CHAPTER 11 CASE, INCLUDING THE EXERCISE OF THEIR RESPECTIVE BUSINESS JUDGMENT AND THE PERFORMANCE OF THEIR RESPECTIVE FIDUCIARY OBLIGATIONS, THE PURSUIT OF CONFIRMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN, EXCEPT LIABILITY FOR THEIR WILLFUL MISCONDUCT OR FRAUD (PROVIDED, HOWEVER, THE DEBTOR, THE ESTATE, AND REORGANIZED DEBTOR WILL BE DISCHARGED FROM ANY SUCH LIABILITY FOR SUCH ACTS OR OMISSIONS OCCURRING PRIOR TO THE CONFIRMATION DATE) OR ANY CAUSES OF ACTION ARISING FROM OR RELATED TO DENIALS OF COVERAGE OR COVERAGE DEFENSES, AND, IN ALL RESPECTS, SUCH PARTIES WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN OR IN THE CONTEXT OF THE CASE. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE DEBTOR AND ITS RELATED PARTIES, ITS EMPLOYEES, AND THE DEBTOR'S PROFESSIONALS, SHALL BE ENTITLED TO AND GRANTED THE BENEFITS OF SECTION 1125(E) OF THE BANKRUPTCY CODE. FOR THE AVOIDANCE OF DOUBT, THIS SECTION AND THE DEFINITION OF "EXCULPATED PARTIES" SHALL NOT, DIRECTLY OR INDIRECTLY, INURE TO OR FOR THE BENEFIT OF A PERSON OR PERSONS HAVING PERSONALLY COMMITTED AN ACT OR ACTS OF SEXUAL ABUSE RESULTING IN A CLAIM AGAINST THE DEBTOR. THE EXCULPATED PARTIES, NOR, IN THE EVENT CLASS 6 MAKES THE SETTLEMENT ELECTION, THE TRUST OR THE TRUSTEE, AND PROFESSIONALS EMPLOYED BY THE FOREGOING, SHALL NOT HAVE ANY LIABILITY TO ANY GOVERNMENTAL ENTITY OR INSURER ON ACCOUNT OF PAYMENTS MADE TO A SEXUAL ABUSE CLAIMANT, INCLUDING LIABILITY UNDER THE MEDICARE SECONDARY PAYER ACT.

## ARTICLE XX.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**20.1    Assumed Employee Benefit Plans.** To the extent not previously assumed, all employee and retiree benefit plans to which the Debtor is a party will be deemed assumed by the Reorganized Debtor on the Effective Date.

**20.2    General; Assumed if Not Rejected.** Subject to the requirements of Section 365 of the Bankruptcy Code, all executory contracts and unexpired leases of the Debtor that have not been rejected by order of the Bankruptcy Court or are not the subject of a motion to reject pending on the Confirmation Date will be deemed assumed by the Reorganized Debtor on the Effective Date. If any party to an executory contract or unexpired lease that is being assumed objects to such assumption, the Bankruptcy Court may conduct a hearing on such objection on any date that is

either mutually agreeable to the parties or fixed by the Bankruptcy Court. All payments to cure defaults that may be required under Section 365(b)(1) of the Bankruptcy Code will be made by the Reorganized Debtor. In the event of a dispute regarding the amount of any such payments, or the ability of the Debtor to provide adequate assurance of future performance, the Reorganized Debtor will make any payments required by Section 365(b)(1) of the Bankruptcy Code after the entry of a Final Order resolving such dispute.

**20.3    Claims for Contract Rejection.** All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court within 30 days after the Effective Date or such Claims will be forever barred. If any order providing for the rejection of an executory contract or unexpired lease did not provide a deadline for the filing of Claims arising from such rejection, proofs of Claim with respect thereto must be filed within 30 days after the later to occur of (a) the Effective Date or, (b) if the order is entered after the Effective Date, the date such order becomes a Final Order, or such Claims will be forever barred.

## ARTICLE XXI.  NON-MONETARY COMMITMENTS

**21.1    Commitment to Athlete Safety.** Athletes are the heart and soul of gymnastics, and the Debtor is focused on making its organization more athlete-centric. As part of this commitment, the Debtor has made significant strides towards the creation of a safe, positive, and encouraging environment where athletes and all members can thrive, have fun, be successful, and be themselves. The Debtor's goal is to do everything it can to prevent the opportunity for abuse to happen in the future.

