**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| USA GYMNASTICS,[1] | Case No. 18-09108-RLM-11 |
| Debtor. | |

## REPLY IN SUPPORT OF DEBTOR'S OBJECTION TO CLASS CLAIM NO. 531

USA Gymnastics, as debtor and debtor in possession in the above-captioned chapter 11 case ("**Debtor**" or "**USAG**"), files this reply ("**Reply**") to the *Response To Debtor's Objection To Class Claim No. 531 And Class Claimant's Cross-Motion To Seek Leave To File An Amended Proof Of Claim No. 531* [Dkt. 955] ("**Response**"), filed by Marcia Frederick Blanchette ("**Claimant**") in response to the *Debtor's Objection To Class Claim No. 531* [Dkt. 885] ("**Objection**").[2]

### INTRODUCTION

In her Response, Claimant attempts to fix some of the problems with her purported Class Claim by re-defining her proposed class to limit it to those "athletes who have filed an individual proof of claim in these proceedings" (Resp. 5.) But Claimant's proposed solution to avoid the problem that her proposed Class Claim would render the claims bar date meaningless creates a new and bigger problem for her proposed class. If the proposed class will only consist of those individuals who have filed claims by the bar date—*i.e.*, those who in a civil litigation context

---

[1] The last four digits of the Debtor's federal tax identification number are 7871. The location of the Debtor's principal office is 130 E. Washington Street, Suite 700, Indianapolis, Indiana 46204.

[2] Capitalized terms used herein and not defined shall have the meaning given to them in the Objection, Response, and the *First Amended Chapter 11 Plan Of Reorganization Proposed By USA Gymnastics* [Dkt. 928] ("**Plan**").

would be understood to have filed their own individual action—there is no need for a class in the first place. The Supreme Court has counseled that the "'policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'" *Amchem v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). The "problem" that class action litigation is intended to solve is not present here, where each putative member of the re-defined class must have filed her own "solo action prosecuting [] her rights" to participate in the class in the first place. *Id.*

Simply put, there is no need to saddle this chapter 11 case with the additional complexity, expense, and delay that class action practice would entail when every class member has already filed her own "solo action." *Id.* Doing so would ultimately diminish recoveries for the putative class members, who would see some of their recovery diverted for fees for class counsel, who have already asserted their claims and can adequately represent their own interests, and who have not to date approved of or joined in Claimant's unilateral decision to lodge the Class Claim on their behalf.

The Class Claim also suffers from a host of other defects, some of which Claimant completely ignores in her Response, and each of which, taken alone, provides a sufficient basis for disallowance: (a) the Class Claim provides no benefit to sexual abuse claimants because they can make demands against the Debtor's directors' and officers' ("**D&O**") insurance policies even without the Class Claim; (b) Claimant unnecessarily delayed in requesting that class action procedures apply here; (c) there was no pre-petition certification of the proposed class; (d) the putative class members all received actual notice of the Bar Date; (e) class action procedures will unduly complicate the administration of this case; and (f) the Class Claim lacks merit because it

2

invokes a private cause of action that does not exist, and because it demands an interpretation of the Safe Sport Act that is impermissibly retroactive. The Court should exercise its considerable discretion and disallow the Class Claim for any these reasons.

## ARGUMENT

**I.     Claimant Has Not Shown That Class Action Practice Will Benefit Claimants In This Chapter 11 Case.**

Claimant ignores the principal holding of the primary case that she relies upon: *Gentry v. Siegel*, 668 F.3d 83, 94 (4th Cir. 2012). The *Gentry* court held that the bankruptcy court had not abused its discretion when it declined to exercise its authority under Bankruptcy Rule 9014 to apply class action procedures to the claims resolution process because those procedures would not provide a "substantial benefit" to claimants and the administration of the estate. *Id*.

Here, class action procedures would provide *no* benefit to the estate or to claimants for at least two reasons. *First*, all putative class members have already filed a claim and do not need a class representative appointed to represent their interests. *Second*, the Class Claim is not a necessary mechanism for sexual abuse claimants to make demands against the Debtor's D&O insurance policies. Finally, it is important to note that foisting more attorneys' fees onto claimants, through the appointment of a class counsel, harms all other creditors and provides no benefit, let alone a "substantial benefit."

