SO ORDERED: April 20, 2020.



_____
**Robyn L. Moberly
United States Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| USA GYMNASTICS | )  CASE NO. 18-09108-RLM-11 |
| | ) |
| Debtor | ) |
| | ) |

**ORDER SUSTAINING DEBTOR'S OBJECTION TO CLASS CLAIM #531 AND DENYING CLAIMANTS' (1) MOTION FOR LEAVE TO AMEND AND (2) MOTION TO APPLY BANKRUPTCY RULE 7023 TO CLASS CLAIM**

USA Gymnastics ("USAG" or the "debtor") on January 17, 2020 objected to Claim #531 (the "Class Claim") filed by Marcia Frederick Blanchette ("Blanchette") on behalf of herself and "similarly situated class members" (collectively, the "Claimants"). The Claimants have responded to that objection and have moved for leave to amend the Class Claim and under Fed. R. Bankr. P 9014[1] for the court to exercise its discretion and apply Rule 7023.  The Court sustains the debtor's

---
[1] All rule references are to the Federal Rules of Bankruptcy Procedure unless otherwise indicated.

1

objection and denies the Claimants' motions for leave to amend and to apply Rule 7023 to the Class Claim.

## *Background*

USAG is designated by the United States Olympic Committee (the "USOC") as the national governing body for the sport of gymnastics in the United States. USAG was named as a defendant in hundreds of lawsuits involving sexual abuse perpetrated upon athletes by Dr. Larry Nassar, a USAG volunteer. USAG filed its chapter 11 case on December 5, 2018 with the purpose of providing a single forum in which to equitably and completely resolve all abuse claims.

Prior to the chapter 11 filing, the Claimants filed a class action complaint in the United States District Court for the District of Massachusetts (the "Massachusetts District Court") against USAG and others alleging violations of the Safe Sport Act Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017 (the "Safe Sport Act"). The Claimants alleged that the debtor systematically failed to respond and to report suspected child abuse of amateur athletes to law enforcement in accordance with the requirements of the Safe Sport Act. USAG moved to dismiss the class complaint. The chapter 11 case was filed before disposition of that motion. Less than two weeks after the chapter 11 was filed, the United States Trustee filed her notice of the appointment of a Tort Claimants Committee of Sexual Abuse Survivors (the "Survivors Committee") of which Blanchette is a member.

This Court fixed April 29, 2019 as the deadline for filing claims (the "Bar Date") and approved a detailed Sexual Abuse Proof of Claim Form. The Proof of Claim form provided a detailed definition of "sexual abuse" which included "the alleged failure by USA Gymnastics or its agents, employees, or volunteers to report the same." The order fixing the bar date ordered the debtor to send notice to known survivors who had reported sexual abuse to the debtor, filed or threatened to file lawsuits alleging sexual abuse against the debtor, had entered into a settlement agreement stemming from abuse allegations or had received payment from the debtor as a result of abuse allegations. The debtor mailed notice of the bar date to

2

more than 1,300 individuals .  The debtor also sent notice to all known counsel for sexual abuse claimants, including Blanchette's counsel.  The debtor emailed notice to more than 360,000 email addresses for former and current USAG members as well as placing the notice on its website, Facebook, Twitter, and Instagram.  Notice was published in USA Today, certain gymnastics magazines, podcasts, and websites.  The debtor also sent letters to each of its member gyms asking those facilities to post the notice and the claim form.  In addition, the debtor's case received extensive attention in the national print and broadcast media.  Among the more than 500 individuals who timely filed claims were 72 who had not sued the debtor and of whom the debtor had no prior notice, thus demonstrating the extent of the debtor's bar date noticing efforts.

On May 17, 2019, this Court made two significant appointments.  The first was the appointment of  Fred Caruso as "Future Claims Representative" to represent the interests of those who at present are legally disabled from filing a claim by the Bar Date.[2]  The second was the appointment of Bankruptcy Judge Gregg Zive to mediate the resolution of the Sexual Abuse Claims and issues related to the debtor's insurance coverage.  That mediation commenced in late May 2019 and is ongoing.

