**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re:<br><br>USA GYMNASTICS,[1]<br><br>            Debtor. | Chapter 11<br><br>Case No. 18-09108-RLM-11 |

**SURVIVORS' OBJECTION TO THE UNITED STATES OLYMPIC AND
PARALYMPIC COMMITTEE'S MOTION FOR PROTECTIVE ORDER AND TO
LIMIT DISCOVERY REGARDING DEBTOR'S MOTION FOR ORDER APPROVING
THE DISCLOSURE STATEMENT AND PLAN CONFIRMATION PROCEDURES**

Simone Biles, Rachael Denhollander, Alexandra Raisman, Madison Kocian, McKayla Maroney,[2] Kyla Ross, Jordyn Wieber, Jamie Dantzscher and Jessica Thomashow, and approximately 140 additional fellow survivors (the "Survivors"), who are represented by the undersigned counsel, by and through their counsel, hereby file this objection to the *Motion for Protective Order and to Limit Discovery regarding Debtor's Motion for Order Approving the Disclosure Statement and Plan Confirmation Procedures* (the "Protective Order Motion") [Doc 1117] filed by the United States Olympic and Paralympic Committee (the "USOPC")[3] to eight (8) deposition subpoenas and notices[4] that were served in this matter. Despite USA Gymnastics ("USAG") seeking broad non-consensual releases and a channeling injunction for the benefit of non-debtors, including the USOPC, its *Disclosure Statement for First Amended Chapter 11 Plan*

---

[1] The last four digits of the Debtor's federal tax identification number are 7871. The location of the Debtor's principal office is 130 E. Washington Street, Suite 700, Indianapolis, Indiana 46204.

[2] Ms. Maroney is not a claimant in this bankruptcy case as a result of a prepetition settlement with USAG, but is, however, a party-in-interest in that she retains her claims against the USOPC, which under the Settlement Election of the Plan will be released and channeled into the Trust without her having the right to vote for or against the Plan or receiving any funds under the Settlement Election.

[3] In June of 2019, the former United States Olympic Committee ("USOC") changed its name to USOPC. Therefore, this entity will be referred to as the USOPC throughout this Objection, even if, at the time, it was named the USOC.

[4] Initially, nine (9) subpoenas were served, though Ms. Hirshland's was withdrawn at the discovery conference, and the Court has ordered (with no objection from the USOPC) Ms. Kerek's deposition to proceed as to updated financials of the USOPC.

*of Reorganization Proposed by USA Gymnastics* (the "Disclosure Statement") [Doc 930][5] provides insufficient information as to USOPC's liabilities, which is necessary for the Survivors to effectively evaluate the Settlement Election under the proposed Plan. As such, the Survivors' discovery request is necessary, narrowly-tailored and specifically calculated to provide the Survivors with the necessary missing information which is required for them to make an informed decision regarding the Plan.

The USOPC is a federally-chartered organization, created pursuant to the Ted Stevens Amateur Sports Act (the "Stevens Act") 36 *U.S.C.* §220500, *et seq.*, "to coordinate and develop amateur athletic activity in the United States, directly related to international amateur athletic competition, to foster productive working relationships among sports-related organizations…" and also, "to promote a safe environment in sports that is free from abuse, including emotional, physical, and sexual abuse, of any amateur athlete." 36 U.S.C. § 220502(2), (15). The USOPC's own Code of Ethics, adopted in September of 2016, just weeks after the Larry Nassar scandal was publicized, further promises the public that it will fulfill its mission through "[h]onesty, integrity, and trustworthiness in all dealings...," that the USOPC will have "[r]espect for the rights, differences, and dignity of others…" and will accomplish this all through "[a]ccountability and transparency." *See* <u>USOPC Code of Conduct, September 23, 2016</u>, attached as Exhibit "1" to <u>Declaration of Alex E. Cunny</u> ("<u>Cunny Decl.</u>") Despite these promises, the USOPC is once again impeding the Survivors' right to obtain the necessary information to evaluate USOPC's liability position, a clear indication that ultimately, it does not want to contribute a single cent of its own money in return for comprehensive releases and a channeling injunction—surely an inequitable result.

Contrary to the groundless postulations of the USOPC and its counsel, that these depositions are "pretextual" (for what reason, the Survivors and Court are left to guess, as the USOPC does not disclose such in its Protective Order Motion, despite raising the issue at the June

---

[5] All capitalized terms not defined herein have the meanings ascribed to such terms in the *First Amended Chapter 11 Plan of Reorganization Proposed by USA Gymnastics* (the "Plan") [Doc 928].

8, 2020 conference; Hearing Transcript from June 8, 2020 Telephonic Discovery Conference, 16:15, attached as Exhibit "35" to Cunny Decl.), the USOPC seeks to quietly hide in the periphery of this bankruptcy, in hopes that enough of the Abuse Claimants grow tired of this process and concede to the Settlement Election, resulting in broad releases and a channeling injunction without the USOPC contributing a cent of its own money to settlement and also without disclosing any facts whatsoever related to its liabilities; all the while, relying upon a one-sided distortion of the viability of the claims of the Survivors in the Disclosure Statement. [Disclosure Statement at 7-8; Committee Objection[6] at ¶ 15.] This is reinforced by the *Response of the United States Olympic and Paralympic Committee to the (A) Debtor's Motion for Order Approving the Disclosure Statement and Plan Confirmation Procedures and (B) Objection of the Additional Tort Claimants Committee of Sexual Abuse Survivors To Disclosure Statement for First Amended Chapter 11 Plan of Reorganization Proposed by USA Gymnastics* (the "USOPC Response") [Doc 1115] filed by the USOPC on June 10, 2020. [USOPC Response at 12-15.] The reason why these cases exist in the first place is because these institutions—including the USOPC—operated under a veil of secrecy and lack transparency that allowed sexual assault to fester. It seems that the USOPC has learned nothing, hopes to change nothing, and continues to evade the Survivors efforts to hold it accountable for its contributory actions that resulted in the horrendous sexual abuse suffered by so many all while hoping to obtain a free pass from the Court in return for multiple press releases containing platitudes yet no substantive change. At a minimum, for the Survivors to even consider the Settlement Election that results in a release of all rights to recover against the USOPC, they must be given some insight into the USOPC's institutional knowledge of abuse and exposure, sufficient to inform their decision.

Despite an inadequate disclosure of information necessary to evaluate the claims, the USOPC has the audacity to claim that "[a]lthough technically limited to jurisdictional issues, the

---

[6] "Committee Objection" shall mean the *Objection of the Additional Tort Claimants Committee of Sexual Abuse Survivors to Disclosure Statement for First Amended Chapter 11 Plan of Reorganization Proposed by USA Gymnastics* [Doc 1060] filed on May 19, 2020.

3

USOPC witnesses' prior testimony **fully explored all Nassar-related issues**, which are the core evidentiary questions relevant to the vast majority of Claimants in this matter…" [Protective Order Motion at 2 (emphasis added).] As demonstrated below, this claim is a fabrication, misrepresentation, and violation of the USOPC's duty of candor to this Court. In fact, as counsel for the USOPC fully knows (as it is the very same counsel who litigated those underlying claims in state court), the USOPC did everything in its power, during that abbreviated discovery, to limit discovery in those matters to solely personal jurisdictional issues (e.g., whether it could be hailed to answer to those claims in California court despite being a Colorado corporation). During the process, the USOPC stonewalled the Survivors as to any and all liability discovery, which it took steps to prevent (successfully, through objections and instructions not to answer, which were never resolved by the California court because of the bankruptcy filing and agreed upon stay of the prepetition lawsuits) at every turn. This is well documented in a legion of emails and deposition transcripts that were not disclosed to this Court, by the USOPC, in its Protective Order Motion. In order for this Court to have a full picture of this issue, the Survivors have disclosed those emails and transcripts herein for this Court's edification.

Noticeably absent from Mr. Chen's declaration is the following e-mail he sent to counsel for Ms. Raisman on October 29, 2018, after both the depositions of Rick Adams and William Moreau proceeded, which summarizes the USOPC's consistent position as to that discovery that took place. In that email, Mr. Chen wrote:

> "That agreement was explicitly stated in a statement that you filed with the Court. As you're well aware, parties are free to enter into agreements regarding discovery. The Court never rejected or overruled the parties' agreement to stay merits discovery. **Therefore, the agreement to stay merits discovery remains in effect.**"

E-mail From Mark Chen to Alex Cunny, October 29, 2018, attached as Exhibit "2" to Cunny Decl.[Emphasis Added].

Although counsel for Ms. Raisman disagreed with the USOPC's position, the USOPC made clear its position that the discovery was not "merits-based," and engaged in a consistent plan

to prevent any liability discovery from taking place. That disagreement was never resolved prior to the bankruptcy filing and the agreed upon stay of the prepetition lawsuits.

