IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In re:<br><br>USA GYMNASTICS,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 18-09108-RLM-11 |

**DECLARATION OF CHRISTOPHER J. SCHNEIDER IN SUPPORT OF CONFIRMATION OF THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY USA GYMNASTICS AND THE ADDITIONAL TORT CLAIMANTS COMMITTEE OF SEXUAL ABUSE SURVIVORS**

I, Christopher J. Schneider, hereby declare:

1. I am a member of the law firm of Miller Johnson. USA Gymnastics ("**USAG**") has retained me as its outside Chief Legal Officer, and I have held this role since August 2018. My law firm also has been retained as special counsel to USAG in the above-captioned chapter 11 case.

2. As USAG's outside Chief Legal Officer, I oversee all of the legal affairs for the organization, including overseeing this bankruptcy case and the many mediations, settlement conferences, and communications with stakeholders that have occurred in connection with USAG's chapter 11 case.

3. I submit this declaration ("**Declaration**") in support of confirmation of the *Third Amended Joint Chapter 11 Plan Of Reorganization Proposed By USA Gymnastics And The Additional Tort Claimants' Committee Of Sexual Abuse Survivors* [Dkt. 1655] (as it may be

---

[1] The last four digits of the Debtor's federal tax identification number are 7871. The location of the Debtor's principal office is 1099 N Meridian, Suite 800, Indianapolis, Indiana 46204.

modified, amended, or supplemented, the "**Plan**")[2] and the *Debtor's Memorandum Of Law In Support Of Confirmation Of The Third Amended Joint Chapter 11 Plan Of Reorganization Proposed By USA Gymnastics And The Additional Tort Claimants Committee Of Sexual Abuse Survivors And Omnibus Reply To Confirmation Objection* (the "**Memorandum**"), filed contemporaneously herewith.

4. I have read the Plan and the accompanying Disclosure Statement, the Memorandum, and the objections that were filed by: (1) the United States Trustee [Dkt. 1734] (the "**UST Obj.**" filed by the "**UST**"); (2) the Indiana Attorney General [Dkt. 1739] (the "**IAG Obj.**" filed by the "**IAG**"); (3) TIG [Dkt. 1736] (the "**TIG Obj.**"); and (4) Liberty Insurance Underwriters, Inc. [Dkt. 1735] (the "**LIU Obj.**" filed by "**LIU**").

**The Mediation**

5. As USAG's outside Chief Legal Officer, I have personally been engaged in the many mediations and settlement conferences that led to the filing of the Plan, and that have continued in earnest since the filing of the Plan.

6. The Plan is the result of extensive, hard-fought, arms-length, and mediated negotiations among USAG, the Survivors' Committee, individual Abuse Claimants, the FCR, the USOPC, the Karolyis, and the Settling CGL insurers for the Debtor and the USOPC, each as represented by counsel, among other key stakeholders of the Debtor.

7. The post-petition mediations began in July 2019. In September 2020, this Court ordered a settlement conference, which had the effect of continuing the mediation process. After repeated mediation sessions over the course of 2021 and the exchange of various competing plan proposals, the Plan's supporting parties agreed to the terms of the current Plan. And, since the

---

[2] Capitalized terms used herein but not defined shall have the meaning given to them in the Plan.

2

filing of the Plan, these mediation sessions have continued and are ongoing even as of the filing of this Declaration.

8. Each supporting party made numerous, material concessions in its positions to reach the settlements reflected in the Plan. The goal was to avoid uncertain litigation that might result in lower recoveries for the Debtor's creditors (including Abuse Claimants) or imperil the Debtor's ability to operate as a going-concern.

9. I believe the Plan will fairly and equitably address all Abuse Claims and other prepetition claims, maximize value for all parties in interest, allow reorganized USAG to continue to discharge its duties as a National Governing Body, and promote reorganized USAG's efforts to enhance and protect athlete health, wellbeing, and safety. In my view, the Plan is the best way forward for USAG, its estate, and its creditors.

10. USAG's intent in proposing this Plan for confirmation is to adjust its debts consistent with the Bankruptcy Code and not for any other purpose.