To that end, the Debtor has undertaken the following steps to strengthen athlete safety:

- Before the Petition Date, the Debtor implemented a streamlined Board structure, reducing the number of directors from 21 to 15. The Board has 8 independent directors, 3 national membership directors, 3 athlete directors and 1 Advisory Council member.

- The Debtor hired a new President and CEO, who has met with hundreds of stakeholders, including survivors, to hear their perspectives on how to improve athlete safety and the organization overall.

- The Debtor amended its bylaws to strengthen Safe Sport provisions and complaint processing. These amendments include: creating a permanent Safe Sport Committee; increasing the number of independent directors to eight; removing the President from a role in the processing of complaints; easing complaint filing requirements; delineating responsibilities of the Board and president more clearly; and providing for the publication of the names of members who have been suspended or placed on the permanently ineligible list as part of the disciplinary process.

- The Debtor adopted a new Safe Sport Policy, which mandates reporting, defines specific types of misconduct, sets standards to prohibit "grooming" behavior, and establishes greater accountability. The policy further provides important requirements and information on mandatory reporting and Proactive Policies that empower athletes and guide athlete-

coach interactions. A copy of the Safe Sport Policy is available at: https://usagym.org/pages/education/safesport/policy.html. The website also includes a "Policy Snapshot" summary and educational webinars.

- The Debtor has expanded its Safe Sport Department to better support, train, educate, and serve members. The department now includes a Director of Safe Sport Education and Training, a Safe Sport Legal Counsel, three Safe Sport Investigators, and a Safe Sport Administrator.

- The Debtor has hired a Vice President of Athlete Health and Wellness, which is a new role. This person is responsible for overseeing the organization's strategy and execution of holistic athlete health and wellness initiatives, including sports medicine, sports psychology, and nutrition services.

- The Debtor has streamlined the reporting process by creating a dedicated, toll-free number, 833-844-SAFE; the safe sport email address of safesport@usagym.org; and online reporting at usagym.org/safesport. In addition to reporting violations of the Safe Sport code to USA Gymnastics, members are required to report suspected child abuse, including sexual abuse, to law enforcement and to the U.S. Center for Safe Sport.

- The Debtor publishes on its website the names of permanently ineligible members and suspended members. The website for permanently ineligible members is: https://usagym.org/pages/aboutus/pages/permanently_ineligible_members.html And the website for suspended members is: https://usagym.org/pages/aboutus/pages/suspended_members.html

- The Debtor has strengthened its educational initiatives about athlete safety. The Debtor rolled out its new Safe Sport educational and training materials, which include industry best practices and ideas from experts in the prevention of child sexual abuse. The educational outreach encompasses presentations at Regional and National Congresses, along with additional educational and informational opportunities for clubs and all professional members; informational videos and articles about Safe Sport issues at usagym.org/safesport; and additional resources for parents at usagymparents.com. Professional members and USA Gymnastics staff are required to take Safe Sport training. Safe Sport is also included as part of the safety and risk management course.

In addition, the Debtor and the Reorganized Debtor commit to the following steps to continue strengthening athlete safety:

- Hire additional key positions, including a Vice President of Safe Sport;

- Become a more data-driven organization, particularly with regards to athlete safety;

- Implement additional educational programming about athlete safety, including dialogue-based information-share opportunities and more easily-accessed content;

- Audit member clubs for compliance with the Safe Sport Policy;

- Continue to engage with, and listen to, all stakeholders; and

- Engage with survivors who want to be involved in order to improve the organization on every level—culture, policies, governance, etc.

## ARTICLE XXII.  MISCELLANEOUS PROVISIONS

**22.1    Retention of Jurisdiction.** Notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court will retain jurisdiction over all matters arising under, in furtherance of, or in connection with this Plan, including the following:

(i)      The determination of objections to Disputed Claims, and the determination of requests for payment of Claims entitled to priority under Section 507 of the Bankruptcy Code, including compensation of and reimbursement of expenses of parties entitled thereto;

(ii)     The resolution of controversies and disputes regarding interpretation and implementation of this Plan and the Plan Documents;

(iii)    The granting of relief in aid of this Plan and the Plan Documents, including the entry of appropriate orders (which may include removal of actions in non-Bankruptcy Court forums to the Bankruptcy Court, as well as contempt or other sanctions) to protect the Reorganized Debtor and the Released Parties from actions prohibited under this Plan or the Plan Documents;

(iv)     Amendments to and modifications of this Plan;

(v)      Subject to the limitations and exclusions described above, the determination of any and all applications, adversary proceedings, and contested or litigated matters pending on the Effective Date;

(vi)     In the event Class 6 makes the Litigation Election, the determination of any motion to determine that a Claimant is a Future Claimant or to determine that an Abuse Claim filed after the Bar Date shall be deemed to have been filed before the Bar Date; and

(vii)    The closing of this case.