**A.     Appointing A Class Representative Is Not Necessary To Protect The Interests Of Sexual Abuse Claimants.**

Class action procedures would provide no benefit in this case because there are no absent class members who need a class representative to advocate on their behalf; instead, all members of the putative class are already active participants in this case. Critically, the Seventh Circuit has recognized that the "class action is an *agent for the missing*." *In re American Reserve Corp.*, 840 F.2d 487, 493 (7th Cir. 1988) (emphasis added). The purpose of a class action is to secure

3

compensation for persons who would not bring claims on their own behalf, either because they hold "small claims" for which individual prosecution makes no economic sense, or because they lack notice of their "entitlement to file" their claims. *Id.* at 489.

Here, there are no "missing" potential class members, because Claimant proposes to redefine the purported class to include only athletes who filed individual sexual abuse claims. The redefined putative class includes only:

> All current or former USAG-affiliated amateur athletes *who have filed an individual proof of claim in these proceedings*, for whom the Debtor USAG received information that the amateur athlete may have suffered an incident of child abuse, including sexual, emotional and/or physical abuse, and either (a) failed to report incidents occurring after February 14, 2018 to law enforcement authorities within 24 hours of learning of the incident, and/or (b) failed to report incidents occurring before February 14, 2018 to law enforcement authorities, within 24 hours of the Congress enacting the Safe Sport Act.

(Resp. at 5 (emphasis added).) Each member of the putative class therefore was aware of her "entitlement to file" a sexual abuse claim, and each determined that it made economic sense to file their own "solo action" in light of its anticipated value. *Amchem*, 521 U.S. at 617. These individuals do not need a class action to secure the relief they seek. Employing class action procedures will only duplicate the work these individual creditors have already done to file and prosecute their claims, and appointing class counsel will only drain assets that might otherwise be available to fund their recoveries.

While Claimant cites numerous cases where courts permitted class claims to proceed in bankruptcy, those cases are inapposite. In each of those cases, the purported classes included members who had not filed claims to protect their rights and who would only recover if a class action was allowed. *See, e.g., In re Charter Co.*, 876 F.2d 866, 867-68, 876 (11th Cir. 1989) (class included absent members); *American Reserve*, 840 F.2d at 493-94 (same); *In re Verity Health Sys., Inc.*, No. 18-BK-20151, 2019 WL 2461688, at *8 (Bankr. C.D. Cal. June 11, 2019) (same); *In re*

4

*Chaparral Energy, Inc.*, 571 B.R. 642, 648 (D. Del. 2017) (same); *In re MF Global, Inc.*, 512 B.R. 757, 765 (Bankr. S.D.N.Y. 2014) (same); *In re Connaught Group, Ltd.*, 491 B.R. 88, 96-97 (Bankr. S.D.N.Y. 2013) (same); *In re Kaiser Group, Int'l, Inc.*, 278 B.R. 58, 63 (Bankr. D. Del. 2002) (same). This justification is not compelling here, where every class member filed a proof of claim, and thus necessarily received actual notice of the chapter 11 case and the Bar Date, and can diligently advocate for her own interests. This is especially so given that all claimants are represented by the Survivors' Committee and all but a handful of claimants have their own counsel. As a result, class action practice provides *no* benefit to the proposed class members here.