The debtor filed its disclosure statement and amended plan on February 21, 2020.  Hearing on the disclosure statement was originally scheduled for March 31, 2020 but was continued on the Court's motion due to the federal courthouse having been closed to the public due to the Coronavirus pandemic.  The Court found that an entirely telephonic hearing on the disclosure statement would not be conducive to such an important matter.  Hearing on the disclosure statement has not yet been

---

[2] The Future Claims Representative was appointed to represent the interests of an person who held a Sexual Abuse Claim against the debtor as of the Bar Date and who met one of the following criteria: (1) is under the age of majority under applicable state law as of March 1, 2019; (2) the statute of limitations was tolled under state law or had not yet begun to run under applicable state law as of March 1, 2019; (3) the debtor was estopped under applicable state law from asserting the statute of limitations as of March 1, 2019; and (4) the person's Sexual Abuse Claim was barred by the applicable statute of limitations as of March 1, 2019 but was no longer barred for any reason, including the enactment of legislation that revived such claims.

rescheduled as no specific date has been determined to reopen the federal courthouse to the public.

### *Discussion*

Blanchette timely filed her claim (designated as "Claim #531") and incorporated the class action complaint filed in Massachusetts which sought to certify a class defined as :

> All current or former USAG-affiliated and/or USOC affiliated amateur athletes for whom the USAG, the USOC, and/or their agents and/or employees received information that the amateur athlete may have suffered an incident of child abuse, including sexual, emotional and/or physical abuse, and either (a) failed to report incidents occurring after February 14, 2018 to law enforcement authorities within 24 hours of learning of the incident, and/or (b) failed to report incidents occurring before February 14, 2018 to law enforcement authorities, within 24 hours of the Congress enacting the Safe Sport Act.

The current chapter 11 plan provides a choice between two options by which claims are satisfied, one of which is a "settlement option" consisting of a fund from which claims will be paid. Presumably the fund, as proposed, consists of insurance proceeds paid out on general liability policies. The Claimants argue their Class Claim must be allowed because it is the only mechanism that allows them to access an untapped source of insurance proceeds estimated to be as high as $15 million for claims made against the debtor's officers and directors. The Claimants on March 18, 2020 moved to amend their class claim to take out reference to the USOC and to limit the class to all current or former USAG-affiliated amateur athletes who have filed an individual proof of claim in these proceedings.

### *Class Claims in Bankruptcy*

"All disputes in bankruptcy are either adversary proceedings or contested matters." *Matter of American Reserve Corp.*, 840 F.2d 487, 488 (7th Cir. 1988). The 7000-series of the Federal Rules of Bankruptcy Procedure generally are the

bankruptcy counterparts to the Federal Rules of Civil Procedure and are contained in "Part VII Adversary Proceedings" of the bankruptcy code. Fed R. Civ. P. 23 which governs class actions applies to bankruptcy adversary proceedings under Rule 7023.

An objection to a claim is a "contested matter" under Rule 9014. Rule 9014 provides only a handful of the Part VII 7000-series rules applies in contested matters and Rule 7023 is not among them. Instead, "the Court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply" under Rule 9014 (c). A party seeking to assert a class claim in a bankruptcy case must move the Court under Rule 9014 to apply Rule 7023 and it is within the court's discretion to grant that motion. If that motion is granted the Court then determines whether the class can be certified under Rule 7023. *Id.; In re Ephedra Products Liability Litigation,* 329 B.R. 1, 4 (S.D.N.Y. 2005). Here, the Claimants on March 18, 2020 moved the Court under Rule 9014 to apply Rule 7023 to the class claim (the "Rule 9014 Motion").

### *Timing of the Rule 9014 Motion*

The debtor first contends that the Claimants' Rule 9014 Motion should be denied because it was filed too late. The Bankruptcy Code contains no time requirement with respect to the filing of a motion under Rule 9014 to apply Rule 7023. *In re Charter Co,*, 876 F.2d 866, 874 (11th Cir. 1989). The Claimants assert that the Class Claim was presumed to have been deemed allowed under §502(a) unless and until it was objected to, and thus no "contested matter" arose until January 17th when the debtor filed its objection. *Id.* The Claimants assert that their motion which was filed approximately 2 months later was timely.