Now, over a year and a half later, incredibly, the USOPC disavows that position, claiming liability discovery in those actions had indeed occurred when most certainly, and provably, **it had not**. Counsel for the USPOC owes the Court a duty of candor, and their representations made, in the Protective Order Motion and at the preceding status conference held on June 8, 2020, run afoul of that duty, as detailed below. The USOPC's complete distortion of the underlying litigation, blowing both hot and cold, is not without purpose. The intent is to shield the Survivors, Court and the public from the truth regarding what USOPC knew about the sexual abuse of its athletes, when the USOPC knew it, and what the USOPC had or had not done in response to protect these girls and young women. While the USOPC seeks to evoke sympathy in its papers by stating that it has been working "diligently" to "compensate Nassar's victims and survivors," the simple reality is that its "diligent" work has been nothing but empty promises and zero transparency.[7]

This crux of the issues addressed in the Protective Order Motion and this Objection are simple: If the USOPC wants to obtain a channeling injunction and release, then simple equity dictates that it must, at a minimum, allow those voting on the Plan to have access to information sufficient to allow them to understand what the USOPC's liabilities are (and are not) in order to make an informed decision regarding the Settlement Election. This narrowly-tailored discovery, of a reduced number of 8 depositions and requests for production, is a small, calculated plan for the Survivors and their counsel to understand and advise as to their claims and chances for recovery in the event the Plan is not confirmed and the case is dismissed or if the Plan is confirmed with the Litigation Election. As shown below, these depositions will inform as to the USOPC's liability, providing all claimants insight into such, allowing them to exercise an educated vote on the Plan. Simple fairness for these Survivors requires such limited access.

---

[7] Though Survivors' Counsel would like to respond about the purported "diligence" of the USOPC in attempting to compensate these women, such response could implicate the mediation privilege and is not germane to this Protective Order Motion or this Objection.

## I.    PROCEDURAL HISTORY

On February 21, 2020, USAG filed its Disclosure Statement and Plan, which provides for releases for the USOPC as well as channeling injunctions. On May 19, 2020, the Committee Objection was filed and the Survivors, by the undersigned counsel, filed their joinder to the Committee Objection, as amended on May 22, 2020. [Doc 1064, 1067.]

On May 28, 2020, the undersigned counsel served Deposition Notices with Requests for Production of Documents, and attached subpoenas that would be served on the witnesses. *See* Deposition Notice and Subpoena of Susanne Lyons, attached as Exhibit "3" to Cunny Decl.[8]

Subsequent to service of these notices, on May 29, 2020, counsel for USOPC, Mr. Mitchell Kamin, agreed to accept service on behalf of Mr. Lyons, Mr. Probst, Ms. Kerek, Ms. Hirshalnd, and Mr. Adams. *See* Cunny Decl., ¶3. Pursuant to Local Rule, B-9016-1, these remaining four (4) subpoenas for Mr. Marshal, Mr. Blackmun, Mr. Moreau, and Mr. Ashley were held for 7 days, prior to service upon the witnesses. Cunny Decl. ¶4. Presently, service has been effectuated upon Mr. Blackmun and Dr. Moreau, though personal service has not yet been effectuated as to Mr. Marshall and Mr. Ashley. Cunny Decl., ¶5.

On June 3, 2020, counsel for the USOPC initiated a brief telephone conference with undersigned counsel, seeking to have the subpoenas withdrawn. Cunny Decl., ¶5. No informal resolution was reached, and the subpoenas were not withdrawn. Cunny Decl., ¶5.

On June 5, 2020, counsel for the USOPC contacted the Court to set an informal discovery conference, which proceeded on Monday June 8, 2020 at 1:30 p.m. EDT. Cunny Decl. ¶6. During the course of the discovery conference, Ms. Hirshland's deposition subpoena was withdrawn, and the USOPC agreed (and this Court later ordered) that Ms. Kerek (the Chief Financial Officer of the USOPC) would sit for a deposition and that the USOPC would provide an updated financial

---

[8] The deposition notices of each witness are attached to the Cunny Decl. as the following respective exhibit: Dr. Bill Moreau, Ex. "4"; Scott Blackmun, Ex. "5"; Alan Ashley, Ex. "6"; Frank Marshall, Ex. "7"; Lawrence Probst, Ex. "8"; Morane Kerek, Ex. "9"; Sarah Hirshland, Ex. "10"; Rick Adams, Ex. "11".

statement. Doc. 1098[Minute Entry[9] ("Counsel for claimants may depose the CFO of USOPC as to any changes in the financial condition of the USOPC since the date of the last audited financial statement.") A briefing schedule for the instant Motion was further set by this Minute Order entry.

A.    **DEPOSITIONS AND REQUESTS AT-ISSUE WITH THIS MOTION.**

To evaluate the USOPC's liabilities and the claims of claimants within the bankruptcy proceeding, counsel for the Survivors seek to take a limited number of depositions of the following individuals. A brief synopsis of their relevance to these issues is provided as well:

1.    **Scott Blackmun, Former CEO of USOPC:**

Mr. Scott Blackmun is the former USOPC Chief Executive Officer, who served from 2010 until February 28, 2018. *See "U.S. Olympic Committee CEO Scott Blackmun resigns after Nassar furor"*, NBC News Article, February 28, 2018, attached as Exhibit "12" to Cunny Decl. Further, Mr. Blackmun is believed to have served from 1999 until 2000, as the Legal Affairs Director and General Counsel to the USOPC, in addition to also serving an 11-month term as interim CEO to the USOPC.

In 1999, while serving as general counsel for the USOPC, Mr. Blackmun was one of three recipients of a letter from then-President of USAG, Mr. Robert Colarossi, which detailed USAG's ongoing concerns about the handling of sexual abuse claims in its sport, and, importantly, how Mr. Colarossi and USAG believed the "USO[P]C's Membership and Credentials audit process is badly broken and, perhaps more importantly, are deeply concerned by the apparent indifference to the welfare of young children manifest in the Committee's actions." *See* October 11, 1999 Letter from Robert Colarossi to Mr. Blackmun, Mr. Bill Hybl, and Mr. Dick Schultz, attached as Exhibit "13" to Cunny Decl.

In February of 2018, under intense public scrutiny from the outrage associated with the Larry Nassar scandal, and Congressional calls for reform in Olympic and Amateur sports,

---

[9] "Minute Entry" shall mean the *Minute Entry/Order: re: Conference re: Discovery Dispute* [Doc 1098] entered on June 8, 2020.

Blackmun resigned from his position with the USOPC. *See* "Scott Blackmun resigns as CEO of the United States Olympic Committee", *Indianapolis Star,* February 28, 2018, attached as Exhibit "14" to Cunny Decl. An independent investigation, commissioned through the law firm Ropes & Gray, was released in December of 2018 (shortly after the bankruptcy filing), and clearly indicated that Blackmun was aware of sexual abuse allegations against Nassar as early as July of 2015. *See* Ropes & Gray Report, p.67-77, attached as Exhibit "15" to Cunny Decl.

Mr. Blackmun was not deposed in the pre-petition litigation in California. Cunny Decl., ¶11. Although Mr. Blackmun was served with a deposition subpoena, his counsel claimed that Mr. Blackmun had suffered from a recent medical issue. Thus, counsel for the Survivors agreed to delay his deposition (which ultimately never proceeded due to the bankruptcy filing and subsequent agreed upon stay of the prepetition lawsuits). Cunny Decl., ¶11.

**2.    Lawrence Probst, Former Chairman of the Board of USOPC:**

Mr. Lawrence Probst first became involved with the USOPC at the Beijing Olympics in 2008. Probst Deposition, 29:8-30:12, attached as Exhibit "17" to Cunny Decl. After Peter Ueberroth stepped down as the CEO of the USOPC, Mr. Probst took over and remained the Chairman of the USOPC for over a decade, from approximately 2008 through the end of 2018. Probst Deposition, 34:25-36:4, Ex. "17". Beginning in 2010, the United States Center for SafeSport ("USCSS"), a now-federally chartered entity (36 U.S.C. § 220541, *et seq.*), was created through a series of working groups at the USOPC, under the oversight of the USOPC Board. *See U.S. Olympic Committee announces formation of SafeSport Working Group*, USOPC Website – July 30, 2013, attached as Exhibit "18" to Cunny Decl. Moreover, during this timeframe (from 2008 through 2018), Nassar attended the London Olympics, where he sexually assaulted a number of Olympic Athletes, including Aly Raisman. *See Raisman* Complaint, attached as Exhibit "19" to Cunny Decl.

Mr. Probst was deposed in the pre-petition California cases, on October 26, 2018, **though his deposition was limited to issues of personal jurisdiction as they related to USOPC**. Cunny

8

Decl., ¶7 (*see infra* as to seriatim instructions not to answer on those grounds, which were followed by the witness.)

3. **Susanne Lyons, Current Chairman and Former Board Member of USOPC:**

Ms. Susanne Lyons is currently the Chairman of the USOPC Board of Directors, and is the successor to Mr. Probst. *See* USOPC Board Chair: Susanne Lyons, Website, attached as Exhibit "20" to Cunny Decl. Prior to serving as the Chairman of the USOPC Board, Ms. Lyons served for 8 years as a Board Member with the USOPC, beginning in 2010, and the acting CEO of the USOPC after Mr. Blackmun's departure from the organization (from March of 2018 to August of 2018). *Id.* As described on the USOPC's website, "[i]n January 2018, she was selected as chair of the USA Gymnastics Working Group, leading the USOPC's efforts to ensure an independent investigation into the decades-long abuse by Larry Nassar." *Id.*

On May 23, 2018, after the weeks-long series of victim impact statements of survivors of Larry Nassar were completed, Ms. Lyons provided testimony to Congress. Specifically, Ms. Lyons stated:

> "I heard the powerful and compelling stories of victims and survivors in court and in testimony before Congress, including those that had sought help from people in the Olympic community.  They said that they found the system unresponsive, needlessly complex, or fraught with risks to their Olympic dreams.  **This is appalling and unacceptable.  The Olympic community failed the people it was supposed to protect.**"

May 23, 2018 Congressional Testimony – Statement of Susanne Lyons, attached as Exhibit "21" to Cunny Decl. [Emphasis Added].