**USAG's Insurance Policies**

11. The Plan provides for the buy-back of certain of USAG's comprehensive general liability ("**CGL**") insurance policies. As of the date of this Declaration, five of USAG's CGL insurers are Settling Insurers under the Plan: Ace American Insurance Company, formerly known as Cigna Insurance Company; Great American Assurance Company; National Casualty Company; National Union Fire Insurance Company of Pittsburgh, P.A.; and Virginia Surety Company, formerly known as Combined Specialty Insurance Company.

12. With the exception of National Union Fire Insurance Company of Pittsburgh, P.A., and Ace American Insurance Company, formerly known as Cigna Insurance Company, each of USAG's CGL insurers that are Settling Insurers also provide insurance to the USOPC. And with

3

the exception of National Union Fire Insurance Company of Pittsburgh, P.A., the USOPC is named as an additional or named insured under each of the insurance policies for USAG's CGL insurers that are Settling Insurers.

13. The Plan provides for certain releases of the Protected Parties under the Full or Partial Settlement Alternative. Each of the Protected Parties has asserted coverage under USAG's Settling Insurers' policies or are otherwise defendants in lawsuits that USAG's Settling Insurers would otherwise have to defend. Each may request indemnification from USAG.

14. USAG's Settling Insurers have conditioned the buy-back of their policies on the Protected Parties receiving the releases and injunctions set forth in the Plan. In addition, absent the Plan's release and injunctive provisions, none of the Protected Parties would agree to eliminate their purported interests in USAG's Settling Insurers' insurance policies without compensation. Under the Full or Partial Settlement Alternative, all claims for indemnification are channeled to the Trust and resolved in return for the Plan's releases and injunctions.

15. Three of the Protected Parties, the USOPC, the Karolyis, and Twistars, are also "Participating Parties" under the Plan, meaning that they are contributing money to fund the Trust under the Full or Partial Settlement Alternative. The contributions proposed in the Plan by the USOPC and the Karolyis were negotiated during the mediation process and are conditioned upon the Plan's release and injunctive provisions. The contribution proposed in the Plan by Twistars is the product of a settlement reached between the Survivors' Committee and Twistars and is also conditioned upon the Plan's release and injunctive provisions. If the Plan did not include releases and injunctions benefiting these Participating Parties, the Participating Parties would not make any contributions to the Plan.

**Continued Service of USAG's Directors And Officers Is In The Best Interests Of Creditors**

16. The Plan provides that USAG's current officers, directors, and managers will continue to serve in accordance with USAG's bylaws. (Plan § 21.23.)

17. USAG is governed by a Board of Directors. Before the Petition Date, USAG implemented a streamlined Board structure, reducing the number of directors from 21 to 15 and requiring a majority of the Board to be independent directors.

18. The Amended and Restated Bylaws of USA Gymnastics, Inc. provide that the Board shall consist of fifteen directors comprised of one National Membership Director, five Athlete Directors, eight Independent Directors, and one Affiliated Organizations Director. USAG's current Board directors are: Kathryn Carson, Justin Toman, Brent Lang, Lois Bingham, Dylan Carney, Kittia Carpenter, Logan Dooley, Sarah Finnegan, Serena Lu, Rebecca Sereda, Staci Slaughter, Julie Springwater, Kimberly Till, and Brandon Wynn. The Affiliated Organizations director seat reserved for a member of the Affiliates Organizations Committee is currently vacant and is expected to be filled in early 2022. The Board directors are not compensated for their service.

19. USAG has four officers, Li Li Leung (President and CEO), Kathryn Carson (Chairperson), Justin Torman (Vice President/Secretary), and Treasurer (Brent Lang). Ms. Leung is the only compensated officer. Ms. Leung receives a base salary of $450,000 per year and is eligible to receive discretionary annual performance bonuses. Ms. Leung has not received any bonus payments during the pendency of USAG's bankruptcy case. The terms of Ms. Leung's employment were previously approved by this Court by Order dated March 29, 2019. [Dkt. 367.]