**22.2    Modification of Plan.** The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend, modify, or withdraw this Plan prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Debtor may, upon order, amend, or modify this Plan in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

**22.3    Post-Confirmation Court Approval.** Any action requiring Bankruptcy Court, District Court, or state court approval after the Effective Date will require the Person seeking such approval to file an application, motion, or other request with the Bankruptcy Court, District Court, or state

court, as applicable, and obtain a Final Order approving such action before the requested action may be taken. The Person filing such application, motion, or other request shall serve such application, motion, or other request, together with a notice setting forth the time in which objections must be filed with the Bankruptcy Court, on the Reorganized Debtor and the Survivors' Committee by first-class mail, electronic mail, ECF, overnight courier, facsimile, or hand delivery. Unless the court orders otherwise, all notices shall provide the recipients at least 21 days in which to file an objection to the application, motion, or other request. If no objection is timely filed, the court may authorize the proposed action without further notice or a hearing. If an objection is timely filed, the court will determine whether to conduct a hearing, or to require the submission of further documentation, prior to ruling on the application, motion, or other request.

**22.4    Election Pursuant to Section 1129(b) of the Bankruptcy Code.** If necessary, the Debtor hereby requests confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code if the requirements of all provisions of Section 1129(a) of the Bankruptcy Code, except Section 1129(a)(8) thereof, are met with regard to the Plan. In determining whether the requirements of Section 1129(a)(8) of the Bankruptcy Code have been met, any Class that does not contain as an element thereof an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 as of the date fixed by the Bankruptcy Court for filing acceptances or rejections of this Plan shall be deemed deleted from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class.

**22.5    Closing of the Chapter 11 Case.** As soon as practicable after the Effective Date, when the Reorganized Debtor deems appropriate, the Reorganized Debtor will seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules; *provided, however*, that entry of a final decree closing the Chapter 11 Case shall, whether or not specified therein, be without prejudice to the right of the Reorganized Debtor, or any other party in interest, to reopen the Chapter 11 Case for any matter over which the Bankruptcy Court or the District Court has retained jurisdiction under this Plan. Any order closing this Chapter 11 Case will provide that the Bankruptcy Court or the District Court, as appropriate, will retain (a) jurisdiction to enforce, by injunctive relief or otherwise, the Confirmation Order, any other orders entered in this Chapter 11 Case, and the obligations created by this Plan and the Plan Documents; and (b) all other jurisdiction and authority granted to it under this Plan and the Plan Documents.

**22.6    Dissolution of the Survivors' Committee.** On the Effective Date, the Survivors' Committee shall dissolve automatically, whereupon its members and the Survivors' Committee's Professionals shall be released from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective orders entered during the Chapter 11 Case, which shall remain in full force and effect according to their terms, and further provided that such parties shall continue to have a right to be heard with respect to any and all applications for Professional Claims.

**22.7    Termination of the Appointment of the FCR.** The Bankruptcy Court's appointment of the FCR shall be terminated, if Class 6 makes the Litigation Election, on the Effective Date, whereupon the FCR and the FCR's Professionals shall be released from any further duties and

responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective orders entered during the Chapter 11 Case, which shall remain in full force and effect according to their terms, and further provided that such parties shall continue to have a right to be heard with respect to any and all applications for Professional Claims. The Bankruptcy Court's appointment of the FCR shall be terminated, if Class 6 makes the Settlement Election, when the funds in the Future Claimant Reserve are completely distributed as provided in Sections 9.5 and 11.7 of the Plan, whereupon the FCR and the FCR's Professionals shall be released from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective orders entered during the Chapter 11 Case, which shall remain in full force and effect according to their terms, and further provided that such parties shall continue to have a right to be heard with respect to any and all applications for Professional Claims.