Claimant contends that the Class Claim still serves a useful function in this chapter 11 case because it allows claimants to recover under the Safe Sport Act even if they did not expressly cite the Safe Sport Act on their proof of claim form. (Resp. 24-26.) This argument also fails. The purported claims under the Safe Sport Act are based upon the Debtor's alleged unlawful failure to report sexual abuse. Assuming these Safe Sport Act claims have merit (which they do not), sexual abuse claimants do not need a class claim to be able to assert such claims on their own. In the Bar Date Order, the Court defined sexual abuse claims to include all claims that "arise out of, are based upon, or involve sexual conduct or misconduct, sexual abuse or molestation, [or] sexual exploitation . . . or the alleged failure by the Debtor or its agents, employees, or volunteers to report the same." (Dkt. 301, at ¶ 5.) Because sexual abuse claims are expressly defined to include any claims arising from the Debtor's alleged reporting failures, recoveries can be allocated to survivors holding allowed claims from any insurance proceeds that are available to satisfy any alleged reporting failures. Sexual abuse claimants do not need a class claim to assert reporting claims that are, *by this Court's definition*, already encompassed within the definition of the sexual abuse claims that they have already filed.

5

In short, the proposed Class Claim duplicates the work that each class member has already done in this case by filing and prosecuting their individual claims, and provides no benefit to anyone (other than the proposed class counsel). Without any absent class members to protect, the proposed Class Claim provides *no benefit*, let alone "substantial benefit" in this case and should be disallowed. *Gentry*, 668 F.3d at 94.

**B.     Sexual Abuse Claimants Do Not Need A Class Claim To Make Demands Against The Debtor's Directors' And Officers' Insurance Policies.**

Claimant next asserts that the proposed Class Claim should go forward because it is the only claim that can access the proceeds of the Debtor's D&O insurance policies for the benefit of sexual abuse claimants. (Resp. 25-26.) But this argument is based upon a misapprehension of the Debtor's proposed Plan.

The Plan allows sexual abuse claimants to choose between a Settlement Election and Litigation Election, and both options permit sexual abuse claimants to make demands against the Debtor's D&O insurance policies, regardless of whether the Class Claim is disallowed. (*See* Dkt. 928, at § 7.2.) The Settlement Election proposes to settle all claims arising in any way from alleged sexual abuse, which would also include any claims arising under the Safe Sport Act for the Debtor's alleged reporting failures. While the settlement fund currently contains $217,500,000, negotiations remain open between the Debtor, its insurers, and the Survivors' Committee about the size of the settlement and about which of the Debtor's insurers will contribute insurance policies and proceeds to it. The Survivors' Committee has been active in these negotiations, and one of its members is the Claimant asserting the Class Claim.[3] Nothing prevents the Survivors'

---

[3] Claimant flouts both the Mediators' and this Court's directives that parties not discuss the confidential mediation by providing a one-sided and inaccurate summary of the mediation. Although the Debtor disputes most of Claimant's characterizations, the Debtor will not breach the confidentiality of the mediation.

6

Committee, which is the duly appointed fiduciary of all sexual abuse claimants in this case, from demanding that the Debtor's D&O insurers contribute their policies in satisfaction of any alleged Safe Sport Act claims. Whether the Class Claim is disallowed simply has no bearing on these negotiations. The sexual abuse claimants therefore do not need the Class Claim to move forward in order for them to attempt to obtain a recovery funded by the Debtor's D&O policies; they can do so through further negotiations without the added complexity, expense, and delay of class action litigation.

The proposed Class Claim similarly has no bearing on sexual abuse claimants' treatment under the Plan's Litigation Election. If this option is selected, sexual abuse claimants will be permitted post-confirmation to resume their lawsuits against the Debtor in name only, and recover any judgments exclusively from the Debtor's insurance policies. In the unlikely event that any claimants obtain a judgment against the Debtor in these Safe Sport Act lawsuits, they may attempt to levy on the Debtor's D&O insurance policies and may initiate coverage litigation to establish their entitlement to the proceeds of the policies. But their post-confirmation collection activities are in no way dependent upon the proposed Class Claim proceeding in this chapter 11 case.

In the end, the proposed Class Claim provides *no* benefit to the sexual abuse claimants. Under the Plan's Settlement Election or Litigation Election, or through further negotiations leading to a different plan, the sexual abuse claimants can assert demands against the Debtor's D&O policies without the proposed Class Claim, and so it has no bearing on their treatment and recoveries under the Plan or in this chapter 11 case.