Rule 9014 (c) provides that a court may direct application of a discretionary Part VII rule "at any stage in a particular matter" and thus a majority of courts reject the notion that class claimants must wait for an objection before they can move for application of Rule 7023. *American Reserve*, 840 F.2d at 488. An objection may not even be required. See *Ephedra,* 329 B.R. at 7 (motion should be

5

filed before the expiration of the bar date because a "contested matter" is an actual dispute other than an adversary proceeding and known or reasonably foreseeable opposition to the class claim creates an actual dispute); *In re Musicland Holding Corp.*, 362 B.R. 644, 652 (Bankr S.D.N.Y. 2007) (filer of a class claim is not the authorized agent of the putative class members unless and until the class is certified, and thus, the claim is not executed by the creditor or its authorized agent under Rule 3001(b) and is not entitled to the presumption of validity under §502(a)); *In re Circuit City Stores, Inc.*, No. 08-35653, 2010 WL 2208014 at *4 (Bankr. E.D. Va. May 28, 2010)(same).

This Court follows the majority view first articulated in *American Reserve* and finds that the Claimants did not need to wait for an objection to ask for application of Rule 7023.  The debtor moved to dismiss the class complaint filed in the Massachusetts District Court.  It was reasonably foreseeable that the debtor, once in bankruptcy, would likewise oppose a claim based on the very same class complaint.

Delay in every chapter 11 case jeopardizes the funds available to pay claims.  The debtor promptly asked the Court to set a claims bar date because it needed to know the number and amount of the sexual abuse claims and the amount of proceeds available from insurance policies to pay those claims.  Only then could the parties negotiate how those claims would be valued and paid.  This chapter 11 contains complex noncore insurance coverage issues which are proceedings that require the District Court's involvement.  The debtor promptly filed an adversary proceeding and summary judgment motions seeking determination of insurance coverage.  This case has unavoidable delays not found in ordinary chapter 11 cases due to the jurisdictional issues and the nature of the constituencies involved.  Blanchette should have been aware of this dynamic as a member of the Survivors Committee which has been an active participant in both this case and the ongoing mediation. Given the complexities and the nature of the constituencies involved, a ten month delay in filing the Rule 9014 Motion is a delay that could have been avoided and is one that this case can ill afford.  The Court finds that the 9014

6

Motion is untimely under the circumstances here. However, timeliness of the motion is not the dispositive factor in determining whether to apply Rule 7023.

### *Application of Rule 7023*

A class action "permits the aggregation and litigation of many small claims that otherwise would lie dormant" and incentivizes the holders to participate in the proceeding when its claim otherwise is too small economically to pursue individually. *American Reserve*, 840 F.2d at 489. It concentrates litigation in a single forum where claims can be resolved more readily than individual lawsuits pending in several forums *Id.* A class action provides compensation for its participants but also serves a deterrent function "by ensuring that wrongdoers bear the costs of their activities." *Id.*

A bankruptcy case, like a class action suit, funnels claims into one forum for resolution. Indeed, "the principal function of bankruptcy law is to determine and implement in a single collective proceeding the entitlements of all concerned". *Id.* The bankruptcy process has systemic advantages in that (1) claimants can file claims at little or no cost, without need of counsel; (2) properly filed claims are deemed allowed under §502 (a) if not objected to, thus avoiding discovery costs; (3) it provides established mechanisms for notice and the management of large claims; (4) proceedings are centralized in a single court with nationwide service of process; and (5) all of the debtor's assets are under the control of the bankruptcy court, thus providing protection against a race to judgment by creditors. *Gentry v. Siegel*. 668 F.2d 83, 92-93 (4th Cir. 2012); *In re Bally Total Fitness of Greater New York*, 411 B.R. 142, 145-146 (S.D.N.Y. 2009). The superiority of a class action vanishes when a bankruptcy exists as the bankruptcy "significantly changes the balance of factors to be considered" in determining whether Rule 7023 should apply to a class claim. *Ephedra*, 329 B.R. at 5; *In re Tarragon Corp.*, No. 09-10555 DHS, 2010 WL 3842409 at *3 (Bankr. D. N. J. September 24, 2010). As a result, Rule 7023 should be used sparingly in the bankruptcy context.