In her concluding written remarks, Ms. Lyons wrote: "[w]e owe it to the victims and survivors of abuse in sports to ensure that our efforts to improve the safety and security of Olympic athletes never cease." *Id.* at pp. 7. Ms. Lyons was not deposed in the pre-petition discovery phase of the California cases. Cunny Decl., ¶8.

4. **Alan Ashley, Former Chief, Sport Performance of USOPC:**

Mr. Alan Ashley was formerly the Chief of Sport Performance of the USOPC, and served in this role from approximately 2010 until December of 2018. *See* Leaders in Sport, Alan Ashley

profile, attached as Exhibit "22" to <u>Cunny Decl.</u> As detailed in this profile, Mr. Ashley's duties included:

> "In his current role, Ashley oversees the USOC divisions tasked with providing targeted resources and support to the National Governing Bodies, athletes and coaches in pursuit of sustained competitive excellence. These areas include coaching and sport science, sports medicine, international games and sport partnerships. Sport performance is also responsible for the preparation and execution of all Team USA activities related to the Olympic and Paralympic Games." *Id.*

In December of 2018, shortly after the Ropes & Gray investigative report was released, Mr. Ashley was terminated by the USOPC. *See* "*USOC fires official as Larry Nassar report released*", <u>NBC Sports Article,</u> dated December 10, 2018, attached as Exhibit "23" to <u>Cunny Decl.</u> The Ropes & Gray report's detailed investigation revealed the depth of Ashley's knowledge of the allegations involving Nassar in 2015, and further included information regarding Ashley and/or Mr. Blackmun deleting emails related to the subject. <u>Ropes & Gray Report</u>, pp. 74-75. The report states:

> "In short, **as of September 8, 2015, Mr. Blackmun and Mr. Ashley had been informed by Mr. Penny of the sexual abuse allegations and the referral to law enforcement, and both had received the September 8, 2015 email** regarding Nassar's retirement, which Mr. Blackmun acknowledged he would have connected at the time to the July 25, 2015 report of sexual misconduct. During the roughly year-long period thereafter, from September 2015 to September 2016, **neither Mr. Blackmun nor Mr. Ashley engaged with USAG on the reported concerns, shared the information with others at the USOC, or took any other action in response to the information from Mr. Penny to ensure that responsible steps were being taken by USAG and the USOC to protect athletes**…"

*See* <u>Ropes & Gray Report</u>, pp.74-75, Ex. "15"; *see also* Stotz Friedberg- *USOC E-mail Investigation Summary Report* appended to <u>Ropes & Gray Report</u>, attached as Exhibit "16" to <u>Cunny Decl.</u>

As quoted from an NBC Sports article, Ms. Lyons stated in an article regarding Mr. Ashley's firing:

> "[o]ne thing we've learned from this experience is that these types of situations should be escalated," said Susanne Lyons, a board member who served as acting CEO earlier this year. "**Transparency is important.**"

*See USOC fires official as Larry Nassar report released*, Ex. "23" [Emphasis Added].

Mr. Ashley was not deposed in the pre-petition discovery phase of the California cases either. <u>Cunny Decl.</u>, ¶9.

**5.    Richard Adams, Current Chief, Sport Performance & NGB Services of USOPC:**

Mr. Richard Adams has held numerous roles at the USOPC since his inception with the organization in 2010. Adams Deposition, 41:14-25, attached as Exhibit "24" to Cunny Decl. However, prior to working with the USOPC, Mr. Adams was the President of USA Weightlifting, and was previously a patrolman and detective with a New Jersey law enforcement agency. *Id.* at 20:6-22:2. Adams continues to serve at the USOPC, though over the years his job title and duties have varied immensely. *Id.* at 42:14-46:23. His roles have included working with NGB's on governance issues including the best practices set forth by the USOPC and composition of their governing boards. *Id.* at 47:25-48:5. Importantly, and relevant to the instant matter as to liability, Mr. Adams gave sworn testimony before Congress on March 28, 2017, where Ms. Jamie Dantzscher, a claimant in this litigation, was also present. *See* March 28, 2017 Statement of Rick Adams, attached as Exhibit "25" to Cunny Decl. Mr. Adams made the following representations to Congress:

> "The stories of abuse that we have heard today and elsewhere are appalling, disheartening, and unacceptable. **The Olympic community failed the people it was supposed to protect.** The U.S. Olympic Committee leads the diverse network of Olympic sports organizations in the United States, and we must therefore take responsibility for its failures. **We do take responsibility, and we apologize to any young athlete who has ever faced abuse**."

March 28, 2017 Statement of Rick Adams, p. 1, Ex. "25" [Emphasis Added].

Moreover, the Ropes & Gray report (released after the Petition was filed; *see infra* Section B (2), stated that Mr. Steve Penny ("Mr. Penny") (former President of USA Gymnastics, presently indicted for obstructing a police investigation at the Karolyi Ranch; *see* Criminal Indictment, *People v. Stephen Penny*, attached as Exhibit "26" to Cunny Decl.) sought to consult with Mr. Adams in 2015 about emerging allegations of abuse. *See* Ropes & Gray Report, p. 69, attached as Exhibit "15" to DAC.

Mr. Adams was deposed in the California cases, though, again, his deposition was limited to jurisdictional issues by his counsel, for which various instructions not to answer were given and

followed by the witness. *See infra* Section (B)(4)(a). In particular, as described *infra*, Mr. Adams was instructed not to answer numerous questions about his statements, above, to Congress.

      6.      **Frank Marshall, Former USAG and USOPC Board Member:**

      Mr. Frank Marshall served in various roles at USAG and with the USOPC, as well as USCSS. From 1992 to 2004, Mr. Marshall served on the USOPC's Board of Directors. <u>Marshall Deposition</u>, 20:17-23, attached as Exhibit "27" to <u>Cunny Decl.</u> From 2009 to 2013, Mr. Marshall served on the Board of Directors of USAG. *Id.* at 21:1-7. Additionally, Mr. Marshall is a Board member, currently, of the USCSS. *See USCSS Board of Director – Website*, attached as Exhibit "28" to <u>Cunny Decl.</u> Furthermore, Mr. Marshall was formerly the Treasurer and Vice President of the USOPC, and provided testimony to Congress in his role with USOPC, in July of 2003, which stated in part: "The Task Force believes that we need to show that the old culture is gone, create a break with the past and select board members who will be best able to govern the USOC." *See Hearing Before the Subcommittee on Commerce, Trade, and Consumer Protection of the Committee on Energy and Commerce*, House of Representatives, July 16, 2003, "Statement of Frank Marshall", attached as Exhibit "29" to <u>Cunny Decl.</u>

      While Mr. Marshall was deposed on November 20, 2018, his deposition, similar to those of Dr. Moreau, Mr. Adams, and Mr. Probst, was littered with instructions not to answer (despite ongoing disagreement amongst the parties as to the status of discovery in the *Raisman* matter) which were followed by the witness. *See infra* Section B(4)(d).

      7.      **William "Bill" Moreau, Former Chief Medical Officer of USOPC:**

      Dr. William "Bill" Moreau is the former Chief Medical Officer of the USOPC. <u>Moreau Deposition</u>, 43:10-24, attached as Exhibit "30" to <u>Cunny Decl.</u> In 2007 or 2008, Moreau began at the USOPC as the Director of the Colorado Springs Medical Clinic, and was subsequently promoted to Chief Medical Officer of the USOPC, amongst several other positions and titles. <u>Moreau Deposition</u>, 37:6-14. Dr. Moreau attended the 2012 London Olympics, and was one of two people who supervised Larry Nassar. <u>Moreau Deposition</u>, 38:7-23.

The deposition of Dr. Moreau proceeded on September 13, 2018 in the California cases, but again, was limited by instructions from counsel not to answer questions related to liability, which were followed by the witness. Cunny Decl., ¶10; *see infra*. Subsequent to his deposition, Dr. Moreau was terminated by the USOPC, and on February 5, 2020, he filed a "whistleblower" lawsuit in Colorado. *See* Complaint for Damages: *Moreau v. USOPC, et al.* (the "*Moreau* Complaint"), attached as Exhibit "31" to Cunny Decl.. Amongst the allegations made in his lawsuit, was that Nassar was admonished by Moreau for treating gymnasts outside of the central USOPC medical center, and that Nassar "shouldn't take care of athletes alone." *Moreau* Complaint, ¶40. Moreover, Dr. Moreau's lawsuit alleges that there were numerous athlete safety issues within the USOPC that he alerted senior management to, which fell upon deaf ears, including concerns about the mental health of an athlete, who, after Dr. Moreau warned USOPC about, committed suicide. *See* Moreau Complaint, ¶¶77-82.

**8.  Morane Kerek, Current Chief Financial Officer of USOPC.**

As contained in the Court's June 8, 2020 Minute Entry, Ms. Kerek's deposition (the "CFO" of the USOPC) was sought and ordered by the Court, in conjunction with updated audited financials for the USOPC. Despite this Order, Ms. Kerek's deposition is encompassed within the Protective Order Motion and request for relief. The USOPC apparently seeks to limit her deposition to the updated financials of the USOPC. [Protective Order Motion at 19, n.20.] However, this Court already addressed the deposition and ordered that it be limited as such. Thus, the Survivors are at a loss as to why the moving party chose to include this deposition in its request for a protective order. As we believe this issue has already been addressed and resolved by the Court, no further protective order is needed or should issue.