20. I interact regularly with USAG's Officers and Directors, each of whom are committed to USAG's mission "to build a community and culture of health, safety and excellence,

where athletes can thrive in sport and in life" and core values of safety, integrity, accountability, transparency, and listening. USAG's Officers and Directors have led USAG through its reorganization and are well positioned to continue to lead the organization post-bankruptcy. I believe the continued service of USAG's Directors and Officers is in the best interests of creditors.

**USAG Does Not Have Any "Retiree Benefit" Obligations**

21. USAG does not provide any retiree benefits as that term is defined in 11 U.S.C. § 1114(a).

**USAG's Engagement with the Indiana Attorney General**

22. Since the filing of USAG's bankruptcy case, USAG, its counsel, its CEO, and its Safe Sport team have met regularly with, and have provided information to, representatives for the Indiana Attorney General's office.

23. Since 2018, USAG has provided IAG with 257,825 documents, including, on a semi-annual basis, providing the IAG with reporting documents from USAG's Safe Sport department about reports that are received by USAG and the actions USAG takes with respect to those reports, including making reports to law enforcement and to the Center for Safe Sport. The most recent production of such documents occurred on November 30, 2021.

24. USAG's first post-petition meeting with the IAG took place in March 2019, and since that time USAG has met with the IAG eleven times to discuss USAG's operations. USAG's attendees at these meetings varied, but have included, in addition to outside bankruptcy counsel, myself, Li Li Leung (USAG's CEO and President), Shelba Waldron (USAG's Director of Safe Sport Policy and Education), and other representatives from USAG's Safe Sport department.

25. Following many of these meetings, under my direction, USAG has provided the IAG with letters containing additional information requested during the meetings. Attached hereto

6

as Exhibit 1 is an April 1, 2020 letter containing information regarding various policies and training materials; Exhibit 2 is a July 16, 2020 e-mail providing information regarding educational materials; Exhibit 3 is a February 25, 2021 e-mail providing information regarding the Deborah Daniels audit and USAG's engagement of RealResponse, an anonymous reporting service; and Exhibit 4 is an August 31, 2021 19-page letter setting forth a detailed account of USAG's commitment to athlete safety and wellness.

26. In addition, USAG has facilitated communication between the IAG and Deborah Daniels, the consultant USAG hired in 2017 and again in 2020. In 2017, USAG asked Deborah Daniels, a former U.S. Attorney for the Southern District of Indiana, to study USAG's organization and operations and to make recommendations to strengthen athlete safety. She issued a report in 2017 making over 70 recommendations in a variety of areas. In the fall of 2020, USAG asked Ms. Daniels to audit USAG's progress on meeting those recommendations and agreed with the IAG that the IAG could meet privately with Ms. Daniels to discuss her audit and conclusions.

27. In her February 23, 2021 audit report (which is publicly available on USAG's website and attached hereto as Exhibit 5), Ms. Daniels concluded:

> Overall, it appears that USA Gymnastics, particularly in the time period since the current CEO was installed in the Spring of 2019, has made significant forward progress toward not only improving its written policies but also improving its performance in terms of athlete abuse reporting and response to reports of abuse; training of various constituencies to enhance their understanding of what constitutes abuse and what action is expected if misconduct is detected; outreach to, protection an support of athletes; and communication from the top down of a culture that values and protects its athletes first and foremost .... USA Gymnastics has made myriad, highly visible and potentially highly impactful changes that appear to be making a real difference on behalf of the young athletes for whose safety it is responsible.

(*See* Ex. 5 at 2.)

28. Ms. Daniels further concluded that USAG "has made significant positive strides and has, in fact, fully satisfied the proposals for change made in the vast majority of the original 70 recommendations from the 2017 Report. (*Id*. at 2.) I understand that the IAG (or individuals working for the IAG) met privately with Ms. Daniels about her 2021 audit and conclusions and they have not expressed any dissatisfaction to USAG with regard to this audit.

I declare under penalty of perjury as provided in 28 U.S.C. § 1746 that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated: December 10, 2021          */s/ Christopher J. Schneider*
                                  Christopher J. Schneider