**22.8    Notices.** All notices or requests to the Debtor, the Estate, or the Reorganized Debtor in connection with this Plan shall be in writing and served either by (i) United States mail, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed given when received by the following parties:

**If to the Debtor, the Estate, or Reorganized Debtor:**

USA Gymnastics
130 East Washington Street
Suite 700
Indianapolis, Indiana 46204

*With a copy to:*

Jenner & Block LLP
353 North Clark Street
Chicago, Illinois 60654
Attn: Catherine Steege and Melissa Root

**22.9    Notices to Claimants.** All notices and requests to a Person holding any Claim will be sent to them at the last known address listed for such Person with the Bankruptcy Court or with the Claims Agent, or to the last known address of their attorney of record. The Holder of a Claim may designate in writing any other address, which designation will be effective upon actual receipt by the Reorganized Debtor. Any Person entitled to receive notice under this Plan will have the obligation to provide the Reorganized Debtor with such Person's current address for notice purposes. The Reorganized Debtor will have no obligation to attempt to locate a more current address in the event any notice proves to be undeliverable to the most recent address which has been provided to the Reorganized Debtor.

**22.10    Consummation of the Plan.** The Debtor reserves the right to request that the Confirmation Order include a finding by the Bankruptcy Court that Bankruptcy Rule 3020(e) shall not apply to the Confirmation Order.

**22.11   Severability.** If, before confirmation, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. That term or provision will then be applicable as altered or interpreted, except if such term or provision is inconsistent with the intent of the Debtor, in which case the Plan may be unilaterally withdrawn by the Debtor. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section, is valid and enforceable under its terms. In the event of a successful collateral attack on any provision of this Plan (i.e., an attack other than through a direct appeal of the Confirmation Order), the remaining provisions of this Plan will remain binding on the Debtor, the Estate, the Reorganized Debtor, the Survivors' Committee, any Participating Parties, any Settling Insurers, any Non-Debtor CGL Settling Insurer Person, all Claimants, all Creditors, and all other parties in interest.

**22.12   Headings.** The headings of the Sections of this Plan are inserted for convenience only and will not affect the interpretation hereof.

**22.13   Exemption from Transfer Taxes.** Pursuant to Section 1146(a) of the Bankruptcy Code, the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, whether occurring prior or subsequent to the Confirmation Date, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by this Plan, shall not be subject to any stamp tax, real estate transfer tax, excise tax, sales tax, use tax, or other similar tax. The Plan may be modified after the Effective Date to incorporate the terms of such sale.

**22.14   Waivers.** Any term of the Plan may be waived by the party benefited by the term to be waived.

**22.15   Setoffs, Recoupments, and Defenses.** Nothing contained in the Plan shall constitute a waiver or release by the Debtor, the Estate, or the Reorganized Debtor of any rights of setoff or recoupment or of any defense they may have with respect to any Claim (including rights under Section 502(d) of the Bankruptcy Code). The Debtor, the Estate, and the Reorganized Debtor may, but will not be required to, set off against any Claim or any Distributions with respect to such Claim, any and all of the Claims, rights, and causes of action of any nature that the Debtor, the Estate, or the Reorganized Debtor may hold against the Holder of such Claim; *provided, however*, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, the payment of any Distribution hereunder or any other action or omission of the Debtor, the Estate, or the Reorganized Debtor, nor any provision of the Plan, shall constitute a waiver or release by the Debtor, the Estate, or the Reorganized Debtor of any such Claims, rights, and causes of action that the Debtor, the Estate, or the Reorganized Debtor may possess against such Holder.

**22.16   Withdrawal or Revocation of the Plan.** The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.

**22.17   Default.** In the event that the Reorganized Debtor defaults in the performance of any of its respective obligations under the Plan or under any of the Plan Documents, and shall not have cured such default within any applicable cure period (or, if no cure period is specified in the Plan, Plan Documents, or any instrument issued to or retained by a Claimant under the Plan, then within 30 days after receipt of written notice of default), then the entity to whom the performance is due may pursue such remedies as are available at law or in equity. An event of default occurring with respect to one Claim shall not be an event of default with respect to any other Claim.

**22.18   Governing Law.** Except to the extent that federal law (including the Bankruptcy Code or Bankruptcy Rules) is applicable, the rights and obligations arising under the Plan and under the Plan Documents shall be governed by and construed and enforced in accordance with the laws of the State of Indiana without giving effect to the principles of conflicts of laws.

**22.19   Reservation of Rights.** If the Plan is not confirmed, the rights of all parties in interest in the Chapter 11 Case are and will be reserved in full. Any concessions or settlements reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Chapter 11 Case shall be bound or deemed prejudiced by any such concessions or settlements.

**22.20   Successors and Assigns.** The Plan shall be binding upon and inure to the benefit of the Debtor, the Estate, the Reorganized Debtor, all Claimants, and all other parties in interest affected thereby, and their respective successors, heirs, legal representatives, and assigns.