## II.     The Court Should Not Apply Class Action Procedures To The Class Claim.

Class action procedures do not apply to the claims resolution process unless and until the Court issues an order under Rule 9014 directing the use of Rule 23. *American Reserve*, 840 F.2d at 488. As explained in the Objection, the Court should exercise its discretion and refuse to apply

7

Rule 23 here because Claimant unduly delayed invoking class action procedures, no court certified the putative class pre-petition, all purported class members received notice of the Bar Date, and allowing a "class action would greatly complicate [the] bankruptcy, without yielding significant compensation to injured parties," *American Reserve*, 840 F.2d at 491. (Obj. 11-18.) Nothing in Claimant's Response negates these arguments.

*First,* Claimant offers no compelling explanation for why she ignored her obligation to timely invoke class action procedures in this case, and her more than eleventh hour attempt to do so, half an hour before the Debtor was to reply to her Response, proves that she is aware of this defect. [*See* Dkt. 975.] "[C]lass litigation is inherently more time-consuming than the expedited bankruptcy procedure for resolving contested matters," and so class litigation must be "commenced at the earliest possible time to have a chance of being completed in the same time frame as the other matters that must be resolved before distributing the estate." *In re Ephedra Products Liability Lit.*, 329 B.R. 1, 5 (S.D.N.Y. 2005). Indeed, even the decisions Claimant cites recognizes that class actions are a "procedural quagmire" compared to normal contested matters. *Gentry*, 668 F.3d at 88 n.1. Claimant therefore should have moved long ago to resolve the "complex" issues raised by her proposed class action litigation. (Resp. 25.) Instead, more than 18 months into this case, she *still* has not sought class certification. This Court should not permit Claimant to leverage her failure to promptly invoke class action procedures to delay confirmation of the Debtor's plan, to the detriment of all sexual abuse claimants who do not stand to benefit from the Class Claim in any event.

Claimant is also wrong in her argument that a motion to initiate class action litigation would not have been "ripe" at the moment she filed the Class Claim. (Resp. 14.) Claimant misreads *American Reserve* to argue that a debtor must object to a claim, creating a contested matter, before

8

Rule 23 can be applied via Rule 9014. But this argument is unduly formalistic. *American Reserve* makes clear that the filing of a claim constitutes a "stage" in a contested matter, authorizing the use of Rule 9014. *Id.* at 488. And at the time Claimant filed the Class Claim, her pre-petition class action lawsuit asserting the *very same claim* was pending and *USA Gymnastics* had already moved to dismiss the claim. (*See Frederick v. USA Gymnastics*, No. 18-CV-11299, Dkts. 38, 39 (D. Mass.).) Claimant therefore knew on April 29, 2019 when she filed the Class Claim, that the Debtor objected to her claim and that her claim would be disputed in this chapter 11 case. Under these circumstances, *American Reserve* permitted her to file a Rule 9014 motion immediately after filing the Class Claim on April 29, 2019, or at any time over the last ten months. Not counting her belated attempt to do so thirty minutes before the deadline for the Debtor to file its Reply, Claimant failed to do so, and has never provided any explanation for her delay other than that she is somehow excused from the requirement. She is not.

The cases Claimant cites also recognize that it is *her burden* as the proponent of the Class Claim to seek application of class action procedures, not the Debtor's burden to oppose them. In *In re Verity Healthcare System, Inc.*, No. 18-BK-20151-ER, 2019 WL 2461688 (Bankr. C.D. Cal. June 11, 2019), the court held "'that a prerequisite for allowance is that *the proponent* must seek and obtain a determination of the Bankruptcy Court that [Rule 23] be made applicable to the claims process'" pursuant to Rule 9014. *Id.* at *7 (quoting *In re Aughney*, No. 10-12666, 2011 WL 479010 (Bankr. N.D. Cal. Feb. 4, 2011)) (denying class certification) (emphasis added). The court specifically rejected the notion that "the party opposing the use of class devices bears the burden" on any issue. *Id.* (internal alterations omitted). It was therefore Claimant's obligation, as of the date she filed her proposed Class Claim, to request application of class action procedures and to move the proposed Class Claim toward resolution.