Neither the Code nor the Rules give express guidance for the Court to determine whether Rule 7023 should apply but a "pervasive theme is avoiding undue delay in the administration of the case." *In re Northwest Airlines Corp.,* No. 05-17930 (ALG), 2007 WL 2815917 at *3 (Bankr.S.D.N.Y. 2007); *Ephedra*, 329 B.R. at 5. The best candidates for such application are cases where the class has been certified pre-petition by a non-bankruptcy court and where notice of the bankruptcy or the claims bar date is inadequate. *In re Blockbuster, Inc.*, 441 B.R. 239, 242 (Bankr. S.D.N.Y. 2011); *In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 620 (Bankr. S.D.N.Y. 2009), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009); *In Sacred Heart Hospital of Norristown,* 177 B.R. 16, 22 (Bankr. E. D. Pa. 1995). Using this guidance, the Court considers three factors: (1) whether the class was certified pre-petition; (2) whether the members of the putative class received notice of the claims bar date; and (3) whether class certification will adversely affect the administration of the case. *Musicland*, 362 B.R. at 654.

### Pre-Petition Certification of the Class

The class here was not certified pre-petition in the Massachusetts District Court and no ruling on certification bodes unfavorably for the Claimants. A bankruptcy court in its discretion can still deny a motion to apply Rule 7023 even had the class been certified pre-petition. *Ephedra,* 329 B.R.at 5. If this Court were to apply Rule 7023, the next step would be to conduct a hearing to determine whether the purported class should be certified under Rule 7023. At this juncture, no rationale exists to expend judicial resources and divert estate assets for such a purpose. The majority of courts have denied application of Rule 7023 where the class had not been certified pre-petition, See, *Musicland,* 362 B.R at 656; *Circuit City,* 2010 WL 2208014 at *2; *Tarragon Corp.*, 2010 WL 3842409 at *2, n.3; *Bally Total Fitness,* 411 B.R. at 145; *Sacred Heart Hospital*, 177 B.R. at 18.

### Notice of the bankruptcy and the Claims Bar Date

The debtor's extensive noticing efforts have been detailed earlier.  The debtor conducted a comprehensive review of its books and records and mailed notice to every individual for whom anyone had provided USAG with any indication that they had been abused.  Over 360,000 emails were sent to current and former USAG members notifying them of the bankruptcy and Claims Bar Date. USAG-member gyms were asked to post the notice on their premises.  The debtor posted notice on its website and other social media outlets.  Notice was published in major national and local publications as well as gymnastics publications.  Sixty claimants filed claims alleging abuse by someone other than Nassar and 72 of the claims were filed by individuals who had not sued the debtor pre-petition, indicating that they relied on publication notice.  The notice here certainly was consistent with that customarily required in large chapter 11 cases and was sufficient to reach the putative class of claimants included in the Class Claim.  See, *In re Motors Liquidation Co.*, 447 B.R. 150, 158 (Bankr. S.D.N.Y. 2011); *In re W.R. Grace & Co.*, 389 B.R. 373, 379 (Bankr. D. Del. 2008).  The Class Claimants' subsequent request to limit the class to individuals who have already filed claims in this case creates the foregone conclusion that the class members received adequate notice.

### Whether Application of Rule 7023 Would Adversely Affect Administration of the Case

The Claimants contend that application of Rule 7023 would not cause delay.  Their counsel argued that, if Rule 7023 were applied, the legal issues would be "simple"and discovery could be completed easily within 60 days causing minimal delay in this case where there is no approved disclosure statement or scheduled confirmation hearing.  As the Claimants argue, such a delay is a small price to pay in exchange for potentially accessing an additional $15 million in recovery to pay claims.

The Court believes this characterization ignores the realities of the legal issues that will have to be addressed.  First, it is unsettled whether the Safe Sport

9

Act gives the Claimants a private right of action to assert claims against the debtor for its alleged failure to report abuse to authorities. 18 U.S.C.A §2258 imposes criminal fines and possible imprisonment upon those who fail to timely report abuse upon learning of facts that give reason to suspect a child has suffered such abuse. 18 U.S.C.A. §2255, in turn, provides an express private right of civil action for violations of various statutes enumerated therein, but 18 U.S.C.A. §2258 is not among those enumerated. "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, at 286. 18 U.S.C.A. §2258 does not expressly create a private right of action and one cannot be implied absent an expression of congressional intent. *Id.* It is likely that Congress intended that the Safe Sport Act be enforced only through criminal prosecution and not through a private right of civil action. Resolution of this legal issue determines whether the Claimants can even bring their Class Claim. The Court finds that it would be futile for it to expend judicial resources certifying a class asserting a claim it has no right to bring. Counsel for the Survivors Committee has extensive experience in this legal area and has actively and aggressively pursued the rights of the Survivors, yet counsel has not pursued a claim under the Safe Sports Act. This is also telling.