**9.  Document Requests Associated with Each Deposition Subpoena.**

In conjunction with the subpoenas and notices served for the eight (8) witnesses at issue herein, Survivors' counsel included a request for production of documents as to each witness (identical for each witness). *See* Deposition Notices and Subpoenas, Exs. "2"-"11". Importantly, no document subpoena was served on the USOPC in this matter (as the USOPC analyzes at-length

13

in its Protective Order Motion), and these requests were only made to the individual witnesses. *Id.*

Specifically, these requests seek to have the individual witnesses produce the following

documents, to the extent they are in their possession, custody or control:

1. Any and all communications, correspondence, or documents in your possession regarding allegations of sexual abuse of member athletes of the USOPC or member athletes of any NGB;

2. Any and all communications, correspondence, or documents in your possession regarding responsive or corrective measures implemented by the USOPC or any NBG in response to allegations of sexual abuse of member athletes of the USOPC or member athletes of any NGB;

3. Any and all communications, correspondence, or documents in your possession regarding allegations of sexual abuse perpetrated by Lawrence Gerard Nassar against member athletes of the USOPC or member athletes of any NGB;

4. From January 1, 2015 to present, any and all balance sheets, statements of profit and loss, income statements, cash flow statements, or any other financial statements in your possession reflecting the financial condition of the USOPC; and

5. Any and all financial statements in your position that provide any financial projections for the USOPC, including but not limited to any financial projections related to the 2028 Olympic Games."

Deposition Notices and Subpoenas, Exs. "2"-"11".

In the California cases, and specifically as to Dr. Moreau, in the introductory portion of Dr.

Moreau's deposition, counsel for USOPC (who previously represented Dr. Moreau), included their

perfunctory letter about jurisdictional discovery on the record as "Exhibit '1'", and made the

following comments:

"MR. KAMIN: Yes. I've premarked as Exhibit 1 a September 10th, 2018 letter to Plaintiff's counsel from myself, copying all counsel of record. **It details our position on the scope of this deposition, which is limited to jurisdictional discovery**, and it includes authority, and it also explains that the document request accompanying the deposition notice was untimely. However -- and **so we, on behalf of Dr. Moreau, are not producing documents today**. However, we will respond to these requests, as well as to requests -- requests for production that have been served in a timely way, and it will encompass the requests served to Dr. Moreau.

Moreau Deposition, 14:2-16, attached as Exhibit "30" to Cunny Decl; *see also* Objection Letter to Deposition of Dr. Moreau, attached as Exhibit "32" to Cunny Decl. [Emphasis added].

As this Court will remember, Mr. Kamin appeared telephonically on the June 8, 2020 discovery

conference with the Court, which was set prior to the filing of the Protective Order Motion, and

falsely represented to the Court that substantial fact discovery had taken place in those California cases.[10] Mr. Kamin's indelible words, from that prior litigation, however, belie his present position.

A similar representation was made on the record in the deposition of Rick Adams. Adams Deposition, 16:20-23 ("And it also indicates that **we and the witness will not be providing documents today in response to the document request attached to the notice of deposition**."); *see also* Objection Letter to Deposition of Mr. Adams, attached as Exhibit "33" to Cunny Decl.; *see also* Objection Letter to Deposition of Larry Probst, attached as Exhibit "34" to Cunny Decl. [Emphasis added]. Moreover, document requests were not previously served on Ms. Lyons, Mr. Ashley, and, as stated earlier, Mr. Blackmun's deposition never proceeded in the California cases. Cunny Decl., ¶11. As such, the USOPC's representation, that these documents have already been produced, is misleading at best and a blatant falsehood at worst. Either way, it fails to acknowledge that these individual witnesses never produced such documents, and if such documents were to be produced, the production would have been limited by the USOPC's objections and narrow view of discoverability, which it specifically limited to the narrow issue of jurisdiction.

More to the general argument made by the USOPC in the Protective Order Motion, that it claims to have produced sufficient liability documents in response to requests for production made to the USOPC, sufficient to allow the Survivors to evaluate liability, **these "supporting" exhibits are merely the requests and not the responsive documents.** Protective Order Motion, fn.14, *citing* Chen Decl., Exs. 11 through 13. Indeed, productions of documents by the USOPC continued in the California cases until the day Oppositions to Motions to Dismiss were due, in November of 2018. By way of example, one set of discovery responses (served by the USOPC in the *Raisman*

---

[10] Specifically, on the June 8, 2020 call, Mr. Kamin stated:

> But every single one of those eight depositions extensively covered **every issue related to Larry Nassar** including what knowledge the USOPC had regarding Nassar, the extent of USOPC's contacts with Nassar, what medical services were provided to gymnasts at the Olympic games, Nassar's relationship with the USOPC, communications between USOPC and USAG related to Nassar. **So there was nothing withheld on those topics in these depositions even though they were by court order limited to jurisdictional issues**.

*June 8, 2020 Hearing Transcript*, p. 5:15-23, attached as Exhibit "35" to Cunny Decl. [Emphasis Added].

case) was served on November 21, 2018, the same date that the Plaintiff's Opposition to USOPC's Motion to Dismiss was due. *See* <u>Supplemental Response by USOPC to RFPD, Set Three</u>, attached as Exhibit "36" to <u>Cunny Decl</u>. However, importantly, these responses, whose caption reads: "**(JURISDICTIONAL DISCOVERY)"** [Emphasis in original], contained seriatim jurisdictional objections that severely limited the scope of the productions! This simple fact should have been disclosed by the USOPC in its Protective Order Motion. Instead, it misleadingly argues that the documents were produced, going so far as to just include the requests as exhibits in order to support its false claim. Below are some of the requests and responses:

"**<u>REQUEST FOR PRODUCTION NO. 57-B</u>**:

Produce all e-mails between Steve Penny and Scott Blackmun, regarding Larry Nassar.

**<u>[INITIAL] RESPONSE TO REQUEST NO. 57-B</u>:**
    USOC incorporates its General Objections by reference as though fully set forth herein. USOC further objects to this Request on the ground that it is unduly burdensome and cumulative to the extent it seeks "all emails" regarding the same information. Additionally, **<u>USOC objects to this Request as going beyond the scope of jurisdictional discovery. Subject to and without waiving the foregoing objections, USOC responds as follows: after a reasonable search, USOC has not identified any documents responsive to this Request</u>.**

"**<u>[SUPPLEMENTAL] SUPPLEMENTAL RESPONSE TO REQUEST NO. 57-B</u>:**
    USOC incorporates its General Objections by reference as though fully set forth herein. USOC further objects to this Request on the ground that it is unduly burdensome and cumulative to the extent it seeks "all emails" regarding the same information. **<u>Additionally, USOC objects to this Request as going beyond the scope of jurisdictional discovery. Subject to and without waiving the foregoing objections, USOC responds as follows: USOC has produced documents identified in the course of a reasonable search that are responsive to this Request</u>.**"

<u>Supplemental Response by USOPC to RFPD, Set Three</u>, No. 57-B, Ex. "36". [Emphasis Added].

    In light of the Petition being filed on December 5, 2018, and subsequent agreement to stay the California cases, these responses were never met and conferred upon, nor otherwise resolved. The USOPC's claim that it that it produced everything it had is simply not supported by evidence in the Protective Order Motion, or the factual record, so that the USOPC can avoid inquiry into its

16

liability picture. The written discovery and document production were limited to jurisdictional issues at best.

**B.    PRE-PETITION DISCOVERY CONDUCTED IN CALIFORNIA.**

Despite representations of USOPC counsel during the discovery conference on the June 8, 2020 about the nature and substance of discovery obtained from pre-petition litigation in California, the USOPC depositions that proceeded were limited to jurisdictional issues, regarding which the USOPC took highly restrictive views of discoverability and limited most, if not all, of liability questioning. In sum, only 6 cases were removed in California and litigated in Federal Court (the "California Cases", collectively), with five (5) cases pending in the Central District (the "Central District Cases") and one (1) pending in the Northern District ("*Raisman*"):

**1.    California Litigation Over "Jurisdictional" v. "Merits-Based" Discovery.**

The Protective Order Motion makes several unsupported statements as to what occurred in the California cases regarding discovery. The Protective Order Motion claims "Propounding Counsel had been conducting discovery of USAG and other defendants for nearly two years…" and cites to Mr. Mark Chen's Declaration at Exhibit "10", a copy of a complaint filed in October of 2016. This is not true. Subsequent to the filing of that case, USAG filed a Motion to Quash Service of the Complaint, to which the parties (at the time) agreed to jurisdictional discovery. *See* Motion to Quash in *Jane LM Doe v. USA Gymnastics* (Case No. 8:18-cv-01117) by Debtor, attached as Exhibit "37" to Cunny Decl. This discovery resulted in the filing of numerous discovery motions, due to repeated instructions not to answer questions at deposition. *See* Cunny Decl., ¶12. "Full-blown" discovery against USAG, as USOPC describes it, was limited to jurisdictional issues, until USAG finally relinquished its jurisdiction defense in **July of 2018**, just prior to its bankruptcy filing. *See* July 25, 2018 E-Mail from Counsel for USAG, attached as Exhibit "38" to Cunny Decl. The merits discovery that had proceeded in those cases was against local gym owners, and other defendants, not the USOPC, which is the issue at bar here. Without going into every single USAG employee (or past employee), substantial depositions taken in this matter were limited to "jurisdictional issues".