**22.21   Direction to a Party.** On and after the Effective Date, the Reorganized Debtor may apply to the Bankruptcy Court for entry of an Order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by the Plan, and to perform any other act (including satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

**22.22   Certain Actions.** By reason of entry of the Confirmation Order, prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the officers of the Debtor under the Plan, including (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (b) the adoption, execution, and implementation of other matters provided for under the Plan involving the Debtor or the organizational structure of the Debtor, shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as appropriate), pursuant to applicable non-bankruptcy law, without any requirement of further action by the officers of the Debtor.

**22.23   Rounding of Fractional Numbers.** All fractional numbers, including payments or Distributions under the Plan, shall be rounded (up or down) to the nearest whole number.

**22.24   Saturday, Sunday, or Legal Holiday.** If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**22.25  Exhibits.** All Exhibits to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

## ARTICLE XXIII.  CONFIRMATION REQUEST

**23.1    Request for Confirmation.** USA Gymnastics requests confirmation of the Plan under Section 1129 of the Bankruptcy Code with respect to any impaired class that does not accept the Plan or is deemed to reject the Plan.

Dated: January 30, 2020                                Respectfully submitted,


                                                       **JENNER & BLOCK LLP**

                                                       By: /s/ *Catherine Steege*

                                                       Catherine L. Steege (admitted *pro hac vice*)
                                                       Dean N. Panos (admitted *pro hac vice*)
                                                       Melissa M. Root (#24230-49)
                                                       353 N. Clark Street
                                                       Chicago, Illinois 60654
                                                       (312) 222-9350
                                                       csteege@jenner.com
                                                       dpanos@jenner.com
                                                       mroot@jenner.com

                                                       *Counsel for the Debtor*

# EXHIBIT A

**Indemnification Claims**

**USA Gymnastics Plan of Reorganization**
**Exhibit A, Indemnification Claims**

| Claim Number[1] | Claimant's Name |
|---|---|
| General Unsecured Claim 7 | Debra Van Horn |
| General Unsecured Claim  143 | All Olympic Gymnastics Center Inc. |
| General Unsecured Claim 147 | Galina Marinova |
| General Unsecured Claim 189 | Artur Akopyan |
| General Unsecured Claim 246 | Mihael Anton |
| General Unsecured Claim 285 | Stephen D. Penny, Jr. |
| General Unsecured Claim 288 | Twistars USA, Inc. |
| General Unsecured Claim 317 | Leslie L. French |
| General Unsecured Claim 319 | BELIEVE LLC |
| General Unsecured Claim 332 | National Gymnastics Foundation |
| General Unsecured Claim 355 | Martha Karolyi |
| General Unsecured Claim 356 | Bela Karolyi |
| General Unsecured Claim 357 | Karolyi Training Camps, LLC |
| General Unsecured Claim 358 | BMK Partners, Ltd. |
| General Unsecured Claim 359 | BMK Training Facilities, Ltd. |

---

[1] The Debtor reserves the right to object to any of the Claims on this Exhibit A and to supplement or amend this Exhibit A.

# **EXHIBIT B**

**Participating Parties**

**USA Gymnastics Plan of Reorganization**
**Exhibit B, Participating Parties**

| Participating Parties |
|---|
| Gedderts' Twistars USA Gymnastics Club, Inc. |
| John Geddert |
| Kathryn Geddert |
| Twistars USA, Inc. |
| United States Olympic & Paralympic Committee |

# **EXHIBIT C**

**Settling Insurers**

**USA Gymnastics Plan of Reorganization**
**Exhibit C, Settling Insurers**

| Settling Insurers |
|:---:|
| **CGL Settling Insurers** |
| CIGNA Insurance Company (n/k/a ACE American Insurance Company)<br><br>ACE American Insurance Company<br><br>Chubb Indemnity Company a/k/a Ace American Insurance Company |
| National Union Fire Insurance Company of Pittsburgh, a/k/a American International Group, Inc. |
| Great American Assurance Company |
| National Casualty Company |
| Transamerica Insurance Company<br><br>TIG Insurance Company |
| Virginia Surety Company, Inc., f/k/a Combined Specialty Insurance Company |
| **Twistars Settling Insurers** |
| Philadelphia Indemnity Insurance Company |
| Lexington Insurance Company |
| New Hampshire Insurance Company |
| Nationwide Mutual Insurance Company |
| State Farm Fire and Casualty Company |

# **EXHIBIT D**

**Trust Agreement**

(***to be supplemented***)