9

Claimant has breached this obligation. As noted, Claimant failed to file a Rule 9014 motion at the time she filed her Class Claim, even though the Debtor, through its pending motion to dismiss the pre-petition litigation, had already contested the basis for the Class Claim. But, even more, Claimant failed to file the Rule 9014 motion after September 26, 2019, when the Court entered stipulations withdrawing other class claims filed in this case, which indicated that the Debtor generally objected to bankruptcy class action practice (Dkts. 795-96); after January 17, 2020, when the Debtor filed the Objection; after February 18, 2020, when counsel for Claimant conferred with counsel for the Debtor about the Objection; after March 9, 2020, when counsel conferred once again; and even after March 11, 2020, when Claimant filed her Response.

There is no excuse for this delay. Considering complex class action issues now will distract the Debtor, the Court, and other parties in interest from plan confirmation issues that, once adjudicated, will permit the sexual abuse claims to be fully and finally resolved. There is no reason to delay plan confirmation to consider the proposed Class Claim. The proposed Class Claim will not provide sexual abuse claimants any relief they cannot already obtain through confirmation of the Plan, which, in all events, permits sexual abuse claimants to make the demands against the Debtor's D&O policies that are the driving force behind the Class Claim.

*Second*, the Court should not apply class action procedures because the putative class was not certified pre-petition. *See, e.g., In re Musicland Holding Corp.*, 362 B.R. 644, 654 (Bankr. S.D.N.Y. 2007). Claimant spends significant time disputing the notion that the lack of pre-petition certification *per se* bars the use of class action procedures in any bankruptcy case, which is an argument the Debtor never made. (Resp. 16-18.) Instead, the Debtor argued that, because there was no pre-petition certification here, no sexual abuse claimants were relying on Claimant to protect their interests and assert the Class Claim on their behalf, a fact which strongly weighs in

10

favor of denying the use of class action procedures in bankruptcy. (Obj. 13-15.) Because there was no pre-petition certification, every member of the re-defined putative class filed an individual sexual abuse claim, completely negating the need for the proposed Class Claim. In light of the lack of pre-petition certification and the class members' demonstrated ability to advocate their own interests, there is no need to waste estate resources litigating certification issues for a proposed class that, if it were certified, would provide no benefit to sexual abuse claimants beyond that which they can already recover on their own behalf in this chapter 11 case.

*Third*, the fact that all members of the putative class received actual notice of the Bar Date, demonstrated by their filing of individual claims, also weighs against using class action procedures. *See Musicland*, 362 B.R. at 655-56; *In re W.R. Grace & Co.*, 389 B.R. 373, 380 (Bankr. D. Del. 2008). Claimant responds that, despite actual notice to members of the class, the Class Claim should proceed because it provides "unique and additional remedies" under the "complex" Safe Sport Act that sexual abuse claimants otherwise could not access. (Resp. 24-15.) Again, this argument is wrong. Regardless of whether the Plan is confirmed using the Settlement Election or the Litigation Election, or some other treatment for sexual abuse claims, sexual abuse claimants can seek recoveries from the Debtor's D&O policies, as explained above. Allowing the proposed Class Claim is not necessary for that outcome, and instead only duplicates the claims already on file and reduces recoveries once class counsel fees are considered.

*Fourth*, the Court should not apply Rule 23 to the proposed Class Claim because doing so would unduly complicate and "gum up" the administration of the estate, delaying distributions to all creditors. *American Reserve*, 840 F.2d at 491; *accord Musicland*, 362 B.R. at 656-57. Claimant admits that, in order for the Class Claim to proceed, there must be an opportunity to issue additional discovery for "objective evidence" of the Debtor's alleged non-compliance with the Safe Sport

11

Act's reporting obligations because apparently Claimant filed her proposed Class Claim without such evidence. (Resp. 19.) Claimant also recognizes that additional notice might need to be provided to members of the putative class. (*Id.* at 21-24.)