  Even if the Claimants prevailed on this legal issue, the Class Claim asserts a claim for the debtor's failure to report within 24 hours of Congress enacting the Safe Sport Act those incidents occurring before its enactment. The Safe Sport Act only requires the debtor to report when it learns of the facts that give reason to suspect a child has suffered abuse. Yet, the Class Claim seeks damages for abuse that the debtor allegedly learned of before the enactment of the Act. The Safe Sport Act contains no language to suggest it is meant to be applied retroactively. See, *Siddiqui v. Holder*, 670 F.2d 736, 747 (7th Cir. 2012) (noting that a statute that covers acts that are committed or events that transpire "before, on or after" the enactment of a statute evinces Congress's clear intent for the statute to be applied retroactively). Retroactive application of the Safe Sport Act's criminal provisions also give rise to possible violations of the Constitution's *Ex Post Facto* clause.

10

Even if all the aforementioned hurdles were cleared, the class would need to satisfy all of the requirements of Rule 7023.  Rule 7023(b)(3) requires a finding that "questions of law or fact common to the class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The "predominance" test cannot be met here.  The Claimants' alleged injuries related to the debtor's failure to report do not arise under one single act or transaction.  Individualized proof would be needed to determine to whom the claimant reported the abuse, the type of abuse reported, in what manner the abuse was reported, and when it was reported.  This is not the "'generalized proof" envisioned under Rule 7023(b)(3).  The possibility that "the Court would have to engage in a series of highly disputed mini-trials" indicates that the matter is not amenable to class treatment.  *Bally Total Fitness*, 411 B.R. at 147.

Nor is class treatment superior to the bankruptcy claims process.  The claimants are incentivized to pursue their claims, which are significant.  Their interests are adequately represented by the Survivors Committee counsel who have taken an active role in the case.  A Future Claims Representative has been appointed to protect those who might currently be legally disabled from filing a claim.  The notice procedures that would be required in a non-bankruptcy class action have been implemented here.  Not only has the notice given by the debtor in this case been sufficient to reach putative, unnamed class members but have indeed reached the proposed amended class of claimants who have filed claims.  The normal protections present in a non-bankruptcy class action have already been provided for in this chapter 11 case.  The deterrence function present in non-bankruptcy class actions would be accomplished here by the Safe Sport Act's penal provisions, not certification of the class.

The failure of an officer or director to report abuse is included in the "sexual abuse" definition contained in the Sexual Abuse Proof of Claim Form.  The mediation involves a review and valuation of each of these claims.  If Survivors Committee counsel believes it advantageous and realistic to negotiate inclusion of

11

D & O policy proceeds to the pool of funds available under the plan's "settlement option", it is free to do so. If the Claimants disfavor the current plan's exculpation provisions in favor of the debtor's officers and directors, they may object to the plan. Class treatment of their claim would afford no greater protection or advantage than that which is provided for in the bankruptcy case.

This case has been pending for just short of a year and a half. In that time and with the cooperation of the Survivors' Committee, the debtor has managed to foster an agreement to stay pre-petition survivors' lawsuits, obtained recommended rulings from the bankruptcy court on insurance coverage and participated in comprehensive mediation to resolve claims. That there is no approved disclosure statement or confirmed plan belies the fact that significant progress has been made for a case this large and complex. Resolution of the legal issues and Rule 7023 requirements would adversely affect the administration of this case with little likelihood of an advantage to Claimants. The case simply is "too far down the road" to allow the class claim to proceed.

For these reasons, the debtor's objection to Claim #531 is SUSTAINED, and the Claimants' Motion to Apply Bankruptcy Rule 7023 to Class Proof of Claim and Motion for Leave to Amend are DENIED.

# # #