17

Even after removal, USOPC still worked to have discovery limited to either none, or at best, limited to jurisdictional discovery. *See* Order Denying USOPC *Ex Parte* Application to Quash Discovery, Case 8:18-cv-01117-JLS-KES, Doc. 61 (the "*Ex Parte* Order"), attached as Exhibit "39" to Cunny Decl. And while the parties continued to dispute that a stay on merits-based discovery was in effect in the Northern District case of *Raisman v. USOC, et al.*, USOPC made its continued position clear that the parties had "stipulated" to a stay of the merits-based portion of discovery in the *Rasiman*:

> "Alex,
>
> **We've discussed this issue by phone numerous times now, and have also sent you numerous correspondence on it**. As an example, please see the attached, which was sent about four weeks ago and lays out our position and fully responds to your questions below. Again, **the parties expressly agreed to stay merits discovery**. That agreement was explicitly stated in a statement that you filed with the Court. As you're well aware, parties are free to enter into agreements regarding discovery. The Court never rejected or overruled the parties' agreement to stay merits discovery. **Therefore, the agreement to stay merits discovery remains in effect.** If you have any authority stating that parties may not enter into agreements regarding discovery without a court order, please provide it. Otherwise, your questions all appear to be based upon a flawed premise.
>
> Thanks,
>
> Mark"

E-mail From Mark Chen to Alex Cunny, October 29, 2018, Ex. "2".[Emphasis Added].

Nevertheless, the Court in the Central District Cases permitted jurisdiction-only discovery to proceed. *Ex Parte* Order, Ex. "39". Prior to the depositions that occurred in the California Cases, USOPC's counsel sent a letter that explained how it would limit the depositions. These perfunctory letters (all nearly identical) provided:

> As you are aware, **Mr. Probst will appear for the purpose of jurisdictional discovery, as opposed to merits discovery—namely, to determine whether California courts have personal jurisdiction over the USOC**. See Oct. 17, 2018 Dep. Notice. The only parties who are contesting jurisdiction are the USOC, the Karolyis, Kathy Scanlan, and Steve Penny.
>
> "A court's exercise of personal jurisdiction over a nonresident defendant may be either general or specific." *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). Despite the fact that the USOC is not incorporated or based in California and thus plainly cannot be subject to general jurisdiction there, the USOC will permit questioning about conduct or activities in California.
>
> **Plaintiffs may also question Mr. Probst about facts pertinent to specific jurisdiction.** For specific jurisdiction to exist, the lawsuit must "arise out of or relate to the defendant's contacts with the forum." Bristol-Myers Squibb Co. v. Superior Court of Cal.,

18

137 S. Ct. 1773, 1780 (2017) (emphasis, alterations, and internal quotation marks omitted). Specifically:

(1) **The USOC must "purposefully direct [its] activities" toward California;**

(2) **Plaintiffs' claims must "arise[] out of or relate[] to" the USOC's "forum-related activities";** and

(3) **The exercise of jurisdiction must be "reasonable," meaning that the exercise must "comport with fair play and substantial justice."**

October 25, 2018 Letter from Ms. Kubota, Counsel for USOPC, Ex. "34" [Emphasis Added].

Near identical letters to this October 25, 2018 letter were sent as to Mr. Adams and Dr. Moreau's depositions. *See* Exhibits "32" and "33". Furthermore, these depositions were followed by extensive meet-and-confer efforts that resulted in letter briefs being filed with the Court. Just prior to the Petition being filed in this matter, the parties submitted a Joint Letter Brief to the magistrate judge assigned to the *Raisman* matter, for resolution; USOPC's leading argument being that the deposition questions went beyond "jurisdictional discovery" for Rick Adams' deposition. *See* Joint Letter Brief Re: Deposition of Rick Adams, Case No. attached as Exhibit "40" to Cunny Decl. As demonstrated below, another joint brief was submitted when the Survivors in those matters attempted to subpoena foundational documents for the Ropes & Gray Investigative report. *See infra* Section III(A)(2).

There is simply no colorable claim that the USOPC provided merits-based discovery, which is further illustrated by the instructions not to answer questions, on the basis of "scope" at deposition. *See infra* at Section A(4). The "snippets" that the USOPC attempts to cobble together in its Protective Order Motion, to claim that full liability discovery has already occurred, are a tortured fabrication of what the USOPC's lawyers allowed its witnesses to testify about on liability, while hiding the rest behind a shroud of jurisdictional objections.

2. **Subpoena For Ropes & Gray Report, Statements and Evidence Collected, Opposed By USOPC.**

On November 8, 2018, counsel for Ms. Raisman and counsel for non-party Ropes & Gray submitted a joint letter brief to the Northern District of California, regarding a discovery dispute. *See* November 8, 2018 – Letter Brief, attached as Exhibit "41" to Cunny Decl. The discovery dispute concerned the Ms. Raisman's subpoena issued to Ropes & Gray for various materials

underlying, at the time, a forthcoming report and investigation into the Larry Nassar scandal at USAG and USOPC. *Id.* On November 12, 2018, counsel for the USOPC supplied an additional brief in opposition to the subpoena, and yet again, asserted jurisdictional objections:

> **Plaintiff's subpoena to Ropes far exceeds the current limitations on jurisdictional discovery.** As explained on the investigation's public website (where the report will be published), Ropes' investigation looks to nationwide issues pertaining to the "contributing factors and circumstances, including systemic deficiencies, failures of oversight and cultural issues in elite athletics and Olympic sports." See Independent Investigation Report, Ropes & Gray, at www.nassarinvestigation.com. **These issues are unrelated to, and go far beyond, the jurisdictional inquiry into USOC's contacts with, and activities directed toward, California.**

*See* USOPC November 12, 2018 Letter Brief Re: Ropes & Gray, attached as Exhibit "42" to Cunny Decl.

Ultimately, the Ropes & Gray final report was released publicly on December 10, 2018 (after the Petition was filed), though the requests for the underlying statements, evidence and documentation sought through the subpoena (and in the Letter Brief to the Court; Ex. "40") were never ruled upon or resolved. As evidenced from USOPC's Opposition to that Letter Brief, they objected that it went "far beyond, the jurisdictional inquiry into USOPC's contacts with, and activities directed toward, California." USOPC November 12, 2018 Letter Brief Re: Ropes & Gray, Ex. "42".

### 3. Scope of California Discovery Taken and Relating to Only Specific Nassar Cases; Not Michigan Survivors or Non-Nassar Survivors.

While the USOPC's Protective Order Motion focuses solely on Nassar survivors and discovery that was obtained as to them in the underlying California Cases, this analysis completely ignores that: (1) there are a large number of claimants who are non-Nassar survivors; and (2) there are a large number of claimants who are from, or have sued in, Michigan. *See* Response to Objection to Disclosure Statement by Objection to Chapter 11 Disclosure Statement filed by Robert J Pfister on behalf of Creditors Rylee Daugherty, Kelly Doe, Erin Kaufman, M. DOE, a minor child, ¶3 Doc. 1123; Cunny Decl., ¶16. While the USOPC is attempting to frame this bankruptcy as something of a "Larry Nassar Bankruptcy," it is far more than that, as is reflected by the scope of the release sought by USOPC. Indeed, as drafted, the release contained in the

Settlement Election is not limited to Nassar-only cases (nor could that be feasible, or even possible) but would enjoin all claims arising from sex abuse. Therefore, USOPC's unilateral choice to view relevance through a Larry Nassar-only lens, is inappropriate. USOPC's liability for all claims for which it seeks releases is relevant to advising clients as to whether or not they should accept the Plan and the Settlement.

Moreover, and as a fine point, the discovery taken in the California Cases was not only limited by jurisdictional orders of the Court, but also was limited as to timeframes of the abuse of those individual survivors, as it pertained to discovery. For example, in *Jane JD Doe, v. Doe 1, et al.* (Case No. 8:18-cv-1135), the Survivor was sexually abused by Nassar from approximately 1994 through 1999. *See* Jane JD Doe Complaint, ¶¶45 attached as Exhibit "43" to Cunny Decl. Thus, as to the contention made by the USOPC that "full-blown" discovery was undertaken for two full years, it simply is not borne out by the facts. Indeed, the first deposition taken in a Nassar case in California was in May of 2017 and depositions involving USAG employees were limited to jurisdiction. Cunny Decl., ¶13.

**4.   Depositions of Witnesses Taken In California Cases On Jurisdiction.**

In the California cases, depositions of Mr. Adams, Mr. Marshall, Dr. Moreau, and Mr. Probst were taken, though they were taken on personal jurisdiction grounds as USOPC's counsel repeatedly asserted. However, the USOPC's claims of these depositions being for liability are misguided and contradicted by counsels' repeated instructions, as indicated above. This is not self-evident when reviewing the transcripts attached to Mr. Chen's declaration, as only misleading snippets of depositions were attached, where information pertaining to *some* areas of liability was hinted at. **The salient issue, however, is that the USOPC's counsel repeatedly instructed these witnesses not to answer critical questions as to liability, on the grounds that they were not "jurisdictional", which compromised the ability of counsel to effectively cross-examine the witnesses as to those issues and obtain evidence**. Indeed, where the USOPC's counsel had free reign to instruct on liability questions of its choosing, there was not a fair examination of these witnesses on liability. This, coupled with the fact that the USOPC unapologetically stated (at least,

21

prior to June 8, 2020's Informal Discovery Conference) that these depositions were only as to jurisdiction, shows that these previous depositions were not allowed to proceed as to liability.

While the USOPC tries to cobble together these depositions, so it can argue that "liability" depositions were completed, the records clearly indicate that the USOPC never believed they were at the time, instructed these witnesses not to answer non-jurisdictional questions, and the only "liability" discovery achieved was incidental, incomplete, and unintended.