But a "bankruptcy case can proceed no faster than its slowest matter," and Claimant downplays the time and expense that will be required for each of these tasks. *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 376 (Bankr. S.D.N.Y. 1997); *see also American Reserve*, 840 F.2d at 491 ("Because bankruptcy is a collective proceeding, it is reduced to the slowest common denominator"). Indeed, the massive amount of discovery alone could delay confirmation of the Plan. The Debtor would have to collect records going back forty years, review all such materials for privilege, determine a means of producing the materials without violating the privacy of any of the individuals named in those documents, and then respond to Claimant's inevitable objections along the way. This discovery process could easily drag on for months and continue through the current date set in early June for the Plan's confirmation hearing. Individual claimants might then object to voting on the Plan until they know the resolution of the Class Claim, and additional insurers might refuse to contribute under the Settlement Election for similar reasons. There is no reason to delay resolution of this case, especially where the Class Claim provides no benefit to individual sexual abuse claimants who have already filed sexual abuse claims and who can seek the same relief demanded by the Class Claim under either the Plan's Settlement Election or Litigation Election.

Each of the factors in the Rule 9014 analysis therefore weigh against applying Rule 23 to the Class Claim. The Court should refuse to introduce class action litigation at this late date in this case and should instead disallow the Class Claim.

**III.   The Class Claim Fails On Its Merits.**

As set forth in the Objection, the Class Claim lacks legal merit for two reasons. *First*, the

12

Safe Sport Act does not provide a private right of action, and *second*, its reporting obligation does not apply retroactively. The Reply does not successfully argue otherwise.

### A. The Safe Sport Act Does Not Provide A Private Cause Of Action.

Claimant concedes that the Safe Sport Act does not expressly create a private civil cause of action against an Olympic national governing body, like USAG, that allegedly breaches its reporting obligation. (*See* Resp. 26-29; 18 U.S.C. §§ 2255, 2258; 34 U.S.C. § 20341.) Claimant has not and cannot cite to the type of explicit text that is required for a federal law to create a private civil cause of action. That should end the inquiry, because as the Supreme Court has held repeatedly, any "private right[] of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001); *accord Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015) (refusing to imply private cause of action under Medicaid Act); *Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979) (refusing to imply private cause of action under section 17(a) of the Securities Exchange Act of 1934). Absent an expression of congressional intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 286-87.

Instead of addressing this case law, Claimant argues that reporting statutes are commonly enforced through private civil actions, citing decisions interpreting *state* laws that permit civil enforcement by private parties even without an express cause of action. (*See* Resp. 26-27 (citing *Ham v. Hosp. of Morristown, Inc.*, 917 F. Supp. 531, 532-33 (E.D. Tenn. 1995) (interpreting Tennessee law in negligence action); *Doe v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, 141 Wash. App. 407, 421 (2007) (interpreting Washington law in negligence action); *Beggs v. State, Dep't of Soc. & Health Servs.*, 171 Wash. 2d 69, 77 (2011) (interpreting Washington law in wrongful death action); *Doran v. Priddy*, 534 F. Supp. 30, 33 (D. Kan. 1981) (interpreting

13

California law in medical malpractice action).

Regardless of the rules that individual states may set for private enforcement of their own statutes, the Supreme Court has made clear that, for federal law, private rights of action "must be created by Congress," as expressed in a federal statute's "text and structure." *Sandoval*, 532 U.S. at 286, 288. Indeed, "'[r]aising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.'" *Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020) (quoting *Sandoval*, 532 U.S. at 287). Claimant therefore cannot rely on cases interpreting state laws to argue that she is entitled to enforce the Safe Sport Act through a private cause of action in the absence of any explicit text actually creating a private cause of action.