### a. Deposition of Rick Adams

The deposition of Rick Adams proceeded on September 12, 2018. *See* Adams Deposition, Ex. "11". At his deposition, Mr. Adams was instructed not to answer over sixty (60) questions by his counsel (Mr. Kamin, representing the USOPC). *See Id.* At the start of the deposition, Mr. Kamin and Mr. Cunny had a colloquy as to whether the deposition was as to liability or jurisdiction only, to which Mr. Kamin unequivocally stated that:

> "And that the judge in the Northern District adopted that same approach, which was - -and the stipulation I was referring to was in our case management statement jointly filed by the parties, where **we agreed that merits discovery would be stayed pending the outcome of the motions to dismiss**."

Adams Deposition, 16:9-18:3, Ex. "11". [Emphasis added].

This position was then reiterated throughout the deposition by Mr. Kamin instructing Mr. Adams not to answer various questions as being beyond the scope of jurisdictional discovery. *See* Adams Deposition, 38:9-22, 39:6-15, 39:16-21, 39:22-40:1, 40:2-6, 40:7-11, 40:7-11, 40:12-17, 93:17-94:12, 115:8-116:16, 118:6-17, 131:4-24, 156:7-157:12, 157:13-24, 158:1-23, 165:15-166:5, 166:7-12, 166:17-23, 166:25-167:8, 169:16-23, 170:9-13, 174:4-175:1, 177:16-21, 177:25-178:5, 178:6-11, 178:12-17, 179:19-180:7, 180:9-16, 180:17-23, 181:1-10, 181:11-18, 181:19-182:10, 182:11-16, 182:17-184:1, 184:2-12, 184:13-18, 193:13-194:9, 194:10-18, 194:19-24, 194:25-195:5, 195:6-11, 196:7-15, 196:16-22, 199:3-200:4, 201:19-202:11, 203:25-204:20, 204:21-205:1, 205:2-8, 205:9-22, 205:23-206:2, 208:15-209:7, 215:2-216:17, 216:18-23, 216:24-217:4, 217:5-10, 217:11-16, 217:17-24, 234:24-235:7, 235:8-14, 235:15-22, 240:10-15, 240:16-21, 240:22-241:4, 241:5-11, Ex. "11". In particular, some of the questions that Mr. Adams was instructed not to answer included:

"Prior to June of 2015, you never communicated with Michigan State regarding Larry Nassar, correct?" Adams Deposition, 240:16-21, Ex. "11";

"Prior to sending Larry Nassar to the London Olympics, was it the custom and practice of USOC to check prior employers, reviews of that individual, prior to sending him to treat young girls?" Adams Deposition, 217:17-24, Ex. "11";

"To your knowledge, did the US Olympic Committee provide Larry Nassar's travel to the London Olympics?" Adams Deposition, 216:24-217:4, Ex. "11";

Moreover, Mr. Adams was instructed not to answer numerous questions regarding the statements he made to Congress, including his apology to athletes (181:11-18), his statements about the USOPC taking responsibility (179:19-180:7,180:9-16,17-23, 181:1-10), and his statement about an environment that discouraged athletes from reporting (181:19-182:10, 11-16). When Mr. Adams was asked who the USOPC "failed to protect", he was instructed not to answer the question, and Mr. Kamin inserted the following objection: "**Given the very limited scope of this deposition to jurisdictional issues related to California, I object to questions about the substance, such as you just posed, and will instruct my client not to answer**." Adams Deposition, 165:15-166:5. [Emphasis added]. As can be seen from the various excerpts attached in support hereof, Mr. Adams was not allowed to answer foundational questions about his experience handling sexual abuse claims formerly as the President of USA Weightlifting (38:9-22, 39:16-21, 39:22-40:1, 40:2-6), the authority of the USOPC to audit governance and other materials of an NGB (115:8-116:16, 118:6-17), and regarding aspects of the 1999 letter that Robert Colarrossi sent to the USOPC. Adams Deposition, 157:14-158:23, Ex. "11".

After the deposition, the parties met and conferred as to whether the instructions not to answer were proper **for jurisdictional discovery** purposes, and submitted a joint brief to the magistrate in the Northern District Court of California, in the *Raisman* case. *See* Joint Letter Brief Re: Deposition of Rick Adams, attached as Exhibit "40" to Cunny Decl. This brief remained pending at the time the Petition was filed in the instant action, and the dispute was never resolved.

**b. Deposition of Lawrence "Larry" Probst**

The deposition of Mr. Probst proceeded on October 26, 2018. Mr. Probst was instructed not to answer well-over 100 questions that were posed to him during the deposition by his counsel. *See* Probst Deposition, 82:3-21, 83:11-84:18, 84:20-85:9, 86:17-87:4, 89:21-90:14, 90:20-91:3,

23

91:4-14, 91:15-21, 91:22-92:1, 92:2-13, 92:14-93:14, 93:15-94:10, 94:16-20, 94:21-24, 94:25-95:7, 95:8-11, 95:12-17, 95:18-21, 95:22-96:1, 96:2-8, 96:9-13, 97:18-98:20, 120:14-25, 121:1-7, 122:13-20, 122:21-24, 122:25-123:5, 124:12-19, 125:18-22, 125:23-126:1, 126:7-9, 126:10-22, 126:23-127:2, 127:3-10, 127:11-15, 127:16-20, 127:21-128:2, 128:3-7, 128:8-130:7, 130:3-7, 130:8-20, 130:21-23, 130:24-131:4, 131:11-16, 131:21-132:2, 132:3-7, 132:8-11, 132:12-15, 132:16-24, 132:25-133:6, 133:7-10, 133:11-15, 133:16-20, 133:21-24, 133:25-134:2, 134:3-5, 134:6-8, 134:9-18, 135:4-24, 135:25-136:5, 136:6-11, 136:12-15, 136:16-19, 138:8-139:6, 139:15-23, 140:6-25, 142:9-15, 142:16-19, 142:20-25, 143:1-7, 143:8-12, 143:13-18, 143:19-23, 143:24-144:10, 144:11-14, 144:15-17, 144:18-24, 145:1-13, 145:14-19, 145:20-146:1, 146:2-5, 146:6-11, 146:12-16, 146:17-20, 146:21-147:1, 147:2-7, 147:8-11, 147:12-25, 148:1-3, 148:4-9, 148:10-12, 148:13-16, 148:17-25, 149:1-11, 149:12-18, 149:19-23, 150:16-20, 150:21-24, 150:25-151:9, 151:10-19, 151:20-152:3, 152:4-6, 152:7-10, 152:11-20, 152:21-25, 153:1-6, 153:7-19, 153:20-23, 153:24-154:7, 154:8-12, 166:11-167:1, 167:2-5, 167:6-11, 167:12-15, 167:16-168:1, 168:2-17, 169:22-170:2, 172:11-17, 172:18-173:2, Ex. "17".

Specifically, these lines of questioning concerned whether the USOPC had learned of allegations against Nassar at Michigan State prior to June of 2015 (91:2-13, 96:9-13), questions regarding the training of staff (in particular, medical staff) to report abuse (95:8-11, 95:12-17, 96:2-8), any USOPC investigation into the number of girls molested by Nassar after Mr. Blackmun was made aware of complaints (91:14-93:14, 93:15-94:10), any USOPC investigation into Nassar in general about other medical professionals being aware (89:21-90:14, 91:4-14), and whether the USOPC reviewed any of the USAG's records as to Nassar. Probst Deposition, 84:20-85:9, Ex. "17".

### c.  Deposition of William "Bill" Moreau

On September 13, 2018, Dr. Moreau's deposition proceeded in the California Cases. Yet again, there was a disagreement as to whether the deposition was jurisdictional or merits-based by counsel, and counsel for USOPC continued its jurisdictional objections. *See* Moreau Deposition, 14:2-16:7, Ex. "30". Dr. Moreau was instructed not to answer over 30 questions. Moreau

24

Deposition, 82:18-83:5, 84:20-85:3, 85:4-13, 92:5-12, 104:6-105:10, 109:21-110:4, 110:5-22, 111:6-13, 111:14-22, 112:13-114:20, 114:21-25, 115:1-5, 115:6-9, 115:10-18, 115:19-24, 115:25-116:4, 120:11-20, 120:21-121:1, 121:2-7, 121:8-13, 121:14-19, 121:20-24, 121:25-122:7, 122:13-24, 122:25-123:5, 123:6-124:22, 124:23-125:3, 125:4-9, 125:10-17, 133:6-10, 133:11-14, 133:15-19, 133:20-24, 133:25-134:4, 134:21-135:4, 149:8-21, 150:6-16, 191:10-15, Ex. "30". The instructions not to answer concerned numerous critical areas of merits-based testimony (as well as jurisdictional) including questions concerning Debbie Van Horn, another athletic trainer for the Debtor and who had been employed, at one point, with the USOPC and who had been charged in Texas arising from her alleged knowledge of treatments (112:14-114:20, 133:6-10, 133:11-14, 133:15-19, 133:20-24, 133:25-134:4), whether Dr. Moreau had made any investigation into whether individuals at USOPC had heard complaints about Nassar prior to 2015 (125:10-17), whether he had talked to the previous CMO (Dr. Cindy Chang) about complaints involving Nassar (123:6-124:22, 124:23-125:3, 125:4-9), whether the USOPC credentialed medical treaters were expected to report suspected sexual abuse (121:25-122:7, 122:13-24), whether the USOPC made any investigation of Nassar's employment history at Michigan State University (120:21-121:1, 121:2-7, 121:8-13, 121:14-19), and questions about review of the USOPC files. Moreau Deposition, 104:6-105:10, Ex. "30". Moreover, in reading through these transcripts, it is clear that counsel based these objections on jurisdictional grounds, limiting the testimony on that basis.

After the deposition, Survivors' counsel requested a discovery conference with counsel for the USOPC, though a letter brief had not yet been prepared for resolution by the Court. Cunny Decl., ¶14.