Claimant next cites outdated federal cases to argue that a private cause of action can be implied under the Safe Sport Act. Claimant relies on *Sternberg v. U.S.A. Nat'l Karate-Do Fed.*, 123 F.Supp.2d 659 (E.D.N.Y. 2000), which used a multifactor analysis to imply a private cause of action under the version of the Ted Stevens Amateur Sports Act in effect in 2000. *Id.* at 664-66. But one year after *Sternberg* was decided, the Supreme Court announced the rule noted above: private causes of action may only be implied when the "text and structure" of a statute indicate that Congress intended to create a private cause of action. *Sandoval*, 532 U.S. at 288. The Court has repeated this rule time and time again in subsequent cases. *See, e.g., Hernandez*, 140 S. Ct. at 742; *Armstrong v. Exceptional Child Center*, Inc., 575 U.S. 320, 327-28 (2015); *Astra USA, Inc. v. Santa Clara Cty., Cal.*, 563 U.S. 110, 117-18 (2011). *Sternberg* is therefore no longer good law on this issue.

Here, the text and structure of the Safe Sport Act do not show that Congress intended to imply a cause of action. As the Seventh Circuit has noted, "the existence of an explicit cause of action in [two sections] makes it highly unlikely that Congress absentmindedly forgot to provide

14

a cause of action for [a third section]" that is not mentioned. *Dersch Energies, Inc. v. Shell Oil Co.*, 314 F.3d 846, 857 (7th Cir. 2002) (refusing to imply private cause of action). In the Safe Sport Act, Congress refused to include an express civil cause of action to enforce the reporting obligation, while simultaneously creating criminal penalties for violations of that same reporting obligation and a civil cause of action against abusers who commit certain crimes of sexual violence. (*See* Obj. at 23-25; 18 U.S.C. §§ 2255, 2258.) The text and structure of the Safe Sport Act therefore indicate that Congress did not intend to imply the private, civil cause of action that Claimant invokes here.

### B.      The Safe Sport Act Does Not Apply Retroactively.

The Class Claim should be disallowed for the additional reason that it seeks to enforce the Safe Sport Act retroactively. Claimant does not dispute that statutes are presumed to apply only prospectively "unless Congress has unambiguously" made them retroactive. *Vartelas v. Holder*, 566 U.S. 257, 266 (2012) (refusing to apply statute retroactively). And Claimant does not cite any provision in the Safe Sport Act that clearly indicates Congress's intent to make the statute retroactive—*e.g.*, a statement that the Act applies to events that occurred "before, on, or after" the Act's effective date. *INS v. St. Cyr*, 533 U.S. 289, 318-19 (2001). Regardless, Claimant still seeks to hold the Debtor liable for its alleged failure to report to law enforcement, within 24 hours of the Safe Sport Act's enactment, allegations of sexual abuse that it originally learned of *up to forty years ago*. (Resp. 29-31.)

The Court should refuse to permit this retroactive enforcement of the Safe Sport Act. The Safe Sport Act only requires USAG to make reports when it "*learns* of facts that give reason to suspect that a child has suffered an incident of child abuse." 34 U.S.C. § 20341 (emphasis added). As the Supreme Court made clear in *Carr v. United States*, when Congress uses the present tense, it only intends to govern present and future conduct, not past activity. 560 U.S. 438, 448 (2011).

15

For that reason, by using the present tense in "learns", Congress intended that the reporting obligation only trigger on a date on or after the Safe Sport Act's enactment, and once USAG then learns of potential sexual abuse. Claimant's only response is to cite the dissent in *Carr*, which disagreed with the majority's interpretation of the meaning of Congress's use of the present tense in statutes. (Resp. 30 (quoting *Carr*, 560 U.S. at 463 (Alito, J., dissenting)).) But the dissenting opinion obviously does not take precedence over legal principles established in the Court's majority opinion.

Claimant attempts to remedy this problem with her proposed Class Claim by arguing that the failure to report was continuing conduct, citing a 2018 hearing that occurred on Claimant's claim of abuse dating back to the 1970s and 1980s. (Resp. 29.) But the 24 hour reporting requirement under the Safe Sport Act requires reporting when the Debtor "learn[ed]" of the abuse. 34 U.S.C. §20341. Claimant alleges that the Debtor "learn[ed] of the abuse in 2015, when she alleges she reported it to the Debtor. (Resp. Ex. 1 ¶ 59.) To interpret the Safe Sport Act to punish the Debtor for not reporting that 2015 allegation after the Safe Sport Act became law three years later in 2018 would require retroactive application of the Safe Sport Act.