### d.  Deposition of Frank Marshall

On November 20, 2018, the deposition of Mr. Marshall proceeded in Irvine, California. At the deposition, Mr. Marshall was a third-party witness, but was still instructed not to answer numerous questions. *See* Marshall Deposition, 34:5, 34:12, 35:3, 35:7, 37:12, 38:1, 8, 15, 43:23-24, 49:3-4, 55:20, 66:3-4, 69:19, and 70:18-19, Ex. "27". Despite the fact that Mr. Marshall was not represented by the USOPC's counsel, his counsel had spoken to counsel for the USOPC and

thus instructed the witness not to answer merits-based, or rather, non-jurisdictional discovery. *Id.* at 66:1-68:4. In those instructions, Mr. Marshall was instructed not to answer how many allegations he was aware of coming out of USA Gymnastics (33:25-34:5), how many Olympic athletes he is aware of being abused in California, based on his membership on the USCSS Board (34:7-12), what the purpose of USCSS was (35:2-3), what USCSS's job was (37:23-38:1), his knowledge about protecting children or athletes before being placed on the USCSS Board (38:3-8), what USCSS's policy was on reporting child molestation in 2018 (55:17-20), and whether he would expect the organization (the Debtor) to bring concerns of mass child sexual abuse to his concern, as a board member (65:19-25; 69:14-19). Given the numerous objections and colloquy on the record about whether testimony was jurisdictional, this deposition was clearly limited by this perceived limit as to jurisdictional discovery. There is no question that this was **not** a full-blown liability deposition.

In light of the proximity to the filing of the Petition, these non-responses were not yet brought before the Court or able to be met-and-conferred upon. Cunny Decl., ¶15.

## II.    <u>LEGAL ARGUMENT</u>

### A.    <u>THE SURVIVORS HAVE A RIGHT TO DISCOVER THE UNDERLYING MERITS OF THEIR CLAIMS, SUCH THAT THEIR COUNSEL CAN ADVISE AS THEM AS TO THE PLAN.</u>

*Federal Rule of Bankruptcy Procedure* 9014 and 7026, regarding contested matters, make *Federal Rule of Civil Procedure* 26 applicable in the instant matter. *F.R.C.P.* 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *F.R.C.P.* 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "We enter upon determination of this construction with the basic premise 'that the deposition-discovery rules are to be accorded a broad and liberal treatment,' ([citation

omitted]), to effectuate their purpose that 'civil trials in the federal courts no longer need be carried on in the dark.' " *Schlagenhauf v. Holder,* 379 U.S. 104, 114–15, (1964). "No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case…" *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

Furthermore, *F.R.C.P.* 30(a)(2)(A)(i) provides a presumptive limit of ten (10) depositions, after which leave of Court is required to obtain further depositions. In seeking discovery on this broad-ranging topic of liability applicable to over 500 claimants, all with varying timeframes of abuse, multiple perpetrators, and multiple different executives in power at the USOPC over the years, the Survivors noticed less than the presumptive maximum of depositions, and have even narrowed their request from nine (9) depositions, to eight (8), with the withdrawal of Ms. Hirshland's deposition. As stated at length *supra*, these claimants seek only eight (8) depositions of witnesses, for decades' worth of abuse, that occurred by numerous perpetrators, over different management at the USOPC and USAG. To evaluate this swathe of claims and to be able to be advised as to the USOPC's liabilities in conjunction with the Plan, this limited set of discovery requests and depositions, that seeks to evaluate claims beyond those six (6) claims litigated against the USOPC in California, is tailored to elicit the necessary information from key witnesses.

While the USOPC is intent upon characterizing this as a "Nassar" Bankruptcy, it categorically ignores the substantial amount of non-Nassar Survivors, while also ignoring the fact that only a small fraction of Nassar Survivors' cases were filed in California or litigated in the California Cases. Furthermore, and as explained at-length above, the "duplicative" depositions that the USOPC claims are sufficient seek to apprise the Survivors of their claims, were highly limited by (a) perpetrator, (b) by jurisdictional, as opposed to "merits-based" or liability, and (c) by a small subset of California Cases. In order to evaluate the broad release that the USOPC seeks, it is the most minimal request that these claimants receive testimony and documents from these witnesses.

For an organization that has prioritized "transparency" in its Code of Ethics, and has apologized to Congress for not protecting these women, the USOPC's witnesses at least owe the Survivors an explanation as to why they believe they owe them no duty. *See* <u>Response to Objection</u>

of Survivors' Committee, Doc. 1115, pp.12-15 ("The Vast Majority of Claimants Lack a Relationship to the USOPC Sufficient to Establish Liability.")

**B.    THE REQUESTED DOCUMENTS ARE NOT "UNDULY BURDENSOME" AS THE USOPC HAS FAILED TO SET FORTH EVEN BASIC FOUNDATIONAL INFORMATION AS TO THE BURDEN IT HAS CLAIMED.**

In support of its Protective Order Motion, the USOPC offers virtually no evidence by way of declaration or exhibit, as to how producing the requested documents would be "unduly burdensome." [Protective Order Motion at 12, 14.] In substantiating its claim of such burden, instead of providing testimony of counsel or any witness with the USOPC to prove this burden of the discovery, limited excerpts from depositions are supplied which the USOPC attempts to claim is "good enough." But that's not the legal standard governing burden under *F.R.C.P.* 26(b).

In *Manning v. Gen. Motors*, 247 F.R.D. 646, 654 (D. Kan. 2007), the Court rejected General Motors' argument that discovery requests were "unduly burdensome." In *Manning*, the plaintiff sought all documents that demonstrated that General Motors accommodated an employee over an approximate four-year period. *Id.* at 652. In response, General Motors stated it would have to search the files of "hundreds of employees" and then have outside counsel's assistance to determine whether the employee's medical restrictions created a disability, and then whether any actions General Motors took were "accommodations." *Id.* at 654. In rejecting this argument, and counsel's characterization of responses being "extremely time consuming," the Court looked to the absence of the factual record supporting General Motors' claim of such burden. *Id.* In particular, the Court stated that "the party objecting to the discovery as unduly burdensome 'cannot rely on some generalized objections, but must show specifically how each request is burdensome ... by submitting affidavits or some detailed explanation as to the nature of the claimed burden.' " *Id.* The Court continued that the "Defendant has the burden to support this objection and to show not only 'undue burden or expense,' but also to show that the burden or expense **is unreasonable in light of the benefits to be secured from the discovery**." *Id.* [emphasis added]. The Court concluded the analysis by stating:

> "Thus, even if the production of documents would cause great labor and expense
> or even considerable hardship and the possibility of injury to its business,

> Defendant would still be required to establish that the hardship would be undue and disproportionate to the benefits Plaintiff would gain from the document production."

*Id.* at 654.

Here, the USOPC's motion essentially rests upon this theory that these 8 depositions are duplicative unduly burdensome, or as the USOPC characterizes it, duplicative. [Protective Order Motion at 12,14.] Regardless of the limitations in the depositions (instructions not to answer, limited subject matter, limited to California Cases, etc.), the USOPC has failed to demonstrate, through competent evidence, that these eight witnesses are unduly burdensome or that the USOPC would be under any hardship. In fact, the only declaration submitted in support of the Protective Order Motion is the declaration of Mark Chen, which, other than citing to meet-and-confers, merely sets forth foundation for deposition excerpts, discovery requests, and the subject deposition notices and subpoenas. Doc. 1118. There is no factual showing that the USOPC would be prejudiced, that the USOPC would be placed under a hardship, or that there would be aby *possible* injury to the USOPC's business.

While the USOPC relies on the fact that four of the eight deponents previously gave testimony in the California Cases, making the discovery, in its words "duplicative," the USOPC offers no explanation as to why the depositions of Ms. Lyons, Mr. Blackmun, or Mr. Ashley, who were not previously deposed, are duplicative other than rank speculation that they would, necessarily, have the same knowledge as those who were deposed (in the jurisdictional, California depositions). Instead, the USOPC cobbles together the liability snippets from the depositions that are littered with instructions of counsel not to answer, to claim full-fledged discovery had already completed against the USOPC; it has not. Nor was a single deposition was taken in the Western District of Michigan cases that were pending, prior to the Petition being filed, though the USOPC wants to enjoin every single one of those claims.

The USOPC's claims of burden are woefully under-supported by its Protective Order Motion and evidence filed in support thereof. It has not even begun to make a showing a duplicity or burden, much less undue or unreasonable burden. The USOPC's vague claims of inconvenience,

wholly unsupported by evidence, fail to meet their burden, especially considering that they are seeking to shutout hundreds of Survivors without offering even the most basic information about their claims.

### III.    <u>CONCLUSION</u>

For the reasons stated herein, the Survivors request that the Court deny the Protective Order Motion and order that the depositions of Ms. Morane Kerek (already ordered), Mr. Scott Blackmun, Mr. Lawrence Probst, Ms. Susanne Lyons, Dr. William Moreau, Mr. Rick Adams, Mr. Alan Ashley, and Mr. Frank Marshall proceed within 30 days of the Court's hearing on this matter. Furthermore, the Survivors seek to have the Court order each witness to produce documents responsive to the request contained within their respective subpoenas, absent objection for privilege.