Next, Claimant dismisses the Debtor's *Ex Post Facto* Clause arguments by stating that the Safe Sport Act did not "impose an additional or unforeseeable obligation," or "make unlawful conduct that was lawful when it occurred," because state law also imposed reporting obligations on the Debtor. (Resp. 31.) But the liability imposed by the Safe Sport Act was "additional" to any state law reporting duties. Specifically, the criminal provisions of the Safe Sport Act expose the Debtor to new and significant federal fines, in addition to any sanctions available under state law, for any failure to report going back to the beginning of time. (*See* 18 U.S.C. §§ 2258, 3572.)

Therefore, enforcing the Safe Sport Act as Claimant demands would give retroactive effect to penal legislation in violation of the *Ex Post Facto* Clause.

Claimant also misses the mark when she argues that *Ex Post Facto* Clause and retroactivity concerns are diminished when Congress adds additional penalties to existing statutes "to afford victims of discrimination more complete redress for violations of rules" previously established. (Resp. 31.) That language comes from *Landgraf v. USI Film Products*, where the Supreme Court held that Congress's amendment of Title VII to entitle victims of employment discrimination to compensatory and punitive damages could *not* be applied retroactively to penalize conduct that occurred prior to the amendment. 511 U.S. 244, 282 (1994). Given the "unfairness of imposing new burdens on persons after the fact," this Court should likewise refuse to interpret the Safe Sport Act retroactively in violation of the Debtor's rights under the *Ex Post Facto* Clause. *Id.* at 271.

Finally, Claimant sensationalizes her argument by contending that the Debtor's retroactivity arguments "concede[] that they knew about and suspected Claimant and other Class Members were abused before the passage of the Safe Sport Act." (Resp. 30.) Not so. Given the procedural posture of the Class Claim, the Debtor is only making legal objections to establish that the Class Claim cannot state a claim upon which relief can be granted. The Debtor does not concede the existence of any facts, and reserves all rights to develop the record as necessary if the Court decides to permit the Class Claim to proceed (which, for the numerous reasons identified in the Objection and this Reply, it should not).

Because the Safe Sport Act does not and cannot punish acts that occurred prior to its enactment, the Class Claim fails on its merits as a matter of law.

* * * * *

Thirty-two minutes before this Reply was due, Claimant filed a new Motion to have Rule 7023 apply [Dkt. 975] and a separate Motion to amend her proposed Class Claim [Dkt. 976], necessarily creating a short delay in the filing of this Reply. Claimant has not filed notices or set a hearing on her newly filed Motions, just as she did not do with her prior Cross-Motion.

In any event, Claimant's new Motions appear to be nothing more than her Response bifurcated into two different filings. The Debtor submits that for the reasons set forth herein and in its Objection, the Class Claim should be disallowed and asks the Court to make clear in its ruling that the proposed amendment will not save Claimant's Class Claim. Accordingly, the Debtor requests that the Court enter the order substantially in the form attached to the Objection as Exhibit A, disallowing the Class Claim in full and granting such other relief as may be just. But to the extent that Claimant seeks at a subsequent hearing to proceed with her Motions and the Court does not rule this out when deciding the Debtor's Objection, the Debtor reserves all of its objections to the Class Claim, as it is proposed to be amended.

|  |  |
|---|---|
| Dated: March 18, 2020 | Respectfully submitted, |
|  | **JENNER & BLOCK LLP** |
|  | By: /s/ *Catherine Steege* |
|  | Catherine L. Steege (admitted *pro hac vice*) |
|  | Dean N. Panos (admitted *pro hac vice*) |
|  | Melissa M. Root (#24230-49) |
|  | 353 N. Clark Street |
|  | Chicago, Illinois 60654 |
|  | (312) 222-9350 |
|  | csteege@jenner.com |
|  | dpanos@jenner.com |
|  | mroot@jenner.com |
|  | *Counsel for the Debtor* |