Respectfully submitted,

Dated: June 14, 2020

By:    /s/ Alex E. Cunny

John C. Manly (CA 149080)
Vince W. Finaldi (CA 238279)
Alex E. Cunny (CA 291567) (admitted *Pro Hac Vice*)
MANLY, STEWART & FINALDI
Attorneys for Committee Members
Alexandra Raisman, Kyla Ross, Rachael Denhollander, Jessica Thomashow and additional Survivors
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Phone: (949) 252-9990
E-mail: jmanly@manlystewart.com
E-mail: vfinaldi@manlystewart.com
E-mail: acunny@manlystewart.com

///

///

///

///

Dated: June 14, 2020              By:    <u>/s/ Stephen R. Drew (with permission)</u>

                                   Stephen R. Drew (P24323)
Adam C. Sturdivant (P72285)
DREW, COOPER & ANDING
Attorneys for Committee Members
Rachael Denhollander, Jessica Thomashow
and additional Survivors
Lead Case No. 1:17-cv-00029-GJQ-ESC
80 Ottawa Avenue NW, Suite 200
Grand Rapids, Michigan 49503
Phone: (616) 454-8300
E-mail: sdrew@dca-lawyers.com
E-mail: <u>asturdivant@dca-lawyers.com</u>

DOCS_SF:103617.2 88602/002

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2020, a copy of the foregoing *Survivors' Objection to the United States Olympic and Paralympic Committee's (the "USOPC") Motion for Protective Order and to Limit Discovery Regarding Debtor's Motion for Order Approving the Disclosure Statement and Plan Confirmation Procedures* was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

Nancy D Adams    ndadams@mintz.com
Annemarie C Alonso    annie@sllawfirm.com
Martin Beeler    mbeeler@cov.com
Megan A Bonanni    mbonanni@pittlawpc.com
Tonya J. Bond    tbond@psrb.com, jscobee@psrb.com
Kenneth H. Brown    kbrown@pszjlaw.com
Charles D. Bullock    cbullock@sbplclaw.com, lhaas@sbplclaw.com
George Calhoun    george@ifrahlaw.com, Heather.Simpson@kennedyscmk.com
Douglas N. Candeub    dcandeub@morrisjames.com
John Cannizzaro    john.cannizzaro@icemiller.com, Thyrza.Skofield@icemiller.com
Deborah Caruso    dcaruso@rubin-levin.net, dwright@rubin-levin.net;jkrichbaum@rubin-levin.net;atty_dcaruso@bluestylus.com
Dianne Coffino    dcoffino@cov.com
Jesse Max Creed    creed@psb.law, alegria@psb.law
Heather M. Crockett    Heather.Crockett@atg.in.gov, darlene.greenley@atg.in.gov
Alex Cunny    acunny@manlystewart.com
Elisabeth D'Agostino    edagostino@selmanlaw.com
Peter D'Apice    dapice@sbep-law.com
Louis T. DeLucia    louis.delucia@icemiller.com, john.acquaviva@icemiller.com
Edward DeVries    edward.devries@wilsonelser.com
Karen M Dixon    kdixon@skarzynski.com
Kimberly A. Dougherty    kim.dougherty@andruswagstaff.com, Lisa.Lockhead@andruswagstaff.com
Laura A DuVall    Laura.Duvall@usdoj.gov, Catherine.henderson@usdoj.gov
Jeffrey B. Fecht    jfecht@rbelaw.com, rmcclintic@rbelaw.com
Sarah Lynn Fowler    sarah.fowler@mbcblaw.com, deidre.gastenveld@mbcblaw.com,ellen@mbcblaw.com
Eric D Freed    efreed@cozen.com, mmerola@cozen.com
Frances Gecker    fgecker@fgllp.com, csmith@fgllp.com;csucic@fgllp.com;mmatlock@fgllp.com
Cameron Getto    cgetto@zausmer.com
Steven W Golden    sgolden@pszjlaw.com
Douglas Gooding    dgooding@choate.com
Gregory Michael Gotwald    ggotwald@psrb.com, scox@psrb.com
Manvir Singh Grewal    mgrewal@4grewal.com
Susan N Gummow    sgummow@fgppr.com, bcastillo@fgppr.com

DOCS_SF:103617.2 88602/002

Matthew A. Hamermesh     mhamermesh@hangley.com, kem@hangley.com;mjl@hangley.com
Katherine Hance     khance@goodwin.com
Samuel D. Hodson     shodson@taftlaw.com, aolave@taftlaw.com
Bonnie M. Hoffman     bmh@hangley.com, hit@hangley.com;ecffilings@hangley.com
Jeffrey A Hokanson     jeff.hokanson@icemiller.com,
bgnotices@icemiller.com,david.young@icemiller.com
John R. Humphrey     jhumphrey@taftlaw.com, aolave@taftlaw.com
Christine K Jacobson     cjacobson@jhklegal.com, 5412@notices.nextchapterbk.com
Cassandra Jones     cjones@walkerwilcox.com,
vhosek@wwmlawyers.com;docket@walkerwilcox.com
Bruce L. Kamplain     bkamplain@ncs-law.com, dhert@ncs-law.com;klong@ncs-law.com
Kevin P Kamraczewski     kevin@kevinklaw.com
Ronald David Kent     ronald.kent@dentons.com
Andrew T Kight     akight@jhklegal.com, assistant@jhklegal.com;akight@ecf.courtdrive.com
Adam L. Kochenderfer     akochenderfer@wolfsonbolton.com
Christopher E. Kozak     ckozak@psrb.com
Micah R Krohn     mkrohn@fgllp.com,
mmatlock@fgllp.com;csmith@fgllp.com;csucic@fgllp.com
Carl N. Kunz     ckunz@morrisjames.com, wweller@morrisjames.com
Cynthia Lasher     clasher@ncs-law.com, dcouch@ncs-law.com;dhert@ncs-law.com
Adam Le Berthon     adam.leberthon@wilsonelser.com
Jonathan C Little     jon@sllawfirm.com
Michael M. Marick     mmarick@skarzynski.com
Jonathan Marshall     jmarshall@choate.com
John McDonald     jmcdonald@briggs.com
Mathilda S. McGee-Tubb     msmcgee-tubb@mintz.com
Harley K Means     hkm@kgrlaw.com, kwhigham@kgrlaw.com;cjs@kgrlaw.com
Geoffrey M. Miller     geoffrey.miller@dentons.com, ndil_ecf@dentons.com
Robert Millner     robert.millner@dentons.com, ndil_ecf@dentons.com
James P Moloy     jmoloy@boselaw.com,
dlingenfelter@boselaw.com;mwakefield@boselaw.com
Marium Moore     mmoore@selmanlaw.com
Ronald J. Moore     Ronald.Moore@usdoj.gov
Joel H. Norton     jnorton@rsslawoffices.com
Michael P. O'Neil     moneil@taftlaw.com, aolave@taftlaw.com
Weston Erick Overturf     wes.overturf@mbcblaw.com,
deidre.gastenveld@mbcblaw.com;ellen.sauter@mbcblaw.com
Dean Panos     dpanos@jenner.com
Stephen Jay Peters     speters@kgrlaw.com, acooper@kgrlaw.com
Ginny L. Peterson     gpeterson@k-glaw.com, acoy@k-glaw.com
Robert J Pfister     rpfister@ktbslaw.com
John Thomas Piggins     pigginsj@millerjohnson.com, ecfpigginsj@millerjohnson.com
Michael L Pitt     mpitt@pittlawpc.com
George Plews     gplews@psrb.com
Amanda Koziura Quick     amanda.quick@atg.in.gov, Marie.Baker@atg.in.gov
Michael L. Ralph     mralph@rsslawoffices.com

DOCS_SF:103617.2 88602/002

Melissa M. Root     mroot@jenner.com, wwilliams@jenner.com
James Pio Ruggeri     jruggeri@goodwin.com
Syed Ali Saeed     ali@sllawfirm.com, betty@sllawfirm.com
Ilan D Scharf     ischarf@pszjlaw.com
Ronald Paltin Schiller     rschiller@hangley.com, baw@hangley.com;ecffilings@hangley.com
David J. Schwab     djschwab@rsslawoffices.com
Igor Shleypak     ishleypak@fgppr.com, bcastillo@fgppr.com
Heather Elizabeth Simpson     heather.simpson@kennedyslaw.com
Casey Ray Stafford     cstafford@k-glaw.com, lsmith@k-glaw.com
James I. Stang     jstang@pszjlaw.com
Catherine L. Steege     csteege@jenner.com,
mhinds@jenner.com;thooker@jenner.com;aswingle@jenner.com
Laura B. Stephens     lbstephens@mintz.com
Mark D. Stuaan     mark.stuaan@btlaw.com
Keith Teel     kteel@cov.com
Meredith R. Theisen     mtheisen@rubin-levin.net,
atty_mtheisen@bluestylus.com;mralph@rubin-levin.net;csprague@rubin-levin.net
Jonathan Toren     jtoren@cozen.com, bbuckner@cozen.com
U.S. Trustee     ustpregion10.in.ecf@usdoj.gov
Susan Walker     susan.walker@dentons.com
Joshua D Weinberg     jweinberg@goodwin.com
Gabriella B. Zahn-Bielski     gzahnbielski@cov.com

I further certify that on June 14, 2020, a copy of the foregoing *Survivors' Objection to the United States Olympic and Paralympic Committee's (the "USOPC") Motion for Protective Order and to Limit Discovery Regarding Debtor's Motion for Order Approving the Disclosure Statement and Plan Confirmation Procedures* was served via electronic mail to the following:

**United States Olympic Committee:** Chris McCleary at Chris.McCleary@usoc.org
**The Alexander, a Dolce Hotel and Wyndham Hotel Group, LLC:** Daniel M. Eliades at daniel.eliades@klgates.com and David S. Catuogno at david.catuogno@klgates.com

/s/ Alex E. Cunny
Alex E. Cunny

34